

94 F.Supp.2d 1052  
94 F.Supp.2d 1052  
**(Cite as: 94 F.Supp.2d 1052)**

Page 1

**H**
[Briefs and Other Related Documents](#)

United States District Court,N.D. California.
Kathleen R. IRWIN, et al., Plaintiffs,
v.
Owen T. MASCOTT, et al., Defendants.
**No. C 97-4737 JL.**

Feb. 11, 2000.

Debtors filed suit for damages and injunctive relief against debt collector and its president for alleged violations of the Fair Debt Collection Practices Act (FDCPA) and the California Unfair Business Practices Act (CUBPA). On defendants' motion to add third-party defendants, the District Court, [Larson](#), United States Magistrate Judge, held that defendants would not be allowed to **implead** their former counsel to seek **contribution** or **indemnity** on a legal malpractice theory.

Motion denied.

West Headnotes

[**[1]**] **Federal Civil Procedure** 170A ⛋281

170A Federal Civil Procedure
    170AII Parties
        170AII(G) Bringing in New Parties; Third-Party Proceedings
            170Ak281 k. In General. [Most Cited Cases](#)
In deciding whether to permit impleader, a court must consider the following: (1) prejudice to the original plaintiff; (2) complication of issues at trial; (3) likelihood of trial delay; and (4) timeliness of the motion to **implead**. [Fed.Rules Civ.Proc.Rule 14, 28 U.S.C.A](#).

[**[2]**] **Federal Civil Procedure** 170A ⛋287

170A Federal Civil Procedure
    170AII Parties
        170AII(G) Bringing in New Parties; Third-Party Proceedings
            170Ak287 k. Liability of Third Party in General. [Most Cited Cases](#)
For impleader to be permitted under civil procedure rule, the third-party plaintiff's claim must be dependent upon the outcome of the main claim. [Fed.Rules Civ.Proc.Rule 14, 28 U.S.C.A](#).

[**[3]**] **Federal Civil Procedure** 170A ⛋287

170A Federal Civil Procedure
    170AII Parties
        170AII(G) Bringing in New Parties; Third-Party Proceedings
            170Ak287 k. Liability of Third Party in General. [Most Cited Cases](#)
Civil procedure rule governing impleader does not require that the third party defendant be liable to the original plaintiff in order for the original defendant to proceed with his claim against a third party defendant and recover judgment thereon. [Fed.Rules Civ.Proc.Rule 14, 28 U.S.C.A](#).

[**[4]**] **Consumer Protection** 92H ⛋10

92H Consumer Protection
    92HI In General
        92Hk10 k. Debt Collection Practices. [Most Cited Cases](#)
The Fair Debt Collection Practices Act (FDCPA) is a strict liability statute and thus does not require a showing of intentional conduct on the part of the debt collector. Consumer Credit Protection Act, § 802 et seq., as amended, [15 U.S.C.A. § 1692](#) et seq.

[**[5]**] **Consumer Protection** 92H ⛋36.1

92H Consumer Protection
    92HII Remedies of Consumer
        92Hk36 Actions
            92Hk36.1 k. In General. [Most Cited Cases](#)
Proof of intent to injure is not necessary to prove a violation of the California Unfair Business Practices Act (CUBPA). [West's Ann.Cal.Bus. & Prof.Code §](#)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

94 F.Supp.2d 1052                                                                                                             Page 2
94 F.Supp.2d 1052
**(Cite as: 94 F.Supp.2d 1052)**

17200 et seq.

**[6] Federal Civil Procedure 170A ⚷291**

170A Federal Civil Procedure
    170AII Parties
        170AII(G) Bringing in New Parties; Third-Party Proceedings
            170Ak291 k. Tort-Feasor as Third Party. Most Cited Cases
Debt collector sued for violations of the Fair Debt Collection Practices Act (FDCPA) and the California Unfair Business Practices Act (CUBPA) would not be permitted to **implead** its former counsel as third-party defendants on claim of legal malpractice; since good faith reliance on advice of counsel was not a defense, third-party legal malpractice action would not have been dependent on plaintiffs' claims, thereby complicating and delaying the consumer debt collection class action. Consumer Credit Protection Act, § 802 et seq., as amended, 15 U.S.C.A. § 1692 et seq.; West's Ann.Cal.Bus. & Prof.Code § 17200 et seq.

