IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| DARLA ABBATIELLO, | ) | CIVIL NO. CV04-00562 SOM BMK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN SUPPORT OF |
| | ) | MOTION |
| vs. | ) | |
| | ) | |
| COUNTY OF KAUAI, KAUAI | ) | |
| POLICE DEPARTMENT, K.C. LUM, | ) | |
| WILFRED M. IHU, GORDON | ) | |
| ISODA, DEAN PIGAO, IRVIL | ) | |
| KAPUA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

139963.2

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................... 1

II.   FACTUAL STATEMENT ..................................................... 2

    A.    Plaintiff Reported Kapua's Alleged Corruption Related to
         Targets Of Her Work In Vice, A.B. and C.D .................................... 2

    B.    Plaintiff Reported the Order That She Photograph Two Female
         Arrestees Naked Following a Strip Search........................................ 4

III.  ARGUMENT ..................................................................... 5

    A.    Standards of Review............................................................. 5

         1.    Motion for summary judgment .................................... 5

         2.    Motion to dismiss........................................................ 6

    B.    Defendants Are Entitled To Summary Judgment On Plaintiff's
         Federal Claims Because Plaintiff Fails To State a Violation Of
         The First Amendment As a Matter of Law ......................................... 7

         1.    Under Garcetti, there is no First Amendment protection
              when public employees make statements pursuant to their
              official duties.................................................................. 7

         2.    Under Garcetti, Plaintiff fails to state a violation of her
              First Amendment rights as a matter of law ............................. 11

              a.    It is not dispositive that the subject matter of
                   Plaintiff's speech was alleged governmental
                   misconduct.................................................... 12

              b.    Plaintiff's speech relating to Kapua's alleged
                   corruption was made in her capacity as a police
                   officer employed by KPD ............................. 12

              c.    Plaintiff's speech relating to photographing two
                   naked women after a strip search was made in her
                   capacity as a police officer ............................ 19

**TABLE OF CONTENTS**
(continued)

Page

3.    Defendants are entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim (Count I) ........................... 20

4.    Defendants are entitled to summary judgment on Plaintiff's 42 U.S.C. § 1985 claim (Count II) ......................... 20

C.    Defendants Are Entitled To Qualified Immunity Because the Law Governing Defendants' Actions Was Not Clearly Established At the Time of the Alleged Retaliation .......................... 21

D.    In The Alternative, Defendants Are Entitled To Dismissal of Plaintiff's Federal Claims (Counts I and II) Because Plaintiff Fails To State a Violation Of The First Amendment As a Matter of Law .............................................................................. 24

E.    Defendants Are Entitled To Dismissal of Plaintiff's State Law Claims for Negligence, Counts V and VII, Because Plaintiff is Barred From Suing a Fellow Employee for Negligence Under Hawai`i's Workers' Compensation Act ........................................... 25

F.    The Defendants Request That This Court Decline Federal Jurisdiction Over the Remaining State Claims ................................. 27

IV.    CONCLUSION ...................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

<u>Anderson v. Creighton</u>,
 483 U.S. 635 (1987) ............................................................................ 22

<u>Biggs v. Best, Best & Krieger</u>,
 189 F.3d 989 (9th Cir. 1999) ............................................................. 22

<u>Blair v. City of Pomona</u>,
 223 F.3d 1074 (9th Cir. 2000) ............................................................. 9

<u>Caldeira v. County of Kaua`i</u>,
 866 F.2d 1175 (9th Cir. 1989) ............................................................ 20

<u>Celotex Corp. v. Catrett</u>,
 477 U.S. 317 (1986) ............................................................................ 5

<u>Chandler v. McMinnville Sch. Dist.</u>,
 978 F.2d 524 (9th Cir. 1992) .............................................................. 6

<u>Connick v. Myers</u>,
 461 U.S. 138 (1983) ................................................................ 8, 15, 18, 23

<u>Ellison v. Northwest Airlines</u>,
 938 F.Supp. 1503 (D. Haw. 1996) ..................................................... 26

<u>Estate of Coates v. Pacific Engineering</u>,
 71 Haw. 358 (1990) ............................................................................ 26

<u>Freitag v. Ayers</u>,
 --- F.3d ---; WL 3110975, at *12-13 (9th Cir. 2006) ..................... 17, 18

<u>Garcetti v. Ceballos</u>,
 126 S.Ct. 1951 (2006) ................................................................ passim

<u>Garcetti v. Ceballos</u>,
 361 F.3d 1168 (9th Cir. 2004) ..................................................... 9, 17, 18

i

Gilbrook v. City of Westminster,
   177 F.3d 839 (9th Cir.1999) ................................................................ 22

Harlow v. Fitzgerald,
   457 U.S. 800 (1982).................................................................... 21, 22

Havekost v. United States Dept. of Navy,
   925 F.2d 316 (9th Cir. 1991) ...................................................... 14, 15, 16

Imagineering, Inc. v. Kiewit Pac. Co.,
   976 F.2d 1303 (9th Cir. 1992) ............................................................ 6

Johnson v. Multnomah County,
   48 F.3d (9th Cir. 1995) ................................................................... 9

