indicated he was concerned about the investigations. See SCSF No. 11.

To date, the criminal investigation is ongoing. See SCSF No. 12. The administrative investigation was concluded in 2004, and the allegations against Defendant Kapua were unsubstantiated. See SCSF No. 13. As such, to date, no discipline against Defendant Kapua based on Plaintiff's report of possible criminal activity is warranted.

    c.    There is no evidence of retaliatory employment action taken against Plaintiff.

Plaintiff alleges she was removed from her position as a Field Training Officer ("FTO") in retaliation for her reports of misconduct and illegal action within KPD. See FAC at ¶93. As a preliminary matter, assuming *arguendo* that she was wrongfully removed from the FTO position, such action would not be a constitutional violation against Plaintiff. More importantly, Plaintiff's *temporary* removal from her position as a FTO was based on her lack of the required training, specifically she was not qualified to conduct the Standardized Field Sobriety Test ("SFST") or supervise the probationary Police Services Officer assigned to her while administering the SFST. See SCSF No. 14. Further evidence that such temporary removal was not in retaliation to Plaintiff was the fact that another officer, along with Plaintiff, was temporarily removed from the FTO position for

- 20 -

lack of required training as well. See SCSF No. 15. Lastly, Plaintiff completed the necessary training in May, 2006, was reinstated to the FTO position, and is slated to be one of the primary FTOs for the officers who graduated in June, 2006. See SCSF No. 16.

Plaintiff also alleges that her requested transfer out of Vice, as a PO-9, to Waimea Patrol Services Bureau, as a PO-7, was "punishment for have reported Sergeant Kapua." See SCSF No. 17. As a preliminary matter, an employee's <u>requested</u> movement within its employer's company is not a constitutional violation. More importantly, <u>it was Plaintiff who requested the very transfer</u> that she is now alleging was wrongful. See SCSF No. 17. Plaintiff's claim that she was not aware that there would be a reduction in her pay when she moved from Vice back to patrol is highly questionable as she has been employed with KPD since 1989 and has surely been transferred a number of times throughout the course of her employment with KPD. See SCSF No. 18. Furthermore, when an officer moves from a specialized position such as Vice (PO-9) to a nonspecialized position such as patrol (PO-7) there is a cut in pay. See SCSF No. 19. Plaintiff cannot in good faith claim that she did not know that she would take a cut in pay when she transferred from Vice, a specialized position, to patrol, a nonspecialized position.

    d.    <u>The drafting of a proposed strip and body cavity search policy did not result in any violation of Plaintiff's rights, nor was it done in retaliation against Plaintiff.</u>

Plaintiff claims Defendant Lum drafted and backdated a strip search policy to cover up Plaintiff's complaints, she further claims that such draft policy was made in retaliation against her for reporting misconduct within KPD. <u>See</u> FAC at ¶¶69-75. Plaintiff's claims are completely baseless. First, there is no evidence that the proposed strip search policy was drafted by Defendant Lum. In fact, KPD Lieutenant Paul Kanoho, whose duties include reviewing and developing policies and procedures, testified that the draft strip search policy was given to him by Fred DeBusca, Commander of the Investigative Services Bureau, and that he circulated it to the bureau commanders and the deputy chief, and eventually it was circulated to Defendant Lum. <u>See</u> SCSF No. 20. A meeting was held about the draft policy and Defendant Lum asked that it be sent to the County Attorney for review. <u>See</u> SCSF No. 21. The draft policy was in fact sent to the County Attorney for review. <u>See</u> SCSF No. 21. As of November, 2006, the draft policy was not adopted as a general order, and thus is not an official KPD written policy. <u>See</u> SCSF No. 22.

- 22 -

D.  PLAINTIFF'S CLAIMS ARISING UNDER SECTION 378-61, HAWAII REVISED STATUTES, AS AMENDED, MUST FAIL AS A MATTER OF LAW

Section 378-61 of the Hawaii Revised Statutes, as amended, ("HRS") sets forth the following:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
>
> (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or
>
> . . .

Haw. Rev. Stat. § 378-62.

The record in this case demonstrates that Plaintiff was never discharged from her employment with KPD. The record also is void of any evidence which even suggests that she was ever threatened in any way by her employer and/or Defendant Lum during his tenure as Chief of Police. Finally, the record does not support any kind of a finding that Plaintiff was ever discriminated against with regard to her compensation, terms,

conditions, location, or privilege of employment based on her complaints regarding Officer Kapua.

