Page 1

1              IN THE UNITED STATES DISTRICT COURT

2                      STATE OF HAWAII

3

4    DARLA ABBATIELLO,              ) CIVIL NO. CV04 00562 SOM BMK

5              Plaintiff,           )

6         vs.                       )

7    COUNTY OF KAUAI; KAUAI POLICE  )

8    DEPARTMENT; K.C. LUM,          )

9    WILFRED M. IHU; GORDON ISODA;  ) Trial Date:   May 8, 2007

10   DEAN PIGAO; IRVIL KAPUA,       ) Time:         9:00 a.m.

11             Defendants.          ) Trial Judge:  Susan O.

12                                  )              Mollway

13

14                 DEPOSITION OF K.C. LUM

15   Taken on behalf of PLAINTIFF DARLA ABBATIELLO, at the offices of

16   Ralph Rosenberg Court Reporters, Inc., Lihu`e Plantation Bldg.,

17   2970 Kele Street, Ste. 207, Lihu`e, Hawai`i 96766, commencing at

18   10:17 a.m., on Thursday, October 12, 2006, pursuant to third

19   amended notice.

20

21   BEFORE:   JOY C. TAHARA, RPR, CSR 408

22             Notary Public, State of Hawai`i

23

24

25

RECEIVED
OCT 2 3 2006

## Page 2

```
 1   A P P E A R A N C E S
 2
 3   FOR PLAINTIFF      DANIEL G. HEMPEY, ESQ.
     DARLA ABBATIELLO:   Law Office of Daniel G.
 4                      Hempey
                        3175 Elua Street
 5                      Lihu`e, Hawai`i 96766
                        Tel. (808) 823-0000
 6                      Fax. (808) 632-2332
                        hemplaw@hawaii.rr.com
 7
                        JOHN HOSHIBATA, ESQ.
 8                      Bronster Crabtree & Hoshibata
                        2300 Pauahi Tower
 9                      1001 Bishop Street
                        Honolulu, Hawai`i 96813
10                      Tel. (808) 524-5644
                        Fax. (808) 599-1881
11                      jhoshibata@bchlaw.net
12   FOR DEFENDANTS COUNTY OF   CHRISTIANE L. NAKEA-TRESLER,
     KAUAI; KAUAI POLICE       ESQ.
13   DEPARTMENT:       Office of the County Attorney
                        4444 Rice Street
14                      Suite 220
                        Lihu`e, Hawai`i 96766
15                      cntresler@kauai.gov
16   FOR DEFENDANT AND THIRD-PARTY  CARY T. TANAKA, ESQ.
     PLAINTIFF K.C. LUM:   Law Offices of Cary Tanaka
17                      Fort Street Tower, Suite 510
                        745 Fort Street
18                      Honolulu, Hawai`i 96813
                        carytanaka@aol.com
19
                        ALFRED B. CASTILLO, ESQ.
20                      3144 Elua Street
                        Lihu`e, Hawai`i 96766
21                      Alcastillo_law@yahoo.com
22   FOR DEFENDANTS WILFRED M.   DAVID J. MINKIN, ESQ.
     IHU, GORDON ISODA, and DEAN  McCorriston Miller Mukai
23   PIGAO:            MacKinnon LLP
                        Five Waterfront Plaza,
24                      4th Floor
                        500 Ala Moana Blvd.
25                      Honolulu, Hawai`i 96813
                        minkin@m4law.com
```

## Page 3

```
 1   A P P E A R A N C E S
                (Continued)
 2
 3
     FOR DEFENDANT IRVIL KAPUA:   MICHAEL J. McGUIGAN, ESQ.
 4                      Reinwald O'Connor & Playdon
                        LLP
 5                      Pacific Guardian Tower, Makai
                        Tower
 6                      733 Bishop Street, Suite 2400
                        Honolulu Hawai`i 96813
 7                      Mjm@roplaw.com
 8
     Also present:   MR. GORDON ISODA
 9                   MR. WILFRED IHU
                     MR. DEAN PIGAO
10
11   NOTE: All individuals present on Kaua`i -- EXCEPT for the
     following who were present via land line: John Hoshibata, David
12   Minkin, and Michael McGuigan
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 4

```
 1              I N D E X
 2   EXAMINATION                         PAGE
 3      MR. HEMPEY                        5
 4
 5           E X H I B I T S
     NO.   DESCRIPTION                   PAGE
 6
 7   1    Hawai`i Police Department -- Strip and   5
          Body Cavity Searches. General Order
 8        No. 603
 9   2    General Order, Date If Issue March 25,   5
          2005
10   3    Letter, 9/14/04, to Lum, from Abbatiello,   5
          re stolen gun
11
12   4    Payroll Certification documents        5
13   5    List of Purged Record re Irvil Kapua   5
14   6    Performance Documentation Report and other   5
          documents
15   7    List of Purged Record re King-Chi Lum   5
16   8    County of Kaua`i No. 001111, re Kaua`i   5
          Police Department internal investigation
17
18   9    Memo, 9/18/05, to Lum from Abbatiello re   5
          sobriety test training
19   10   Various documents                5
20
21   11   Fifth Amendment Privilege statement     10
22
23
24
25
```

## Page 5

