Daniel G. Hempey          7535
Law Office of Daniel G. Hempey
3175 Elua Street
Lihue, Hawaii 96766
Telephone No. (808) 823-0000
Facsimile No. (808) 632-2332
hemplaw@hawaii.rr.com

Margery S. Bronster        4750
John Hoshibata             3405
Jeannette H. Castagnetti   7211
Bronster Crabtree & Hoshibata
2300 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone No. (808) 524-5644
Facsimile No. (808) 599-1881
mbronster@bchlaw.net
jhoshibata@bchlaw.net
jcastagnetti@bchlaw.net
Attorneys for Plaintiff Darla Abbatiello

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DARLA ABBATIELLO, | ) CIVIL NO. CV04 00562 SOM BMK |
| | ) |
| Plaintiff, | ) FIRST AMENDED COMPLAINT; |
| | ) DEMAND FOR JURY TRIAL; |
| vs. | ) CERTIFICATE OF SERVICE |
| | ) |
| COUNTY OF KAUAI, KAUAI | ) |
| POLICE DEPARTMENT, K.C. LUM, | ) |
| WILFRED M. IHU, GORDON | ) |
| ISODA, DEAN PIGAO, and IRVIL | ) |
| KAPUA, | ) |
| | ) |
| Defendants. | ) Trial Date:  May 8, 2007 |
| | ) Time:       9:00 a.m. |
| | ) Judge:      Susan O. Mollway |

## FIRST AMENDED COMPLAINT

Plaintiff, DARLA ABBATIELLO, by and through her undersigned attorneys, and for her First Amended Complaint against the Defendants in this matter, states and avers as follows:

### PARTIES

1.     Plaintiff Darla Abbatiello ("Abbatiello" or "Plaintiff") is a Police Officer in the Kauai Police Department, and a citizen and resident of the State of Hawaii.

2.     Defendant County of Kauai ("County") is a municipal corporation, which has the power to sue and be sued, and is a political subdivision of the State of Hawaii.

3.     Defendant Kauai Police Department ("KPD") is an agency and entity of Defendant County of Kauai.

4.     Defendant K.C. Lum ("Chief Lum") is a citizen and resident of the State of Hawaii, and was the Acting Chief of Police and/or Chief of Police of the Kauai Police Department at relevant times for this action.

5.     Defendant Irvil Kapua ("Sergeant Kapua") is a citizen and resident of the State of Hawaii, and a Sergeant in the Kauai Police Department.

6.     At all times relevant to this Complaint, Defendants were acting within the course and scope of their employment with the County of Kauai.

1

7.    At all times relevant to this Complaint, Defendants were acting under color of state law.

8.    This Complaint is brought against Defendants KPD and/or the County, and includes, but is not limited to, claims originally asserted against Wilfred M. Ihu, Gordon Isoda, and Dean Pigao in their official capacities.  By this amended complaint, Plaintiff continues those claims and does not intend to dismiss or release those claims.

9.    This Complaint is brought against Defendants Lum and Kapua in their official and individual capacities.

## JURISDICTION AND VENUE

10.    All matters set forth in this Complaint arose in the State of Hawai'i, County of Kauai.

11.    This Court has jurisdiction over the federal claims in this action pursuant to 28 U.S.C. §§ 1331 & 1343, 42 U.S.C. §§ 1983, 1985, & 1988, as well as the First and Fourteenth Amendments of the Constitution of the United States. This Court has jurisdiction over what would otherwise be state law claims pursuant to 28 U.S.C. § 1367.  Those state law claims are so related to the claims in the action within the original jurisdiction of this Court, that they form part of the same case or controversy under Article III of the United States Constitution.

12.    Venue is proper pursuant to 28 U.S.C. § 1391 because this is the judicial district in which the Plaintiff resides, in which all Defendants reside, and in which the events and/or omissions giving rise to the claim occurred.

## FACTS

13.    Officer Darla Abbatiello has been employed by KPD for approximately fifteen years, since 1989. After being a reserve officer, Officer Abbatiello became a full-time officer in 1994. While a patrol officer, she received numerous awards and commendations, including Police Officer of the Year in 1999, honorable mention as Hawai'i's TOP COP by the National Association of Police Organizations 1999-2000, and commendation from the Hawaii State Law Enforcement Officials Association. She has been the KPD officer of the month on at least three separate occasions.

14.    In October 2002, Officer Abbatiello was the first female officer in KPD to be promoted to the Narcotics Vice Unit of KPD ("Vice"). The Vice Unit of KPD is primarily responsible for investigating and solving drug trafficking on Kauai.

15.    As a member of Vice, Officer Abbatiello was part of numerous investigations. Her main duties were to investigate drug complaints by gathering information, obtaining and executing search warrants.

3

16.     On or about December 5, 2003, Officer Abbatiello obtained a search warrant to search the residence of an individual, A.B.,[1] a suspected crystal methamphetamine or "ice" dealer.  Upon information and belief, A.B. was the "sometime" girlfriend of another known drug dealer, C.D.

