CHRISTIANE L. NAKEA-TRESLER        4857-0
Office of the County Attorney
4444 Rice Street, Suite 220
Līhu`e, Hawai`i 96766
Telephone: (808) 241-6315
Facsimile: (808) 241-6319
Email: cntresler@kauai.gov

Attorneys for Defendants COUNTY OF KAUA`I
and KAUA`I POLICE DEPARTMENT

McCORRISTON MILLER MUKAI MacKINNON LLP

DAVID J. MINKIN            3639-0
BECKY T. CHESTNUT          7756-0
KARA M.L. YOUNG            8411-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawai`i  96813
Telephone:  (808) 529-7300
Facsimile:  (808) 524-8293
Email:  minkin@m4law.com

Attorneys for Defendants COUNTY OF KAUA`I,
KAUA`I POLICE DEPARTMENT, WILFRED M. IHU,
GORDON ISODA and DEAN PIGAO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| DARLA ABBATIELLO, | ) | CIVIL NO. CV04-00562 SOM BMK |
| | ) | |
| Plaintiff, | ) | REPLY MEMORANDUM IN |
| | ) | SUPPORT OF DEFENDANTS |
| vs. | ) | COUNTY OF KAUA`I, KAUA`I |
| | ) | POLICE DEPARTMENT, WILFRED |
| COUNTY OF KAUAI, KAUAI | ) | M. IHU, GORDON ISODA AND |
| POLICE DEPARTMENT, K.C. LUM, | ) | DEAN PIGAO'S MOTION FOR |
| WILFRED M. IHU, GORDON | ) | SUMMARY JUDGMENT ON, OR |

154411.1

ISODA, DEAN PIGAO, IRVIL
KAPUA,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

IN THE ALTERNATIVE
DISMISSAL OF, COUNTS I AND II
OF THE FIRST AMENDED
COMPLAINT, AND DISMISSAL
OF COUNTS V AND VII OF THE
FIRST AMENDED COMPLAINT
(FILED ON 12/12/06);
DECLARATION OF DAVID J.
MINKIN; CERTIFICATE OF
WORD COUNT; CERTIFICATE OF
SERVICE

**HEARING**
Date:       February 6, 2007
Time:       9:00 a.m.
Judge:     Susan Oki Mollway

TRIAL:    MAY 8, 2007

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS COUNTY OF
KAUA`I, KAUA`I POLICE DEPARTMENT, WILFRED M. IHU, GORDON
ISODA AND DEAN PIGAO'S MOTION FOR SUMMARY JUDGMENT ON,
OR IN THE ALTERNATIVE DISMISSAL OF, COUNTS I AND II OF THE
FIRST AMENDED COMPLAINT, AND DISMISSAL OF COUNTS V AND VII
OF THE FIRST AMENDED COMPLAINT (FILED ON 12/12/06)

TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................ 1

II.   ARGUMENT ............................................................................. 2

      A.   Plaintiff's Unauthenticated Exhibits Must be Disregarded ................ 2

      B.   Defendants are Entitled to Summary Judgment on or Dismissal
           of Plaintiff's Federal Claims Because Plaintiff Fails to State a
           Violation of the First Amendment...................................................... 4

           1.   Plaintiff's Reports Were Made Pursuant to Her Official
                Duties ................................................................................ 4

           2.   *Freitag* is Controlling............................................................ 9

           3.   Plaintiff's Reports Were Based on Personal Interests, Not
                a Public Concern ................................................................ 12

           4.   Plaintiff's 42 U.S.C. § 1983 Claim Fails................................. 13

           5.   Plaintiff's 42 U.S.C. § 1985 Claim Fails................................. 14

      C.   Individual Defendants are Entitled to Qualified Immunity............... 14

      D.   Defendants are Entitled to Dismissal of Plaintiff's Claims for
           Negligence under Hawai`i's Workers' Compensation Act............... 16

      E.   In the Event the Federal Claims are Dismissed, Defendants
           Request that the Court also Dismiss the State Claims ...................... 18

III.  CONCLUSION........................................................................... 19

## TABLE OF AUTHORITIES

<u>Page(s)</u>

**Cases**

<u>Barclay v. Michalsky</u>,
    451 F. Supp. 2d 386 (D. Conn. 2006) ................................................................. 11

<u>Battle v. Board of Regents</u>,
    468 F.3d 755 (11th Cir. 2006) ...................................................................... 8

