**INCLINATIONS**

It is Judge Mollway's practice, whenever possible, to notify attorneys and pro se parties scheduled to argue motions before her of her inclinations on the motions and the reasons for the inclinations. This is part of Judge Mollway's normal practice, rather than a procedure unique to a particular case, and is designed to help the advocates prepare for oral argument. It is the judge's hope that the advance notice of her inclination and the accompanying reasons will focus the oral argument and permit the advocates to use the hearing to show the judge why she is mistaken or why she is correct. The judge is not bound by the inclination and sometimes departs from the inclination in light of oral argument.

Judge Mollway attempts to communicate her inclinations no later than one working day before a hearing. The court's preference is to distribute the inclinations to the parties via the court's electronic filing system ("CM/ECF"). Accordingly, parties are encouraged to participate in the court's CM/ECF system.

The inclination is intended to be only a summary of the court's thinking before the hearing and not a complete legal discussion. The court will issue a written order with a detailed analysis after the hearing.

The parties are reminded that, under Local Rule 7.4, they may not submit supplemental briefs (such as briefs addressing the inclination) unless authorized by the court. Supplemental declarations, affidavits, and/or other evidence in response to the court's inclinations are prohibited unless authorized by the court. The parties are also reminded that they must comply with Local Rule 7.8 if they intend to rely on uncited authorities at the hearing.

Occasionally, Judge Mollway does not announce an inclination, especially if materials are submitted to her right before the hearing. Because briefing on criminal motions closes just a few days before the hearing, it is not uncommon for her to be unable to announce an inclination on a criminal motion until the start of the hearing itself. Certainly if an evidentiary hearing is scheduled on matters necessary to a decision on either a civil or criminal motion, no inclination will be announced.

Judge Mollway's inclinations may not be cited as authority for any proposition. However, the inclinations will be electronically filed for the convenience of the parties.

Judge Mollway announces the following inclinations:

**Abbatiello v. County of Kauai, et al.**, **Civ. No. 04-00562 SOM/BMK; DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; JOINDERS BY LUM AND KAPUA IN THE PRESENT MOTION FOR SUMMARY JUDGMENT.**

On April 21, 2006, Plaintiff Darla Abbatiello filed the First Amended Complaint ("FAC") against Defendants County of Kauai ("the County"), the Kauai Police Department ("KPD"), K.C. Lum, Wildred M. Ihu, Gordon Isoda, Dean Pigao, and Irvil Kapua (collectively, "Defendants"). In the FAC, Abbatiello asserts, among other things, the following claims: (1) violation of her rights to free speech, substantive and procedural due process, and equal protection under the United States Constitution, in violation of 42 U.S.C. § 1983 (Count 1); (2) conspiracy to violate her rights to free speech, due process, and equal protection, in violation of 42 U.S.C. § 1985 (Count 2); (3) negligent supervision and retention of an employee (Count 5); and (4) negligent infliction of emotional distress ("NIED") (Count 7). All of the individual Defendants are sued in their official capacities, but only Lum and Kapua are sued in their individual capacities as well. FAC ¶ 8-9.

On December 12, 2006, the County, KPD, Ihu, Isoda, and Pigao filed a motion for summary judgment. They ask for summary judgment on Abbatiello's claims under the First Amendment, arguing that she did not engage in protected speech, as her reports were made pursuant to her official duties. Defendants alternatively argue that they are qualifiedly immune from her First Amendment claims. Anticipating that this court will grant summary judgment on Abbatiello's First Amendment claims, Defendants also ask this court to dismiss the § 1985 claims and to decline jurisdiction over the state claims. Defendants additionally contend that Abbatiello's negligence claims are barred by Hawaii's workers' compensation scheme. On December 21, 2006, and January 3, 2007, Lum and Kapua, respectively, filed joinders in the present motion.

Questions for Abbatiello.

Initially, the court asks Abbatiello to clarify her claims in the FAC and to come to the hearing prepared to address the following questions:

> (1) Is each claim asserted against all Defendants? If not, explain (a) which claims are asserted against which Defendants, and (b) whether Lum and Kapua are sued in both their individual and official capacities for each claim asserted against them.

>(2) Are Abbatiello's due process and equal protection claims in Counts 1 and 2 fully encompassed by her claims under the First Amendment?
>
>(3) Is Count 1 brought under 42 U.S.C. § 1985? Exactly which subsection and clause in 42 U.S.C. § 1985 are claims brought under in Count 2 and, if applicable, in Count 1?
>
>(4) Defendants argue that they are entitled to summary judgment on Abbatiello's claims under 42 U.S.C. § 1985 "because [she] never alleges 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." In failing to oppose this argument, does Abbatiello concede that summary judgment is warranted on her § 1985 claims?
>
>(5) The bases of Abbatiello's First Amendment claims are not entirely clear. Exactly which reports, complaints, and/or speech constitute the "protected speech" on which the First Amendment claims are based? In the present motion, Defendants focus only on Abbatiello's reports concerning Kapua's alleged involvement with bribery and the allegedly improper order to photograph naked arrestees. Does Abbatiello agree that those reports are the sole bases of her First Amendment claims? Similarly, exactly which acts by Defendants constitute the "adverse employment actions" on which the First Amendment claims are based?