**[7] Action 13 ⚷3**

13 Action
    13I Grounds and Conditions Precedent
        13k3 k. Statutory Rights of Action. Most Cited Cases
To determine whether a claim of **contribution** or **indemnity** exists in a suit to enforce a federal statute which contains no explicit right to such relief, the court investigates whether there is an implied right of action.

**[8] Action 13 ⚷3**

13 Action
    13I Grounds and Conditions Precedent
        13k3 k. Statutory Rights of Action. Most Cited Cases
The methodology for determining whether there is an implied right of action under a federal statute is: (1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; (2) whether there is an explicit or implicit legislative intent to create or deny the remedy sought; (3) whether such a remedy would be consistent with the underlying purposes of the statute; and (4) whether the cause of action is one traditionally relegated to state law.

**[9] Consumer Protection 92H ⚷10**

92H Consumer Protection
    92HI In General
        92Hk10 k. Debt Collection Practices. Most Cited Cases
There is no express or implied right of **contribution** or **indemnity** under the Fair Debt Collection Practices Act (FDCPA). Consumer Credit Protection Act, § 802 et seq., as amended, 15 U.S.C.A. § 1692 et seq.

**[10] Federal Civil Procedure 170A ⚷287**

170A Federal Civil Procedure
    170AII Parties
        170AII(G) Bringing in New Parties; Third-Party Proceedings
            170Ak287 k. Liability of Third Party in General. Most Cited Cases
Debt collector sued for violations of the Fair Debt Collection Practices Act (FDCPA) could not **implead** its former counsel to obtain either **contribution** or **indemnity** from the attorneys for bad legal advice concerning compliance with the FDCPA; there is no cause of action for either **indemnity** or **contribution** under the FDCPA, either within the plain language of statute or implied, since the proposed third-party plaintiffs were not members of the class of intended beneficiaries of the FDCPA. Consumer Credit Protection Act, § 802 et seq., as amended, 15 U.S.C.A. § 1692 et seq.; Fed.Rules Civ.Proc.Rule 14, 28 U.S.C.A.

**\*1054** Paul Arons,Law Office of Paul Arons, Redding, CA, O. Randolph Bragg, Horowitz Horowitz & Associates, Chicago, IL, Lorraine Ellen Law Offices of Lorraine Ellen Baur, Ukiah, CA, for Plaintiffs.
Mark E. Ellis, William C. Reeves, Murphy Pearson Bradley & Feeney, Sacramento, CA, for Defendants.

ORDER DENYING MOTION TO ADD
THIRD-PARTY DEFENDANTS

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

94 F.Supp.2d 1052 Page 3
94 F.Supp.2d 1052
**(Cite as: 94 F.Supp.2d 1052)**

LARSON, United States Magistrate Judge.

### INTRODUCTION

Defendants' Motion to Add Third-Party Defendants was heard on November 17, 1999. Mark Ellis and June Coleman appeared for Defendants. Paul Arons and Lorraine Baur appeared for Plaintiffs. After oral argument, the Court took the matter under submission.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Kathleen R. Irwin, Nancy Heth, and Lorraine L. Castaneda filed suit on December 31, 1997, for damages and injunctive relief in this action against defendants Owen T. Mascott, Commonwealth Equity Adjustments, Inc. ("CEA"), and Eric W. Browning, for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ["FDCPA"], and the California Unfair Business Practices Act, Cal. Business & Professions Code §§ 17200, *et seq.* ("CUBPA").

Plaintiffs alleged that CEA, and its executive director Browning, through its then attorney, Owen Mascott, violated the FDCPA and CUBPA through written communications to debtors which:
1) contained impermissible threats of future litigation;
2) sought add-on charges and damages which CEA (and its attorneys) were not entitled to collect under California law; and
3) often contained draft lawsuits, which Mascott had no intention of filing, as a deceptive practice in an attempt to extort extra charges from debtors.