Malley v. Briggs,
   475 U.S. 335 (1986)...................................................................... 22

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
   475 U.S. 574 (1986)....................................................................... 6

McGlinchy v. Shell Chem. Co.,
   845 F.2d 802 (9th Cir. 1988) ............................................................. 6

Pickering v. Bd. of Educ. of Township High Sch. Dist. 205,
   391 U.S. 563 (1968)................................................................. 8, 23, 24

Rankin v. McPherson,
   483 U.S. 378 (1987)................................................................... 16, 17

Romero v. Kitsap County,
   931 F.2d 624 (9th Cir. 1991) ............................................................ 22

Sacier v. Katz,
   533 U.S. 194 (2001).................................................................. 22, 23

Shah v. County of Los Angeles,
   797 F.2d 743 (9th Cir. 1986) ............................................................ 20

T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,
   809 F.2d 626 (9th Cir. 1987) ............................................................. 6

United Bhd. of Carpenters v. Scott,
    463 U.S. 825 (1983) ................................................................. 21

FEDERAL STATUTES

42 U.S.C. § 1983 ................................................................. passim

42 U.S.C. § 1985 ................................................................. passim

STATE STATUTES

H.R.S. § 386-5 ................................................................. 26

H.R.S. § 386-8 ................................................................. 26

FEDERAL RULES

Fed. R. Civ. P. 12(b)(6) ................................................................. 6

Fed. R. Civ. P. 56(c) ................................................................. 5, 6

OTHER

Black's Law Dictionary (8th ed. 2004) ................................................................. 26, 27

## MEMORANDUM IN SUPPORT OF MOTION

## I.     INTRODUCTION

Plaintiff Darla Abbatiello has asserted federal claims under 42 U.S.C. §§ 1983 and 1985 that are predicated on alleged violations of her civil rights under the First Amendment during the course of her employment with the Kaua'i Police Department ("KPD").  Following the United States Supreme Court's recent decision, <u>Garcetti v. Ceballos</u>, 126 S.Ct. 1951 (2006), Plaintiff is unable to establish any violation of the First Amendment based on the allegations contained in her First Amended Complaint, and thus her § 1983 and § 1985 claims fail. Additionally, Defendants Wilfred M. Ihu ("Ihu"), Gordon Isoda ("Isoda"), and Dean Pigao ("Pigao")(collectively "Defendants") are entitled to qualified immunity as to Plaintiff's federal claims.  Plaintiff is also precluded from bringing negligence-based state law claims (Counts V and VII) under Hawai'i's Workers' Compensation Act.

As set forth below, Defendants are entitled to summary judgment on Plaintiff's federal claims (Counts I and II), or in the alternative, dismissal of her federal claims.  Defendants are also entitled to dismissal of Plaintiff's negligence-based state law claims (Counts V and VII).

151747.1

## II.  **FACTUAL STATEMENT**

Plaintiff is employed as a police officer in the Kaua`i Police Department.  (Defendants' Separate Concise Statement of Facts ("CS") ¶ 1.)  In the First Amended Complaint filed on April 21, 2006, Plaintiff alleges that she made reports of alleged misconduct or violation of the law to her superiors at KPD, which arise out of two specific events:  (1) Defendant Sergeant Irvil Kapua's ("Kapua") alleged corruption related to targets of Plaintiff's work in the Vice Unit; and (2) the order to photograph two female arrestees naked following a strip search.  Plaintiff asserts that she was subjected to retaliatory conduct as a result of these reports.

For purposes of this motion, it is only Plaintiff's reports of alleged misconduct to her superiors that are pertinent to the discussion herein.

### A.  **Plaintiff Reported Kapua's Alleged Corruption Related to Targets Of Her Work In Vice, A.B. and C.D.**

The first event involves Plaintiff's investigation as a member of the Narcotics Vice Unit of KPD, where her main duties were to investigate drug complaints by gathering information and obtaining and executing search warrants. (CS ¶ 2.)  While working as an officer in the Vice Unit, Plaintiff investigated an individual identified as "A.B.," who was a suspected crystal methamphetamine

151747.1                                    2

dealer and the "sometime" girlfriend of C.D.[1]  (Id. ¶ 3.)  Plaintiff intended to use

A.B. to obtain evidence to arrest C.D., believed to deal larger quantities of crystal

methamphetamine.  (Id. ¶ 4.)

On or about December 5, 2003, Plaintiff obtained a search warrant to

search A.B.'s residence.  (CS ¶ 5.)  Plaintiff alleges that Sergeant Kapua told

Plaintiff's commanding officer in the Vice Unit, Lieutenant E.F., that the Vice Unit

should not work on either A.B. or C.D.  (Id. ¶ 6.)  On or about December 15, 2003,

Kapua registered A.B. as a confidential informant.  (Id. ¶ 7.)  Plaintiff alleges that

when she told Kapua that her main target was C.D., not A.B., Kapua told her that

C.D. was "nothing" and "small time."  (Id. ¶ 8.)