Although it is anticipated Plaintiff will assert that she did in fact experience discrimination as her pay was reduced when she transferred out of the Vice Division back to the Patrol Division, the record is absolutely clear that this transfer was effectuated at her request. See SCSF No. 17. Also, as previously discussed, it is anticipated Plaintiff will assert that her removal as an FTO was effectuated in a retaliatory manner. Again, as discussed above, Plaintiff's removal as an FTO was temporary in nature and resulted primarily due to the fact that she had not been qualified to conduct SFSTs. See SCSF Nos. 14-16.

Given the above facts, Plaintiff's claims arising under HRS Section 378-61, must also fail as a matter of law.

E. COUNT IV OF THE FIRST AMENDED COMPLAINT, WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY, SHOULD BE DISMISSED AS PLAINTIFF HAS NOT BEEN TERMINATED FROM HER EMPLOYMENT WITH THE KAUAI POLICE DEPARTMENT

Plaintiff's claim for wrongful termination against Defendant Lum for wrongful termination has no basis as Plaintiff's employment with Kauai Police Department was never terminated. See SCSF No. 23. It is anticipated Plaintiff will argue that an alleged transfer and demotion is the basis for Count IV. However, an alleged transfer and demotion cannot support

Plaintiff's wrongful termination cause of action when Plaintiff was never terminated by the Kauai Police Department. The case cited by Plaintiff in the FAC (at paragraph 116), <u>Parnar v. Americana Hotels, Inc</u>., 65 Haw. 370, 652 P.2d 625 (Haw. 1982), in support of her wrongful termination allegation involved the actual termination of an employee, and did not involve an alleged transfer and/or demotion. As such, Plaintiff's cause of action for wrongful termination cannot survive summary judgment when she has not been terminated from her employment with Kauai Police Department.

    F.    CHAPTER 386 OF THE HAWAII REVISED STATUTES PRECLUDES PLAINTIFF'S NEGLIGENCE CLAIMS (COUNTS V AND VII) AGAINST DEFENDANT LUM

Plaintiff is precluded from bringing any negligence cause of actions against Defendants pursuant to the exclusive remedy provision found in HRS Chapter 386.

HRS section 386-5, states the following with respect to recovery of compensation:

> The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury. . . .

Haw. Rev. Stat. § 386-5.

HRS section 386-8 makes an exception to HRS section 386-5 and provides that "[a]nother employee of the same employer shall not be relieved of his [or her] liability as a third party, if the personal injury is caused by his willful and wanton misconduct." Haw. Rev. Stat. § 386-8.

In Iddings v. Mee-Lee, 82 Haw. 1 (Haw. 1996), the Hawaii Supreme Court, in citing to Section 386-8 recognized the viability of claims against co-employees, but limited said claims to situations in which co-employees have acted willfully and wantonly in bringing about the harm to their co-employee. In Iddings, the Court allowed plaintiff nurse to maintain her action against her supervisor by holding that, pursuant to HRS section 386-8, suits between co-employees based on willful and wanton misconduct did not contravene or undermine the purpose of co-employee immunity in Hawaii's workers' compensation scheme, or the purposes underlying workers' compensation in general. However, in allowing said claim to proceed, the Court stated that "claims based on willful and wanton misconduct must be proven by clear and convincing evidence." Iddings, 82 Haw. at 14 (emphasis added).

In Iddings, the Court, in adopting a test set forth in Thompson v. Bohlken, 312 N.W.2d 501 (Iowa 1981), stated the following:

- 26 -

> We agree with the Iowa court's analyses and adopt the three-part test first enunciated in Thompson in aid of our interpretation of HRS § 386-8. [T]he term 'willful and wanton misconduct,' as used in HRS § 368-8, includes conduct that is either: (1) motivated by an actual intent to cause injury; or (2) committed in circumstances indicating that the injuring employee (a) has knowledge of the peril to be apprehended, (b) has knowledge that the injury is a probable, as opposed to possible, result of the danger, and (c) consciously fails to avoid the peril.

Iddings, 82 Haw. at 12.