```
 1              Deposition Exhibits 1-10 were
 2        marked for identification.
 3        MR. HEMPEY: This is Dan Hempey speaking. I'm one of
 4   the attorneys for Darla Abbatiello. My address is 3175 Elua
 5   Street, Suite C, Lihu`e, 96766. Today is October 12th; it's
 6   10:15 in the morning, and we're starting the deposition of
 7   K.C. Lum here. May I ask first that the reporter place the
 8   witness under oath.
 9              K.C. LUM,
10   called as a witness by PLAINTIFF DARLA ABBATIELLO, being first
11   duly sworn, was examined and testified as follows:
12              EXAMINATION
13   BY MR. HEMPEY:
14      Q.  Good morning, Mr. Lum.
15      A.  Good morning.
16      Q.  Have you had your deposition taken before?
17      A.  Yes, I have.
18      Q.  Are you basically familiar with the ground rules?
19      A.  Basically, yes.
20      Q.  Let me go over them again with you just very briefly
21   then. Basically, I understand there may be answers that just
22   invoke the Fifth Amendment today. But to the extent that you do
23   answer questions substantively, I would ask that you only answer
24   if you understand the question. If you don't understand the
25   question in any way or you need some clarification, don't guess.
```

RALPH ROSENBERG COURT REPORTERS, INC.
Honolulu, Hawaii (808) 524-2090

RECEIVED

OCT 20 2006

Page 6

1  Just ask me to clarify before you answer the question.
2      Another thing I need to tell you is it has been
3  represented to me by your lawyers that you're going to be
4  exercising your Fifth Amendment Privilege against
5  Self-Incrimination today. And I want to make it clear that we
6  are intending to use this deposition as trial testimony should
7  this case get to trial. And the fact that you plead the Fifth
8  may be used and it may come in at the trial.
9      Also I want to warn you and advise you that to the
10 extent you do take the Fifth today, that action could affect the
11 case at trial. For example, plaintiff Darla Abbatiello, through
12 her attorneys, might ask the court to preclude you from
13 testifying at trial on matters in which you assert the Fifth
14 Amendment today because, of course, we'd be unable to find out
15 what you would say before trial; or your testimony could be
16 limited at trial in some other way.
17     So do you understand the, I guess, warning that I just
18 gave to you?
19    A. Yes.
20     MR. CASTILLO: Mr. Hempey, may I cut in a little bit.
21 This is Alfred Castillo, attorney for Mr. Lum, representing him
22 in any criminal matters that may occur in the present
23 investigation with the attorney general's office for alleged
24 criminal activity.
25     I have advised Mr. Lum, because the investigation

Page 7

1  involves the Kauai Police Department and his capacity as the
2  police chief with the Kaua`i Police Department, that any matters
3  involving the Kaua`i Police Department, he should invoke his
4  Fifth Amendment right to remain silent. After the investigation
5  is completed by the attorney general's office, then Mr. Lum will
6  be made available for any deposition at that time. That's all.
7      Q. (By Mr. Hempey) This is Dan Hempey again. So what I
8  intend to do is ask a couple very basic questions at the
9  beginning, and then I'll represent to David and Mike and John on
10 the phone that while we were waiting for this deposition to get
11 started, I handed Mr. Lum a stack of ten exhibits, and they're
12 marked Plaintiff's Exhibit 1 through 10. I believe he's had a
13 chance to review them. We'll be going over those. The exhibits
14 are grouped; they're grouped by subject matter.
15     So anyway, with that being said, would you please
16 state your full name for the record.
17    A. King-Chi Lum.
18    Q. When were you born?
19    A. January 17, 1949.
20    Q. Could you briefly describe your education background.
21    A. I was educated in Hong Kong, China, when I was young;
22 went to Japan, started to learn English. From Japan, I migrated
23 to Arkansas where I started junior high school and also went
24 down to Oklahoma where I finished my high school. I went to the
25 University of Oklahoma where I started college and ended at UH

Page 8

1  West O`ahu College about 1983.
2      Q. How old are you?
3      A. Right now I'm 57.
4      Q. Are you or have you ever been employed by the Kaua`i
5  Police Department?
6      A. Yes.
7      Q. At some point, did you become the chief of police at
8  the Kaua`i Police Department?
9      A. Yes.
10     Q. When was that?
11     A. Due to the current investigation that is being
12 conducted by the State of Hawai`i, I hereby decline to answer
13 that question and assert my Fifth Amendment Privilege against
14 Self-Incrimination, as my answer to this question could be used,
15 or could lead to evidence that could be used, against me.
16     MR. HEMPEY: Gentlemen and gentlewoman for the record,
17 counsel that are present here at the deposition have already
18 agreed to stipulate, and I would ask counsel on the phone if
19 they would stipulate, that from now on when Mr. Lum says the
20 words "plead the Fifth" or "I plead the Fifth," we can stipulate
21 that the statement that he just read from a card beginning with
22 the words, "Due to the current investigation," and ending with
23 the words, "words used against me," that we can all agree, that
24 we also agree and stipulate that when he says, "I plead the
25 Fifth," or simply "plead the Fifth," that the court reporter can

Page 9

1  enter his response as he just read it in response to the last
2  question.
3      Mr. Minkin, is that okay?
4      MR. MINKIN: Fine.
5      MR. HEMPEY: Mr. McGuigan?
6      MR. McGUIGAN: That's fine.
7      MR. TANAKA: And that's fine with the rest of us here
8  as well.
9      MR. HEMPEY: Mr. Castillo --
10     MR. CASTILLO: Yes.
11     MS. NAKEA-TRESLER: Yes.
12     MR. HOSHIBATA: Dan, this is John Hoshibata. Will you
13 just go through that card again so that I can understand the
14 full statement of Mr. Lum?
15     MR. HEMPEY: What I'll do is I'll go ahead and ask the
16 next question, and then ask him to read the card again, and then
17 after we'll let the stipulation apply. Is that okay?
18     MR. HOSHIBATA: That's fine.
19     MR. MINKIN: My recommendation would be that the card
20 be photocopied and attached as an exhibit.
21     MR. TANAKA: That's fine.
22     MR. HEMPEY: Everybody at the table here in Lihu`e is
23 nodding affirmatively in agreement with that, David, so --
24     MR. TANAKA: We have an extra copy we'll attach as
25 Exhibit 1.

3 (Pages 6 to 9)

Page 10

1      (Note: Plaintiff's counsel previously marked
2  documents Exhibit 1 through 10. The Fifth Amendment statement
3  will be Exhibit 11.)
4                    Deposition Exhibit 11 was
5                    marked for identification.
6      MR. MINKIN: Also for the record -- I realize that
7  John is here in Honolulu and Mike and I are -- but there is
8  counsel for Ms. Abbatiello in Lihu`e conducting the deposition.
9  So to move things along, if we can do that, John, and you hold
10 off and let Dan handle it in Lihu`e, that would be appreciated.
11     MR. HOSHIBATA: Dan is the attorney in Lihu`e. I just
12 wanted to clarify what was being read; and if we're going to
13 stipulate to that, then I just want that courtesy.
14     Q. (By Mr. Hempey) So my next question is, before you
15 became police chief, were you at some point the acting police
16 chief? We're going to do the full one this time.
17     A. Due to the current investigation that is being
18 conducted by the State of Hawai`i, I hereby decline to answer
19 that question and assert my Fifth Amendment Privilege against
20 Self-Incrimination, as any answer to this question could be
21 used, or could lead to evidence that could be used, against me.
22     Q. Do you know Darla Abbatiello?
23     A. Due to a current investigation that is being conducted
24 by the State of Hawaii, I hereby decline to answer that question
25 and assert my Fifth Amendment Privilege Against

Page 11

1  Self-Incrimination as any answer to this question could be used,
2  or could lead to evidence that could be used, against me.
3      Q. Do you know Irvil Kapua?
4      A. Due to a current investigation that is being conducted
5  by the State of Hawaii, I hereby decline to answer that question
6  and assert my Fifth Amendment Privilege Against
7  Self-Incrimination as any answer to this question could be used,
8  or could lead to evidence that could be used, against me.
9      Q. Are you aware or were you aware while you were --
10 strike that. Were you aware while you were employed at the
11 Kaua`i Police Department, that Irvil Kapua took the Fifth
12 Amendment in his deposition in this case?
13     A. Due to a current investigation that is being conducted
14 by the State of Hawaii, I hereby decline to answer that question
15 and assert my Fifth Amendment Privilege Against
16 Self-Incrimination as any answer to this question could be used,
17 or could lead to evidence that could be used, against me.
18     Q. Were you chief of police at the time that you learned
19 that Irvil Kapua took the Fifth Amendment in his deposition In
20 this case?
21     A. Due to a current investigation that is being conducted
22 by the State of Hawaii, I hereby decline to answer that question
23 and assert my Fifth Amendment Privilege Against
24 Self-Incrimination as any answer to this question could be used,
25 or could lead to evidence that could be used, against me.

Page 12

1      Q. On June 23, 2004, were you acting chief of police at
2  the Kaua`i Police Department?
3      A. Due to a current investigation that is being conducted
4  by the State of Hawaii, I hereby decline to answer that question
5  and assert my Fifth Amendment Privilege Against
6  Self-Incrimination as any answer to this question could be used,
7  or could lead to evidence that could be used, against me.
8      Q. I'm going to shift gears briefly right now and just
9  get the documents out of the way. Mr. Lum, I handed you before
10 the deposition a stack of documents labeled Plaintiff's
11 Exhibits 1 through 10. It's approximately, I'd say, 7/8 of an
12 inch thick, and there's ten exhibits. Did you have time to
13 review these exhibits before the deposition?
14     A. Yes, I did.
15     Q. With respect to Plaintiff's Exhibit 1, this is a
16 document entitled, Hawai`i Police Department -- Strip and Body
17 Cavity Searches. It's General Order No. 603. Are you willing
18 to answer any questions at this time about Plaintiff's Exhibit
19 No. 1?
20     A. Due to a current investigation that is being conducted
21 by the State of Hawaii, I hereby decline to answer that question
22 and assert my Fifth Amendment Privilege Against
23 Self-Incrimination as any answer to this question could be used,
24 or could lead to evidence that could be used, against me.
25     MR. MINKIN: David Minkin. For the record, this

Page 13

1  document does not appear to be Bates-stamped, and I would ask
2  why it has not been provided in discovery to all counsel prior
3  to this deposition.
4      MR. HEMPEY: I'll answer that, David. It's a
5  supplemental production, and I will represent to you that I
6  obtained this document and the next document after I left. It
7  got to my office after I left work the day before yesterday. I
8  did fax it to your office this morning.
9      MR. MINKIN: The fact that I noticed that because it's
10 not Bates-stamped.
11     MR. HEMPEY: Right. So it's a supplemental
12 production, and I'll get a Bates-stamped number on that in the
13 very near future.
14     MR. McGUIGAN: Was one faxed to me, Dan?
15     MR. HEMPEY: No, Mike. I thought you were coming
16 today. I do have a complete set of each of these exhibits for
17 you, and I will put them in the mail for you today.
18     MR. McGUIGAN: Thank you.
19     Q. (By Mr. Hempey) Back to the deposition, the witness.
20 Turning your attention to Deposition Plaintiff's Exhibit 2 is a
21 document that says Kaua`i Police Department on the top. It then
22 says, General Order, Date If Issue March 25, 2005, and the
23 document purports to govern or it says Strip and Body Cavity
24 Searches on the top. Have you had a chance to review that
25 document and the attached pages to it before this deposition?

4 (Pages 10 to 13)

Page 14

1    A.  Yes.
2    Q.  Are you willing to answer any questions about this
3 document in this deposition here today?
4    A.  Due to a current investigation that is being conducted
5 by the State of Hawaii, I hereby decline to answer that question
6 and assert my Fifth Amendment Privilege Against
7 Self-Incrimination as any answer to this question could be used,
8 or could lead to evidence that could be used, against me.
9    Q.  Turning your attention to Plaintiff's Exhibit 3.  This
10 appears to be a letter addressed to you from Darla Abbatiello.
11 This is Bates-stamped No. DA OO138.  Did you review that
12 document before this deposition?
13    A.  Yes.
14    Q.  Are you willing to answer any questions about that
15 document?
16    A.  Due to a current investigation that is being conducted
17 by the State of Hawaii, I hereby decline to answer that question
18 and assert my Fifth Amendment Privilege Against
19 Self-Incrimination as any answer to this question could be used,
20 or could lead to evidence that could be used, against me.
21    Q.  Exhibit 4 purports to be various Payroll Certification
22 documents which were produced by the County of Kaua`i beginning
23 at Document No. 000585.  Did you review these documents before
24 the deposition?
25    A.  Yes.

Page 15

1    Q.  Are you willing to answer any questions about
2 Plaintiff's Exhibit 4 here today?
3    A.  Due to a current investigation that is being conducted
4 by the State of Hawaii, I hereby decline to answer that question
5 and assert my Fifth Amendment Privilege Against
6 Self-Incrimination as any answer to this question could be used,
7 or could lead to evidence that could be used, against me.
8    Q.  Plaintiff's Exhibit 5 appears to contain various
9 records from the Kaua`i Police Department and members therein
10 related to Irvil Kapua.  Did you review these documents before
11 the deposition?
12    A.  Yes.
13    Q.  Are you willing to answer any questions today related
14 to these documents in any way?
15    A.  Due to a current investigation that is being conducted
16 by the State of Hawaii, I hereby decline to answer that question
17 and assert my Fifth Amendment Privilege Against
18 Self-Incrimination as any answer to this question could be used,
19 or could lead to evidence that could be used, against me.
20    Q.  Turning your attention to Plaintiff's Exhibit 6 which
21 is the next in order, and this appears to be a Kaua`i Police
22 Department Performance Documentation Report and various other
23 documents within the police department related to your position
24 within the police department.  It begins with the County of
25 Kaua`i Bates-stamped No. 0001016.  Did you have a chance to

Page 16

1 review these documents before the deposition?
2    A.  Yes.
3    Q.  Are you willing to answer any questions with respect
4 to or that relate to these documents in Plaintiff's Exhibit 6?
5    A.  Due to a current investigation that is being conducted
6 by the State of Hawaii, I hereby decline to answer that question
7 and assert my Fifth Amendment Privilege Against
8 Self-Incrimination as any answer to this question could be used,