17.     Once the search warrant was executed, Officer Abbatiello intended to arrest A.B. and "flip" her to arrest C.D. who Officer Abbatiello believed dealt larger quantities of crystal methamphetamine or ice than A.B. Officer Abbatiello was unable to locate A.B., and was therefore unable to execute the search warrant upon A.B. at that time.

18.     Upon information and belief, around the same time that Officer Abbatiello was looking for A.B. to execute the search warrant, Sergeant Kapua told Officer Abbatiello's commanding officer in Vice, Lieutenant E.F., that Vice should not work on either A.B. or C.D.

19.     Pursuant to KPD policy, Vice investigations, including the execution of search warrants, are to be kept strictly confidential between Vice members.  Sergeant Kapua was not a member of Vice at any time relevant to this Complaint.  On December 15, 2003, Sergeant G.H., who was a member of Vice, ordered Officer Abbatiello to meet with Sergeant Kapua and A.B.

---

[1] The names of certain individuals will be identified only in "John Doe" fashion.  A "key" regarding the names of those identified in John Doe fashion will be supplied to the attorneys for each of the Defendants upon request.  In addition, at an appropriate time, Plaintiff will seek to file the "key" under seal and/or amend the complaint.

20.    During the meeting between Sergeant Kapua, Abbatiello, and A.B., Sergeant Kapua registered A.B. as a confidential informant. Upon information and belief, Sergeant Kapua's registration of A.B. violated KPD rules regarding recruitment of confidential informants.

21.    Between December 16, 2003 and December 25, 2003, A.B. did not make any controlled buys from specific drug dealers as A.B. agreed, nor did A.B. attempt to work "bigger targets."

22.    Also during this period, Sergeant Kapua met with Officer Abbatiello and informed Abbatiello that A.B. telephoned him and was upset because Abbatiello asked A.B. to make a controlled buy from C.D. Officer Abbatiello informed Sergeant Kapua that C.D. was her main target and that she wanted to use A.B. as an informant against C.D. Sergeant Kapua responded that C.D. was "nothing" and "small time." (Several months later after the events described here, C.D. was arrested with nearly a half a million dollars worth of methamphetamine following a Federal drug task force investigation).

23.    Since A.B. proved to be an unproductive confidential informant, Officer Abbatiello returned to her original plan to serve the search warrant on A.B. and then "flip" her to obtain evidence against C.D., leading to C.D.'s eventual arrest. On December 26, 2003, Officer Abbatiello served the search warrant on A.B.

24.     Subsequently, Officer Abbatiello arrested A.B. and read A.B. her constitutional rights.  A.B. then waived her rights and indicated that she wanted to make a statement.  A.B. then admitted that she sold crystal methamphetamine with C.D., and that C.D. paid Sergeant Kapua six thousand dollars ($6,000.00) through a third person to protect both A.B. and C.D.

25.     Officer Abbatiello became severely distressed after receiving this information.  Sergeant Kapua has a reputation for having a violent temper and background.

26.     Upon information and belief, Sergeant Kapua has had numerous internal complaints lodged against him.  On one occasion, Sergeant Kapua allegedly threatened two police dispatchers with his hand on his gun.  The two dispatchers went out on stress leave.

27.     Upon information and belief, Sergeant Kapua had a complaint filed against him for pulling a criminal suspect out of a car and beating the suspect.

28.     Officer Abbatiello herself witnessed Sergeant Kapua on numerous occasions punch lockers in the locker room.

29.     For these reasons, Officer Abbatiello felt that she was in a dangerous situation and she feared for her safety.

30.     On December 28, 2003, due directly to the stress of the situation at work and fear of Sergeant Kapua, Officer Abbatiello was admitted to

the Kauai Veterans Memorial Hospital Emergency Unit for approximately ten hours. She suffered sleeplessness, diarrhea, dehydration, severe coughing, stomach pains, and other physical stress-related symptoms. She remained out on stress/sick leave for the next two days.

31.    On January 2, 2004, Officer Abbatiello returned to work and immediately reported to her supervisor, Lieutenant E.F., what A.B. had told her about Sergeant Kapua and the alleged corruption, and that Officer Abbatiello feared for her safety. Upon information and belief, Lieutenant E.F. informed then Acting Chief Wilfred Ihu and then Assistant Chief Gordon Isoda of the allegation by A.B. Also upon information and belief, Lieutenant E.F. informed Acting Chief Ihu and Assistant Chief Isoda that Officer Abbatiello expressed her fear of Sergeant Kapua and requested that Sergeant Kapua stay away from her. Upon information and belief, Lieutenant E.F. concurred with Officer Abbatiello's "stay away" request and requested that the Chief and Assistant Chief order Sergeant Kapua to stay away from Officer Abbatiello. Upon information and belief, no such orders were made and no corrective action was taken.

32.    On January 19, 2004, Officer Abbatiello reported the information she had received about Sergeant Kapua's activities in writing to Lieutenant E.F. Lieutenant E.F. then again reported Officer Abbatiello's allegations directly to Acting Chief Ihu in writing.

33.     Sometime thereafter, Chief Ihu assigned Officers I.J. and K.L. to conduct a criminal and administrative investigation as to Officer Abbatiello's complaints, respectively.

34.     Upon information and belief, Lieutenant E.F. has never been interviewed for any investigation regarding Officer Abbatiello's report or for the reported violations by Sergeant Kapua.