<u>Beyene v. Coleman Sec. Svcs, Inc.</u>,
    854 F.2d 1179 (9th Cir. 1988) .................................................................. 2, 3

<u>Brewster v. Board of Education of Lynwood Unified School District</u>,
    149 F.3d 971 (9th Cir. 1998) ...................................................................... 15

<u>Brown v. Lucky Stores, Inc.</u>,
    246 F.3d 1182 (9th Cir. 2001) .................................................................. 19

<u>Connick v. Myers</u>,
    461 U.S. 138 (1983)................................................................................. 12

<u>Ellison v. Northwest Airlines, Inc.</u>,
    938 F. Supp. 1503 (D. Haw. 1996)..................................................... 16, 17

<u>Freitag v. Ayers</u>,
    468 F.3d 528 (9th Cir. 2006) ................................................................. 9, 10

<u>Garcetti v. Ceballos</u>,
    126 S. Ct. 1951 (2006).................................................................... passim

<u>Green v. Bd. of County Comm'rs</u>,
    472 F.3d 794 (10th Cir. 2007) ..................................................................... 8

<u>Harlow v. Fitzgerald</u>,
    457 U.S. 800 (1982)................................................................................. 14

<u>Iddings v. Mee-Lee</u>,
    82 Hawai`i 1, 919 P.2d 263 (1996) ............................................................ 17

Jones v. Community Redevelopment Agency of City of Los Angeles,
    733 F.2d 646 (9th Cir. 1984) ........................................................................ 18

Kahale v. ADT Automotive Services, Inc.,
    2 F. Supp. 2d 1295 (D. Haw. 1998)............................................................. 18

Kodrea v. City of Kokomo,
    458 F. Supp. 2d 857 (S.D. Ind. 2006)........................................................... 11

Malley v. Briggs,
    475 U.S. 335 (1986).......................................................................................... 14

Marshall v. Univ. of Hawaii,
    9 Haw. App. 21, 821 P.2d 937 (1991)........................................................ 17

Mills v. City of Evansville,
    452 F.3d 646 (7th Cir. 2006) ...................................................................... 8, 9

Morishige v. Spencecliff Corp.,
    720 F. Supp. 829 (D. Haw. 1989)................................................................. 18

Moss v. Technicolor, Inc.,
    48 Fed. Appx. 638 (9th Cir. 2002) ............................................................. 19

Pickering v. Board of Education,
    391 U.S. 563 (1968)...................................................................................... 4, 15

Rohr v. Nehls,
    2006 WL 2927657 (E.D. Wis. Oct. 11, 2006)........................................ 11, 12

Roth v. Veteran's Admin. of United States,
    856 F.2d 1401 (9th Cir. 1988) ..................................................................... 12

Ruotolo v. City of New York,
    2006 WL 2033662 (S.D.N.Y. July 19, 2006)............................................. 10

Saucier v. Katz,
    533 U.S. 194 (2001)........................................................................................ 14

Schultz v. Sundberg,
    759 F.2d 714 (9th Cir. 1985) ....................................................................... 18

Shewbridge v. El Dorado Irrigation Dist.,
  2006 WL 3741878 (E.D. Cal. Dec. 19, 2006) ..................................................... 12

Strutsky v. Marut,
  206 WL 2660691 (M.D. Pa. Sept. 15, 2006) ......................................................... 11

Thompson v. City of Tucson Water Department,
  2006 WL 3063500 (D. Ariz. Oct. 27, 2006) ........................................................ 10

Williams v. United States,
  405 F.2d 951 (9th Cir. 1969) .................................................................................. 19

**Federal Statutes**

42 U.S.C. § 1983 ................................................................................... 1, 13, 14, 18

42 U.S.C. § 1985 .................................................................................................... 1, 14

**State Statutes**

H.R.S. § 386-5 ............................................................................................................ 16

H.R.S. § 386-8 .................................................................................................... 16, 17

**Federal Rules**

Fed. R. Civ. P. 34 ........................................................................................................ 3

Fed. R. Civ. P. 56(e) ................................................................................................... 2

Fed. R. Evid. 901(a) .................................................................................................... 2

Fed. R. Evid. 902(4) .................................................................................................... 3