<u>First Amendment Claims.</u>

"In order to state a claim against a government employer for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor for the adverse employment action." <u>Coszalter v. City of Salem</u>, 320 F.3d 968, 973 (9th Cir. 2003). Regarding the first prong, the Supreme Court, in <u>Garcetti v. Ceballos</u>, 126 S. Ct. 1951, 1960 (2006),

recently held that speech made by a public employee pursuant to his or her official job duties is not protected.

Defendants contend that Abbatiello's speech is not protected, arguing that she "fails to mention [in the FAC] that her reports were made in her capacity as a citizen." Motion at 16. However, Garcetti, which clarified that public employees must speak as citizens when engaging in protected speech, was not filed until Abbatiello had already filed the FAC. Moreover, Defendants do not cite to, and this court has not found, any authority requiring a public employee to allege in the complaint that he or she spoke "as a citizen" when they engaged in protected speech. The court is inclined to reject Defendants' argument on this point.

Defendants next contend that Abbatiello's speech is not protected by the First Amendment because she "has not alleged that she made any effort to make public her concerns" and because her speech "owes its existence to her professional responsibilities." Motion at 15, 19. The court is inclined to reject Defendants' position, as the Supreme Court made clear that public employees "may receive First Amendment protection for expressions made at work . . . or related to the speaker's job." Garcetti, 126 S. Ct. at 1959.

Defendants also argue that, because Abbatiello reported to her supervisors that she was concerned about her safety, her sole motivation for making her reports "seems to be fear of her safety in the workplace." Motion at 14. However, Abbatiello submits evidence showing that she reported Kapua's alleged bribery "because corruption is a matter of public concern and because, as a citizen and resident of Kauai, [she is] concerned about the persistent allegations of corruption within KPD." Affidavit of Darla J. Abbatiello (1/18/2007) ("Abbatiello Affidavit") ¶ 8. Regarding her report of the allegedly improper order to photograph naked arrestees, Abbatiello provides evidence that "[she] reported the strip search incident because the violation of an individual's right to be free from unreasonable searches is a matter of public concern and, as a citizen and resident of Kauai, [she is] concerned about the persistent allegations of police misconduct and abuse of authority within KPD." Id. ¶ 11. Abbatiello also says, "Neither [her] position as a police officer nor [her] oath as a police officer caused [her] to act any differently." Id. ¶ 8. This court is inclined to conclude that this evidence contradicts Defendants' argument that Abbatiello's sole motivation in reporting the alleged misconduct was her concern about safety.

Under <u>Garcetti</u>, the "critical inquiry" for this court in determining whether Abbatiello spoke as a citizen is "whether [she] engaged in the relevant speech 'pursuant to her official duties.'" <u>See</u> <u>Freitag v. Ayers</u>, 468 F.3d 528, 545 (9th Cir. 2006) (citing <u>Garcetti</u>, 126 S. Ct. at 1960)). Defendants point to the KPD Standards of Conduct as evidence of Abbatiello's official job duties. The Standards of Conduct require officers to identify law enforcement problems, to enforce all laws and ordinances, and to report improper orders. Reply at 6; Ex. B (attached to Reply CSF) at 5, 7. The court is inclined to conclude that the Standards of Conduct are not dispositive, as they, like formal job descriptions, may "bear little resemblance to the duties an employee actually is expected to perform." <u>See</u> <u>Garcetti</u>, 126 S. Ct. at 1962; <u>see also</u> <u>Batt v. City of Oakland</u>, No. C 01-04975 MHP, 2006 WL 1980401, at *1 (N.D. Cal. July 13, 2006); <u>Skrutski v. Marut</u>, No. 3:CV-03-2280, 2006 WL 2660691, at *9-10 (M.D. Pa. Sept. 15, 2006); <u>Barclay v. Michalsky</u>, 451 F. Supp. 2d 386, 395 (D. Conn. 2006).

Abbatiello also submits evidence of her official duties and responsibilities. In her affidavit, she explains that her main responsibility as a Vice officer was "to investigate, in an undercover capacity, illegal drug activities on the island of Kauai." Abbatiello Affidavit ¶ 2. As a Vice officer, she says she "worked undercover, in plain clothes [and] formed connections and relationships with known and/or suspected drug users and dealers in an attempt to investigate and build criminal cases against drug users and dealers." <u>Id.</u> ¶ 3. Additionally, Abbatiello points to evidence showing that she was "not employed to investigate misconduct by other police officers," was "not informed that investigating or reporting misconduct by other KPD employees was one of [her] job duties," and was not "trained to do so." <u>Id.</u> ¶¶ 4-5. Other evidence before the court further shows that she was told by "Assistant Chief of Police Dean Pigao that [she] did not have to report the alleged corruption by Kapua." <u>Id.</u> ¶ 9. The court is inclined to conclude that the foregoing evidence creates a genuine dispute of fact as to whether Abbatiello's reports were made pursuant to her official duties, thereby precluding summary judgment on the First Amendment claims.[1]

---

[1] Abbatiello points this court to additional evidence of her official duties and responsibilities, to which Defendants object. Because the court is inclined to conclude that it need not rely on that evidence in deciding the present motion, the court is inclined to disregard that evidence.