(Complaint, ¶¶ 36-43, 51-61).

The class was certified on March 24, 1999. *Irwin v. Mascott,* 186 F.R.D. 567 (N.D.Cal.1999).

### THIS MOTION

CEA and its president, Eric Browning, FN1 move for this Court's permission to serve a third-party complaint on Homan and Lobb, and its successor, Homan and Stone ("Homan firms"), CEA's former law firms. Mascott was CEA's general counsel up to the time of the filing of the lawsuit. The Homan firms took over in 1998 and 1999. CEA claims that certification of the plaintiff class extended CEA's potential liability through the present, into the time period when its collection advice was provided by the Homan firms. Plaintiffs included these firms in the class notice, despite CEA's objection that they were not named defendants in the action and should not appear on the notice absent amendment of the complaint.

> FN1. Owen Mascott, CEA's former general counsel, does not join in the Impleader, presumably because he cannot sue his successors for legal malpractice.

After class certification, CEA reviewed its potential liability for collection activities in 1998 and 1999, and discovered that it exceeded its insurance policy limits. At his partial deposition in September 1999, Robert Hyde, CEA's Operations Manager, **\*1055** revealed that CEA had retained the Homan law firms and relied on their advice as to both collections and compliance, just as CEA had previously relied on the advice of its attorney, Owen Mascott.

Between July and mid-September, 1999, CEA decided that it had no choice but to file a third-party action against the law firms that had acted as its counsel after the lawsuit was filed. Its basis for doing so is that:
1) these firms advised CEA whether its collection program was in compliance with state and federal law; and
2) CEA is being held vicariously liable for the allegedly wrongful acts of its collections attorneys, including the written collection communications from the Homan firms.

CEA believes that the liability, if any, of the Homan firms is "inextricably intertwined" with the liability, if any, of CEA to Plaintiffs.

CEA seeks to **implead** the Homan firms in the interest of judicial economy. It denies any prejudice to Plaintiffs, saying in fact that the Homan firms'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

94 F.Supp.2d 1052  
94 F.Supp.2d 1052  
**(Cite as: 94 F.Supp.2d 1052)**

Page 4

insurance will enlarge the potential pool for Plaintiffs' recovery. CEA denies any undue delay, citing the class certification as its first notice that it could be liable for collection activities occurring after the filing of the lawsuit.

Plaintiffs object, claiming delay and prejudice, with the addition of parties setting up a potential conflict of interest of existing CEA counsel, addition of new counsel who will need time to be brought up to speed, re-taking of discovery, and re-filing of motions. Plaintiffs observe that the Homan firms are themselves the defendants in other lawsuits and that their insurance is probably nearly exhausted by now. Plaintiffs minimize the participation of the Homan firms in the alleged violations of the FDCPA and CUBPA, claiming that they only continued to use Mascott's boilerplate collection letters and lawsuit templates, merely changing the names on the stationery.

LEGAL ARGUMENT

Plaintiffs contend that this Court could legitimately find that the impleader by defendants of the Homan firms would transplant a legal malpractice case into this consumer protection case. The legal facts and issues in the malpractice case would be quite separate and not necessary at all to the plaintiffs' case. Since the FDCPA is a strict liability statute, no showing of intent is necessary to establish liability, [FN2] and there is no advice of counsel defense. Defendants have also asserted this defense to the CUBPA claims, despite the fact that lack of intent is not available as a defense to liability for violations of CUBPA, premised on violation of FDCPA.

> FN2. The issue of intent may be a factor in determining actual or statutory damages. 15 U.S.C. section 1692k(b)(1) and (2).

Defendants rely on Judge Williams' decision in *Banks v. City of Emeryville,* 109 F.R.D. 535 (N.D.Cal.1985). In that case, a jail inmate died when her mattress caught fire. Her family sued the City and the **police chief**, who moved to **implead** the mattress manufacturer for **indemnity** or **contribution**. The court denied impleader of third-party defendants as part of the plaintiff's § 1983 claim, but permitted it on an ancillary state law claim for negligence or comparative fault. The court in effect said that the third-party plaintiffs could recover from the third-party defendants only for the state law claims. In the *Banks* case, presumably these claims included wrongful death, a substantial cause of action. In the case at bar, it would be virtually impossible to separate the state and federal causes of action, since they are premised on the same actions by Defendants.