Plaintiff alleges she served a search warrant on A.B. on December 26,

2003, because A.B. was not cooperating like a confidential informant.  (CS ¶¶ 9-

10.)  When Plaintiff questioned A.B., A.B. admitted that she sold crystal

methamphetamine with C.D. and further stated that C.D. paid Kapua $6,000.00 to

protect A.B. and C.D.  (CS ¶ 11.)  Plaintiff alleges that she became severely

distressed after receiving the information because Kapua has a reputation for

having a violent temper and background.  (Id. ¶ 12.)  She states that she felt that

she was in a dangerous situation and she feared for her safety.  (Id. ¶ 13.)  She

---

[1]  In the First Amended Complaint, Plaintiff identifies numerous individuals
in "John Doe" fashion.  For purposes of this motion, the Defendants will retain the
identification set forth in the First Amended Complaint.

further alleges that on or about January 2, 2004, she reported to her supervisor, Lieutenant E.F., what A.B. had told her about Kapua and the alleged corruption. (Id. ¶ 14.) Plaintiff alleges that she told Lieutenant E.F. that she feared for her safety and requested that Kapua stay away from her.[2] (CS ¶¶ 15-16.) Lieutenant E.F. in turn communicated the information to Ihu, then Acting Chief, and Isoda, then an Assistant Chief. (Id. ¶ 16.) On January 19, 2004, Plaintiff reported for the first time in writing the information she received about Kapua's activities to Lieutenant E.F. (Id. ¶ 16.) In turn, Lieutenant E.F. reported Plaintiff's information in writing to Ihu. (CS ¶ 18.)

### B.    Plaintiff Reported the Order That She Photograph Two Female Arrestees Naked Following a Strip Search

The second event arises out of a strip search. Plaintiff alleges that on or about April 24, 2005, while on duty, she was ordered by Lieutenant O.P. to assist in a strip search of two female arrestees and to photograph them while they were naked. (CS ¶ 19.) Lieutenant O.P. indicated that he had a search warrant to conduct such searches. (Id. ¶ 20.) Plaintiff assisted in the search, which yielded negative results for illegal substances or contraband. (Id. ¶ 21.)

---

[2] The First Amended Complaint states that Lieutenant E.F. informed Defendants Ihu and Isoda that Plaintiff requested that Kapua stay away from her. (CS ¶ 16.) Defendants imply from this allegation that Plaintiff herself made the request that Kapua stay away from her.

Plaintiff believed that it was "unnecessary, humiliating, degrading, and contrary to law" to photograph the two arrestees while they were naked when they had already been searched and produced negative results. (Id. ¶ 22.) She refused to photograph the naked female arrestees under those conditions. (Id. ¶ 23.) The next day, Plaintiff reported the incident to Sergeant U.V. and Lieutenant E.F. (Id. ¶ 24.) Plaintiff alleges that on or about May 9, 2005, she reported the above-referenced incident in writing to Defendant Chief K.C. Lum and to the Kaua`i County Police Commission. (Id. ¶ 25.) Plaintiff admits in her Response to Defendants First Request for Admissions and Answers to Interrogatories ("Answers to Interrogatories"), however, that she did not personally inform the Police Commission about the incident. (Id. ¶ 26.)

## III.  ARGUMENT

### A.  Standards of Review

#### 1.  Motion for summary judgment

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Moreover, summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court the portions

of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### 2.     **Motion to dismiss**

Dismissal of a claim is appropriate where the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). All allegations of material fact in the complaint are taken as true and are construed in the light most favorable to Plaintiff. Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1306 (9th Cir. 1992). "Nonetheless, conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). A dismissal for failure to state a claim is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Chandler v. McMinnville Sch. Dist., 978 F.2d 524, 527 (9th Cir. 1992).

**B.     Defendants Are Entitled To Summary Judgment On Plaintiff's Federal Claims Because Plaintiff Fails To State a Violation Of The First Amendment As a Matter of Law**

On May 30, 2006, the United States Supreme Court decided <u>Garcetti</u>

<u>v. Ceballos</u>, 126 S.Ct. 1951 (2006).  There, the Supreme Court set forth its

requirement that a public employee must speak in her capacity as a citizen in order

to receive First Amendment protection for her speech.  The Court's

pronouncement of this requirement entitles the Defendants to summary judgment

on Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985 (Counts I and II of the

First Amended Complaint) that are based on a violation of Plaintiff's rights under

the First Amendment.

**1.     Under *Garcetti*, there is no First Amendment protection when public employees make statements pursuant to their official duties**

In <u>Garcetti</u>, the respondent, Richard Ceballos, was a deputy district

attorney for the Los Angeles County District Attorney's Office.  <u>Garcetti</u>, 126

S.Ct. at 1955.  In response to a defense attorney informing him that there were

inaccuracies in an affidavit used to obtain a critical search warrant in a pending

criminal case, Ceballos examined the affidavit, visited the location described, and

determined that the affidavit contained serious misrepresentations.  <u>Id.</u>  After a

discussion with the warrant affiant did not provide satisfactory explanations for the

inaccuracies, Ceballos relayed his findings to his supervisors and prepared a

disposition memorandum that explained his concerns and recommended dismissal of the case. Id. at 1955-56. Ceballos's supervisor decided to proceed with the prosecution despite Ceballos's concerns, pending disposition of the defense attorney's motion to traverse, or challenge, the warrant. Id. at 1956. At the hearing on the motion to traverse, Ceballos testified as to his observations about the affidavit, but the trial court rejected the challenge to the warrant. Id. Ceballos claims that he was subject to retaliatory employment actions as a result of his disposition memorandum recommending dismissal and filed a lawsuit asserting a claim under 42 U.S.C. § 1983. Id.