Plaintiff's negligence causes of action fail for two reasons. First, negligent conduct excludes willful and/or wanton conduct.[3] Second, Plaintiff will not be able to provide any clear and convincing evidence of any willful, wanton, callous and/or reckless misconduct on the part of the Defendant Lum with respect to Plaintiff's allegations. As such, HRS Chapter 386

---

[3] See U.S. v. Simons, 107 F.Supp.2d 703, 705 (E.D. Va. 2000), affirmed, 5 Fed.Appx. 332 (4th Cir. 2001), cert denied, 534 U.S. 930, 122 S.Ct. 292 (2001), which states:

> [I]t is well-settled that the word "willfulness" denotes an act which is intentional, deliberate or voluntary, as distinguished from an action which is accidental or negligent.
> . . .
> It is clear that mere negligence does not rise to the level of being a willful violation. [T]his case involved an accident, or negligence, which the plain definition of "willful" excludes from its meaning.

precludes Plaintiff's negligence causes of action against Defendant Lum.

    G.    COUNT VI OF THE FIRST AMENDED COMPLAINT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, SHOULD BE DISMISSED AS THERE IS NO EVIDENCE TO SUPPORT SUCH CLAIM

Plaintiff has produced no evidence of a recognized claim for Intentional Infliction of Emotional Distress. In order to recover for Intentional Infliction of Emotional Distress the act complained of must be "outrageous," as defined in the Restatement (Second) of Torts § 46 (1965) which states "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Tseu ex rel. Hobbs v. Jeyte, 88 Haw. 85, 962 P.2d 344, 352 (Haw. 1998) (quoting Restatement (Second) of Torts § 46 comment d). As discussed above, Plaintiff's extensive discovery efforts have failed to produce such outrageous acts on the part of Defendant Lum.

    H.    THERE IS NO CLEAR AND CONVINCING EVIDENCE OF WILLFUL, WANTON OR OPPRESSIVE CONDUCT ON THE PART OF DEFENDANT LUM

The Hawaii Supreme Court has addressed the issue of the appropriateness of awarding punitive damages in Masaki v. General Motors Corporation, 71 Haw. 1, 780 P.2d 566 (Haw. 1989). In

Masaki, the Hawaii Supreme Court defined punitive or exemplary damages as follows:

> [T]hose damages assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future.
>
> . . .
>
> Since the purpose of punitive damages is not compensation of the plaintiff but rather punishment and deterrence, such damages are awarded only when the egregious nature of the defendant's conduct makes such a remedy appropriate.

Masaki, 71 Haw. at 6.

In setting forth the test for an award of punitive damages, the Hawaii Supreme Court, by citing to Bright v. Quinn, 20 Haw. 504 (Haw. 1911), has established the following standard:

> Accordingly, for all punitive damage claims we adopt the <u>clear and convincing</u> standard of proof. The plaintiff must prove by clear and convincing evidence that the defendant has acted <u>wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences</u>.

Bright, 71 Haw. at 16 (emphasis added); Kang v. Harrington, 59 Haw. 652, 660-661, 587 P.2d 285, 291 (Haw. 1978). See also, Hawaii Civil Jury Instruction nos. 8.12, 8.13, 8.14, and 8.15, 1999 edition, "[a]n act is 'wanton' when it is reckless,

heedless, or characterized by extreme foolhardiness, or callous disregard of, or callous indifference to, the rights or safety of others."

The record in this case simply does not support a finding of willful, wanton or oppressive conduct on the part of Defendant Lum. If anything, the record demonstrates that Defendant Lum was either not the Chief of Police at the time of Plaintiff's alleged complaints, or that Defendant Lum had in fact addressed the issues raised by Plaintiff with regard to her complaints, etc.

In any event, given the lack of clear and convincing evidence against Defendant Lum, Plaintiff's punitive damages claim against him must also fail as a matter of law.

V.  CONCLUSION

Based on the foregoing, as well as the record and file herein, Defendant Lum respectfully requests that this Honorable Court grant his Motion for Summary Judgment on all claims brought against him in the above-referenced case.

DATED: Honolulu, Hawaii, January 4, 2007.

/s/ Cary T. Tanaka
CARY T. TANAKA
DIANE K. AGOR-OTAKE
Attorneys for Defendant
K.C. LUM