9 or could lead to evidence that could be used, against me.
10    Q.  Plaintiff's Exhibit 7 is a one-page document titled,
11 List of Purged Records bearing County of Kauai Bates-stamped
12 No. 000846.  Did you review this document before the deposition?
13    A.  Yes.
14    Q.  Are you willing to answer any questions about this
15 document here today?
16    A.  Due to a current investigation that is being conducted
17 by the State of Hawaii, I hereby decline to answer that question
18 and assert my Fifth Amendment Privilege Against
19 Self-Incrimination as any answer to this question could be used,
20 or could lead to evidence that could be used, against me.
21    Q.  We're almost through these.  Plaintiff's Exhibit 8, I
22 turn your attention to; and page 1 of that is Bates-stamped with
23 the County of Kaua`i No. 001111, references a Kaua`i Police
24 Department internal investigation.  It's several pages long.
25 Did you review this document prior to this deposition today?

Page 17

1    A.  Yes.
2    Q.  Are you willing to answer any questions that relate to
3 this document in any way?
4    A.  Due to a current investigation that is being conducted
5 by the State of Hawaii, I hereby decline to answer that question
6 and assert my Fifth Amendment Privilege Against
7 Self-Incrimination as any answer to this question could be used,
8 or could lead to evidence that could be used, against me.
9    Q.  Plaintiff's Exhibit No. 9, this was produced by
10 plaintiff, I believe, and Bates-stamped DA 00144.  It appears to
11 be some sort of a memo addressed to you from plaintiff Darla
12 Abbatiello.  Did you review this document before the deposition
13 today?
14    A.  Yes.
15    Q.  And are you willing to answer any questions with
16 respect to or relating to this document in any way?
17    A.  Due to a current investigation that is being conducted
18 by the State of Hawaii, I hereby decline to answer that question
19 and assert my Fifth Amendment Privilege Against
20 Self-Incrimination as any answer to this question could be used,
21 or could lead to evidence that could be used, against me.
22    Q.  And finally, Plaintiff's Exhibit 10 is several pages,
23 beginning with County of Kaua`i Bates-stamped No. 002152, going
24 all the way through 002113.  These are various notes regarding
25 investigations and other activities within the department

5 (Pages 14 to 17)

Page 18

1  related to plaintiff Abbatiello, Irvil Kapua, and various other
2  investigations.  Did you get a chance to review these documents
3  prior to starting this deposition today?
4       A.  Yes.
5       Q.  Are you willing to answer any questions today about
6  the documents contained in Plaintiff's Exhibit 10?
7       A.  Due to a current investigation that is being conducted
8  by the State of Hawaii, I hereby decline to answer that question
9  and assert my Fifth Amendment Privilege Against
10 Self-Incrimination as any answer to this question could be used,
11 or could lead to evidence that could be used, against me.
12      Q.  Thank you.  I believe we are through the documents
13 anyway.
14          Back to the questioning.  Did you meet with plaintiff
15 Abbatiello on or about June 23, 2004, about, among other things,
16 issues related to Irvil Kapua?
17      A.  Due to a current investigation that is being conducted
18 by the State of Hawaii, I hereby decline to answer that question
19 and assert my Fifth Amendment Privilege Against
20 Self-Incrimination as any answer to this question could be used,
21 or could lead to evidence that could be used, against me.
22      Q.  To the best of your recollection, what exactly was
23 discussed between you and plaintiff Darla Abbatiello during a
24 meeting on June 23, 2004?
25      A.  Due to a current investigation that is being conducted

Page 19

1  by the State of Hawaii, I hereby decline to answer that question
2  and assert my Fifth Amendment Privilege Against
3  Self-Incrimination as any answer to this question could be used,
4  or could lead to evidence that could be used, against me.
5       Q.  Did that meeting take place in your office or in a
6  conference room or somewhere else?
7       A.  Due to a current investigation that is being conducted
8  by the State of Hawaii, I hereby decline to answer that question
9  and assert my Fifth Amendment Privilege Against
10 Self-Incrimination as any answer to this question could be used,
11 or could lead to evidence that could be used, against me.
12      Q.  Did you answer questions related to this meeting in
13 your requests for admissions that were earlier propounded to you
14 in this case?
15      A.  Due to a current investigation that is being conducted
16 by the State of Hawaii, I hereby decline to answer that question
17 and assert my Fifth Amendment Privilege Against
18 Self-Incrimination as any answer to this question could be used,
19 or could lead to evidence that could be used, against me.
20      Q.  Isn't it true that on or about June 23rd, Darla
21 Abbatiello told you that she was very afraid of Irvil Kapua?
22      A.  Due to a current investigation that is being conducted
23 by the State of Hawaii, I hereby decline to answer that question
24 and assert my Fifth Amendment Privilege Against
25 Self-Incrimination as any answer to this question could be used,

Page 20

1  or could lead to evidence that could be used, against me.
2       Q.  When was the first time, if ever, plaintiff told you
3  that she was afraid of Irvil Kapua?
4       A.  Due to a current investigation that is being conducted
5  by the State of Hawaii, I hereby decline to answer that question
6  and assert my Fifth Amendment Privilege Against
7  Self-Incrimination as any answer to this question could be used,
8  or could lead to evidence that could be used, against me.
9       Q.  Isn't it true that at some point in 2004, a lieutenant
10 in the police department told you that Acting Chief Pigao
11 discussed with Ofr. Abbatiello the use of the back door of the
12 police station to access the Vice Unit?
13      A.  Due to a current investigation that is being conducted
14 by the State of Hawaii, I hereby decline to answer that question
15 and assert my Fifth Amendment Privilege Against
16 Self-Incrimination as any answer to this question could be used,
17 or could lead to evidence that could be used, against me.
18      Q.  Where did this discussion with the lieutenant in the
19 police department related to plaintiff using the back door in
20 Vice take place?
21      A.  Due to a current investigation that is being conducted
22 by the State of Hawaii, I hereby decline to answer that question
23 and assert my Fifth Amendment Privilege Against
24 Self-Incrimination as any answer to this question could be used,
25 or could lead to evidence that could be used, against me.

Page 21

1       Q.  On January 9, 2005, did you send an e-mail to Fred
2  De Busca regarding whether there was an order regarding
3  Ofr. Abbatiello avoiding Kapua or using the back door?
4       A.  Due to a current investigation that is being conducted
5  by the State of Hawaii, I hereby decline to answer that question
6  and assert my Fifth Amendment Privilege Against
7  Self-Incrimination as any answer to this question could be used,
8  or could lead to evidence that could be used, against me.
9       Q.  On or about January 9, 2005, did you write an e-mail
10 that both Ofr. Abbatiello and Sgt. Kapua will avoid
11 confrontation with each other?
12      A.  Due to a current investigation that is being conducted
13 by the State of Hawaii, I hereby decline to answer that question
14 and assert my Fifth Amendment Privilege Against
15 Self-Incrimination as any answer to this question could be used,
16 or could lead to evidence that could be used, against me.
17      Q.  And in that same e-mail, did you write in the future
18 they should have their department operations remedied through
19 the chain of command?
20      A.  Due to a current investigation that is being conducted
21 by the State of Hawaii, I hereby decline to answer that question
22 and assert my Fifth Amendment Privilege Against
23 Self-Incrimination as any answer to this question could be used,
24 or could lead to evidence that could be used, against me.
25      Q.  What, if anything, prompted you to remind subordinates

6 (Pages 18 to 21)

Page 22

1    to use the chain of command with respect to this January 9, 2005
2    e-mail?
3        A.    Due to a current investigation that is being conducted
4    by the State of Hawaii, I hereby decline to answer that question
5    and assert my Fifth Amendment Privilege Against
6    Self-Incrimination as any answer to this question could be used,
7    or could lead to evidence that could be used, against me.
8        Q.    To your knowledge, has Darla Abbatiello ever lied to
9    you?
10       A.    Due to a current investigation that is being conducted
11   by the State of Hawaii, I hereby decline to answer that question
12   and assert my Fifth Amendment Privilege Against
13   Self-Incrimination as any answer to this question could be used,
14   or could lead to evidence that could be used, against me.
15       Q.    To your knowledge, has Darla Abbatiello ever
16   unintentionally been dishonest with you?
17       A.    Due to a current investigation that is being conducted
18   by the State of Hawaii, I hereby decline to answer that question
19   and assert my Fifth Amendment Privilege Against
20   Self-Incrimination as any answer to this question could be used,
21   or could lead to evidence that could be used, against me.
22       Q.    To your intention, has Irvil Kapua ever lied to you?
23       A.    Due to a current investigation that is being conducted
24   by the State of Hawaii, I hereby decline to answer that question
25   and assert my Fifth Amendment Privilege Against

Page 23

1    Self-Incrimination as any answer to this question could be used,
2    or could lead to evidence that could be used, against me.
3        Q.    To your intention, has Irvil Kapua ever
4    unintentionally been dishonest with you?
5        A.    Due to a current investigation that is being conducted
6    by the State of Hawaii, I hereby decline to answer that question
7    and assert my Fifth Amendment Privilege Against
8    Self-Incrimination as any answer to this question could be used,
9    or could lead to evidence that could be used, against me.
10       Q.    When you met with the plaintiff -- strike that. When
11   you met with Darla Abbatiello in June 2004, what action, if any,
12   did you tell her you would take with respect to Irvil Kapua?
13       A.    Due to a current investigation that is being conducted
14   by the State of Hawaii, I hereby decline to answer that question
15   and assert my Fifth Amendment Privilege Against
16   Self-Incrimination as any answer to this question could be used,
17   or could lead to evidence that could be used, against me.
18       Q.    What, if anything, did you discuss regarding this
19   June 23, 2004 meeting with Irvil Kapua?
20       A.    Due to a current investigation that is being conducted
21   by the State of Hawaii, I hereby decline to answer that question
22   and assert my Fifth Amendment Privilege Against
23   Self-Incrimination as any answer to this question could be used,
24   or could lead to evidence that could be used, against me.
25       Q.    What prompted you to write the January 9, 2005 e-mail

Page 24

1    which rescinded any orders that Abbatiello use the back door or
2    avoid Sgt. Kapua?
3        A.    Due to a current investigation that is being conducted
4    by the State of Hawaii, I hereby decline to answer that question
5    and assert my Fifth Amendment Privilege Against
6    Self-Incrimination as any answer to this question could be used,
7    or could lead to evidence that could be used, against me.
8        Q.    After the June 23, 2004 meeting between you and
9    plaintiff, did Irvil Kapua continue to work in Cell Block?
10       A.    Due to a current investigation that is being conducted
11   by the State of Hawaii, I hereby decline to answer that question
12   and assert my Fifth Amendment Privilege Against
13   Self-Incrimination as any answer to this question could be used,
14   or could lead to evidence that could be used, against me.
15       Q.    After the June 23, 2004 meeting, would Irvil Kapua,
16   upon arresting people accused of, suspected of crime, would he
17   potentially take those arrestees into the Cell Block?
18       A.    Due to a current investigation that is being conducted
19   by the State of Hawaii, I hereby decline to answer that question
20   and assert my Fifth Amendment Privilege Against
21   Self-Incrimination as any answer to this question could be used,
22   or could lead to evidence that could be used, against me.
23       Q.    What shift did Irvil Kapua typically work between June
24   2004 and December of 2004?
25       A.    Due to a current investigation that is being conducted

Page 25

1    by the State of Hawaii, I hereby decline to answer that question
2    and assert my Fifth Amendment Privilege Against
3    Self-Incrimination as any answer to this question could be used,
4    or could lead to evidence that could be used, against me.
5        Q.    While working in Cell Block, did Irvil Kapua work with
6    Gerald Kim?
7        A.    Due to a current investigation that is being conducted
8    by the State of Hawaii, I hereby decline to answer that question
9    and assert my Fifth Amendment Privilege Against
10   Self-Incrimination as any answer to this question could be used,
11   or could lead to evidence that could be used, against me.
12       Q.    And actually, I want to go back to that question and
13   give it a time reference. While working in Cell Block in the
14   six months after June 2004, did Irvil Kapua work with Gerald
15   Kim?
16       A.    Due to a current investigation that is being conducted
17   by the State of Hawaii, I hereby decline to answer that question
18   and assert my Fifth Amendment Privilege Against
19   Self-Incrimination as any answer to this question could be used,
20   or could lead to evidence that could be used, against me.
21       Q.    During the same time period and in working in Cell
22   Block, did Irvil Kapua work with Carl Oliver?
23       A.    Due to a current investigation that is being conducted
24   by the State of Hawaii, I hereby decline to answer that question
25   and assert my Fifth Amendment Privilege Against

Page 26

1   Self-Incrimination as any answer to this question could be used,
2   or could lead to evidence that could be used, against me.
3       Q.  Since June 23, 2004, do you have any knowledge or has
4   anyone told you that Sgt. Kapua had stated the desire to do harm
5   to Darla Abbatiello?
6       A.  Due to a current investigation that is being conducted
7   by the State of Hawaii, I hereby decline to answer that question
8   and assert my Fifth Amendment Privilege Against
9   Self-Incrimination as any answer to this question could be used,
10  or could lead to evidence that could be used, against me.
11      Q.  When you were chief or acting chief of police, did you
12  become aware that Irvil Kapua admitted to calling Darla
13  Abbatiello a bitch in the workplace?
14      A.  Due to a current investigation that is being conducted
15  by the State of Hawaii, I hereby decline to answer that question