35.     Upon information and belief, no meaningful action has been taken in either the criminal or internal investigations.

36.     Sergeant Kapua's harassment of Officer Abbatiello has continued, however.  Upon information and belief, Sergeant Kapua has referred to Officer Abbatiello as a "bitch" and a "c**t" in the workplace.  Sergeant Kapua also screamed "f**k you" to Officer Abbatiello while in uniform in a crowded restaurant.

37.     In late January or early February 2004, Lieutenant E.F. met with Chief Ihu and asked again that Sergeant Kapua be ordered to stay away from Officer Abbatiello.  No official action was taken and the harassment continued.

38.     Following the allegations of Sergeant Kapua's corruption and his harassment of Officer Abbatiello, criminal suspects were being "tipped off" before Officer Abbatiello's search warrants were executed.

39.    In March 2004, Officer Abbatiello spoke with SHOPO (the state police union) representative Bryce Ponce about the possibility of temporarily transferring out of the Vice unit where she could work a significant distance away from Sergeant Kapua. Officer Abbatiello also approached Chief Ihu about the same subject. Both men told Officer Abbatiello that such a temporary transfer was acceptable. Neither SHOPO representative Ponce nor Chief Ihu mentioned the possibility of a pay cut.

40.    On March 31, 2004, Officer Abbatiello, relying on her conversation with Chief Ihu and due to the stress caused by Sergeant Kapua, requested in writing a temporary transfer to the Patrol Services Bureau in the District of Waimea "until this matter can be resolved." She also discussed this transfer with her direct supervisor, Lieutenant E.F.

41.    Having been effectively run out of Vice, Officer Abbatiello was transferred on approximately April 2, 2004. Shortly after the transfer, Lieutenant E.F. was told by Chief Ihu and Assistant Chief M.N. that there is no such thing as a temporary transfer and that Abbatiello's transfer was permanent. Chief Ihu stated that Abbatiello's transfer to patrol was permanent and that she was no longer in Vice.

9

42.   Upon information and belief, Lieutenant E.F. interpreted Officer Abbatiello's transfer to be a punishment for having reported Sergeant Kapua.

43.   Without any prior notice, Chief Ihu caused Abbatiello to be demoted from Police Officer II at a salary range of PO-9 to a Police Officer I salary at a Range of PO-7. This represented a substantial demotion and reduction in pay for Officer Abbatiello.

44.   On or about April 18, 2004, Officer Abbatiello was told by a fellow officer to check her desk dictionary located in Vice. Upon checking her personal dictionary, Officer Abbatiello saw that three red arrows were handwritten and pointed to the word "DEATH" in the dictionary. Next to the definition of "DEATH" was her name written in red ink with an arrow pointing to the definition. Officer Abbatiello reported the death threat to her supervisors, however, upon information and belief, no internal investigation or meaningful criminal investigation has taken place.

45.   On May 6, 2004, Officer Abbatiello received formal notice from the Kauai County Department of Personnel Services that she had been demoted to PO 7. Officer Abbatiello was never informed that her pay would be decreased nor did she ever receive notice that she was being demoted to PO 7.

46.    At or around this same period, K.C. Lum became acting Chief of KPD.  Upon information and belief, Chief Lum has taken no disciplinary action against Kapua.

47.    On or about June 23, 2004, Officer Abbatiello met with Chief Lum and Lieutenant O.P. in Chief Lum's office.  During this meeting, Sergeant Kapua stood outside Chief Lum's door and "stared down" Officer Abbatiello. Sergeant Kapua's behavior was so disruptive to the meeting that Chief Lum closed his office door.

48.    After the meeting, Officer Abbatiello, Lieutenant O.P., and Lieutenant Q.R. passed Sergeant Kapua's office and heard Kapua screaming and yelling.  Upon information and belief, Sergeant Kapua punched a hole in his office wall after seeing Officer Abbatiello in Chief Lum's office.

49.    Later that day, in spite of the continued harassment and death threat against Officer Abbatiello, Acting Assistant Chief Dean Pigao ordered Lieutenant O.P. to inform Officer Abbatiello that she must stay away from Sergeant Kapua and to use the back door when she had to go to the Vice Unit. Assistant Chief Pigao later informed Officer Abbatiello directly to stay away from Sergeant Kapua and to avoid walking past Kapua's office.

50.    Upon information and belief, Lieutenant O.P. informed Chief Lum that Acting Assistant Chief Pigao's stay away order to Officer Abbatiello was

11

improper. Chief Lum neither overruled nor changed Pigao's order to Abbatiello.
To this day, Officer Abbatiello is under orders to use the back door and to avoid
Sergeant Kapua.

      51.    Upon information and belief, KPD did not have an independent
policy against workplace violence until April 29, 2004, when Acting Chief Ihu
enacted KPD General Order 2004-2, regarding workplace violence. Prior to that,
KPD was governed by the County of Kauai's policy on workplace violence, which
has not been followed in Officer Abbatiello's case.