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS COUNTY OF
KAUA`I, KAUA`I POLICE DEPARTMENT, WILFRED M. IHU, GORDON
ISODA AND DEAN PIGAO'S MOTION FOR SUMMARY JUDGMENT ON,
OR IN THE ALTERNATIVE DISMISSAL OF, COUNTS I AND II OF THE
FIRST AMENDED COMPLAINT, AND DISMISSAL OF COUNTS V AND VII
OF THE FIRST AMENDED COMPLAINT (FILED ON 12/12/06)

I.     INTRODUCTION

Defendants County of Kaua`i, Kaua`i Police Department ("KPD"),

Wilfred M. Ihu, Gordon Isoda, and Dean Pigao (collectively "Defendants") hereby

submit their reply memorandum in support of their Motion for Summary Judgment

on, or in the Alternative Dismissal of, Counts I and II of the First Amended

Complaint, and Dismissal of Counts V and VII of the First Amended Complaint

(filed December 12, 2006) ("Motion").

Plaintiff's opposition to the Motion fails to demonstrate the existence of a

question of material fact as to her claims under 42 U.S.C. §§ 1983 and 1985, and

those claims therefore fail.  Even if this were not the case, and the Court were to

find that there exists a question of material fact, Defendants Ihu, Isoda, and Pigao

(collectively, "Individual Defendants") are entitled to qualified immunity as to

these federal claims.  Plaintiff is also precluded from bringing negligence-based

state law claims under Hawai`i's Workers' Compensation Act.

154411.1

II.    <u>ARGUMENT</u>

A.    <u>Plaintiff's Unauthenticated Exhibits Must be Disregarded</u>

Many of Plaintiff's factual assertions rely upon documents that are not properly authenticated.  Consequently, these documents and the arguments that rely upon them must be disregarded.

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."  <u>Beyene v. Coleman Sec. Svcs., Inc.</u>, 854 F.2d 1179, 1181-82 (9th Cir. 1988) (citing, *inter alia*, FRCP 56(e)). Rule 901(a) of the Federal Rules of Evidence ("FRE") requires authentication or identification as a condition precedent to admissibility and, before evidence is admitted, a foundation must be laid "by evidence sufficient to support a finding that the matter in question is what its proponent claims."  <u>Id.</u>

Here, each of the 32 exhibits attached to *Plaintiff's Response to Defendants County of Kaua`i, Kaua`i Police Department, Wilfred M. Ihu, Gordon Isoda, and Dean Pigao's Separate and Concise Statement of Fact in Support of the Motion for Summary Judgment on, or in the Alternative Dismissal of, Counts I and II of the First Amended Complaint, and Dismissal of Counts V and VII of the First Amended Complaint* purport to be authenticated solely by the declaration of Plaintiff's counsel.  A writing, however "is not authenticated simply by attaching it to an affidavit, even if the writing appears on its face to have originated from some

governmental agency." <u>Beyene</u>, 854 F.2d at 1182. Instead, "[t]he foundation is laid for receiving a document in evidence by the testimony of a witness <u>with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery</u>." <u>Id.</u> (emphasis added).

Exhibits 3, 4, 19, 21, 24 and 25 purport to be copies of memoranda sent from Plaintiff to individuals within the Kaua`i Police Department, the police officers' union SHOPO, or both. Similarly, exhibits 7, 16, 18, 22, 23, and 29 purport to be correspondence among individuals within the County of Kaua`i. None of this correspondence was addressed from or to Plaintiff's counsel, and Plaintiff's counsel testifies to no specific personal knowledge of the documents to satisfy the authentication requirements. Consequently, the documents are inadmissible.

Exhibits 9, 11, 12, 13, 14, 15, 17 and 26 purport to be records from the KPD, but none of these documents are authenticated by, for example, the drafter or custodian of records, and none are certified pursuant to FRE Rule 902(4). Consequently, exhibits 3, 4, 7, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, and 29 must be disregarded for purposes of this Motion.

Moreover, Defendants object to the use of Exhibits 3, 5, 11, 12, 13, 19, 20, 24, and 25 on grounds that Plaintiff has not previously produced these documents pursuant to Defendants' prior discovery requests and as required by FRCP 34. <u>See</u> Declaration of David J. Minkin, attached.