5

Qualified Immunity.

In <u>Hallstrom v. City of Garden City</u>, 991 F.2d 1473, 1487 (9th Cir. 1992), the Ninth Circuit stated in clear terms, "A municipality (and its employees sued in their official capacities) may not assert a qualified immunity defense to liability under Section 1983." <u>Id.</u>; <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-68 (1985); <u>Owen v. City of Independence</u>, 445 U.S. 622, 638 (1980). Accordingly, the court is inclined to conclude that the County, KPD, and the individual Defendants sued in their official capacities are not entitled to qualified immunity.

Unlike the other individual Defendants, Lum and Kapua are also sued in their individual capacities and may therefore raise the defense of qualified immunity. <u>See</u>, e.g., <u>Kentucky</u>, 473 U.S. at 166-67; <u>Owen</u>, 445 U.S. at 638 n.18; <u>Hallstrom</u>, 991 F.2d at 1482. However, the present motion was not brought by either Lum and Kapua, and their joinders of simple agreement do not ask this court to go beyond the present motion and to apply the defense of qualified immunity to them in their individual capacities. <u>Cf.</u> Local Rule 7.9 (explaining the difference between a "substantive joinder" and a "joinder of simple agreement). Accordingly, with respect to Lum and Kapua, the court is inclined to conclude only that they are not entitled to qualified immunity in their official capacities.

Defendants' Requests to Dismiss the § 1985 and State Law Claims.

Anticipating that this court will grant summary judgment in favor of Defendants on Abbatiello's First Amendment claims under 41 U.S.C. § 1983, Defendants ask this court to grant summary judgment on her § 1985 claims, arguing, "The absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." Motion at 20. Defendants also ask the court to decline jurisdiction over the remaining state law claims "in the event the federal claims are dismissed." Motion at 27. Because the court is inclined to deny summary judgment on the First Amendment claims, the court is also inclined to deny Defendants' requests regarding the § 1985 and state law claims.

Negligence Claims.

Defendants argue that Haw. Rev. Stat. § 386-5 precludes negligence claims against employers. Because Abbatiello does not oppose this argument, the court is inclined to grant summary judgment in favor of the County and KPD on Abbatiello's negligence claims (Counts 5 and 7).

Regarding negligence claims against co-employees, Haw. Rev. Stat. § 386-8 "extends immunity from suit to an injured worker's co-employees," except where "personal injury is caused by [a co-employee's] wilful and wanton misconduct." See Iddings v. Mee-Lee, 82 Haw. 1, 6, 919 P.2d 263, 268 (Haw. 1996) (citing Haw. Rev. Stat. § 386-8). In Iddings, the Hawaii Supreme Court interpreted "wilful and wanton" conduct, as used in Haw. Rev. Stat. § 386-8, to encompass reckless and intentional, but not negligent, conduct. Id. at 7-8, 919 P.2d at 269-70. In other words, although claims against co-employees based on reckless or intentional conduct are not barred by Haw. Rev. Stat. § 386-8, claims based on negligent conduct are so barred.

In Count 5 for negligent supervision and retention, Abbatiello alleges that Defendants "were negligent in their supervision and retention of Sergeant Kapua." FAC ¶ 121. Nowhere in Count 5 does Abbatiello allege that Defendants wilfully or wantonly (or intentionally or recklessly) supervised and retained Kapua. Although Count 5 "realleges and incorporates" the preceding paragraphs in the FAC, which include an allegation that Defendants' retaliation was "willful, wanton, malicious," Abbatiello fails to allege anywhere in the FAC that Defendants' supervision or retention of Kapua was wilful or wanton (or intentional or reckless). See FAC ¶ 102. Because Abbatiello's claim in Count 5 is expressly based on negligent conduct, the court is inclined to conclude that it is barred under Haw. Rev. Stat. § 386-6.

Regarding Count 7 for NIED, Abbatiello alleges in the FAC that Defendants' actions "were negligent, and foreseeably resulted in physical harm to [Abbatiello], and was a legal cause of injury to [her]." FAC ¶ 130. Abbatiello points out that, in Count 7, she alleges that Defendants' actions were wilful and wanton so as to warrant punitive damages against them. The court is inclined to disagree that her request for punitive damages somehow converts her claim, which is expressly based on negligent conduct, into one based on wilful or wanton (or intentional or reckless) conduct. Furthermore, "an NIED claim is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed 'utilizing ordinary negligence principles.'" See Doe Parents No. 1 v. State, Dept. of Educ., 100 Haw. 34, 69, 58 P.3d 545, 580 (Haw. 2002). Accordingly, the court is inclined to conclude that Abbatiello's NIED claim is barred by Haw. Rev. Stat. § 386-8.