ANALYSIS

Rule 14, Fed.R.Civ.P., governs third-party practice. It provides, in pertinent part:
**\*1056** (a) When Defendant May Bring in Third Party. At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claims against the third-party plaintiff. The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer. Otherwise, the third-party plaintiff must obtain leave on motion upon notice to all parties to the action.

[1] The decision whether to permit impleader is left to the discretion of the trial court. Fed.R.Civ.P. Rule 14(a), 28 U.S.C.A. "[A] court, called upon to exercise its discretion as to impleader, must balance the desire to avoid circuity of actions and to obtain consistent results against any prejudice that the plaintiff might suffer from complications of the case." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 439 n. 6 (3d Cir.1971), cert. denied, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972) (In deciding whether to permit impleader, a court must consider the following: (1) prejudice to the original plaintiff; (2) complication of issues at trial; (3) likelihood of trial delay; and (4) timeliness of the motion to **implead**.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

94 F.Supp.2d 1052                                                                                                                         Page 5
94 F.Supp.2d 1052
**(Cite as: 94 F.Supp.2d 1052)**

### TIMELINESS OF MOTION TO IMPLEAD

Plaintiffs object that Defendants could have impleaded their attorneys soon after this lawsuit was filed. Defendants retort that they only recently, following the class certification, calculated that their potential liability exceeded their insurance coverage and that they needed to look to other resources, should they be found liable. Furthermore, Defendants lay the blame on Plaintiffs themselves for failing to name the other law firms as defendants. This Court finds that Defendants' delay is excusable, under the circumstances, but that Plaintiffs are not required to sue whomever Defendants think they should sue.

### COMPLICATION OF ISSUES AND LIKELIHOOD OF TRIAL DELAY

Complication of issues and delay of the trial are significant concerns, since injecting a legal malpractice cause of action could well delay and complicate the consumer debt collection class action. If the legal issues and evidence in the malpractice cause of action are not closely related to the consumer debt collection action, adding the third-party claim could greatly increase both the discovery necessary to bring this case to trial and the length of the trial itself.

[2] For impleader to be permitted under Rule 14, the third-party plaintiff's claim must be dependent upon the outcome of the main claim. Stewart v. American Int'l Oil & Gas Co., 845 F.2d 196, 199-200 (9th Cir.1988) (dismissing third-party complaint for failure to show party would be liable for claims against a defendant).

Professors Wright and Miller explain:
... [the claim] cannot simply be an independent or related claim but must be based upon plaintiff's claim against defendant. The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the thirdparty defendant the liability asserted against him by the original plaintiff. The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough.

6 Fed.Prac. & Proc. Section 1446 at 257 (1971 ed.). See also, 3 J. Moore, Federal Practice, paragraphs 14.04-14.15.

[3] This does not mean that the third-party defendant must be liable to the original plaintiff.
"As a matter of procedure, Rule 14 does not require that the third party defendant be liable to the original plaintiff in **1057** order for the original defendant to proceed with his claim against a third party defendant and recover judgment thereon."

Huggins v. Graves, 337 F.2d 486, 489 (6th Cir.1964). See also, Barnett v. Sears Roebuck and Co., 80 F.R.D. 662, 665 (W.D.Okla.1978).

[4] The FDCPA is a strict liability statute and thus does not require a showing of intentional conduct on the part of the debt collector. Pittman v. J.J. Mac Intyre Co., 969 F.Supp. 609, 613 (D.Nev.1997) citing Kuhn v. Account Control Technology, Inc., 865 F.Supp. 1443, 1450 (D.Nev.1994) see also Cavallaro v. Law Office of Shapiro & Kreisman, 933 F.Supp. 1148 (E.D.N.Y.1996); Cacace v. Lucas, 775 F.Supp. 502, 505 (D.Conn.1990), 15 USCA § 1692k.