In evaluating whether Ceballos's memo was speech protected by the First Amendment, the Court presented an overview of its employee-speech jurisprudence. The first inquiry is "whether the employee spoke as a citizen on a matter of public concern." 126 S.Ct. at 1958 (citing Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, 391 U.S. 563, 568 (1968)). "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Id. (citing Connick v. Myers, 461 U.S. 138, 147 (1983)). If the answer is yes, then the possibility of a First Amendment claim arises, and the second inquiry is "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Id.

The Court in <u>Garcetti</u> focused on the "as a citizen" language of the first inquiry and stated its requirement that the public employee speak <u>as a citizen</u> before providing First Amendment protection for the speech. The Ninth Circuit Court of Appeals had determined that Ceballos's memo concerned what he believed to be governmental misconduct and that the memo was thus "inherently a matter of public concern." <u>Garcetti v. Ceballos</u>, 361 F.3d 1168, 1174 (9th Cir. 2004) (citing <u>Blair v. City of Pomona</u>, 223 F.3d 1074, 1079 (9th Cir. 2000); <u>Johnson v. Multnomah County</u>, 48 F.3d 420, 425 (9th Cir. 1995)); <u>see also</u> <u>Garcetti</u>, 126 S.Ct. at 1956. As such, the Court of Appeals held that "Ceballos's allegations of wrongdoing in the memorandum constitute protected speech under the First Amendment." <u>Garcetti</u>, 361 F.3d at 1173. In reversing the Court of Appeals' decision, the Court noted that the Court of Appeals did not consider whether the speech was made in Ceballos's capacity as a citizen.[3] <u>Garcetti</u>, 126 S.Ct. at 1956, 1957.

---

[3] The Court of Appeals stated that the two-step test to determine whether Ceballos's speech was protected under the First Amendment required that:

> (1) we ask whether the speech addresses a matter of public concern, and if it does, (2) we engage in an inquiry, commonly known as the <u>Pickering</u> balancing test, to determine whether Ceballos's interest in expressing himself outweighs the government's interests "in promoting workplace efficiency and avoiding workplace disruption."

<u>Garcetti</u>, 361 F.3d at 1173. The Court of Appeals did not address whether Ceballos's speech was made in his capacity as a citizen.

The "controlling factor" for the Court was that "[Ceballos's] expressions were made pursuant to his duties as a calendar deputy." 126 S.Ct. at 1959-60. The Court reasoned that because Ceballos spoke "as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case," his case was distinguishable from those in which there was First Amendment protection against discipline. Id. at 1960. Accordingly, the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. (emphasis added).

The Court found it persuasive that Ceballos's memo was written pursuant to his official duties. "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen," but rather, "[i]t simply reflects the exercise of employer control over what the employer itself has commissioned or created." 126 S.Ct. at 1960. In determining that Ceballos was not acting as a citizen when he wrote the memo, the Court noted that "Ceballos did not act as a citizen when he went about conducting his daily professional activities, such as supervising attorneys, investigating charges, and preparing filings. In the same

way he did not speak as a citizen by writing a memo that addressed the proper disposition of a pending criminal case." Id.

The Court further cautioned that the contrary rule, which had been adopted by the Court of Appeals would "commit state and federal courts to a new, permanent, and intrusive role, mandating judicial oversight of communications between and among government employees and their superiors in the course of official business."[4]  126 S.Ct. at 1961.

### 2.  Under *Garcetti*, Plaintiff fails to state a violation of her First Amendment rights as a matter of law

Applying Garcetti to the present facts, the Plaintiff's speech was made in her capacity as a police officer employed by KPD, not as a citizen for First Amendment purposes.  Accordingly, there is no violation of Plaintiff's First Amendment rights.

---

[4]  The Court recognized the significant policy considerations for "affording government employers sufficient discretion to manage their operations":

> Employers have heightened interests in controlling speech made by an employee in his or her professional capacity.  Official communications have official consequences, creating a need for substantive consistency and clarity.  Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission.

Garcetti, 126 S.Ct. at 1960.

### a.   It is not dispositive that the subject matter of Plaintiff's speech was alleged governmental misconduct

At the outset, it is important to establish that it is not dispositive that Plaintiff's speech concerned the subject of alleged governmental misconduct. The Court in Garcetti noted that the Court of Appeals determined that Ceballos's memo was "inherently a matter of public concern" because it recited what he believed to be governmental misconduct, and the Court criticized the Court of Appeals for reaching this decision without first specifically determining whether Ceballos wrote his memo in his capacity as a citizen. Garcetti, 126 S.Ct. at 1956.

Therefore, in order to receive First Amendment protection for her speech, Plaintiff must establish that her reports of alleged misconduct were made in her capacity as a citizen.