16  and assert my Fifth Amendment Privilege Against
17  Self-Incrimination as any answer to this question could be used,
18  or could lead to evidence that could be used, against me.
19      Q.  When did you first become aware that Irvil Kapua
20  called Darla Abbatiello a bitch in the workplace?
21      A.  Due to a current investigation that is being conducted
22  by the State of Hawaii, I hereby decline to answer that question
23  and assert my Fifth Amendment Privilege Against
24  Self-Incrimination as any answer to this question could be used,
25  or could lead to evidence that could be used, against me.

Page 27

1       Q.  What, if any, action did you take upon learning that
2   Irvil Kapua had called Darla Abbatiello a bitch in the
3   workplace?
4       A.  Due to a current investigation that is being conducted
5   by the State of Hawaii, I hereby decline to answer that question
6   and assert my Fifth Amendment Privilege Against
7   Self-Incrimination as any answer to this question could be used,
8   or could lead to evidence that could be used, against me.
9       Q.  Based on your training and experience as chief of
10  police, would calling someone a bitch in the workplace violate
11  any Kaua`i Police Department rule, regulation, or standard of
12  procedure?
13      A.  Due to a current investigation that is being conducted
14  by the State of Hawaii, I hereby decline to answer that question
15  and assert my Fifth Amendment Privilege Against
16  Self-Incrimination as any answer to this question could be used,
17  or could lead to evidence that could be used, against me.
18      Q.  Based on your training and experience as chief of
19  police, would calling someone a cunt in the workplace violate
20  any Kaua`i Police Department rule, regulation, or standard of
21  procedure?
22      A.  Due to a current investigation that is being conducted
23  by the State of Hawaii, I hereby decline to answer that question
24  and assert my Fifth Amendment Privilege Against
25  Self-Incrimination as any answer to this question could be used,

Page 28

1   or could lead to evidence that could be used, against me.
2       Q.  What discipline, if any, was meted out to Irvil Kapua
3   for calling Darla Abbatiello a bitch in the workplace?
4       A.  Due to a current investigation that is being conducted
5   by the State of Hawaii, I hereby decline to answer that question
6   and assert my Fifth Amendment Privilege Against
7   Self-Incrimination as any answer to this question could be used,
8   or could lead to evidence that could be used, against me.
9       Q.  Are you a plaintiff in a lawsuit claiming, among other
10  things, that you suffered a racial slur in the workplace?
11      A.  Due to a current investigation that is being conducted
12  by the State of Hawaii, I hereby decline to answer that question
13  and assert my Fifth Amendment Privilege Against
14  Self-Incrimination as any answer to this question could be used,
15  or could lead to evidence that could be used, against me.
16      Q.  Relatively speaking, was the racial slur that you
17  suffered more or less offensive than Darla Abbatiello being
18  referred to as a bitch in the workplace?
19      A.  Due to a current investigation that is being conducted
20  by the State of Hawaii, I hereby decline to answer that question
21  and assert my Fifth Amendment Privilege Against
22  Self-Incrimination as any answer to this question could be used,
23  or could lead to evidence that could be used, against me.
24      Q.  Relatively speaking, was the racial slur that you
25  suffered more or less offensive in your opinion to Darla

Page 29

1   Abbatiello being referred to as a cunt in the workplace?
2       A.  Due to a current investigation that is being conducted
3   by the State of Hawaii, I hereby decline to answer that question
4   and assert my Fifth Amendment Privilege Against
5   Self-Incrimination as any answer to this question could be used,
6   or could lead to evidence that could be used, against me.
7       MR. MINKIN:  Dan, hold on a second; this is David
8   Minkin.  We're going to interpose going back.  Because of the
9   representation that K.C. Lum would be interjecting the Fifth
10  Amendment Privilege against Self-Incrimination, I don't think
11  any of the attorneys have objected to the form of the question.
12  And for the record, by not objecting to the form of the question
13  does not mean that we agree that the form of the question is
14  appropriate in any manner, shape, or form during this
15  deposition.
16      MR. McGUIGAN:  I would join in that.
17      MR. TANAKA:  I would join in that.
18      MS. NAKEA-TRESLER:  Join.
19      Q.  At some point when you were assistant chief of police,
20  did you hear from anyone that Irvil Kapua had been seen punching
21  walls while referring to Darla Abbatiello?
22      A.  Due to a current investigation that is being conducted
23  by the State of Hawaii, I hereby decline to answer that question
24  and assert my Fifth Amendment Privilege Against
25  Self-Incrimination as any answer to this question could be used,

8 (Pages 26 to 29)

Page 30

1   or could lead to evidence that could be used, against me.
2       Q.   At some point while you were chief of police in the
3   Kaua`i Police Department, did you hear from anyone that Irvil
4   Kapua had been seen punching walls while referring to Darla
5   Abbatiello?
6       A.   Due to a current investigation that is being conducted
7   by the State of Hawaii, I hereby decline to answer that question
8   and assert my Fifth Amendment Privilege Against
9   Self-Incrimination as any answer to this question could be used,
10  or could lead to evidence that could be used, against me.
11      Q.   Would punching walls while calling someone a bitch in
12  the workplace in your opinion violate any Kaua`i Police
13  Department policy governing violence in the workplace?
14          MR. TANAKA:  Let me interpose an objection, calls for
15  speculation, lacks foundation.
16      A.   Due to a current investigation that is being conducted
17  by the State of Hawaii, I hereby decline to answer that question
18  and assert my Fifth Amendment Privilege Against
19  Self-Incrimination as any answer to this question could be used,
20  or could lead to evidence that could be used, against me.
21      Q.   What, if any, investigation did you do or cause other
22  people to do as to whether or not Irvil Kapua was seen punching
23  walls while referring to Darla Abbatiello as a bitch in the
24  workplace?
25          MR. TANAKA:  Objection.  Vague.  Compound.

Page 31

1       A.   Due to a current investigation that is being conducted
2   by the State of Hawaii, I hereby decline to answer that question
3   and assert my Fifth Amendment Privilege Against
4   Self-Incrimination as any answer to this question could be used,
5   or could lead to evidence that could be used, against me.
6       Q.   When you were chief of police, did Kaua`i Police
7   Department have any standards of conduct that governed violence
8   in the workplace?
9       A.   Due to a current investigation that is being conducted
10  by the State of Hawaii, I hereby decline to answer that question
11  and assert my Fifth Amendment Privilege Against
12  Self-Incrimination as any answer to this question could be used,
13  or could lead to evidence that could be used, against me.
14      Q.   While you were assistant chief of police, did Kaua`i
15  Police Department have any standards of conduct that governed
16  violence in the workplace?
17      A.   Due to a current investigation that is being conducted
18  by the State of Hawaii, I hereby decline to answer that question
19  and assert my Fifth Amendment Privilege Against
20  Self-Incrimination as any answer to this question could be used,
21  or could lead to evidence that could be used, against me.
22      Q.   Does the Kaua`i Police Department have any policy, to
23  your knowledge currently, concerning strip searches of people
24  who have been arrested or detained for suspicion of having
25  committed a crime?

Page 32

1          MR. TANAKA:  Lacks foundation.
2       A.   Due to a current investigation that is being conducted
3   by the State of Hawaii, I hereby decline to answer that question
4   and assert my Fifth Amendment Privilege Against
5   Self-Incrimination as any answer to this question could be used,
6   or could lead to evidence that could be used, against me.
7       Q.   To your knowledge while you were chief, did the Big
8   Island have a policy governing strip searches of people arrested
9   or detained for having committed a crime?
10          MR. TANAKA:  Same objection.
11      Q.   For suspicion of having committed a crime?
12          MR. TANAKA:  Same objection.
13      A.   Due to a current investigation that is being conducted
14  by the State of Hawaii, I hereby decline to answer that question
15  and assert my Fifth Amendment Privilege Against
16  Self-Incrimination as any answer to this question could be used,
17  or could lead to evidence that could be used, against me.
18      Q.   Did you draw up, attempt to draw up or cause someone
19  else to draw up, a policy concerning strip searches of arrestees
20  or detainees within the Kaua`i Police Department while you were
21  employed there?
22      A.   Due to a current investigation that is being conducted
23  by the State of Hawaii, I hereby decline to answer that question
24  and assert my Fifth Amendment Privilege Against
25  Self-Incrimination as any answer to this question could be used,

Page 33

1   or could lead to evidence that could be used, against me.
2       Q.   I realize you said you weren't going to answer any
3   questions about this, but I want to just get it on the record.
4   I'm looking at Plaintiff's Exhibit 2, and I notice that in that
5   document, specifically on page 3, Section 4e, it says,
6   "Photographs shall be taken documenting each step of the search
7   from fully clothed to completely naked."  Do you know who if
8   anyone inserted that language into Exhibit 2?
9       A.   Due to a current investigation that is being conducted
10  by the State of Hawaii, I hereby decline to answer that question
11  and assert my Fifth Amendment Privilege Against
12  Self-Incrimination as any answer to this question could be used,
13  or could lead to evidence that could be used, against me.
14      Q.   Isn't it true that you inserted or directed someone to
15  insert the language about photographing each stage, about
16  photographs shall be taken documenting each step of the search
17  from fully clothed to completely naked?  Isn't it true that you
18  inserted that or directed someone else to insert that language
19  into Exhibit 2?
20      A.   Due to a current investigation that is being conducted
21  by the State of Hawaii, I hereby decline to answer that question
22  and assert my Fifth Amendment Privilege Against
23  Self-Incrimination as any answer to this question could be used,
24  or could lead to evidence that could be used, against me.
25      Q.   Who inserted that language into Exhibit 2?

9 (Pages 30 to 33)

Page 34

1    A. Due to a current investigation that is being conducted
2  by the State of Hawaii, I hereby decline to answer that question
3  and assert my Fifth Amendment Privilege Against
4  Self-Incrimination as any answer to this question could be used,
5  or could lead to evidence that could be used, against me.
6    Q. Exhibit 2 appears to have the date March 25, 2005 at
7  the top under the word "dates, if issue."  Who put this date in
8  Exhibit 2?
9    A. Due to a current investigation that is being conducted
10  by the State of Hawaii, I hereby decline to answer that question
11  and assert my Fifth Amendment Privilege Against
12  Self-Incrimination as any answer to this question could be used,
13  or could lead to evidence that could be used, against me.
14    Q. Whose decision, if you know -- strike that.  When was
15  Exhibit 2 drafted?
16    A. Due to a current investigation that is being conducted
17  by the State of Hawaii, I hereby decline to answer that question
18  and assert my Fifth Amendment Privilege Against
19  Self-Incrimination as any answer to this question could be used,
20  or could lead to evidence that could be used, against me.
21    Q. Is it true that Exhibit 2 was created after you
22  learned that a member of the Kaua`i Police Department had taken
23  photographs of two women who were naked during a strip search?
24    MR. TANAKA:  Lacks foundation.
25    A. Due to a current investigation that is being conducted

Page 35

1  by the State of Hawaii, I hereby decline to answer that question
2  and assert my Fifth Amendment Privilege Against
3  Self-Incrimination as any answer to this question could be used,
4  or could lead to evidence that could be used, against me.
5    Q. Did Exhibit B, to your knowledge, ever become KPD
6  policy?
7    A. Exhibit B?
8    Q. Yes, I showed you Exhibit B which is this --
9    MR. TANAKA:  2.
10    Q. I'm sorry, Exhibit 2; that's my mistake.  Did
11  Exhibit 2 in this deposition ever become Kaua`i Police
12  Department policy?
13    A. Due to a current investigation that is being conducted
14  by the State of Hawaii, I hereby decline to answer that question
15  and assert my Fifth Amendment Privilege Against
16  Self-Incrimination as any answer to this question could be used,
17  or could lead to evidence that could be used, against me.
18    Q. Are you aware whether any alternative forms of
19  Exhibit A or any alternative different strip search policy
20  became the Kaua`i Police Department policy?
21    MR. TANAKA:  Lacks foundation.
22    A. Due to a current investigation that is being conducted
23  by the State of Hawaii, I hereby decline to answer that question
24  and assert my Fifth Amendment Privilege Against
25  Self-Incrimination as any answer to this question could be used,

Page 36

1  or could lead to evidence that could be used, against me.
2    Q. Are you aware that on or about April 24, 2005, Darla
3  Abbatiello refused to photograph two females who were strip
4  searched after they were arrested at the Lihu`e airport?
5    A. Due to a current investigation that is being conducted
6  by the State of Hawaii, I hereby decline to answer that question
7  and assert my Fifth Amendment Privilege Against
8  Self-Incrimination as any answer to this question could be used,
9  or could lead to evidence that could be used, against me.
10    Q. Isn't it true that Darla Abbatiello wrote to you about
11  the April 24th incident regarding strip searches and the
12  photographing of them?
13    A. Due to a current investigation that is being conducted
14  by the State of Hawaii, I hereby decline to answer that question
15  and assert my Fifth Amendment Privilege Against
16  Self-Incrimination as any answer to this question could be used,
17  or could lead to evidence that could be used, against me.
18    Q. Did you have any communication or conversation by
19  phone, e-mail, personal talk or otherwise, about Darla
20  Abbatiello refusing to photograph the search with any other
21  members of the Kaua`i Police Department?
22    A. Due to a current investigation that is being conducted
23  by the State of Hawaii, I hereby decline to answer that question
24  and assert my Fifth Amendment Privilege Against
25  Self-Incrimination as any answer to this question could be used,

Page 37