      52.    KPD Standards of Conduct set forth the required disciplinary
action for violations of the Standards of Conduct. A.B. made a statement that
Sergeant Kapua gained access to and used police information improperly to protect
A.B. and C.D. If true, this conduct would constitute violations of Standard of
Conduct VI-B 3, Security of Departmental Business, and Standard of Conduct VI-
B 6, Commission of any Criminal Act. These are both Class B standards, for
which the minimum disciplinary action is suspension of one working day and the
maximum disciplinary action is dismissal.

      53.    Sergeant Kapua's actions would also constitute a violation of
Standard of Conduct VI-C 1, Solicitation and Acceptance of Gift, Gratuities, Fees,
Rewards, Loans, Etc., a Class C Standard, for which the minimum disciplinary
action is written reprimand and the maximum disciplinary action is dismissal.

54.    After Officer Abbatiello reported A.B.'s statements about Sergeant Kapua's possible illegal activities, no investigation or disciplinary action took place.

55.    The above-mentioned acts of intimidation and violence by Sergeant Kapua upon Officer Abbatiello violated KPD Standard of Conduct VI-B 1, Physical Abuse. This is a Class B Standard, for which the minimum disciplinary action is suspension of one working day and the maximum disciplinary action is dismissal.

56.    Sergeant Kapua's actions would also constitute a violation of Standard of Conduct VI-C 4, Conduct Toward Superior and Subordinate Officers and Associates, a Class C Standard for which the minimum disciplinary action is written reprimand and the maximum disciplinary action is dismissal. In spite of Officer Abbatiello's numerous reports to her supervisors about Sergeant Kapua's behavior, no disciplinary actions were taken even where required under the KPD Standards of Conduct.

57.    On or about September 29, 2004, the Kauai Police Commission appointed Defendant Lum as KPD Chief of Police.

58.    On or about April 24, 2005, while on duty, Officer Abbatiello was ordered by O.P. to assist in a search of two female arrestees and to photograph

each of them in a naked condition. Lieutenant O.P. told Officer Abbatiello that he had a warrant to conduct the searches.

59.     Officer Abbatiello and one other officer, S.T., assisted in the searches of the arrestees with negative results for illegal substances or contraband.

60.     Officer Abbatiello believed that photographing two naked female arrestees who had already been searched with negative results was unnecessary, humiliating, degrading, and contrary to law.

61.     Officer Abbatiello refused to photograph the naked females under those conditions.

62.     The next day, Officer Abbatiello reported the above-referenced incident to Sergeant U.V. and E.F.

63.     On or about May 9, 2005, Officer Abbatiello reported the above-referenced incident in writing to Chief Lum and to the Kauai County Police Commission.

64.     Upon information and belief, no action was taken in response to Officer Abbatiello's complaints.

65.     Shortly thereafter, on or about May 25, 2005, Lieutenant K.L. told Officer Abbatiello that she was being removed from her position as Field Training Officer ("FTO") for KPD, despite that she had received specialized

training and had been certified as an FTO since 2000, and had been assigned FTO duties since 2000.

66.    Officer Abbatiello's assignment to FTO duties carried with it increased or additional compensation.

67.    Officer Abbatiello's removal from her FTO position was confirmed on May 25, 2005, by internal KPD e-mail.

68.    Officer Abbatiello's removal from her FTO position has resulted in a loss of compensation to her.

69.    Upon information and belief, on or about May 25, 2005, Defendant Lum drafted a new KPD policy regarding strip searches of arrestees.

70.    Upon information and belief, this proposed KPD strip search policy mirrored similar policy adopted by the Hawaii County Police Department relating to strip searches of arrestees, except KPD's proposed policy contained a new provision that KPD officers must photograph the search at every stage of the arrest process.

71.    Upon information and belief, Defendant Lum added or ordered this new provision to the policy that KPD officers must photograph the search of an arrestee at every stage of the arrest process.

72.    Upon information and belief, Defendant Lum backdated the effective date of the strip search policy to approximately one month before the

15

illegal strip search incident in which Plaintiff was ordered to photograph naked female arrestees.

73.    Upon information and belief, Defendant Lum submitted the backdated KPD policy to the Kauai County Counsel for review and approval.

74.    Upon information and belief, the Kauai County Counsel refused to sign off and approve the new proposed policy.

75.    Defendant Lum's creation of a new strip search policy and his attempts to backdate the policy to a period prior to Officer Abbatiello's May 9, 2005 complaints demonstrate his attempt to cover up the fact that Officer Abbatiello made a proper complaint about the photographing of female arrestees. This also constitutes further retaliation against Officer Abbatiello for her conduct in reporting misconduct within KPD.

76.    In addition to police officer salaries and benefits, KPD police officers, such as Plaintiff and others, routinely obtain and rely on overtime compensation to augment their salaries. Any overtime is in addition to a police officer's basic rate of pay.

77.    This additional compensation is used not only to increase monetary benefits received, but is also used to calculate retirement benefits, including "high three." "High three" refers to the highest three years of annual compensation of a public employee. In calculating retirement benefits, an

employee is entitled to receive an amount based on a formula which includes the

number of years worked at the specified percentage multiplied by the salary or pay

which is the average of the highest three years of annual compensation.