B.    <u>Defendants are Entitled to Summary Judgment on or Dismissal of Plaintiff's Federal Claims Because Plaintiff Fails to State a Violation of the First Amendment</u>

    1.    <u>Plaintiff's Reports Were Made Pursuant to Her Official Duties</u>

In <u>Garcetti v. Ceballos</u>, 126 S. Ct. 1951, 1960 (2006), the Supreme Court stated, "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  To illustrate this distinction between speech as an employee and speech as a citizen, the Court contrasted Ceballos' report with "the expressions made by the speaker in <u>Pickering [v. Board of Education</u>, 391 U.S. 563 (1968)], whose letter to the newspaper had no official significance and bore similarities to letters submitted by numerous citizens every day."  <u>Id.</u>  The Court observed that, in the case before it, Ceballos did not act as a citizen when he went about conducting his daily professional activities, and therefore "he did not speak as a citizen by writing a memo that addressed the proper disposition of a pending criminal case."  To the contrary, "[w]hen he went to work and performed the tasks he was paid to perform, Ceballos acted as a government employee.  The fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance."  <u>Id.</u>

While the Garcetti Court did not, as Plaintiff points out, set out a "comprehensive framework for defining the scope of an employee's duties where there is room for serious debate," id. at 1961, the Court's opinion did provide guidance for such a determination.  For example, the Court noted that "[e]mployees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government." Id. (emphasis added).

The Court addressed the dissent's concern, echoed by Plaintiff at page 13 of her Memorandum in Opposition, that employers might prospectively restrict employees' speech by creating "excessively broad job descriptions."  That is not the case here, however, because Garcetti was decided well after the filing of Plaintiff's complaint, and well after issuance of the applicable standards of conduct requiring officers to report criminal activity.  Plaintiff has also not alleged these standards to be "excessively broad" so as to restrict speech impermissibly.

The Garcetti Court also addressed the Court of Appeals' concerns of a "doctrinal anomaly" in the way speech is treated, noting that the perceived anomaly is limited in scope: "It relates only to the expressions an employee makes pursuant to his or her official responsibilities, not to statements or complaints . . . that are made outside the duties of employment."  Significantly, the Court

observed, "A public employer that wishes to encourage its employees to voice concerns privately retains the option of instituting <u>internal policies and procedures that are receptive to employee criticism.  Giving employees an internal forum for their speech will discourage them from concluding that the safest avenue of expression is to state their views in public</u>." <u>Id.</u> (emphasis added).  This passage shows that the Court recognized that speech made <u>pursuant to internal policies and procedures</u> is not protected.

Here, Plaintiff repeatedly has admitted that her duties <u>required</u> her to report internal corruption.  <u>See</u> CS ¶ 29 and Plaintiff's admission thereto (admitting Plaintiff "reported Kapua's misconduct because she is a police officer who enforces laws against criminal activity"); CS ¶ 28 and Plaintiff's admission thereto (admitting that "Plaintiff was ordered by a supervisor to report the allegations against Kapua in writing; she did so.").  In Plaintiff's Response to Defendants County of Kaua`i and Kaua`i Police Department's First Request for Admissions and Answers to Interrogatories to Plaintiff Darla Abbatiello ("Plaintiff's Interrogatory Responses," Defendants' Exhibit "B"), in response to Interrogatory 9, Plaintiff admits that she is "<u>a law enforcement officer[] and duty bound to report possible criminal activities</u> . . . ." (emphasis added); <u>see also id.</u> at 18, response to Interrogatory 4 ("K.L. [a KPD superior] told me that I was required to make a formal report of any allegation of corruption.").  Moreover, the KPD Standards of

Conduct state "Officers shall, at all times, take appropriate action to . . . identify criminal offenders and criminal activity . . . ."  Defendants' Supplemental Separate Concise Statement of Facts ("SSC") ¶ 55 and Exhibit "C" thereto at 8.  This section also requires officers to "[i]dentify potentially serious law enforcement and government problems" and "[e]nforce all federal, state and local laws and ordinances coming within the jurisdiction of the department."  Id.  Consequently, Plaintiff's assertion that her complaints regarding Kapua's illegal conduct were not made in her official capacity because she was not Kapua's supervisor and her duties "did not include the . . . reporting of rogue cops," Memorandum in Opposition at 14, is without merit.

With regard to Plaintiff's complaint regarding the "strip search order," the Standards of Conduct state "Officers and civilian employees receiving unlawful, unjust or improper orders shall, at first opportunity, report in writing to the Chief of Police through official channels."  SCS ¶ 56 and Exhibit "C" thereto at 10.  Indeed, this appears to be exactly what Plaintiff did.  Plaintiff alleges that the "creation of a new strip search policy" was an "attempt to cover up the fact that [Plaintiff] made a proper complaint about the photographing of female arrestees."  SCS ¶ 57 and First Amended Complaint (Defendants' Exhibit "A") at 16 ¶ 75 (emphasis added).