The only Ninth Circuit case even remotely close to the point refers to intent, but only to commit specific acts in violation of the FDCPA, for instance, to threaten to sue with no intention of doing so, or to telephone a debtor with intent to harass. Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507, 1517 (9th Cir.1994), 15 U.S.C. section 1692e. The court found the defendants' intent to commit these specific acts to be material and not subject to summary judgment.

This is distinguishable from defendants' knowing that a specific act violated the statute and doing it anyway, which would show intent to violate the statute. Only the latter would be at issue where defendants raise the defense of reliance on advice of counsel. This is not relevant to liability under the FDCPA. In the case at bar, the third-party plaintiffs' cause of action for malpractice would not be closely related to the Plaintiffs' claim for violation of the FDCPA, since the third-party plaintiffs' intent is not at issue to prove liability.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

94 F.Supp.2d 1052                                                                                                                                                      Page 6
94 F.Supp.2d 1052
**(Cite as: 94 F.Supp.2d 1052)**

[5] Proof of intent to injure is not necessary to prove a violation of CUBPA. *People v. Duz-Mor Diagnostic Laboratory, Inc.,* 68 Cal.App.4th 654, 80 Cal.Rptr.2d 419 (1998) (No proof of intent to injure required to prove violation), Cal.Bus. & Prof.Code section 17200 *et seq.* Whether intent is an element of an available defense depends on the underlying offense in a CUBPA action. The Act requires a violation of law. It "borrows" other laws where a defendant's violation is also anti competitive or deceptive. A defense to the underlying offense is a defense under the Act. *Duz-Mor,* 68 Cal.App.4th at 673, 80 Cal.Rptr.2d 419.

[6] There is no defense of reliance on advice of counsel in the FDCPA violation. Consequently, good faith reliance on the advice of counsel is no defense to violation of CUBPA. The third-party legal malpractice action would not be dependent on Plaintiffs' claims against Defendants, since good faith reliance on the advice of counsel would not be a defense to liability. The case at bar is rather straightforward, involving an alleged violation of a strict liability statute under the FDCPA, which also governs which defenses are available to any corresponding violation of the CUBPA. Intent plays no part in determining liability for violation of either the FDCPA, or the CUBPA.

There are numerous legal and factual complications which would result from impleader of the third-party defendants in this case. If this Court permits impleader, a cause of action for legal malpractice enters the case, and requires taking evidence regarding the elements of that claim. The Court also must evaluate a percentages of liability and who wrote and sent which letters at which times. Allocating liability for damages would be an additional chore.

DOES THIRD-PARTY COMPLAINT ALLEGE A CAUSE OF ACTION FOR WHICH RELIEF MAY BE GRANTED?

This is an important factor in this Court's decision whether to permit impleader. It makes no sense to permit such a potentially prejudicial expansion of the case at the expense of Plaintiffs, if the third-party plaintiffs do not have a valid **\*1058** theory of relief against the third-party defendants.

Defendants seek to **implead** their former counsel on the theory that they may be able to obtain either **contribution** or **indemnity** from the attorneys for bad legal advice which induced them to violate the FDCPA and the CUBPA. This is a federal question case, so federal law determines whether impleader is available under Rule 14.

In summarizing Rule 14 and the right to **implead** a joint tortfeasor for **contribution**, Professors Wright and Miller state that:
If the governing substantive law recognizes a right of **contribution** ... impleader under Rule 14 is a proper procedure by which to seek relief from joint tortfeasors. The availability of impleader enables the right of **contribution** to be litigated concurrently with the main claim. Because the question whether someone is a joint tortfeasor is largely one of fact to be determined by the jury, a motion to dismiss the third-party complaint on the ground that it fails to state a claim normally should be denied and the third-party plaintiff allowed an opportunity to produce evidence as to the nature of the relationship.

6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1448 (2d ed.1990) (footnotes omitted).

Is there a right of action for either **contribution** or **indemnity** as relief in a case involving violation of the FDCPA?