### b.   Plaintiff's speech relating to Kapua's alleged corruption was made in her capacity as a police officer employed by KPD

Plaintiff's reports regarding Kapua's alleged acceptance of a $6,000.00 payment from C.D. to protect A.B. and C.D. were made in her capacity as a police officer employed by KPD. Kapua's alleged corruption impacted Plaintiff solely because of her investigations of A.B. and C.D. that she conducted as part of her work in the Vice Unit. When she informally reported to her superior officers and supervisors about Kapua's alleged corruption, she did so because she

feared for her safety in the workplace and wanted to know what formal actions she should take.  (CS ¶ 27.)  She was informed that she must make a formal written report of the allegation, and she did so.  (Id. ¶ 28.)  All of Plaintiff's reports were made the normal course of her employment as a law enforcement officer, and not as a citizen.

Plaintiff admits that she reported Kapua's alleged misconduct because she is "a law enforcement officer and duty bound to report possible criminal activities."  (CS ¶ 29 (emphasis added).)  Yet she also claims that she made the reports "as a citizen and resident of Kaua`i" because she was "concerned about persistent allegations of corruption within KPD and wanted to do something about it."  (Id. ¶ 30.)  Any additional motivations she may have had for making the reports, however, do not convert her actions from duties of her employment to speech as a citizen.  In Garcetti, the Court dispelled the notion that dual motivations could change the nature of speech made pursuant to a job duty: "it is immaterial whether [Ceballos] experienced some personal gratification from writing the memo."  Garcetti, 126 S.Ct. at 1960.

Additionally, while Plaintiff asserts that she made the reports because she was concerned about allegations of corruption within KPD, her actions belie this claim.  She states repeatedly in her First Amended Complaint and the Answers to Interrogatories that she feared for her safety (CS ¶ 13) and that she informed her

superiors that she feared for her safety (CS ¶ 15.).  Her sole personal motivation

seems to be fear of her safety in the workplace.  Plaintiff does not allege that she

expressed to her superiors that the matter should be dealt with in order to resolve,

alleviate, or put an end to alleged corruption within KPD.  See Havekost v. United

States Dept. of Navy, 925 F.2d 316, 318 (9th Cir. 1991) ("One critical inquiry is

whether the employee spoke in order to bring wrongdoing to light or merely to

further some purely private interest.")

      Indeed, Plaintiff's suggested corrective actions highlight that her sole

personal concern was her workplace safety.  Specifically, she requested that Kapua

stay away from her, and she spoke with a SHOPO[5] representative and Ihu about

the possibility of temporarily transferring out of the Vice Unit to work a significant

distance away from Kapua.  (CS ¶¶ 16, 31-32.)  Plaintiff also bemoans that KPD

did not have its own policy against workplace violence at that time but was instead

subject to the County of Kaua`i's policy on workplace violence, which Plaintiff

alleges had not been followed.  (Id. ¶ 33.)  Furthermore, Plaintiff lists in her First

Amended Complaint the disciplinary actions that should have been taken against

Kapua by KPD following her reports.  (Id. ¶ 34.)  Plaintiff suggests corrective

action that would assist in her personal complaints against Kapua in the workplace,

---

    [5] SHOPO stands for "State of Hawaii Organization of Police Officers," the
State's police union.

but does not suggest corrective actions that would bring about a department-wide change to alleviate misconduct and promote honesty in the Department.

        To further support that Plaintiff's reports were made entirely to resolve a private workplace grievance, Plaintiff has not alleged that she made any effort to make public her concerns about Kapua's alleged corruption.[6] See Connick, 461 U.S. at 148 (noting that the employee "did not seek to inform the public that the District Attorney's office was not discharging its governmental responsibilities"); Havekost, 925 F.2d at 319 (noting that the employee "made no attempt to reach the general public").  Plaintiff's filing of her Complaint on September 14, 2004, made her allegations regarding Kapua publicly available, but this does not constitute informing the public of alleged governmental misconduct, nor does it make Plaintiff's grievance a matter of public concern.[7]  Moreover, Plaintiff seeks personal recovery for the claims predicated on a violation of her First Amendment Rights, i.e., "general, special, and punitive damages in an

---

    [6] Although the private dissemination of this information is not dispositive, Garcetti, 126 S.Ct. at 1959, Defendants bring this fact to the Court's attention to further support their position that Plaintiff's motivation was to resolve her private personnel dispute related to workplace safety and that she was not speaking as a citizen.
    [7] The Garcetti, Connick, and Havekost courts' observations that the employees did not seek to inform the public were not diminished at all by the fact that the plaintiffs in those cases had filed complaints necessary to initiate their lawsuits.

amount to be proven at trial" and other injunctive relief related to her employment

terms.  (Id. ¶ 35.)

It is noteworthy that in describing her claim under Count I, Plaintiff

bases her claim on reports of "misconduct and violations of the law to her

superiors" and fails to mention that her reports were made in her capacity as a

citizen:

> Abbatiello's actions in reporting misconduct and violations of the law to her superiors constituted her exercise of her constitutionally protected interest in freedom of speech, constitutionally protected by the First Amendment to the Constitution of the United States. This protected speech was on a matter or matters of public concern within the meaning of Rankin v. McPherson, 483 U.S. 378 (1987).[8]  Thus, the speech was constitutionally protected.