1  or could lead to evidence that could be used, against me.
2    Q. Have you had any communication by phone, e-mail, or
3  talk in any manner with Richard Minatoya about Darla
4  Abbatiello's role in the April 24 photographing of arrestees
5  during a strip search?
6    A. Due to a current investigation that is being conducted
7  by the State of Hawaii, I hereby decline to answer that question
8  and assert my Fifth Amendment Privilege Against
9  Self-Incrimination as any answer to this question could be used,
10  or could lead to evidence that could be used, against me.
11    Q. Are you going to take the Fifth with respect to all
12  questions I ask today about the April 2005 photographing of
13  strip searches?
14    A. Yes.
15    Q. Do you know a man named Rizal Balgos?
16    MR. McGUIGAN:  I'm sorry, could you say that again?
17    Q. Let me rephrase that, actually.  While you were chief
18  of police, did you know a man named Rizal Balgos?
19    A. Yes.
20    UNIDENTIFIED SPEAKER ON PHONE:  Can you spell that?
21    MR. HEMPEY:  I can spell Balgos.  It's B as in boy, A,
22  L, G as in girl, O, S.  I believe the first name is spelled
23  R-i-z-a-l, but I'm not absolutely positive in the spelling of
24  the first name.
25    Q. While you were chief of police at Kaua`i Police

10 (Pages 34 to 37)

Page 38

1    Department, did you own any interest in a company that had to do
2    with coffee?
3        A.   Due to a current investigation that is being conducted
4    by the State of Hawaii, I hereby decline to answer that question
5    and assert my Fifth Amendment Privilege Against
6    Self-Incrimination as any answer to this question could be used,
7    or could lead to evidence that could be used, against me.
8        Q.   Did a Mr. Balgos contribute capital or equipment of
9    any kind to any company in which you owned an interest while you
10   were chief of police?
11       A.   Due to a current investigation that is being conducted
12   by the State of Hawaii, I hereby decline to answer that question
13   and assert my Fifth Amendment Privilege Against
14   Self-Incrimination as any answer to this question could be used,
15   or could lead to evidence that could be used, against me.
16       Q.   Was anyone who contributed either money or equipment
17   to any business in which you owned an interest while you were
18   chief of police, to your knowledge, connected in any way, other
19   than as a police officer, to the illegal drug trade?
20       A.   Due to a current investigation that is being conducted
21   by the State of Hawaii, I hereby decline to answer that question
22   and assert my Fifth Amendment Privilege Against
23   Self-Incrimination as any answer to this question could be used,
24   or could lead to evidence that could be used, against me.
25       Q.   What was your rank in December 2003 at the Kaua`i

Page 39

1    Police Department?
2        A.   Due to a current investigation that is being conducted
3    by the State of Hawaii, I hereby decline to answer that question
4    and assert my Fifth Amendment Privilege Against
5    Self-Incrimination as any answer to this question could be used,
6    or could lead to evidence that could be used, against me.
7        Q.   In December 2003, were you aware that there were
8    problems between Irvil Kapua and Darla Abbatiello at the police
9    department?
10       MR. McGUIGAN:  Objection.  Vague and ambiguous.
11       MR. TANAKA:  You can answer.
12       A.   Due to a current investigation that is being conducted
13   by the State of Hawaii, I hereby decline to answer that question
14   and assert my Fifth Amendment Privilege Against
15   Self-Incrimination as any answer to this question could be used,
16   or could lead to evidence that could be used, against me.
17       Q.   When you became acting chief in May 2004, what did you
18   know, if anything, about the relationship between Darla
19   Abbatiello and Irvil Kapua?
20       A.   Due to a current investigation that is being conducted
21   by the State of Hawaii, I hereby decline to answer that question
22   and assert my Fifth Amendment Privilege Against
23   Self-Incrimination as any answer to this question could be used,
24   or could lead to evidence that could be used, against me.
25       MR. McGUIGAN:  Objection.  Vague and ambiguous.

Page 40

1        Q.   When you became acting chief in May 2004 -- strike
2    that.  Prior to you becoming acting chief in 2004, did anyone
3    else in the police department inform you that there were
4    problems between Darla Abbatiello and Irvil Kapua?
5        MR. McGUIGAN:  Objection.  Lacks foundation.
6        MR. TANAKA:  Join.
7        MR. McGUIGAN:  Vague and ambiguous.
8        Q.   You can answer.
9        A.   Due to a current investigation that is being conducted
10   by the State of Hawaii, I hereby decline to answer that question
11   and assert my Fifth Amendment Privilege Against
12   Self-Incrimination as any answer to this question could be used,
13   or could lead to evidence that could be used, against me.
14       Q.   Did you ever discuss the subject of Darla Abbatiello
15   and Irvil Kapua with Mr. Wilfred Ihu while you were employed at
16   the Kaua`i Police Department?
17       A.   Due to a current investigation that is being conducted
18   by the State of Hawaii, I hereby decline to answer that question
19   and assert my Fifth Amendment Privilege Against
20   Self-Incrimination as any answer to this question could be used,
21   or could lead to evidence that could be used, against me.
22       Q.   At some time either before you became acting chief or
23   in, let's call it, the six weeks after you became acting chief,
24   did Mr. Ihu give you any communications at all related to the
25   relationship between Irvil Kapua and Darla Abbatiello or any

Page 41

1    problems between Irvil Kapua and Darla Abbatiello?
2        MR. McGUIGAN:  Objection.  Vague and ambiguous.  Also
3    lacks foundation.
4        MR. MINKIN:  Join.
5        MR. TANAKA:  Join.
6        MS. NAKEA-TRESLER:  Join.
7        A.   Due to a current investigation that is being conducted
8    by the State of Hawaii, I hereby decline to answer that question
9    and assert my Fifth Amendment Privilege Against
10   Self-Incrimination as any answer to this question could be used,
11   or could lead to evidence that could be used, against me.
12       Q.   Have you ever heard of the term "cop dope"?
13       A.   Due to a current investigation that is being conducted
14   by the State of Hawaii, I hereby decline to answer that question
15   and assert my Fifth Amendment Privilege Against
16   Self-Incrimination as any answer to this question could be used,
17   or could lead to evidence that could be used, against me.
18       Q.   Can you explain what the term "cop dope" means?
19       A.   Due to a current investigation that is being conducted
20   by the State of Hawaii, I hereby decline to answer that question
21   and assert my Fifth Amendment Privilege Against
22   Self-Incrimination as any answer to this question could be used,
23   or could lead to evidence that could be used, against me.
24       Q.   To your knowledge, did Darla Abbatiello, generally
25   speaking, support or oppose your appointment as police chief?

11 (Pages 38 to 41)

Page 42

1       MR. TANAKA: Let me object. Lacks foundation. Calls
2    for speculation.
3       Q.  If you know.
4       A.  Due to a current investigation that is being conducted
5    by the State of Hawaii, I hereby decline to answer that question
6    and assert my Fifth Amendment Privilege Against
7    Self-Incrimination as any answer to this question could be used,
8    or could lead to evidence that could be used, against me.
9       Q.  The plaintiff's Exhibit 3 is a letter from Darla
10   Abbatiello, September 14, 2004.  Did you receive that letter?
11   Ever?
12      A.  Due to a current investigation that is being conducted
13   by the State of Hawaii, I hereby decline to answer that question
14   and assert my Fifth Amendment Privilege Against
15   Self-Incrimination as any answer to this question could be used,
16   or could lead to evidence that could be used, against me.
17      Q.  What, if anything, did you do in response to Darla
18   Abbatiello reporting that her gun had apparently been stolen?
19      A.  Due to a current investigation that is being conducted
20   by the State of Hawaii, I hereby decline to answer that question
21   and assert my Fifth Amendment Privilege Against
22   Self-Incrimination as any answer to this question could be used,
23   or could lead to evidence that could be used, against me.
24      Q.  That letter, which is the Plaintiff's Exhibit 3 of
25   September 14th, in that letter it purports to say that Darla

Page 43

1    Abbatiello, she said she remains concerned for her safety in and
2    around Vice.  And this is ten weeks after the June 24th or June
3    23rd -- I forget which meeting -- between you and Abbatiello.
4    And my question is, what, if any, action did you take between
5    June 24, 2004 when you met with Darla Abbatiello and
6    September 14, 2004 related to Darla Abbatiello's safety in and
7    around the workplace?
8       (Cell phone rings.)
9       A.  Due to a current investigation that is being conducted
10   by the State of Hawaii, I hereby decline to answer that question
11   and assert my Fifth Amendment Privilege Against
12   Self-Incrimination as any answer to this question could be used,
13   or could lead to evidence that could be used, against me.
14      MR. TANAKA: Also, can we go off the record for a
15   little while. I need to place a conference call with
16   Judge Watanabe.
17      MR. HEMPEY: It's 5 to 11:00, and for the record Dan
18   Hempey. Cary's phone just rang and he's got to do the
19   conference call with Judge Watanabe.
20      (Recess taken, 10:57 a.m. to 11:27 a.m.)
21      MR. HEMPEY: It's 11:25. We're back on the record in
22   the deposition of K.C. Lum. We just took a break so some of the
23   counsel could do a conference call with the judge.
24      David, Mike, John, everybody's here?
25      (Various speakers assent.)

Page 44

1       Q.  We left off with talking about a document where Darla
2    Abbatiello mentioned that her gun had been
3    stolen.  And I asked you, is there any one person or one of a
4    few people or a small group of people that you personally
5    suspect of having removed plaintiff's gun from her file cabinet
6    in Vice?
7       A.  Due to a current investigation that is being conducted
8    by the State of Hawaii, I hereby decline to answer that question
9    and assert my Fifth Amendment Privilege Against
10   Self-Incrimination as any answer to this question could be used,
11   or could lead to evidence that could be used, against me.
12      Q.  When, if at all, did you order a criminal
13   investigation into the report of the missing gun?
14      A.  Due to a current investigation that is being conducted
15   by the State of Hawaii, I hereby decline to answer that question
16   and assert my Fifth Amendment Privilege Against
17   Self-Incrimination as any answer to this question could be used,
18   or could lead to evidence that could be used, against me.
19      Q.  When, if at all, did you order an administrative
20   investigation into the report of the missing gun?
21      A.  Due to a current investigation that is being conducted
22   by the State of Hawaii, I hereby decline to answer that question
23   and assert my Fifth Amendment Privilege Against
24   Self-Incrimination as any answer to this question could be used,
25   or could lead to evidence that could be used, against me.

Page 45

1       Q.  When you were acting -- strike that.  In April 2004,
2    did you become aware of a report that Darla Abbatiello had found
3    her name written in a dictionary with arrows pointing to the
4    word "death"?
5       A.  Due to a current investigation that is being conducted
6    by the State of Hawaii, I hereby decline to answer this question
7    and assert my Fifth Amendment Privilege Against
8    Self-Incrimination as any answer to this question could be used,
9    or could lead to evidence that could be used, against me.
10      Q.  I'm going to refer to this incident with the word
11   "death" being written in the dictionary.  I'm just going to
12   refer to that now colloquially as the death threat.  Was that
13   death threat reported to Lt. Asher on or about April 19, 2004?
14      MR. TANAKA: Objection. Lacks foundation.
15      Q.  I'll strike that.  To your knowledge, was the what I'm
16   calling the death threat reported to Lt. Asher on or about
17   April 19, 2004?
18      MR. TANAKA: Same objection.
19      A.  Due to a current investigation that is being conducted
20   by the State of Hawaii, I hereby decline to answer that question
21   and assert my Fifth Amendment Privilege Against
22   Self-Incrimination as any answer to this question could be used,
23   or could lead to evidence that could be used, against me.
24      Q.  Was reporting the death threat and asking for it to be
25   investigated in a letter to Lt. Asher, was that a proper use of

12 (Pages 42 to 45)

Page 46

1 the chain of command by Ofr. Abbatiello?
2     MR. TANAKA: Same objection.
3     A. Due to a current investigation that is being conducted
4 by the State of Hawaii, I hereby decline to answer that question
5 and assert my Fifth Amendment Privilege Against
6 Self-Incrimination as any answer to this question could be used,
7 or could lead to evidence that could be used, against me.
8     Q. If not, why not?
9     A. Due to a current investigation that is being conducted
10 by the State of Hawaii, I hereby decline to answer that question
11 and assert my Fifth Amendment Privilege Against
12 Self-Incrimination as any answer to this question could be used,
13 or could lead to evidence that could be used, against me.
14     Q. Did Lt. Asher report the death threat to you?
15     A. Due to a current investigation that is being conducted
16 by the State of Hawaii, I hereby decline to answer that question
17 and assert my Fifth Amendment Privilege Against
18 Self-Incrimination as any answer to this question could be used,
19 or could lead to evidence that could be used, against me.
20     Q. To your knowledge, did Lt. Asher report the death
21 threat to Wilfred Ihu?
22     A. Due to a current investigation that is being conducted
23 by the State of Hawaii, I hereby decline to answer that question
24 and assert my Fifth Amendment Privilege Against
25 Self-Incrimination as any answer to this question could be used,

Page 47

1 or could lead to evidence that could be used, against me.
2     Q. If Lt. Asher, if Roy Asher did not report the death
3 threat to you -- strike that. Do you know if you reported the
4 death threat to Mr. Ihu?
5     A. Due to a current investigation that is being conducted
6 by the State of Hawaii, I hereby decline to answer that question
7 and assert my Fifth Amendment Privilege Against
8 Self-Incrimination as any answer to this question could be used,
9 or could lead to evidence that could be used, against me.
10     Q. I want to change gears for a minute. This is intended
11 to shorten this deposition dramatically. What I'd like to do
12 now is go through a list of names of people, and specifically
13 I'm going to ask the same question with regard to each name, and