78.    Officer Abbatiello desired cellblock duty because she regularly

earned extra compensation in the past for performing this duty. Cellblock duty

includes intake of arrestees in KPD's cellblock facility.

79.    Officer Abbatiello had frequently been assigned cellblock duty

in the past for overtime pay and had every expectation of continuing to perform

such duties.

80.    On at least one occasion following her complaints against

Sergeant Kapua, when Officer Abbatiello worked in the cellblock, Sergeant Kapua

relieved her from cellblock duty. Officer Abbatiello felt threatened when this

occurred, and requested that such contact be prevented or avoided. A supervisor

responded to Officer Abbatiello's request by writing a note on the cellblock sign-in

log that Officer Abbatiello was no longer to work in cellblock until further notice.

81.    Other members of KPD who are unfriendly toward Officer

Abbatiello and who have threatened or intimidated Officer Abbatiello, including

Sergeant Kapua and Sergeant Kapua's wife (who also works for KPD), have been

assigned cellblock duty. Because of their presence, Officer Abbatiello has been

unable to work in the cellblock.

82.     Since Officer Abbatiello has been unable to work in cellblock as a result of the aforementioned circumstances, Officer Abbatiello has suffered and continues to suffer a loss of compensation.

83.     On or about October 27, 2005, Officer Abbatiello was served with a Kauai Police Commission complaint against her and other officers by complainant W.X., alleging that W.X. had been arrested, a body cavity search had been conducted on her, and photographs had been taken of the search.

84.     W.X. was one of the two female arrestees who was searched and photographed naked on April 24, 2005.

85.     On or about October 28, 2005, Officer Abbatiello received a letter from the Kauai Police Commission advising her that a Police Commission investigator would be investigating her.

86.     As of the date of this First Amended Complaint, neither Defendants Lum, KPD, nor the County have responded to Officer Abbatiello's May 9, 2005 complaint concerning the order that she photograph the naked female arrestees.

87.     Although Defendant Kapua admitted to calling Plaintiff a "bitch" and a "c**t" in the workplace, Defendants, including Defendant Lum have not taken any disciplinary action against Defendant Kapua for his admitted sexually degrading comments to Plaintiff. Such conduct on the part of Kapua

constitutes a violation of KPD Standards of Conduct VI-C-4 – Conduct Towards Superior and Subordinate Associates, a Class C Standard for which the minimum disciplinary action is written reprimand and the maximum disciplinary action is dismissal.

88.     In spite of Sergeant Kapua's admitted misconduct, Defendant Lum has taken no action against Sergeant Kapua. Yet, in connection with Defendant Lum's federal lawsuit in which he alleges a police commissioner called him "Hop Sing," on information and belief, Defendant Lum said that the police commissioner should be fired and Lum would be fired if had made such a comment.

## COUNT I
### (Federal Civil Rights Violations)

89.     Plaintiff re-alleges and hereby incorporates by this reference paragraphs 1 through 88 inclusive, as if set forth in full herein.

90.     Abbatiello's actions in reporting misconduct and violations of the law to her superiors constituted her exercise of her constitutionally protected interest in freedom of speech, constitutionally protected by the First Amendment to the Constitution of the United States. This protected speech was on a matter or matters of public concern within the meaning of <u>Rankin v. McPherson</u>, 483 U.S. 378 (1987). Thus, the speech was constitutionally protected.

91.     That protected speech was a substantial and/or motivating factor in the decision made by the County of Kauai and Chief Ihu in demoting Officer Abbatiello.  That protected speech was also a substantial and/or motivating factor in Lieutenant Pigao's reprimand to Officer Abbatiello and his asking her to "take the back stairs" in Police Headquarters.

92.     That protected speech was also a substantial and/or motivating factor in the removal of Officer Abbatiello from her FTO position and her cellblock assignment and in the failure and/or refusal of the County of Kauai and the Kauai Police Commission in responding to her complaint of May 9, 2005.

93.     The demotion and restraints on Abbatiello's movements at work, the removal of her FTO and cellblock positions and assignments and the failure and/or refusal of the County of Kauai in responding to her complaint of May 9, 2005, were done in retaliation for her reporting instances of misconduct and illegal action.  These actions were taken pursuant to color of a statute, ordinance, regulation, custom, or usage, in that the actions against Abbatiello and the inaction on matters which merited action to protect Abbatiello were taken and caused by Chief Ihu and Chief Lum, assistant Chief Pigao and other officials whose actions represent official policy, that is, an official who had final policymaking authority in the areas involved.  This custom amounted to a

deliberate indifference to or purposeful deprivation of Plaintiff's constitutional rights and the custom was the moving force behind the constitutional violation.

94.    That authority of Chiefs Ihu and Lum and Assistant Chief Pigao is established by the Revised Charter of the County of Kauai, which vests the Chief of Police with vast duties and powers, including preservation of the public peace, prevention of crime, detection and arrest of offenders against the law, preservation of life, protection of the rights of persons and property, and enforcement and prevention of violations of law.

95.    For purposes of 42 U.S.C. §§ 1983 and 1985, Defendants County of Kauai, KPD, Acting Chiefs Ihu and Lum, Assistant Acting Chiefs Isoda and Pigao, and Sergeant Kapua are persons.