The facts here are therefore analogous to those in <u>Battle v. Board of Regents</u>, 468 F.3d 755 (11th Cir. 2006) (*per curiam*), which involved a university employee who reported to university officials improprieties in her supervisor's handling of federal financial aid funds.  468 F.3d at 757.  The employee's contract was not renewed, and she sued for retaliation.  <u>Id.</u> at 758-59.  The court noted that the employee had a clear employment duty to ensure the accuracy and completeness of student files and to report any mismanagement or fraud she encountered in the student financial aid files, and that federal guidelines also required her to report suspected fraud.  <u>Id.</u> at 761.  Consequently, she acted "pursuant to her official employment responsibilities," and her retaliation claim failed under <u>Garcetti</u>.  <u>Id.</u> at 761-62; <u>see also</u> <u>Green v. Bd. of County Comm'rs</u>, 472 F.3d 794 (10th Cir. 2007) (finding <u>Garcetti</u> analogous, as plaintiff "was not communicating with newspapers or her legislators or performing some similar activity afforded citizens; rather, even if not explicitly required as part of her day-to-day job responsibilities, her activities stemmed from and were the type of activities that she was paid to do.").

Moreover, Plaintiff admits she was on duty when she reported Kapua's alleged corruption to her superiors.  SCS ¶ 58 and Plaintiff's Interrogatory Responses (Defendants' Exhibit "B") at 12.  That the report was made while the plaintiff was on duty was dispositive in <u>Mills v. City of Evansville</u>, 452 F.3d 646 (7th Cir. 2006), involving a police sergeant who criticized a proposal to reorganize

her department.  The sergeant made the remarks during a gathering of officers following an official meeting to discuss the plans, when she was on duty and in uniform.  Mills, 452 F.3d at 647-48.  The court held the communications were made "in her capacity as a public employee contributing to the formation and execution of official policy," not as a citizen.  Id. at 648.

Finally, as discussed in more detail below, Plaintiff's reports were made internally to her KPD superiors, pursuant to her duties, and not to the public.

### 2.    *Freitag* is Controlling

Only now, in opposition to the Motion, Plaintiff alleges she reported alleged corruption to SHOPO and the FBI.  See Memorandum in Opposition at 3, 14, 20, 25.  This allegation was not made in the First Amended Complaint, and was not pleaded as a basis for alleged retaliation.  In fact, Plaintiff provides nothing, other than her self-serving affidavit of January 18, 2007, to support this allegation, even though Plaintiff asserts obliquely, at page 20 of the Memorandum in Opposition (but not in her affidavit), that these alleged reports were written.

Plaintiff attempts to use this new allegation to distinguish this case from Freitag v. Ayers, 468 F.3d 528 (9th Cir. 2006).  See Memorandum in Opposition at 19-20.  In Freitag, the Ninth Circuit held that internal complaints about workplace hostility made by a corrections officer to her superiors were not protected speech under Garcetti, because they were made pursuant to her duties, although

communications with the state Inspector General and a senator were protected speech. <u>Freitag</u>, 468 F.3d at 546. The holding with respect to the non-protected communications to superiors is controlling here for the same reason, and the Court should not consider Plaintiff's new and unsupported allegations of external reports, made solely to circumvent this result. <u>Cf. Ruotolo v. City of New York</u>, 2006 WL 2033662, *4 (S.D.N.Y. July 19, 2006) (because alleged conversations were not cited in amended complaint as basis for First Amendment retaliation claims, they were outside the pleadings and not properly before the Court on a motion to dismiss).

In her First Amended Complaint, Plaintiff asserts "Abbatiello's actions in reporting misconduct and violations of the law <u>to her superiors</u> constituted her exercise of her constitutionally protected freedom of speech." SCS ¶ 59 and First Amended Complaint (Defendants' Exhibit "A"), at 19 ¶ 90 (emphasis added). Indeed, in the First Amended Complaint, the FBI is not mentioned at all, and SHOPO is mentioned only because Plaintiff consulted SHOPO "about the possibility of transferring out of the Vice unit where she could work a significant distance away from Kapua." CS ¶ 31 and Plaintiff's admission thereto, and First Amended Complaint (Defendants' Exhibit "A"), at 9 ¶ 39.