**Contribution**-Definition

"**Contribution** is the proportionate sharing of liability among tortfeasors. Typically, a right to **contribution** is recognized when two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability."
*In re "Agent Orange" Product Liability Litigation,* 818 F.2d 204, 207 (2d Cir.1987) (citations and quotations omitted).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

94 F.Supp.2d 1052                                                                                                                                Page 7
94 F.Supp.2d 1052
**(Cite as: 94 F.Supp.2d 1052)**

**Indemnity**-Definition

"... [L]iability for loss shifted from one person held legally responsible to another person ..." *Black's Law Dictionary,* 5th ed., West Publishing Co., (1979)

Right of Action

In the case at bar, the FDCPA provides very specific and articulated rights and remedies, leading one to conclude that if Congress had intended an explicit right to **contribution** or **indemnity**, it would have included it in the statute. There is no express right of action for either **contribution** or **indemnity** in either the FDCPA or the CUBPA.

The Supreme Court has identified specific factors which indicate Congressional intent to create a statutory right of **contribution**. "These factors are the statutory language, the legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies." *Northwest Airlines Inc., v. Transport Workers Union of America, AFL-CIO,* 451 U.S. 77 at 91, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). In that case, the Court held that the airline, which had been held liable to female cabin attendants for back pay because collectively bargained wage differentials between female and male attendants were found to violate the Equal Pay Act and Title VII of Civil Rights Act, had no implied right of **contribution** under either Act against the labor unions which were parties to the contracts. *Id.*

[7] [8] To determine whether a claim of **contribution** or **indemnity** exists in a suit to enforce a federal statute which contains no explicit right to such relief, the court investigates whether there is an implied right of action. The methodology for determining whether there is an implied right of action under a federal statute is:

(1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; (2) whether there is an explicit or **\*1059** implicit legislative intent to create or deny the remedy sought; (3) whether such a remedy would be consistent with the underlying purposes of the statute; FN3 and (4) whether the cause of action is one traditionally relegated to state law. The Court derived the factors for determining congressional intent from a line of cases beginning with *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (no implied right of action for shareholders under state law for corporation's violation of federal campaign **contribution** statute).

> FN3. The intent of the FDCPA statute, wherever possible, is to enhance the protection offered *to consumers:* for example, for purposes of this section, a state law is not inconsistent with this title if the protection such law affords *any consumer* is greater than the protection provided by this title. 15 U.S.C. § 1692n. (Emphasis added).

Courts have found no implied cause of action for indemnification in a federal statute where there was no such express right in the statute and where the third party plaintiff was not the intended beneficiary of the statute;
"[w]here a statute provides a right of action in one area but not in another, there is a "rebuttable presumption" that the legislature did not intend to grant a cause of There is no express right of action for either **contribution** or **Indemnity** in either the FDCPA or the CUBPA. action in the area in which it was silent."
"The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement."

*Crescent Wharf & Warehouse Co. v. Barracuda Tanker Corp.,* 696 F.2d 703, 706 (9th Cir.1983) (citations omitted), *citing Northwest Airlines,* 451 U.S. at 97, 101 S.Ct. 1571. FN4

> FN4. Although the court in this case denied a claim under the Longshore and Harbor Workers Compensation Act, for **indemnity** by the Director against the vessel owners, it did find such a right by the employer against the owners, to be authorized by the Act.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

94 F.Supp.2d 1052 Page 8
94 F.Supp.2d 1052
**(Cite as: 94 F.Supp.2d 1052)**

The Ninth Circuit has held that where the statute provides a "comprehensive and reticulated" remedial scheme, but does not provide for **contribution** as a remedy, a court should assume that Congress left it out intentionally, and not create an unintended remedy, particularly one in favor of the group the statute is aimed at regulating, rather than protecting. In a line of ERISA cases, the court ruled that there was no right of **contribution** for employers:

"Indeed, implying a right of **contribution** is particularly inappropriate where, as in this case, the party seeking **contribution** " 'is a member of the class [e.g., fiduciaries] whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class [e.g., ERISA plans],' " and where there is no indication in the legislative history "that Congress was concerned with softening the blow on joint wrongdoers."