1st Am. Compl. ¶ 90, Ex. "A" to CS.  Plaintiff states only that her speech was "on

a matter or matters of public concern" and was thus protected speech.

Accordingly, by her own words, Plaintiff does not even allege in the First

Amended Complaint that she made her reports in her capacity as a citizen.  (CS ¶

36.)  Only later, in the Answers to Interrogatories does Plaintiff mention she made

the reports as a "citizen and resident of Kaua`i," yet she goes no further in

---

[8]  The case cited by Plaintiff, Rankin v. McPherson, 483 U.S. 378 (1987), is factually distinguishable and relates to a workplace comment about assassination of the President of the United States.  Id. at 381-82.  Rankin does not support Plaintiff's claim based on an alleged violation of her First Amendment rights.

explaining how the reports, which she was "duty bound" to make, were not made in the course of her employment. (<u>Id.</u> ¶ 29.)

Recently, the United States Court of Appeals for the Ninth Circuit held that formal and informal complaints about workplace hostility made to superiors by a correctional officer were not protected speech under the First Amendment. <u>Freitag v. Ayers,</u> --- F.3d ----; 2006 WL 3110975, at *12-13 (9th Cir. 2006) (as amended). Freitag, a former correctional officer, alleged that officials from the California Department of Corrections and Pelican Bay State Prison retaliated against her following complaints she made regarding the sexually hostile environment created by prisoners at Pelican Bay. <u>Id.</u> at *1. Following a trial and verdict for Freitag, the defendants appealed. <u>Id.</u> The Ninth Circuit, following <u>Garcetti</u>, determined that

> [t]o the extent that the jury may have considered internal forms prepared by Freitag, it is clear that, under [<u>Garcetti</u>], such activity is <u>not</u> constitutionally protected. For purposes of First Amendment analysis, Freitag submitted those reports pursuant to her official duties as a correctional officer and thus not in her capacity as a citizen.

<u>Id.</u> at *13 (emphasis in original). It is notable that the Ninth Circuit also held that Freitag's reports to officials <u>outside</u> the Department and prison, such as a State Senator and the Office of the Inspector General, were constitutionally protected

speech because making such reports was outside the scope of Freitag's duties.  Id. at *12-13.

Reviewing the allegations and omissions in the First Amended Complaint in their totality, Plaintiff's reports of Kapua's alleged corruption is properly characterized as an employee grievance concerning workplace safety, very similar to the reports made in Freitag.  The Supreme Court has previously stated:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Connick, 461 U.S. at 147 (emphasis added).[9]

Applying Garcetti, Plaintiff's reports related to Kapua's alleged corruption are not protected by the First Amendment.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's § 1983 and § 1985 claims based on

---

[9]  The Supreme Court has further cautioned:
[I]t would indeed be a Pyrrhic victory for the great principles of free expression if the Amendment's safeguarding of a public employee's right, as a citizen, to participate in discussions concerning public affairs were confused with the attempt to constitutionalize the employee grievance that we see presented here.
Connick, 461 U.S. at 154.

any alleged violation of her First Amendment rights arising out of her reports of

Kapua's alleged corruption.

**c.    Plaintiff's speech relating to photographing two naked women after a strip search was made in her capacity as a police officer**

Plaintiff's reports relating to photographing two naked female

arrestees after a strip search were also made in her capacity as a police officer.

Plaintiff's reports were entirely based on her performance of her job duties as a

police officer, including assisting with searches of arrestees by order of a superior

officer.  In her oral and written reports regarding the strip search, Plaintiff

discussed her execution of a search warrant and the scope of the order given to her,

*i.e.*, to photograph the female arrestees naked following the search.  In short,

Plaintiff's reports were exclusively related to her employment.  Accordingly, her

speech "owes its existence to [her] professional responsibilities" and "does not

infringe any liberties the employee might have enjoyed as a private citizen."

Garcetti, 126 S.Ct. at 1960.

Garcetti specifically requires that a public employee speak as a citizen

in order to secure First Amendment protection.  For this reason, Plaintiff's reports

to her superiors regarding this incident are not afforded First Amendment

protection, and Defendants are entitled to summary judgment on Plaintiff's § 1983

151747.1                                    19

and § 1985 claims based on any alleged violation of her First Amendment rights

arising out of her reports regarding the strip search.

### 3.  Defendants are entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim (Count I)

A claim under 42 U.S.C. § 1983 requires:  (1) the defendant acted

under color of law; and (2) the defendant's conduct deprived the plaintiff of a

federally protected right.  See Shah v. County of Los Angeles, 797 F.2d 743, 746

(9th Cir. 1986).  As set forth above, Plaintiff's own allegations demonstrate that

she did not report alleged misconduct as a citizen, and accordingly she fails to state

a claim for violation of her First Amendment rights under Garcetti.  Therefore,

Defendants are entitled to summary judgment on Plaintiff's § 1983 claim based on

such alleged constitutional violations.  Moreover, Plaintiff has not asserted a

deprivation of her rights under any other constitutional provision or federal law.