14 I'm going to ask you if you're willing to answer any questions
15 today about any communication, conferences, correspondence you
16 had with these people. And you can just certainly tell me if
17 you're going to assert the privilege.
18     So have you had any conversations or correspondence of
19 any kind related to this case with Gordon Isoda?
20     A. Due to a current investigation that is being conducted
21 by the State of Hawaii, I hereby decline to answer that question
22 and assert my Fifth Amendment Privilege Against
23 Self-Incrimination as any answer to this question could be used,
24 or could lead to evidence that could be used, against me.
25     Q. Have you had any conversations or communications of

Page 48

1 any kind related to this case with Willie Ihu?
2     A. Due to a current investigation that is being conducted
3 by the State of Hawaii, I hereby decline to answer that question
4 and assert my Fifth Amendment Privilege Against
5 Self-Incrimination as any answer to this question could be used,
6 or could lead to evidence that could be used, against me.
7     Q. Had you had any conversations or communications of any
8 kind related to this case with Dean Pigao?
9     A. Due to a current investigation that is being conducted
10 by the State of Hawaii, I hereby decline to answer that question
11 and assert my Fifth Amendment Privilege Against
12 Self-Incrimination as any answer to this question could be used,
13 or could lead to evidence that could be used, against me.
14     Q. Have you had any communications or correspondence or
15 conversations about this case with Regina Ventura?
16     A. Due to a current investigation that is being conducted
17 by the State of Hawaii, I hereby decline to answer that question
18 and assert my Fifth Amendment Privilege Against
19 Self-Incrimination as any answer to this question could be used,
20 or could lead to evidence that could be used, against me.
21     MR. MINKIN: Hold on a second; this is Minkin. Going
22 back to the questions regarding Isoda, Ihu, Pigao, I would
23 assume, because I represented former Chief Lum and these three
24 gentlemen at the same time, you're excluding any attorney-client
25 privilege communication; is that correct?

Page 49

1     MR. HEMPEY: I'm not asking for attorney-client
2 communications.
3     MR. MINKIN: Thank you.
4     MR. HEMPEY: Thank you, Dave.
5     Q. (By Mr. Hempey) Same question with respect to Larry
6 Stem.
7     A. Due to a current investigation that is being conducted
8 by the State of Hawaii, I hereby decline to answer that question
9 and assert my Fifth Amendment Privilege Against
10 Self-Incrimination as any answer to this question could be used,
11 or could lead to evidence that could be used, against me.
12     Q. Same question with respect to Marilyn Prem.
13     A. Due to a current investigation that is being conducted
14 by the State of Hawaii, I hereby decline to answer that question
15 and assert my Fifth Amendment Privilege Against
16 Self-Incrimination as any answer to this question could be used,
17 or could lead to evidence that could be used, against me.
18     UNIDENTIFIED SPEAKER ON PHONE: Spell the last name
19 please.
20     MR. HEMPEY: P-r-e-m.
21     Q. Same question with regard to Sunday Namuo, and I
22 believe the last name is spelled N-a-u-m-o.
23     A. Due to a current investigation that is being conducted
24 by the State of Hawaii, I hereby decline to answer that question
25 and assert my Fifth Amendment Privilege Against

13 (Pages 46 to 49)

Page 50

1 Self-Incrimination as any answer to this question could be used,
2 or could lead to evidence that could be used, against me.
3    Q. Have you had any conversations or communications,
4 letters, or correspondence in this case that are not
5 attorney-client privilege with Irvil Kapua?
6    A. Due to a current investigation that is being conducted
7 by the State of Hawaii, I hereby decline to answer that question
8 and assert my Fifth Amendment Privilege Against
9 Self-Incrimination as any answer to this question could be used,
10 or could lead to evidence that could be used, against me.
11    Q. Same question as to Clay Arinaga.
12    A. Due to a current investigation that is being conducted
13 by the State of Hawaii, I hereby decline to answer that question
14 and assert my Fifth Amendment Privilege Against
15 Self-Incrimination as any answer to this question could be used,
16 or could lead to evidence that could be used, against me.
17    Q. Same question as to Roy Asher.
18    A. Due to a current investigation that is being conducted
19 by the State of Hawaii, I hereby decline to answer that question
20 and assert my Fifth Amendment Privilege Against
21 Self-Incrimination as any answer to this question could be used,
22 or could lead to evidence that could be used, against me.
23    Q. Same question as to Ale Quibilan.
24    A. Due to a current investigation that is being conducted
25 by the State of Hawaii, I hereby decline to answer that question

Page 51

1 and assert my Fifth Amendment Privilege Against
2 Self-Incrimination as any answer to this question could be used,
3 or could lead to evidence that could be used, against me.
4    Q. Same question as to Darren Rose.
5    A. Due to a current investigation that is being conducted
6 by the State of Hawaii, I hereby decline to answer that question
7 and assert my Fifth Amendment Privilege Against
8 Self-Incrimination as any answer to this question could be used,
9 or could lead to evidence that could be used, against me.
10    Q. Same question as to Jeff Callejo.
11    A. Due to a current investigation that is being conducted
12 by the State of Hawaii, I hereby decline to answer that question
13 and assert my Fifth Amendment Privilege Against
14 Self-Incrimination as any answer to this question could be used,
15 or could lead to evidence that could be used, against me.
16    Q. Same question as to Dan Abedilla.
17    A. Due to a current investigation that is being conducted
18 by the State of Hawaii, I hereby decline to answer that question
19 and assert my Fifth Amendment Privilege Against
20 Self-Incrimination as any answer to this question could be used,
21 or could lead to evidence that could be used, against me.
22    Q. Same question as to Fred De Busca.
23    A. Due to a current investigation that is being conducted
24 by the State of Hawaii, I hereby decline to answer that question
25 and assert my Fifth Amendment Privilege Against

Page 52

1 Self-Incrimination as any answer to this question could be used,
2 or could lead to evidence that could be used, against me.
3    Q. Same question as to Richard Minatoya.
4    A. Due to a current investigation that is being conducted
5 by the State of Hawaii, I hereby decline to answer that question
6 and assert my Fifth Amendment Privilege Against
7 Self-Incrimination as any answer to this question could be used,
8 or could lead to evidence that could be used, against me.
9    Q. Same question as to Steph Kaui.
10    A. Due to a current investigation that is being conducted
11 by the State of Hawaii, I hereby decline to answer that question
12 and assert my Fifth Amendment Privilege Against
13 Self-Incrimination as any answer to this question could be used,
14 or could lead to evidence that could be used, against me.
15    Q. Same question as Wes Kaui.
16    A. Due to a current investigation that is being conducted
17 by the State of Hawaii, I hereby decline to answer that question
18 and assert my Fifth Amendment Privilege Against
19 Self-Incrimination as any answer to this question could be used,
20 or could lead to evidence that could be used, against me.
21    Q. Same question as to Gerald Kim.
22    A. Due to a current investigation that is being conducted
23 by the State of Hawaii, I hereby decline to answer that question
24 and assert my Fifth Amendment Privilege Against
25 Self-Incrimination as any answer to this question could be used,

Page 53

1 or could lead to evidence that could be used, against me.
2    Q. Same question as to Carl Oliver.
3    A. Due to a current investigation that is being conducted
4 by the State of Hawaii, I hereby decline to answer that question
5 and assert my Fifth Amendment Privilege Against
6 Self-Incrimination as any answer to this question could be used,
7 or could lead to evidence that could be used, against me.
8    Q. And the second to the last one, same question as to
9 Paul Kanoho.
10    A. Due to a current investigation that is being conducted
11 by the State of Hawaii, I hereby decline to answer that question
12 and assert my Fifth Amendment Privilege Against
13 Self-Incrimination as any answer to this question could be used,
14 or could lead to evidence that could be used, against me.
15    MR. HOSHIBATA: Dan, this is John. Can we take a
16 one-minute break and I'd like to call you on your cell phone.
17    (Recess, 11:36 a.m.)
18    Q. Mr. Lum, apparently I neglected to ask, I skipped a
19 name after the objection. I want to ask you the same question
20 about correspondence and communications regarding any of the
21 facts alleged in this case with Wes Perreira.
22    A. Due to a current investigation that is being conducted
23 by the State of Hawaii, I hereby decline to answer that question
24 and assert my Fifth Amendment Privilege Against
25 Self-Incrimination as any answer to this question could be used,

14 (Pages 50 to 53)

Page 54

1  or could lead to evidence that could be used, against me.
2      Q.   Were you aware in December 2003, that Darla Abbatiello
3  had been alleging that she had been having problems with
4  executing search warrants and her feeling that Irvil Kapua may
5  have been interfering with that investigation?
6          MR. McGUIGAN: Objection. Vague and ambiguous. Lacks
7  foundation.
8          MR. TANAKA: Join.
9          MS. NAKEA-TRESLER: Join.
10     Q.   My question is, do you have any knowledge of that?
11     A.   Due to a current investigation that is being conducted
12  by the State of Hawaii, I hereby decline to answer that question
13  and assert my Fifth Amendment Privilege Against
14  Self-Incrimination as any answer to this question could be used,
15  or could lead to evidence that could be used, against me.
16     Q.   That's 12/03. Do you have any knowledge of whether in
17  January '04, Darla Abbatiello reported that a drug suspect
18  implicated Irvil Kapua in an allegation of corruption involving
19  drug money?
20         MR. TANAKA:  What is the date, Dan, again?
21         MR. McGUIGAN: Objection. Lacks foundation.
22         MR. HEMPEY: January '04 and I'm going to ask him if
23  you're aware.
24         MR. TANAKA: Join.
25         MR. McGUIGAN: No objection.

Page 55

1          MS. NAKEA-TRESLER: Join.
2      A.   Due to a current investigation that is being conducted
3  by the State of Hawaii, I hereby decline to answer that question
4  and assert my Fifth Amendment Privilege Against
5  Self-Incrimination as any answer to this question could be used,
6  or could lead to evidence that could be used, against me.
7      Q.   Was it reported to you on or about January 19, 2004,
8  that Irvil Kapua yelled fuck you at Darla Abbatiello at lunch in
9  a public restaurant?
10         MR. McGUIGAN: Objection. Lacks foundation.
11     A.   Due to a current investigation that is being conducted
12  by the State of Hawaii, I hereby decline to answer that question
13  and assert my Fifth Amendment Privilege Against
14  Self-Incrimination as any answer to this question could be used,
15  or could lead to evidence that could be used, against me.
16     Q.   Are you aware if there are any, are you or were you
17  aware of any witnesses to Irvil Kapua yelling fuck you toward
18  Darla Abbatiello in a public restaurant in or around
19  mid-January 2004?
20         MR. McGUIGAN: Objection. Lacks foundation.
21     A.   Due to a current investigation that is being conducted
22  by the State of Hawaii, I hereby decline to answer that question
23  and assert my Fifth Amendment Privilege Against
24  Self-Incrimination as any answer to this question could be used,
25  or could lead to evidence that could be used, against me.

Page 56

1      Q.   Did you ever interview or cause someone at the police
2  department to interview either Brad Pakini, P-a-k-i-n-i, his
3  wife, or Ale Quibilan with respect to an allegation that Irvil
4  Kapua yelled fuck you at Darla Abbatiello at a public
5  restaurant?
6          MR. McGUIGAN: Objection. Lacks foundation.
7      A.   Can you repeat that name again?
8      Q.   Brad Pakini or his wife or Ale Quibilan?
9      A.   Due to a current investigation that is being conducted
10  by the State of Hawaii, I hereby decline to answer that question
11  and assert my Fifth Amendment Privilege Against
12  Self-Incrimination as any answer to this question could be used,
13  or could lead to evidence that could be used, against me.
14     Q.   Was Mr. Ihu present when the report of the profanity
15  in the restaurant was made to you?
16         MR. McGUIGAN: Objection. Lacks foundation.
17         MR. MINKIN: Join.
18         MS. NAKEA-TRESLER: Join.
19     Q.   You can answer.
20     A.   Due to a current investigation that is being conducted
21  by the State of Hawaii, I hereby decline to answer that question
22  and assert my Fifth Amendment Privilege Against
23  Self-Incrimination as any answer to this question could be used,
24  or could lead to evidence that could be used, against me.
25     Q.   Also in January '04, did you learn --. Also in

Page 57

1  January '04, did you hear from any source that Irvil Kapua
2  called Darla Abbatiello a bitch while she was in the workplace?
3          MR. McGUIGAN: Objection. Lacks foundation.
4      A.   Due to a current investigation that is being conducted
5  by the State of Hawaii, I hereby decline to answer that question
6  and assert my Fifth Amendment Privilege Against
7  Self-Incrimination as any answer to this question could be used,
8  or could lead to evidence that could be used, against me.
9      Q.   Also on January 4, did you learn from any source or
10  hear from my source that Irvil Kapua referred to Darla
11  Abbatiello as a cunt in the workplace?
12         MR. McGUIGAN: Objection. Lacks foundation. It's
13  also been asked and answered.
14     A.   Due to a current investigation that is being conducted
15  by the State of Hawaii, I hereby decline to answer that question
16  and assert my Fifth Amendment Privilege Against
17  Self-Incrimination as any answer to this question could be used,
18  or could lead to evidence that could be used, against me.
19     Q.   Do you have any knowledge about whether, in
20  March 2004, Darla Abbatiello requested a temporary transfer to
21  patrol in Waimea?
22     A.   What's the date on that again?
23     Q.   March '04.
24         MR. MINKIN: Objection. Lack of foundation.
25         MS. NAKEA-TRESLER: Join.

15 (Pages 54 to 57)

Page 58

1    A. Due to a current investigation that is being conducted
2 by the State of Hawaii, I hereby decline to answer that question
3 and assert my Fifth Amendment Privilege Against
4 Self-Incrimination as any answer to this question could be used,
5 or could lead to evidence that could be used, against me.
6    Q. In or around June 2004 did you receive any information
7 or did anyone tell you that Irvil Kapua had been seen punching
8 walls at the police department?
9       MR. MINKIN: Objection. Lacks foundation.