96.    Each of those persons, under color of statute, ordinance, regulation, custom, and usage of the State of Hawaii, and its municipal subdivisions, did subject, and cause to be subjected, Plaintiff, a citizen of the United States, to the deprivation of rights, privileges, and immunities secured to her by the Constitution and laws of the United States.

97.    Those rights are the rights to exercise protected speech under the First Amendment to the Constitution of the United States described above, as well as the right to equal protection of the laws, and to due process of law.

98.    Defendants unlawfully demoted Plaintiff from her position in KPD, and by their intentional, systematic, and continuous misconduct toward Plaintiff, Defendants totally disregarded her rights to substantive and procedural due process guaranteed by the Fourteenth Amendment to the United States, and have caused Plaintiff injuries and irreparable harm for which Plaintiff is entitled to relief under 42 U.S.C. §§ 1983 and 1985.

99.    Defendants are liable to Plaintiff because Chiefs Ihu and Lum directly committed and commanded the violation of Plaintiff's rights, and because Chiefs Ihu and Lum indirectly caused the misconduct by Sergeant Kapua and Lieutenant Pigao by direction, and by reason of their acquiescence in a longstanding practice or custom which constitutes the standard operating procedure of KPD under Acting Chief Ihu and Chief Lum.

100.    Defendants are also liable to Plaintiff because Chiefs Ihu and Lum either directly committed and commanded the removal and/or loss of her FTO and cellblock positions and assignments, or indirectly caused the removal and/or loss of her FTO and cellblock positions and assignments through their actions, ratification and/or acquiescence.

101.    As a result of the unconstitutional deprivation of her rights by Defendants, Plaintiff has suffered monetary damages, and severe mental and emotional distress.

22

102.   The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

103.   Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

<u>**COUNT II**</u>
(Conspiracy to Violate Civil Rights)

104.   Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 103, inclusive, as if set forth in full herein.

105.   Defendants, and others, conspired to violate the civil rights of Plaintiff described more fully above, in violation of 42 U.S.C. § 1985.

106.   As a result of the unconstitutional deprivation of her rights by Defendants, Plaintiff has suffered monetary damages, and severe mental and emotional distress.

107.   The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

108.   Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

23

## COUNT III
(Whistleblower's Protection Act)

109.    Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 108, inclusive, as if set forth in full herein.

110.    Pursuant to Haw. Rev. Stat. § 378-61, Abbatiello is an employee of the County of Kauai and KPD.

111.    Pursuant to Haw. Rev. Stat. § 378-61, the County of Kauai and KPD are employers of Abbatiello.  In addition, Chiefs Ihu and Lum and Lieutenant Pigao, acting as agents of the County and KPD, were employers of Abbatiello.

112.    Defendants Ihu, Lum, and Pigao -- all employers of Abbatiello -- discriminated and retaliated against Abbatiello regarding her terms and conditions, location, and privileges of employment, because Abbatiello reported to a public body, as that term is defined in Haw. Rev. Stat. § 378-61, verbally, and in writing, violations and suspected violations of laws and rules adopted pursuant to laws of the state of Hawai'i, County of Kauai, and the United States.

113.    As a result of these actions by Defendants, Plaintiff has suffered monetary damages, and severe mental and emotional distress.

114.    As a result thereof, Abbatiello suffered actual damages and is entitled to relief pursuant to Haw. Rev. Stat. § 378-61, *et seq.*

24

## COUNT IV
### (Wrongful termination in violation of public policy)

115.  Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 114, inclusive, as if set forth in full herein.

116.  Defendants' actions contravened a clear mandate of public policy within the meaning of <u>Parnar v. Americana Hotels, Inc.</u>, 65 Haw. 370, 652 P.2d 625 (1982), so as to render Defendants liable for the tort of wrongful termination in violation of public policy.  Such transfer and demotion was a violation of the public policy against retaliation as expressed by the letter and purpose of, the Hawai'i Whistleblowers Protection Act, among others.

117.  As a result of these actions by Defendants, Plaintiff has suffered monetary damages, and severe mental and emotional distress.

118.  The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

119.  Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

## COUNT V
### (Employer negligence in supervision/retention of employee)

120.  Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 119, inclusive, as if set forth in full herein.

25

121.  Defendants Ihu and Lum, the KPD and the County were negligent in their supervision and retention of Sergeant Kapua within the meaning of Abraham v. S.E. Onorato Garages, 50 Haw. 628 (1968) and other cases.  This negligence is the proximate cause of Plaintiff's injuries.

122.  Defendants Ihu and Lum, the KPD and the County knew or should have known of the necessity and opportunity for exercising control over Sergeant Kapua.  Given the many prior instances of Sergeant Kapua's violations of police policy and his violence, KPD, the County, and Chiefs Ihu and Lum had clear notice of Sergeant Kapua's dangerousness, and failed to ensure that the KPD Standards of Conduct, including the Guide for Disciplinary Action, were met. Therefore, the harm caused to Plaintiff Abbatiello by Sergeant Kapua was foreseeable.  The harm includes mental anguish, wage loss, and other damages.

123.  Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

## COUNT VI
(Intentional infliction of emotional distress)

124.  Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 123, inclusive, as if set forth in full herein.