Because <u>Freitag</u> is controlling here, <u>Thompson v. City of Tucson Water Department</u>, 2006 WL 3063500 (D. Ariz. Oct. 27, 2006) is not persuasive, and is

distinguishable because the reports made by the plaintiff there included reports to "various governmental agencies" and were not merely internal.  See Memorandum in Opposition at 15.

Plaintiff also cites Kodrea v. City of Kokomo, 458 F. Supp. 2d 857 (S.D. Ind. 2006), in which a city employee alleged retaliation for reporting falsified timesheets.  The court stated, "Garcetti reveals that an important factor in addressing whether or not Kodrea's speech was protected is his job responsibilities." Kodrea, 458 F. Supp. 2d at 863 (emphasis added).  Although Kodrea's job description did not require him to report misconduct, and he was not responsible for approving timesheets, the court found a question of fact as to whether he acted as an employee.  (It follows that, had there seen such a written requirement, as here, the court would not have found a question of fact, but would have granted summary judgment.)  A question of fact was also found in Strutsky v. Marut, 206 WL 2660691 (M.D. Pa. Sept. 15, 2006), and Barclay v. Michalsky, 451 F. Supp. 2d 386 (D. Conn. 2006).  Here, by contrast, Plaintiff repeatedly has admitted that she had a duty to report misconduct and improper orders, and this duty is also explicitly stated in KPD Standards of Conduct.

Plaintiff also cites to Rohr v. Nehls, 2006 WL 2927657 (E.D. Wis. Oct. 11, 2006), but that case is inapposite.  Plaintiff Rohr alleged retaliation based upon his complaints about Nehls, his superior.  Rohr did not make his complaints within his

chain of command but to the state attorney general and the district attorney. The court found the case not analogous to <u>Garcetti</u> because, "[i]n fact, one of Nehl's criticisms is that Rohr was acting outside of his proper employment role when he failed to use proper channels to complain about Nehls." <u>Rohr</u>, 2006 WL 2927657 at *7. In contrast, here, Plaintiff voiced her concerns only within her chain of command.

      3.    <u>Plaintiff's Reports Were Based on Personal Interests, Not a Public Concern</u>

In defining the scope of First Amendment protection afforded to public employees' speech, the Supreme Court has distinguished speech "as a citizen upon matters of public concern" from speech "as an employee upon matters only of personal interest." <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983). "Speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies, is generally not of public concern." <u>Id.</u> "Thus, the relevant inquiry under <u>Connick</u> is the point of the speech in question--was it the employee's point to bring wrongdoing to light or was the point to further some purely private interest?" <u>Shewbridge v. El Dorado Irrigation Dist.</u>, 2006 WL 3741878, *7 (E.D. Cal. Dec. 19, 2006) (citing <u>Roth v. Veteran's Admin. of United States</u>, 856 F.2d 1401, 1406 (9th Cir. 1988)).

Here, Plaintiff admits that her reports were intended to address Plaintiff's concern over her own safety.  See CS ¶¶ 13, 15, 27 and Plaintiff's admissions thereto.  For example, the First Amended Complaint at paragraph 31 alleges that on January 2, 2004, Plaintiff "returned to work and immediately reported to her supervisor . . . what A.B. had told her about Sergeant Kapua and the alleged corruption, and that [Plaintiff] feared for her safety."  In fact, Plaintiff's contact with SHOPO was to seek a transfer to a position where Plaintiff could work "a significant distance away from Sergeant Kapua."  First Amended Complaint (Defendant's Exhibit "A") at 9 ¶ 39.  Plaintiff also suggested corrective action to resolve her personal concerns regarding Kapua, but those suggestions were not intended to address any matter of concern to the public in general.  See CS ¶¶ 31, 32, 33, and 34.  Indeed, Plaintiff admits that she made the reports of Kapua's alleged corruption to ensure her safety at work as a police officer.  See Plaintiff's Interrogatory Responses (Defendants' Exhibit "B") at 34 and 35 ¶¶ 85-91.

    4.   <u>Plaintiff's 42 U.S.C. § 1983 Claim Fails</u>

Defendants are entitled to summary judgment or dismissal of this claim because Plaintiff's own allegations demonstrate that she reported the alleged misconduct as a police officer and not as a citizen; she therefore fails to state a claim for violation of First Amendment rights.