*Kim v. Fujikawa,* 871 F.2d 1427, 1433 (9th Cir.1989) (concluding that **contribution** is not available under ERISA, articulating the view of the Ninth Circuit and various district courts in other circuits that ERISA "does not provide fiduciaries with a cause of action for **contribution** against co-fiduciaries").

APPLICATION TO CASE AT BAR

[9] The Fair Debt Collection Practices Act is Title VIII of the Consumer Credit Protection Act, which includes such other credit-related consumer protection laws as the Truth in Lending Act (Title I), the Fair Credit Reporting Act (Title VI) and the Equal Credit Opportunity Act (Title VII). Its purpose is to protect consumers from unfair debt collection practices, and to regulate the conduct of debt collectors, including attorneys acting as debt collectors. *Schroyer v. Frankel,* 197 F.3d 1170 (6th Cir.1999) (attorneys acting as debt collectors must comply with FDCPA). *Id.* at 1175, 15 U.S.C. section 1692(e) (purpose **\*1060** of subchapter to promote State action to protect consumers).

[10] One court has found no right of **contribution** or **indemnity** by one joint creditor against another in an action under the Truth in Lending Act ("TILA"). *McCain v. Clearview Dodge Sales, Inc. v. Jefferson Bank and Trust Co.,* 574 F.2d 848 (5th Cir.1978) (finding that creditors were jointly and severally liable to consumers, therefore not entitled to **contribution** or **indemnity** from each other). A federal court in California has stated *in dicta* that a debt collection agency *may* have a cause of action for **indemnity** against its attorneys, under terms of an indemnification agreement in which they agreed not to violate the FDCPA. *Newman v. Checkrite California, Inc.,* 912 F.Supp. 1354 (E.D.Cal.1995).

But where there is a conflict between the FDCPA and state regulation of attorneys, the state law claim is pre-empted by the federal statute. (To the extent there was any conflict between the federal Fair Debt Collection Practices Act, as it was applied to attorneys retained to collect delinquent debts and California Supreme Court's own regulation of these same attorneys, federal legislation had to prevail, pursuant to Supremacy Clause.) *Id.* at 1365.

In the case at bar, the FDCPA pre-empts any legal malpractice claim, if the two conflict. Since this Court finds that there is no express or implied right of **contribution** or **indemnity** under the FDCPA, then this Court must reasonably deny, on pre-emption grounds, a motion to add a third-party claim for legal malpractice on these theories.

CONCLUSION

Federal law controls whether impleader is proper in the case at bar. There is no express or implied remedy of either **contribution** or **indemnity** in the FDCPA statute, the source of this Court's jurisdiction. The intent of Congress in enacting FDCPA was to protect the consumer. There was no intent to protect debt collection agencies or their attorneys, especially from each other.

The motion is denied, on grounds that there is no cause of action for either **indemnity** or **contribution** under FDCPA, either within the plain language of statute or implied, since the proposed third-party plaintiffs are not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

94 F.Supp.2d 1052 Page 9
94 F.Supp.2d 1052
**(Cite as: 94 F.Supp.2d 1052)**

members of the class of intended beneficiaries of the FDCPA.

Adding a claim of legal malpractice to this case would inject facts and legal issues which have nothing whatever to do with Plaintiffs' claims, under either the FDCPA or the CUBPA. To permit Defendants to **implead** third-party defendants would prejudice Plaintiffs and certainly not save the court any time, since the malpractice controversy would not help resolve Plaintiffs' claims. Adding third-party defendants would complicate a relatively simple case by adding issues irrelevant to liability under either the FDCPA or the CUBPA and would prejudice Plaintiffs.

Accordingly for all the above reasons, and good cause appearing,

IT IS HEREBY ORDERED that Defendants' motion is denied.

N.D.Cal.,2000.
Irwin v. Mascott
94 F.Supp.2d 1052

Briefs and Other Related Documents (Back to top)

• 3:97CV04737 (Docket) (Dec. 31, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.