### 4.  Defendants are entitled to summary judgment on Plaintiff's 42 U.S.C. § 1985 claim (Count II)

Plaintiff titles Count II "Conspiracy to Violate Civil Rights" and cites

42 U.S.C. § 1985.  It appears, then, that Plaintiff alleges a claim under subsection

1985(3).  "[T]he absence of a section 1983 deprivation of rights precludes a section

1985 conspiracy claim predicated on the same allegations."  Caldeira v. County of

Kaua`i, 866 F.2d 1175, 1182 (9th Cir. 1989).  Thus, if this Court grants summary

judgment on Plaintiff's § 1983 claim, then Defendants are entitled to summary judgment on Plaintiff's § 1985 claim.

Even if this Court declines to grant summary judgment on Plaintiff's § 1983 claim, Defendants are entitled to summary judgment because Plaintiff never alleges "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." United Bhd. of Carpenters v. Scott, 463 U.S. 825, 834 (1983).

**C.    Defendants Are Entitled To Qualified Immunity Because the Law Governing Defendants' Actions Was Not Clearly Established At the Time of the Alleged Retaliation**

Even if Plaintiff's speech were protected under the First Amendment, Defendants are entitled to summary judgment on Counts I and II of the First Amended Complaint because, under Harlow v. Fitzgerald, 457 U.S. 800 (1982), and its progeny, they are qualifiedly immune to Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985.

The Supreme Court in Harlow held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818. The test for qualified immunity requires a two-part analysis: "(1) whether the law governing the official's conduct was clearly established, and (2) whether,

given this clearly established standard, a reasonable official could believe that his

or her conduct was lawful." <u>Biggs v. Best, Best & Krieger</u>, 189 F.3d 989, 994 (9th

Cir. 1999). The right must be clearly established "at the time an action occurred."

<u>Harlow</u>, 457 U.S. at 818. <u>Plaintiff bears the burden of proof</u> regarding whether a

right is clearly established. <u>Romero v. Kitsap County</u>, 931 F.2d 624, 627 (9th Cir.

1991). Moreover, qualified immunity is <u>presumed</u>. <u>See Malley v. Briggs</u>, 475

U.S. 335, 341 (1986) ("[I]f officers of reasonable competence could disagree on

th[e] issue, immunity should be recognized.").

> In order for a right to be clearly established:
>
> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

<u>Gilbrook v. City of Westminster</u>, 177 F.3d 839, 865 (9th Cir.1999) (quoting

<u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). At the outset, if actions taken

by Defendants do not violate Plaintiff's constitutional rights under the First

Amendment, then the Court need not undertake the qualified immunity analysis.

<u>See</u> <u>Sacier v. Katz</u>, 533 U.S. 194, 201 (2001) ("If no constitutional right would

have been violated were the allegations established, there is no necessity for further

inquiries concerning qualified immunity.") However, even if questions remain to

this extent, the law governing Defendants' actions was not clearly established at the time of the alleged retaliation.

The first alleged retaliation occurred on or about April 2, 2004, when Plaintiff was transferred out of the Vice Unit to the Patrol Services Bureau. (CS ¶ 37.) The final act of alleged retaliation occurred on or about May 25, 2005, when Plaintiff was removed from her position as Field Training Officer.[10] (Id. ¶ 38.) During the relevant period of time, two Supreme Court cases controlled the issue of what types of employee speech are constitutionally protected: Pickering and Connick. Although Garcetti was not decided until May 30, 2006, the Court in Garcetti based its decision on the principles already set forth in Pickering and Connick. Garcetti, 126 S.Ct. at 1957-58. Specifically, Pickering and Connick required courts to balance the interests of a citizen commenting on matters of public concern, and an employer in promoting the efficiency of the public services it performs. Id.

Even though the speech in Pickering was held to be constitutionally protected, Pickering is factually distinguishable from this case.[11] In Pickering, a teacher wrote a letter to a local newspaper about the school board's handling of

---

[10] Plaintiff also alleges that she was retaliated against by being refused overtime work in the cellblock. (CS ¶ 39.) However, Plaintiff has not given a date as to when this alleged retaliation occurred.

[11] The Court in Connick held that the plaintiff's speech was not constitutionally protected because it was most accurately characterized as an employee grievance. 461 U.S. at 154.

funding issues, and was subsequently fired. 391 U.S. at 564. The Supreme Court

held that the letter's contents were not only a matter of public concern, but that the

teacher's employment was only "tangentially and insubstantially involved in the

subject matter of the public communication" and so he was speaking "as [a]

member of the general public." Id. at 571, 574. Here, Plaintiff's speech was made

to her superiors about matters of her employment and her association with fellow

officers. Pickering's constitutionally protected speech bears no resemblance to

Plaintiff's reports to her superiors of alleged police misconduct and improper

procedure.

Under the Supreme Court authority relevant and controlling at the

time of the alleged retaliation, the law governing Defendants' actions was not

clearly established. Therefore, should the Court question whether Plaintiff's

speech was constitutionally protected, Defendants would still be entitled to

qualified immunity.