10    A. Due to a current investigation that is being conducted
11 by the State of Hawaii, I hereby decline to answer that question
12 and assert my Fifth Amendment Privilege Against
13 Self-Incrimination as any answer to this question could be used,
14 or could lead to evidence that could be used, against me.
15    Q. In approximately June 2004, did Lt. Ventura tell you
16 that Dean Pigao had told Darla Abbatiello to avoid Kapua and use
17 the back door when she wanted to go to Vice?
18       MR. MINKIN: Objection. Lacks foundation.
19       MS. NAKEA-TRESLER: Join.
20    Q. You can answer.
21    A. Due to a current investigation that is being conducted
22 by the State of Hawaii, I hereby decline to answer that question
23 and assert my Fifth Amendment Privilege Against
24 Self-Incrimination as any answer to this question could be used,
25 or could lead to evidence that could be used, against me.

Page 59

1    Q. In approximately September -- strike that. Could you
2 describe whether or not -- strike that. From approximately June
3 2004 until at least January 2005, did Irvil Kapua work in Cell
4 Block?
5    A. Due to a current investigation that is being conducted
6 by the State of Hawaii, I hereby decline to answer that question
7 and assert my Fifth Amendment Privilege Against
8 Self-Incrimination as any answer to this question could be used,
9 or could lead to evidence that could be used, against me.
10    Q. In the same time frame, did Darla Abbatiello work in
11 Cell Block?
12    A. Due to a current investigation that is being conducted
13 by the State of Hawaii, I hereby decline to answer that question
14 and assert my Fifth Amendment Privilege Against
15 Self-Incrimination as any answer to this question could be used,
16 or could lead to evidence that could be used, against me.
17    Q. If Irvil Kapua was working in Cell Block during that
18 time and Darla Abbatiello arrested a suspect that had to be
19 booked, would she be able to book that subject within, based on
20 your knowledge of how things worked at the police department,
21 without running into Irvil Kapua?
22       MR. McGUIGAN: Objection. Vague and ambiguous.
23       MR. TANAKA: Also lacks foundation. Calls for
24 speculation.
25    A. Due to a current investigation that is being conducted

Page 60

1 by the State of Hawaii, I hereby decline to answer that question
2 and assert my Fifth Amendment Privilege Against
3 Self-Incrimination as any answer to this question could be used,
4 or could lead to evidence that could be used, against me.
5    Q. We're getting down to the home stretch. What, if any,
6 disciplinary action did you take against Irvil Kapua during your
7 tenure as police chief?
8    A. Due to a current investigation that is being conducted
9 by the State of Hawaii, I hereby decline to answer that question
10 and assert my Fifth Amendment Privilege Against
11 Self-Incrimination as any answer to this question could be used,
12 or could lead to evidence that could be used, against me.
13       MR. McGUIGAN: Objection. Lacks foundation.
14    Q. I'm sorry, you may answer --
15    A. Due to a current investigation that is being conducted
16 by the State of Hawaii, I hereby decline to answer that question
17 and assert my Fifth Amendment Privilege Against
18 Self-Incrimination as any answer to this question could be used,
19 or could lead to evidence that could be used, against me.
20    Q. Did you take any action against or toward Irvil Kapua
21 in response to allegations that he had either called Darla
22 Abbatiello a bitch in the workplace or had screamed at her in a
23 public restaurant or had been seen punching walls at the police
24 department?
25       MR. McGUIGAN: Objection. Lacks foundation.

Page 61

1    A. Due to a current investigation that is being conducted
2 by the State of Hawaii, I hereby decline to answer that question
3 and assert my Fifth Amendment Privilege Against
4 Self-Incrimination as any answer to this question could be used,
5 or could lead to evidence that could be used, against me.
6    Q. Based on your training and experience as police chief,
7 would it be reasonable to conclude that a female who must come
8 to work after her gun had been stolen, after she had received
9 written death threats, and possibly to face a man who is angry
10 at her, directs profanity at her in the workplace and in public
11 restaurants, and punches walls, would it be reasonable to
12 conclude that she might be experiencing fear every day that she
13 comes to work?
14       MR. McGUIGAN: Objection. Lacks foundation. Calls --
15       MR. MINKIN: -- vague and ambiguous. Calls for
16 speculation, and calls for a legal conclusion.
17       MR. McGUIGAN: Also argumentive.
18       MR. TANAKA: Join, and it's also compound.
19       MR. MINKIN: Join.
20       MS. NAKEA-TRESLER: John.
21    A. Due to a current investigation that is being conducted
22 by the State of Hawaii, I hereby decline to answer that question
23 and assert my Fifth Amendment Privilege Against
24 Self-Incrimination as any answer to this question could be used,
25 or could lead to evidence that could be used, against me.

16 (Pages 58 to 61)

Page 62

1    Q.  Are you aware of whether or not Darla Abbatiello
2  reported the April 2005 strip search incident to the Police
3  Commission?
4    A.  Due to a current investigation that is being conducted
5  by the State of Hawaii, I hereby decline to answer that question
6  and assert my Fifth Amendment Privilege Against
7  Self-Incrimination as any answer to this question could be used,
8  or could lead to evidence that could be used, against me.
9    Q.  When did you become aware of that?
10    A.  Due to a current investigation that is being conducted
11  by the State of Hawaii, I hereby decline to answer that question
12  and assert my Fifth Amendment Privilege Against
13  Self-Incrimination as any answer to this question could be used,
14  or could lead to evidence that could be used, against me.
15    Q.  Are you aware that after the March 2005 strip search
16  incident, Darla Abbatiello was removed as a field training
17  officer?
18    A.  Due to a current investigation that is being conducted
19  by the State of Hawaii, I hereby decline to answer that question
20  and assert my Fifth Amendment Privilege Against
21  Self-Incrimination as any answer to this question could be used,
22  or could lead to evidence that could be used, against me.
23    Q.  Do you know why Darla Abbatiello was removed as a
24  field training officer?
25       MR. TANAKA:  Objection. Lacks foundation. Calls for

Page 63

1  speculation.
2    Q.  If you know.
3    A.  Due to a current investigation that is being conducted
4  by the State of Hawaii, I hereby decline to answer that question
5  and assert my Fifth Amendment Privilege Against
6  Self-Incrimination as any answer to this question could be used,
7  or could lead to evidence that could be used, against me.
8    Q.  Isn't it true that Darla Abbatiello was removed as a
9  field training officer in retaliation for her various reports
10  related to the April strip search incident?
11       MR. TANAKA:  Same objections and it's argumentative.
12    A.  Due to a current investigation that is being conducted
13  by the State of Hawaii, I hereby decline to answer that question
14  and assert my Fifth Amendment Privilege Against
15  Self-Incrimination as any answer to this question could be used,
16  or could lead to evidence that could be used, against me.
17    Q.  At any time during your tenure as either assistant
18  chief, acting chief, or chief of police, were you aware of any
19  kind of a court order restraining Irvil Kapua's conduct as it
20  related to Darla Abbatiello?
21       MR. McGUIGAN:  Objection. Lacks foundation.
22    A.  Due to a current investigation that is being conducted
23  by the State of Hawaii, I hereby decline to answer that question
24  and assert my Fifth Amendment Privilege Against
25  Self-Incrimination as any answer to this question could be used,

Page 64

1  or could lead to evidence that could be used, against me.
2    Q.  What, if any, conditions were imposed by the Kaua`i
3  Police Department on Irvil Kapua because of the fact that there
4  was a court order restraining or governing his conduct toward
5  Darla Abbatiello?
6       MR. McGUIGAN:  Objection. Lacks foundation.
7    A.  Due to a current investigation that is being conducted
8  by the State of Hawaii, I hereby decline to answer that question
9  and assert my Fifth Amendment Privilege Against
10  Self-Incrimination as any answer to this question could be used,
11  or could lead to evidence that could be used, against me.
12    Q.  Was Irvil Kapua prohibited at any time during your
13  tenure as either chief or assistant chief from taking his gun
14  home from work?
15    A.  Due to a current investigation that is being conducted
16  by the State of Hawaii, I hereby decline to answer that question
17  and assert my Fifth Amendment Privilege Against
18  Self-Incrimination as any answer to this question could be used,
19  or could lead to evidence that could be used, against me.
20    Q.  If so, why was he prohibited from taking his gun home?
21    A.  Due to a current investigation that is being conducted
22  by the State of Hawaii, I hereby decline to answer that question
23  and assert my Fifth Amendment Privilege Against
24  Self-Incrimination as any answer to this question could be used,
25  or could lead to evidence that could be used, against me.

Page 65

1    Q.  Was there any prohibition against taking a gun home
2  from work at the police department imposed against Irvil Kapua's
3  wife?  If you know?
4    A.  Due to a current investigation that is being conducted
5  by the State of Hawaii, I hereby decline to answer that question
6  and assert my Fifth Amendment Privilege Against
7  Self-Incrimination as any answer to this question could be used,
8  or could lead to evidence that could be used, against me.
9    Q.  Can you tell what was, are you aware of whether or not
10  Det. Perreira and Mike Gordon interviewed Darla Abbatiello on or
11  about October 25, 2004?
12    A.  Due to a current investigation that is being conducted
13  by the State of Hawaii, I hereby decline to answer that question
14  and assert my Fifth Amendment Privilege Against
15  Self-Incrimination as any answer to this question could be used,
16  or could lead to evidence that could be used, against me.
17    Q.  Did either Det. Perreira or Mike Gordon report back to
18  you, either orally or in writing, the results of anything about
19  an interview they conducted with Darla Abbatiello on or about
20  October 25, 2004?
21    A.  Due to a current investigation that is being conducted
22  by the State of Hawaii, I hereby decline to answer that question
23  and assert my Fifth Amendment Privilege Against
24  Self-Incrimination as any answer to this question could be used,
25  or could lead to evidence that could be used, against me.

17 (Pages 62 to 65)

Page 66

1      Q.   Isn't it true that October 25, 2004 was the first time
2   that anyone at the Kaua`i Police Department, to your knowledge,
3   interviewed Darla Abbatiello about her missing gun?
4           MR. MINKIN:  Objection.  Lack of foundation.  Calls
5   for speculation.
6           MR. TANAKA:  Join.
7           MS. NAKEA-TRESLER:  Join.
8      A.   Due to a current investigation that is being conducted
9   by the State of Hawaii, I hereby decline to answer that question
10  and assert my Fifth Amendment Privilege Against
11  Self-Incrimination as any answer to this question could be used,
12  or could lead to evidence that could be used, against me.
13          MR. HEMPEY:  I don't have any further questions.  What
14  I propose we do is if you all would give me one minute to talk
15  to John Hoshibata back on the cell phone again.  John, why don't
16  you give me a call, but I think we're gonna wrap this up in the
17  next two to three minutes.
18          (Recess taken, 11:49 a.m. to 11:51 a.m.)
19          MR. HEMPEY:  It's Dan Hempey here and we're back on
20  the record and it's 10 minutes till 12:00 on October 12,
21  finishing up the deposition of K.C. Lum.
22     Q.   Mr. Lum, I just want to confirm.  Is it your position
23  today that you would be invoking the Fifth Amendment protection
24  privilege against self-incrimination with respect to any
25  question I ask you related to the Kaua`i Police Department?

Page 67

1           MR. TANAKA:  Just for the record, Dan, as was
2   indicated earlier in today's deposition by Mr. Castillo, that's
3   correct.  Anything that he is asked about the Kaua`i Police
4   Department, given the state's investigation, he is gonna not
5   testify to.  If the investigation is completed or we've been
6   given word that he can testify, then we will make him available
7   to present testimony regarding your question.
8      Q.   And my final question then is in the same vein, is it
9   your position today that you're going to assert the Fifth
10  Amendment Privilege against Self-Incrimination with respect to
11  any questions I ask you about the case at bar, specifically I'm
12  talking about the case of Darla Abbatiello versus the County of
13  Kaua`i and various other parties?
14          MR. TANAKA:  Well, he's asserted the Fifth with regard
15  to whatever question you have asked about the case.  So to the
16  extent that you've asked the questions, you're correct.
17          MR. HEMPEY:  Can you think of any topics that relate
18  to this case that I can approach that he will answer questions
19  on it?
20          MR. TANAKA:  I don't know.
21     Q.   So again, my question to the witness is, is it your
22  position that you're gonna assert the Fifth with respect to any
23  questions that I ask you today, that I could ask you today about
24  the Darla Abbatiello case?
25          MR. TANAKA:  Well, I'm gonna respond on his behalf the

Page 68

1   same way.  If it deals with the case and is dealing with her
2   involvement with the police department, then I guess the answer
3   is yes.  If you ask him questions that's not dealing with the
4   case about Darla or about, you know, whatever, then that may be
5   a question that you have to ask.
6           MR. HEMPEY:  So where the state of the record is, is
7   that if they explain any question I might, ask touches upon the
8   police department, you're asserting the Fifth?
9           MR. TANAKA:  He's asserting the Fifth.
10          MR. HEMPEY:  He's asserting the Fifth.
11          MR. TANAKA:  Yeah.
12     Q.   (By Mr. Hempey)  Is that right, Mr. Lum?
13     A.   That's correct.
14          MR. TANAKA:  I have no further questions.
15          (Discussion off the record and the deposition
16  concluded at 11:54 a.m.)
17
18
19
20
21
22
23
24
25

Page 69

1           I, K.C. LUM, hereby certify that I have read the
2   foregoing typewritten pages 1 through 69, inclusive, and
3   corrections, if any, were noted by me, and the same is now a
4   true and correct copy of my testimony.
5           Dated at,          , Hawai`i, this _____ day of
6   _____, 2006.
7
8
9                          K.C. LUM
10
11  Signed before me this _____ day
12  of _____, 2006.
13
14  _____
15  Witness to Deponent's Signature
16
17
18  CIVIL NO. CV04 00562 SOM BMK, DARLA ABBATIELLO v. COUNTY OF
19  KAUAI; KAUAI POLICE DEPARTMENT, taken on October 12, 2006, by
20  Joy C. Tahara, RPR, CSR
21
22
23
24
25

18 (Pages 66 to 69)

Page 70