125.  The actions of Defendants, as set forth above, were intentional and unreasonable.  Defendants did or should have realized that their actions would likely cause emotional distress.  The conduct alleged herein was malicious,

26

reckless, beyond the bounds of conduct recognized as appropriate by society, and extreme and outrageous, so as to render Defendants liable for the tort of intentional infliction of emotional distress.

126.   As a result of these actions by Defendants, Plaintiff has suffered monetary damages, and severe mental anguish and emotional distress.

127.   The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

128.   Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

## COUNT VII
### (Negligent infliction of emotional distress)

129.   Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 128, inclusive, as if set forth in full herein.

130.   The actions of Defendants, as set forth above, were negligent, and foreseeably resulted in physical harm to Plaintiff, and was a legal cause of injury to Plaintiff.

131.   As a result of these actions by Defendants, Plaintiff has suffered monetary damages, physical harm and mental anguish and emotional distress with which a reasonable person of normal mental health could not cope.

132. The actions of Defendants were wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

133. Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

## COUNT VIII
(Violation of Rights Secured to Plaintiff Pursuant to
the Constitution of the State of Hawaii)

134. Plaintiff realleges and hereby incorporates by this reference paragraphs 1 through 133, inclusive, as if set forth in full herein.

135. The actions of Defendants as set forth above, violated Plaintiff's rights secured to her by the Constitution of the state of Hawai'i, including, but not limited to, rights to freedom of speech, due process of law, equal protection of the law, and the enjoyment of her civil rights.

136. As a result of the unconstitutional deprivation of her rights by Defendants, Plaintiff has suffered monetary damages, and severe mental and emotional distress.

137. The actions of Defendants were willful, wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle Plaintiff to recover punitive damages.

138.    Thus, Plaintiff is entitled to recover general, special, and punitive damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered as follows:

(1)    Pursuant to 28 U.S.C. § 1343, and 42 U.S.C. §§ 1983, 1985 & 1988, declaratory and injunctive relief restoring Plaintiff to her previous position including but not limited to her FTO and cellblock position and assignments, with assurances of a safe workplace without unreasonable restrictions or conditions on employment, for an injunction against Defendants barring them from continuing their illegal activities, and their continuing deprivation of Plaintiff's civil rights, for an injunction barring Defendants from retaliating against Plaintiff, for general, special, and punitive damages in an amount to be proven at trial, for costs and attorneys' fees, and for such other and further relief as the Court deems just and proper;

(2)    Pursuant to Haw. Rev. Stat. §§ 378-63 & 378-64, appropriate injunctive relief and actual damages as therein defined, including injunctive relief requiring the reinstatement of Plaintiff to her previous position including but not limited to her FTO position and cellblock assignments, with assurances of a safe workplace without unreasonable restrictions or conditions on employment, and the

other injunctive relief requested above, for costs and attorneys' fees, and such

other and further relief as the Court deems just and proper; and

        (3)    Pursuant to all other claims and causes of action, appropriate

injunctive and declaratory relief, including the injunctive and declaratory relief

described above, general, special, and punitive damages in an amount to be proven

at trial, attorneys' fees and costs, and such other and further relief as the Court

deems just and proper.

        DATED: Honolulu, Hawai'i, April 21, 2006.

                                /s/ John Hoshibata
                              Daniel G. Hempey
                              Margery S. Bronster
                              John Hoshibata
                              Jeannette H. Castagnetti
                              Attorneys for Plaintiff
                              DARLA ABBATIELLO

Daniel G. Hempey          7535
Law Office of Daniel G. Hempey
3175 Elua Street
Lihue, Hawaii 96766
Telephone No. (808) 823-0000
Facsimile No. (808) 632-2332
hemplaw@hawaii.rr.com

Margery S. Bronster       4750
John Hoshibata            3405
Jeannette H. Castagnetti  7211
Bronster Crabtree & Hoshibata
2300 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone No. (808) 524-5644
Facsimile No. (808) 599-1881
mbronster@bchlaw.net
jhoshibata@bchlaw.net
jcastagnetti@bchlaw.net
Attorneys for Plaintiff Darla Abbatiello

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DARLA ABBATIELLO, | CIVIL NO. CV04 00562 SOM BMK |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| vs. | |
| COUNTY OF KAUAI, KAUAI POLICE DEPARTMENT, K.C. LUM, WILFRED M. IHU, GORDON ISODA, DEAN PIGAO, and IRVIL KAPUA, | |
| Defendants. | Trial Date:  May 8, 2007<br>Time:        9:00 a.m.<br>Judge:       Susan O. Mollway |

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff above-named, by and through her attorneys Daniel G. Hempey and Bronster Crabtree & Hoshibata, hereby demands trial by jury on all issues triable herein.

DATED: Honolulu, Hawaii, April 21, 2006.