5.     <u>Plaintiff's 42 U.S.C. § 1985 Claim Fails</u>

If Plaintiff's § 1983 claim fails, her § 1985 claim of a conspiracy to violate civil rights fails with it. Moreover, Plaintiff does not dispute that her failure to allege an "invidiously discriminatory animus behind the conspirators' action" is fatal to her § 1985 claim. <u>See</u> Memorandum in Opposition at 21. Plaintiff's allegations in opposing the Motion also fail to demonstrate a question of fact. Plaintiff merely asserts that Plaintiff's superiors had "discussions" about her and Kapua. <u>Id.</u> Plaintiff does not suggest that these discussions were anything more than the result of her reports to superiors that she feared Kapua and wanted Kapua kept away from her. <u>See</u> CS ¶¶ 15-18, 27-28.

C.     <u>Individual Defendants are Entitled to Qualified Immunity</u>

Because there is no violation of a constitutional right here, there is no need to undertake the qualified immunity analysis. <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). Even if that were not the case, Plaintiff has failed to bear her burden to overcome the presumption of qualified immunity here. <u>See</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

Specifically, Plaintiff has failed to show that the Individual Defendants' conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982). Plaintiff argues merely that KPD's "Rules and Regulations and a written directive

from then Acting Chief Ihu, clearly stated that retaliation was prohibited conduct."

Memorandum in Opposition at 22.  First, Plaintiff offers no admissible evidence to

support that assertion.  See Section II.A, *supra*.  Moreover, such documents do not

create, or in any way demonstrate, a "clearly established statutory or constitutional

right."

Plaintiff attempts to discredit Pickering v. Board of Education, 391 U.S. 563

(1968), but does not dispute that Pickering's balancing test was controlling law at

the time of the alleged retaliation, prior to Garcetti.  Significantly, in Brewster v.

Board of Education of Lynwood Unified School District, 149 F.3d 971, 979-80

(9th Cir. 1998), the Ninth Circuit observed:

> Because, under Pickering, the determination whether an employee's
> expression is constitutionally protected requires a fact-sensitive,
> context-specific balancing of competing interests, the law regarding
> public-employee free speech claims will "rarely, if ever, be
> sufficiently 'clearly established' to preclude qualified immunity under
> Harlow and its progeny."

Brewster, 149 F.3d at 979-80 (citing and cataloguing supporting cases from the

9th, 8th, 4th, 1st, 6th, 10th, 11th, 5th and 7th Circuits).  Therefore, even if Plaintiff

is correct that there remains a question of material fact as to the existence of a First

Amendment claim even under Garcetti, see Memorandum in Opposition at 12-13,

the law as applied to these facts would have been less "clearly established" under

Pickering for purposes of defeating qualified immunity.  Consequently, if the Court

grants summary judgment on the First Amendment claim or finds a question of

material fact as to that claim, Individual Defendants are entitled to summary
judgment on Counts I and II on the basis of qualified immunity.

>    D.    Defendants are Entitled to Dismissal of Plaintiff's Claims for
>          Negligence under Hawai`i's Workers' Compensation Act

Hawai`i Revised Statutes ("H.R.S.") § 386-5 precludes all negligence claims
against an employer for a work injury suffered by an employee.  Plaintiff does not
dispute that § 386-5 bars Plaintiff's claims against the County of Kaua`i and KPD
here.

Instead, Plaintiff argues that her negligence-based claims against her co-
employees should not be dismissed because the Workers Compensation Act "does
not bar an employee from asserting negligence causes of action against co-
employees."  This assertion is contradicted by H.R.S. § 386-8 which provides that
"[a]nother employee of the same employer shall not be relieved of his liability as a
third party, if the personal injury is caused by his willful and wanton misconduct."
(emphasis added).

Plaintiff attempts to persuade this court that an action for "wilful and wanton
misconduct" has been "labeled and qualified" as "negligence."  Memorandum in
Opposition at 30.  Plaintiff's conclusion is mistaken.

In Ellison v. Northwest Airlines, Inc., 938 F. Supp. 1503 (D. Haw. 1996),
the Court noted stated:

> although H.R.S. § 386-8 may allow a claim against [the co-employee] individually for **intentional** infliction of emotional distress, **it does not allow one for simply negligent infliction of emotional distress. <u>See Marshall v. Univ. of Hawaii</u>, 9 Haw. App. 21, 36, 821 P.2d 937 (1991) (conduct must be "wilful and wanton").**

<u>Ellison</u>, 938 F. Supp. at 1515 (emphasis added).  The Court in <u>Ellison</u> obviously did not interpret <u>Marshall</u> to indicate that willful and wanton conduct was classified as negligence, but equated "willful and wanton conduct" with intentional conduct.