**D.** **In The Alternative, Defendants Are Entitled To Dismissal of Plaintiff's Federal Claims (Counts I and II) Because Plaintiff Fails To State a Violation Of The First Amendment As a Matter of Law**

In the alternative, Defendants are entitled to dismissal of Plaintiff's

claims under 42 U.S.C. §§ 1983 and 1985 (Counts I and II of the First Amended

Complaint) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As

set forth above and based entirely on the allegations contained in the First

<u>Amended Complaint</u>, Plaintiff has not alleged any facts to show – and has failed to

even allege – that she reported alleged misconduct within KPD in her capacity as a

citizen.  Rather, the First Amended Complaint shows that Plaintiff's reports to her

superiors dealt entirely with private employment matters.  Following the Supreme

Court's articulation of the requirement that First Amendment protection of a public

employee's speech requires that the employee speak in her capacity as a citizen,

<u>Garcetti</u>, 126 S.Ct. at 1960, Plaintiff fails to state a violation of her First

Amendment rights.  As such, Plaintiff also fails to state claims under 42 U.S.C. §§

1983 and 1985 based on the allegations contained in the First Amended Complaint.

Accordingly, Defendants are entitled to dismissal of Counts I and II of

the First Amended Complaint.

**E.**     **Defendants Are Entitled To Dismissal of Plaintiff's State Law Claims for Negligence, Counts V and VII, Because Plaintiff is Barred From Suing a Fellow Employee for Negligence Under Hawai`i's Workers' Compensation Act**

An employee may not sue an employer or a fellow employee for an

injury received on the job allegedly caused by negligence.  Hawai`i's Workers'

Compensation Act ("WCA") provides:

> The rights and remedies herein granted to an employee or
> the employee's dependents on account of a work injury
> suffered by the employee <u>shall exclude all other liability
> of the employer to the employee</u>, the employee's legal
> representative, spouse, dependents, next of kin, or anyone
> else entitled to recover damages from the employer, at
> common law or otherwise, on account of the injury,

> except for sexual harassment or sexual assault and
> infliction of emotional distress or invasion of privacy
> related thereto, in which case a civil action may also be
> brought.

Hawai`i Revised Statute ("H.R.S.") § 386-5 (emphasis added). The Hawai`i

Supreme Court has held that H.R.S. § 386-5 precludes all negligence claims

against an employer for a work injury suffered by an employee. <u>Estate of Coates</u>

<u>v. Pacific Engineering</u>, 71 Haw. 358, 360 (1990). Further, the WCA mandates that

fellow employees may only be liable for intentional injuries:

> Another employee of the same employer shall not be
> relieved of his liability as a third party, <u>if the personal
> injury is caused by his willful and wanton misconduct.</u>

H.R.S. § 386-8 (emphasis added). Negligence actions, therefore, are also

precluded as against fellow employees. Indeed, this Court has held that a plaintiff

could not maintain an action against a fellow employee for negligent infliction of

emotional distress under the WCA. <u>Ellison v. Northwest Airlines</u>, 938 F.Supp.

1503, 1515 (D. Haw. 1996).

Plaintiff brings two negligence claims against Defendants—employer

negligence in supervision/retention of employee (Count V) and negligent infliction

of emotional distress (Count VII). Negligent actions, by definition, can not willful

and wanton,[12] and therefore cannot be exceptions to the WCA's exclusivity

---

[12] <u>Black's Law Dictionary</u> (8th ed. 2004) defines "negligence" as

provision. As to negligence, Plaintiff's remedies are found <u>exclusively</u> within the WCA. As such, Plaintiff is precluded from bringing Counts V and VII, and we respectfully ask that they be dismissed.

### F.    <u>The Defendants Request That This Court Decline Federal Jurisdiction Over the Remaining State Claims</u>

Following this Court's grant of summary judgment on, or in the alternative dismissal of, Counts I and II of the First Amended Complaint, the only remaining claims are Plaintiff's state claims: violation of the Whistleblower's Protection Act (Count III), wrongful termination in violation of public policy (Count IV), negligence in supervision/retention of employee (Count V), intentional and negligent infliction of emotional distress (Counts VI and VII), and violation of the state constitution (Count VIII). Should the Court dismiss Counts V and VII as being precluded under the WCA, only Counts III, IV, VI and VIII remain. Defendants request that this Court decline federal jurisdiction over the remaining state claims.

---

[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation; any conduct that falls below the legal standard established to protect others against unreasonable risk of harm, <u>except for conduct that is intentionally, wantonly, or willfully disregardful of others' rights</u>.

(emphasis added).

## IV.   <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that this Honorable Court grant summary judgment on, or in the alternative dismissal of, Counts I and II of the First Amended Complaint.  Additionally, Defendants respectfully request that this Court grant dismissal of Counts V and VII of the First Amended Complaint.  The Defendants further request that this Court decline federal jurisdiction over the remaining state claims.

DATED:  Honolulu, Hawai`i, December 12, 2006.


/s/ David J. Minkin
DAVID J. MINKIN
BECKY T. CHESTNUT
KARA M.L. YOUNG

Attorneys for Defendants
COUNTY OF KAUA`I, KAUA`I POLICE
DEPARTMENT, WILFRED M. IHU,
GORDON ISODA, and DEAN PIGAO