```
 1              C E R T I F I C A T E
 2
 3   STATE OF HAWAI`I           )
 4                      ) ss.
 5   CITY AND COUNTY OF HONOLULU      )
 6          I, JOY C. TAHARA, RPR, CSR 408, Notary Public, State
 7   of Hawai`i, hereby certify:
 8          That on Thursday, October 12, 2006, at 10:17 a.m.,
 9   before me appeared K.C. LUM, the witness whose deposition is
10   contained herein; and that prior to being examined was duly
11   sworn;
12          That I am neither counsel for any of the parties
13   herein nor interested in any way in the outcome of this action;
14          That the deposition herein was by me taken down in
15   machine shorthand and thereafter reduced to print via
16   computer-aided transcription; that the foregoing represents, to
17   the best of my ability, a complete and accurate transcript of
18   the testimony of said witness.
19          DATED:  Honolulu, Hawai`i,  October 22, 2006 .
20
21
22          Notary Public, State of Hawai`i
23          My commission expires: 10/11/10
24
25
```

19 (Page 70)

```
 1                  C E R T I F I C A T E

 2

 3    STATE OF HAWAI`I                    )

 4                                        ) ss.

 5    CITY AND COUNTY OF HONOLULU         )

 6            I, JOY C. TAHARA, RPR, CSR 408, Notary Public, State

 7    of Hawai`i, hereby certify:

 8            That on Thursday, October 12, 2006, at 10:17 a.m.,

 9    before me appeared K.C. LUM, the witness whose deposition is

10    contained herein; and that prior to being examined was duly

11    sworn;

12            That I am neither counsel for any of the parties

13    herein nor interested in any way in the outcome of this action;

14            That the deposition herein was by me taken down in

15    machine shorthand and thereafter reduced to print via

16    computer-aided transcription; that the foregoing represents, to

17    the best of my ability, a complete and accurate transcript of

18    the testimony of said witness.

19            DATED:  Honolulu, Hawai`i, __October 22, 2006_.

20

21                              _____

22                              Notary Public, State of Hawai`i

23                              My commission expires: 10/11/10

24

25
```

RALPH ROSENBERG COURT REPORTERS, INC.
Honolulu, Hawaii (808) 524-2090