/s/ John Hoshibata
Daniel G. Hempey
Margery S. Bronster
John Hoshibata
Jeannette H. Castagnetti
Attorneys for Plaintiff
DARLA ABBATIELLO

2

Daniel G. Hempey          7535
Law Office of Daniel G. Hempey
3175 Elua Street
Lihue, Hawaii 96766
Telephone No. (808) 823-0000
Facsimile No. (808) 632-2332
hemplaw@hawaii.rr.com

Margery S. Bronster        4750
John Hoshibata             3405
Jeannette H. Castagnetti   7211
Bronster Crabtree & Hoshibata
2300 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone No. (808) 524-5644
Facsimile No. (808) 599-1881
mbronster@bchlaw.net
jhoshibata@bchlaw.net
jcastagnetti@bchlaw.net
Attorneys for Plaintiff Darla Abbatiello

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DARLA ABBATIELLO, | ) CIVIL NO. CV04 00562 SOM BMK |
| | ) |
| Plaintiff, | ) DEMAND FOR JURY TRIAL |
| | ) |
| vs. | ) |
| | ) |
| COUNTY OF KAUAI, KAUAI | ) |
| POLICE DEPARTMENT, K.C. LUM, | ) |
| WILFRED M. IHU, GORDON | ) |
| ISODA, DEAN PIGAO, and IRVIL | ) |
| KAPUA, | ) |
| | ) Trial Date: May 8, 2007 |
| Defendants. | ) Time:       9:00 a.m. |
| | ) Judge:      Susan O. Mollway |

## DEMAND FOR JURY TRIAL

Plaintiff above-named, by and through her attorneys Daniel G.

Hempey and Bronster Crabtree & Hoshibata, hereby demands trial by jury on all

issues triable herein.

DATED: Honolulu, Hawaii, April 21, 2006.

/s/ John Hoshibata
Daniel G. Hempey
Margery S. Bronster
John Hoshibata
Jeannette H. Castagnetti
Attorneys for Plaintiff
DARLA ABBATIELLO

2

Daniel G. Hempey             7535
Law office of Daniel G. Hempey
3175 Elua Street
Lihue, Hawaii  96766
Telephone No.:    (808) 823-0000
Facsimile No.:     (808) 632-2332
hemplaw@hawaii.rr.com

Margery S. Bronster          4750
John Hoshibata               3141
Jeannette H. Castagnetti     7211
Bronster Crabtree & Hoshibata
2300 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii  96813
Telephone No.:    (808) 524-5644
Facsimile No.:     (808) 599-1881
mbronster@bchlaw.net
jhoshibata@bchlaw.net
jcastagnetti@bchlaw.net

Attorneys for Plaintiff
DARLA ABBATIELLO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DARLA ABBATIELLO,<br><br>                    Plaintiff,<br><br>          vs.<br><br>COUNTY OF KAUAI, KAUAI POLICE DEPARTMENT, K.C. LUM, WILFRED M. IHU, GORDON ISODA, DEAN PIGAO, IRVIL KAPUA,<br><br>                    Defendants. | ) CIVIL NO. CV04 00562 SOM BMK<br>)<br>) CERTIFICATE OF SERVICE<br>)<br>) (Re:  First Amended Complaint;<br>) Demand for Jury Trial)<br>)<br>)<br>)<br>)<br>)<br>) Trial Date:  May 8, 2007<br>) Time:        9:00 a.m.<br>) Judge:       Susan O. Mollway |

## CERTIFICATE OF SERVICE

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses on April 21, 2006:

**Served Electronically through CM/ECF:**

BECKY T. CHESTNUT, ESQ.                          chestnut@m4law.com
DAVID J. MINKIN, ESQ.                            minkin@m4law.com
    Attorneys for Defendants K.C. LUM,      saguibo@m4law.com
    WILFRED M. IHU, GORDON ISODA
    and DEAN PIGAO

MICHAEL J. McGUIGAN, ESQ.                        mjm@roplaw.com
    Attorney for Defendant IRVIL KAPUA

CHRISTIANE L. NAKEA-TRESLER, ESQ.               cntresler@kauai.gov
    Attorneys for Defendants
    COUNTY OF KAUAI and
    KAUAI POLICE DEPARTMENT

Served by First Class Mail:

    DANIEL G. HEMPEY, ESQ.
    Law Office of Daniel G. Hempey
    3175 Elua Street
    Lihue, Hawaii 96766
        Attorney for Plaintiff
        DARLA ABBATIELLO

LISA W. CATALDO, ESQ.
McCorriston Miller Mukai MacKinnon LLP
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawaii 96813
      Attorney for Defendants
      K.C. LUM, WILFRED M. IHU,
      GORDON ISODA and DEAN PIGAO

LANI D.H. NAKAZAWA, ESQ.
Office of the County Attorney
4444 Rice Street, Suite 220
Lihue, Hawaii  96766
      Attorney for Defendants
      COUNTY OF KAUAI and
      KAUAI POLICE DEPARTMENT

CARY T. TANAKA, ESQ.
745 Fort Street, Suite 510
Honolulu, Hawaii  96813
      Attorney for Defendant
      K.C. LUM

    DATED:  Honolulu, Hawaii, April 21, 2006.


          /s/ John Hoshibata
      MARGERY S. BRONSTER
      JOHN HOSHIBATA
      JEANNETTE HOLMES CASTAGNETTI
      DANIEL G. HEMPEY
         Attorneys for Plaintiff
         DARLA ABBATIELLO