Similarly, in <u>Iddings v. Mee-Lee</u>, 82 Hawai`i 1, 7, 919 P.2d 263, 269 (1996), the court defined the term "willful and wanton misconduct" as "[c]onduct which is either intentional or committed under circumstances exhibiting a reckless disregard for the safety of others."  The court concluded that "the plain meaning of the term 'wilful and wanton misconduct' <u>encompasses both reckless conduct that lacks a specific intent to cause injury and intentional conduct motivated by a specific intent to cause injury</u>."  <u>Id.</u>; <u>see also id.</u> at 4, 919 P.2d at 266 (reciting that Iddings filed a complaint alleging that Mee-Lee "acted <u>both</u> negligently and wilfully and wantonly in creating an unsafe work environment").  Plaintiff's discussion fails to note that Iddings had previously "stipulated to dismiss her negligence claims against Dr. Mee-Lee with prejudice," but claims "based upon Dr. Mee-Lee's alleged wilful and wanton misconduct were preserved."  <u>See id.</u> at 5, 919 P.2d at 267.

Chronicling the evolution of relevant Hawai`i law, this Court in <u>Kahale v.</u>

<u>ADT Automotive Services, Inc.</u>, 2 F. Supp. 2d 1295, 1302 (D. Haw. 1998)

implicitly recognized that "willful and wanton conduct" relates to intentional torts.

The Court noted that, in <u>Morishige v. Spencecliff Corp.</u>, 720 F. Supp. 829, 837 (D.

Haw. 1989), the Hawai`i Workers' Compensation Statute was held not to bar a

claim for emotional distress against an employee for willful and wanton conduct.

"Accordingly, Plaintiffs' claims for intentional infliction of emotional distress are

not barred . . . .  However, Plaintiffs' claims for negligent infliction of emotional

distress are barred by the Act." <u>Kahale</u>, 2 F. Supp. 2d at 1302.  Consequently,

Plaintiff's negligence claims are barred and must be dismissed.

> E.    <u>In the Event the Federal Claims are Dismissed, Defendants</u>
> <u>Request that the Court also Dismiss the State Claims</u>

If the Court dismisses all federal claims here, the Court may also exercise

discretion to decline jurisdiction over the remaining state claims. <u>Schultz v.</u>

<u>Sundberg</u>, 759 F.2d 714, 718 (9th Cir. 1985).  The Ninth Circuit has stated that

"when federal claims are dismissed before trial . . . , pendent state claims also

should be dismissed." <u>Jones v. Community Redevelopment Agency of City of Los</u>

<u>Angeles</u>, 733 F.2d 646, 651 (9th Cir. 1984) (dismissing state law claims where 42

U.S.C. § 1983 claim was dismissed); <u>see also</u> <u>Schultz</u>, 759 F.2d at 718.

The Ninth Circuit has therefore routinely held that there was no abuse of

discretion where a district court declined to exercise supplemental jurisdiction over

employment-related state law claims after dismissal of all federal claims. See, e.g.,

Moss v. Technicolor, Inc., 48 Fed. Appx. 638, 641-42 (9th Cir. 2002) (district

court was within its discretion in refraining from exercising supplemental

jurisdiction after dismissing employees' other federal claims); Brown v. Lucky

Stores, Inc., 246 F.3d 1182, 1189 (9th Cir. 2001) (same); Williams v. United

States, 405 F.2d 951, 955 (9th Cir. 1969) (same).

III.    CONCLUSION

      Based on the foregoing, Defendants respectfully request that this Honorable

Court grant summary judgment on, or in the alternative dismiss, Counts I and II of

the First Amended Complaint, and that the Court dismiss Counts V and VII.

Defendants further request that this Court decline jurisdiction over the remaining

state law claims.

      DATED:  Honolulu, Hawai`i, _____January 26, 2007_____

                   /s/ David J. Minkin_____
                   DAVID J. MINKIN
                   BECKY T. CHESTNUT
                   KARA M.L. YOUNG

                   Attorneys for Defendants
                   COUNTY OF KAUA`I, KAUA`I POLICE
                   DEPARTMENT, WILFRED M. IHU,
                   GORDON ISODA, and DEAN PIGAO