EHXIBIT "B"


(PART 2 OF 2)

> in Sacramento.  We are not aware, for
> example, what the union contract provides
> with respect to the persons to whom such
> grievances may or must be presented.

Id.  The court therefore remanded to the district court the issue

of whether that letter was protected under the First Amendment.

In Korea v. City of Kokomo, Indiana, 458 F. Supp. 2d

857, 860, 867-69 (S.D. Ind. 2006), the district court for the

Southern District of Indiana was similarly faced with deciding

whether the plaintiff's complaints about "alleged abuse within

City government" were protected by the First Amendment.  The

plaintiff had been hired as a recreational programmer for the

city's parks department, and his job responsibilities included

"supervising and coordinating recreational programs and

supervising the seasonal staff for concession stands."  Id. at

862-63.  After noticing that one of the seasonal employees "was

being paid for hours that he had not worked," he reported the

problem to his supervisor.  Id. at 863.  The plaintiff also

reported his observation that a refund check that should have

been sent to the state American Softball Association commissioner

was never sent.  Id.  The plaintiff claimed that his supervisor

retaliated against him after he made his reports.  Id. at 864.

The plaintiff brought suit against various defendants,

including his supervisor, alleging that his First Amendment

rights had been violated.  Id. at 865-66.  The defendants moved

for summary judgment, arguing that the plaintiff's reports were

not protected under the First Amendment.  The court turned to

<u>Garcetti</u> and noted, "Unlike the situation in <u>Garcetti</u>, . . . there is a factual dispute in this case concerning whether [the plaintiff's] complaints . . . were made pursuant to his ordinary duties." <u>Id.</u> at 867. The court cited to evidence establishing that "nothing in [the plaintiff's] job description required him to monitor or report misconduct," that the plaintiff "was not responsible for handling money," and that "there is no evidence that [the plaintiff] had any oversight of the [missing] refunds." <u>Id.</u> at 867-68. Rather, the evidence showed that the plaintiff's "core function as a recreational program director" did not include the activities about which he complained. <u>Id.</u> at 868. The court was therefore "unable to conclude that [the plaintiff's] complaints were made simply as an employee rather than a concerned citizen" and denied summary judgment on his retaliation claim. <u>Id.</u>

Courts have also addressed whether departmental rules and regulations are dispositive of whether an employee speaks pursuant to his or her official duties. For example, in <u>Batt v. City of Oakland</u>, No. C 01-04975 MHP, 2006 WL 1980401, at *1 (N.D. Cal. July 13, 2006), the plaintiff, a police officer with the Oakland Police Department ("OPD"), "witnessed numerous illegal and brutal acts on the part of his supervising officer and three other OPD officers." After reporting his observations, the plaintiff was allegedly retaliated against by his coworkers and eventually resigned from the department. <u>Id.</u> at *1-2. The

plaintiff filed suit under the First Amendment, and the defendants moved for summary judgment, arguing that the plaintiff's reports were not protected because departmental rules and regulations required him to report such misconduct. Id. at *4. The court rejected that argument, stating that general rules and regulations requiring an employee to report misconduct were not dispositive under Garcetti. Id.; see also Skrutski v. Marut, No. 3:CV-03-2280, 2006 WL 2660691, at *9-10 (M.D. Pa. Sept. 15, 2006) (ruling that "State Police regulations" were "not dispositive" as to whether the plaintiff's reports of his co-employees' misconduct were protected under the First Amendment); Barclay v. Michalsky, 451 F. Supp. 2d 386, 395 (D. Conn. 2006) (rejecting the defendants' argument that "the complaints plaintiff allegedly made to her supervisors regarding employees sleeping on the job and the use of excessive restraints were made pursuant to her official duties because behavior that endangers the safety and welfare of persons is specifically prohibited by Work Rule # 22 and employees have an affirmative duty pursuant to Work Rule # 30 to report violations of existing work rules, policies, procedures, or regulations").

Defendants seek summary judgment on Abbatiello's First Amendment claims, arguing that she spoke pursuant to her official duties and not as a citizen when she reported:  (1) Kapua's

alleged involvement with bribery, and (2) the order to photograph naked arrestees.[4]

As the <u>Freitag</u> court made clear, the "critical inquiry" for this court in determining whether Abbatiello spoke as a citizen is "whether [she] engaged in the relevant speech 'pursuant to her official duties.'"  <u>See</u> <u>Freitag</u>, 468 F.3d at 545 (citing <u>Garcetti</u>, 126 S. Ct. at 1960).  Defendants point to the KPD Standards of Conduct as evidence of Abbatiello's official job duties.  The Standards of Conduct require officers to "[i]dentify potentially serious law enforcement and government problems," to "[e]nforce all federal, state and local laws and ordinances," and to report "unlawful, unjust or improper orders."  Reply at 6; Ex. B (attached to Reply CSF) at 5, 7.  These KPD regulations are not dispositive, however, as they, like formal job descriptions, may "bear little resemblance to the duties an employee actually is expected to perform."  <u>See</u> <u>Garcetti</u>, 126 S. Ct. at 1962; <u>see also</u> <u>Batt</u>, 2006 WL 1980401, at *1; <u>Skrutski</u>, 2006 WL 2660691, at *9-10; <u>Barclay</u>, 451 F. Supp. 2d at 395.

As evidence of her official job duties, Abbatiello submits evidence showing that her main responsibility as a Vice officer was "to investigate, in an undercover capacity, illegal drug activities on the island of Kauai."  Abbatiello Affidavit

───────────────

[4] Although Defendants focus on only these two reports, Abbatiello clarified at the hearing on this motion that her First Amendment claims are also based on her reports regarding the alleged theft of her handgun and the alleged death threat in her personal dictionary.

¶ 2.  Specifically, as a Vice officer, she "worked undercover, in plain clothes [and] formed connections and relationships with known and/or suspected drug users and dealers in an attempt to investigate and build criminal cases against drug users and dealers." Id. ¶ 3.  Additionally, Abbatiello says she was "not employed to investigate misconduct by other police officers," was "not informed that investigating or reporting misconduct by other KPD employees was one of [her] job duties," and was not "trained to do so." Id. ¶¶ 4-5.  She also says, "Neither [her] position as a police officer nor [her] oath as a police officer caused [her] to act any differently." Id. ¶ 8.  Evidence before the court also shows that Abbatiello was told by "Assistant Chief of Police Dean Pigao that [she] did not have to report the alleged corruption by Kapua."[5] Id. ¶ 9.  But see Ex. 2 (attached to Motion) at 19, 22.  This evidence supports Abbatiello's position that her reports of Kapua's alleged bribery and of the order to take photographs were not made pursuant to her official duties or responsibilities as a Vice and patrol officer at KPD.

Defendants nevertheless argue that Abbatiello has not "made any effort to make public her concerns" and that her speech "owes its existence to her professional responsibilities." Motion at 15, 19.  But the Supreme Court made clear that public

---

[5] Abbatiello also points to additional evidence of her official duties and responsibilities, to which Defendants object. Because the court need not rely on that evidence in deciding the present motion, the court disregards that evidence for purposes of this order.

24

employees "may receive First Amendment protection for expressions made at work . . . or related to the speaker's job." Garcetti, 126 S. Ct. at 1959; see also Skrutski, 2006 WL 2660691, at *9-10; Barclay, 451 F. Supp. 2d at 395. Additionally, evidence before the court shows that Abbatiello reported Kapua's alleged misconduct to SHOPO and the FBI. Abbatiello Affidavit ¶ 8.

Defendants also contend that, because Abbatiello reported that she was concerned about her safety, the sole motivation of her reports "seems to be fear of her safety in the workplace." Motion at 14. Abbatiello responds that she reported Kapua's alleged misconduct "because corruption is a matter of public concern and because, as a citizen and resident of Kauai, [she is] concerned about the persistent allegations of corruption within KPD." Abbatiello Affidavit ¶ 8. Regarding her report of the order to photograph naked arrestees, Abbatiello says that "[she] reported the strip search incident because the violation of an individual's right to be free from unreasonable searches is a matter of public concern and, as a citizen and resident of Kauai, [she is] concerned about the persistent allegations of police misconduct and abuse of authority within KPD." Id. ¶ 11. There is at least a genuine dispute as to whether Abbatiello's sole motivation in making her reports was fear for her own safety.

Defendants finally posit that Abbatiello must not have been speaking as a citizen because she "fail[ed] to mention [in

the FAC] that her reports were made in her capacity as a citizen." Motion at 16. However, Garcetti, which clarified that public employees must speak as citizens when engaging in protected speech, was not decided until Abbatiello had already filed the FAC. Moreover, Defendants do not cite to, and this court has not found, any authority requiring a public employee to allege in the complaint that he or she spoke "as a citizen" when engaging in protected speech. Defendants are therefore unpersuasive in arguing that they are entitled to summary judgment simply because the FAC does not allege that Abbatiello spoke "as a citizen."

Defendants have not met their burden of establishing that there is no genuine dispute of fact as to whether Abbatiello's reports were made pursuant to her official duties and responsibilities as a Vice or police officer. The evidence before the court, viewed in the light most favorable to Abbatiello, raises a question of fact as to whether her official duties included reporting Kapua's alleged misconduct or the order to photograph naked arrestees. The court therefore denies summary judgment on Abbatiello's First Amendment claims.

Anticipating that this court would grant summary judgment in favor of Defendants on Abbatiello's federal claims, Defendants ask the court to decline jurisdiction over the remaining state law claims "in the event the federal claims are dismissed." Motion at 27. Because the court denies summary

judgment on Abbatiello's First Amendment claims, the court also denies Defendants' request with respect to the state claims.

        B.     <u>Qualified Immunity.</u>

     Defendants alternatively contend, "Even if [Abbatiello's] speech were protected under the First Amendment, Defendants are entitled to summary judgment on Counts I and II of the First Amended Complaint because . . . they are qualifiedly immune to [her] claims under 42 U.S.C. § 1983." The problem with this argument is that qualified immunity does not apply to movants sued in their official capacities.

     In <u>Hallstrom v. City of Garden City</u>, 991 F.2d 1473, 1487 (9th Cir. 1992), the Ninth Circuit stated in clear terms, "A municipality (and its employees sued in their official capacities) may not assert a qualified immunity defense to liability under Section 1983." <u>Id.</u>; <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-68 (1985) (noting that qualified immunity is not available to an official sued in his or her official capacity); <u>Owen v. City of Independence</u>, 445 U.S. 622, 638 (1980) ("We hold, therefore, that the municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983."). The County, KPD, and the individual Defendants sued in their official capacities are not entitled to qualified immunity.[6]

_____

[6] The County, KPD, and the official Defendants may have available to them other defenses unique to municipalities. <u>See</u>, <u>e.g.</u>, <u>Tongson v. County of Maui</u>, Civ. No. 05-00683 SOM/LEK, Order Granting in Part and Denying in Part Defendants' Motions for Summary Judgment (D. Haw. Dec. 15, 2006) (addressing several arguments made by the County of Maui and its employees sued in

Unlike the other individual Defendants, Lum and Kapua are sued in both their official and individual capacities and therefore may raise the defense of qualified immunity with respect to the individual capacity claims. See, e.g., Kentucky, 473 U.S. at 166-67 (noting that qualified immunity is available to officials sued in their personal capacity, but not to officials sued in their official capacity); Owen, 445 U.S. at 638 n.18 (noting that, where "government officers had been sued in their individual capacities, . . . [qualified] immunity served to insulate them from personal liability for damages"); Hallstrom, 991 F.2d at 1482 (applying qualified immunity to officials sued in their individual capacity, but stating that the district court erred in applying qualified immunity to a municipality and its employees sued in their official capacities). However, the present motion was not brought by either Lum and Kapua, and their joinders in the motion do not ask this court to apply qualified immunity to them in their individual capacities.

Under Local Rule 7.9, parties may file substantive joinders or joinders of simple agreement. Local Rule 7.9. A "substantive joinder" is "a joinder based on a memorandum supplementing the motion . . . joined in" and "must be filed and served within two business days of the filing of the motion . . .

_____

their official capacities that they are not liable for First Amendment violations brought under 42 U.S.C. § 1983); cf. Kentucky, 473 U.S. at 167 n.13 ("punitive damages are not available under § 1983 from a municipality"); Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1993) (discussing the requirements for municipality liability under § 1983).

joined in." <u>Id.</u> A "joinder of simple agreement" is a joinder in which no supplemental memorandum is provided and "may be filed at any time." <u>See</u> <u>id.</u> Because Lum and Kapua did not provide supplemental memoranda with their joinders and did not file their joinders within two days of the present motion, the court construes their joinders as joinders of simple agreement. Their joinders therefore were either (1) statements by Lum and Kapua that they agree that the moving Defendants are entitled to summary judgment for the reasons stated in their motion, or (2) requests by Lum and Kapua that the court apply any rulings on the present motion to them, if applicable. The court does not, however, interpret their joinders as asking this court to go beyond the present motion and to apply qualified immunity to them in their individual capacities. Therefore, with respect to Lum and Kapua, the court concludes only that they are not entitled to the defense of qualified immunity in their official capacities.

Any argument by Lum or Kapua that they, in their individual capacities, are entitled to qualified immunity may nevertheless be brought in a separate motion. <u>See</u> <u>id.</u> (noting that Local Rule 7.9 "does not preclude the filing of an independent motion that does not seek to be included in a pre-existing hearing schedule"). Lum did just this, as he filed his own motion for summary judgment on January 4, 2007, arguing that he is qualifiedly immune. Kapua did not file his own summary

judgment motion, but may file a joinder of simple agreement in
Lum's motion at any time.  Local Rule 7.9.

      C.   <u>Negligence Claims.</u>

      Defendants argue that Abbatiello's claims for negligent
supervision and retention (Count 5) and NIED (Count 7) are barred
by Hawaii's workers' compensation law.  Motion at 25-27.
Defendants assert that Haw. Rev. Stat. § 386-5 precludes
negligence claims against employers, while section 386-8
precludes negligence claims against co-employees.  Motion at
25-27.  Abbatiello does not dispute the applicability of section
386-5, but contends that, because section 386-8 allows for claims
alleging "wilful and wanton misconduct," her negligence claims
are not barred.  Opp. at 28-31.  The court agrees with Defendants
that Counts 5 and 7 are barred by Hawaii's workers' compensation
law.

      "Generally, the workers' compensation scheme serves to
bar a civil action for physical and emotional damages resulting
from work-related injuries and accidents."  <u>Nelson v. Univ. of
Haw.,</u> 97 Haw. 376, 393, 38 P.3d 95, 112 (Haw. 2001).  The
exclusive remedy provision of Hawaii's workers' compensation law
precludes certain claims against employers:

> The rights and remedies herein granted to an
> employee . . . on account of a work injury
> suffered by the employee shall exclude all
> other liability of the employer to the
> employee . . . to recover damages from the
> employer, at common law or otherwise, on
> account of injury, except for sexual
> harassment or sexual assault and infliction

            of emotional distress or invasion of privacy
            related thereto, in which case a civil action
            may also be brought.

Haw. Rev. Stat. § 386-5; Luzon v. Atlas Ins. Agency, Inc., 284 F.

Supp. 2d 1261, 1263 (D. Haw. 2003) ("Under Hawaii law, claims for

negligent infliction of emotional distress [against a plaintiff's

employer] are barred by Haw. Rev. Stat. § 386-5, unless the

claims relate to sexual harassment or assault."); Beaulieu v.

Northrop Grumman Corp., 161 F. Supp. 2d 1135, 1148 (D. Haw. 2000)

("Under Hawaii law, Worker's Compensation is the exclusive remedy

against an employer for employee injuries outside of those

related to sexual harassment or sexual assault . . . . The Court

finds that the claims of Negligent Supervision and Retention and

Negligent Infliction of Emotional Distress, are both 'work

injuries' arising from the conditions of Plaintiff's employment.

These claims, therefore are all barred by H.R.S. § 386-5.").

Because Abbatiello does not dispute that Haw. Rev. Stat. § 386-5

bars negligence claims against her employers--the County and

KPD--the court grants summary judgment in their favor on her

claims in Counts 5 and 7.

        Like the exclusivity provision in Haw. Rev. Stat.

§ 386-5, section 386-8 "extends immunity from suit to an injured

worker's co-employees." Iddings v. Mee-Lee, 82 Haw. 1, 6, 919

P.2d 263, 268 (Haw. 1996). Section 386-8 provides: "When a work

injury for which compensation is payable under this chapter has

been sustained under circumstances creating in some person other

                                31

that the employer <u>or another employee of the employer acting in</u>
<u>the course of his or her employment a legal liability to pay</u>
<u>damages</u> on account thereof, the injured employee . . . may claim
compensation under this chapter and recover damages from such
third person." <u>Id.</u> (quoting Haw. Rev. Stat. § 386-8) (emphasis
in original).  Haw. Rev. Stat. § 386-8 also provides, however,
"Another employee of the same employer shall not be relieved of
his liability as a third party, if the personal injury is caused
by his wilful and wanton misconduct."

      In <u>Iddings</u>, 82 Haw. at 265, 919 P.2d at 263, the Hawaii
Supreme Court was asked to determine "the scope and requirements"
of Haw. Rev. Stat. § 386-8.  In that case, Barbara Iddings
("Iddings"), a nurse, filed a lawsuit against her co-employee,
Dennis Mee-Lee, M.D., ("Dr. Mee-Lee"), who was in charge of the
Human Services Unit ("the HSU") of Castle Medical Center, for
injuries she received at work while assisting in subduing a
violent patient in the HSU.  <u>Id.</u> at 4, 919 P.2d at 266.  Iddings
alleged that she "was thrown to the floor, became wedged between
pieces of furniture, and suffered injuries to her head, neck,
back, and knee."  <u>Id.</u>  In her complaint, Iddings claimed that,
although Dr. Mee-Lee had "been advised that excessive furniture
within [the HSU] posed a safety hazard, . . . [Dr. Mee-Lee] took
no steps to remove the furniture."  <u>Id.</u> at 4-5, 919 P.2d at
266-67.  Iddings therefore brought claims for "negligence and/or
willful and wanton misconduct on the part of [Dr. Mee-Lee]."  <u>Id.</u>

                                    32

at 5, 919 P.2d at 267.  Iddings subsequently stipulated to dismiss her negligence claims, and the trial court entered summary judgment against Iddings on her claims for wilful and wanton misconduct.  Id.  Iddings appealed.

On appeal, the Hawaii Supreme Court concluded that "the plain meaning of the term 'wilful and wanton misconduct' encompasses both reckless conduct that lacks a specific intent to cause injury and intentional conduct motivated by a specific intent to cause injury."  Id. at 7, 919 P.2d at 269 (emphases added).  The court also held that allowing suits between co-employees based on intentional or reckless conduct "does not impair or contravene the workers' compensation scheme's elimination of suits between co-employees based on employees' negligence in the workplace."  Id. at 7-8, 919 P.2d at 269-70 (emphasis in original).

Although the Iddings court held in clear terms that Haw. Rev. Stat. § 386-8 precludes negligence claims against co-employees and allows only claims based on intentional or reckless conduct, Abbatiello cites to Marshall v. University of Hawaii, 9 Haw. App. 21, 821 P.2d 937 (Haw. Ct. App. 1991), as authority for her position that negligence claims against co-employees are not barred.  Motion at 28.  The court is not persuaded.

In Marshall, 9 Haw. App. at 24, 821 P.2d at 941, Michael D. Marshall ("Marshall"), a former assistant professor at

33

the University of Hawaii, filed a lawsuit against the university, the chancellor, the dean of student services, and the dean of the college of arts and sciences.  Marshall had applied for tenure and promotion, after which he was investigated for sexual harassment, causing his application process to be delayed.  <u>Id.</u> at 25, 34, 821 P.2d at 941, 945.  Marshall brought suit against the defendants for, among other things, NIED.  <u>Id.</u> at 28, 34, 821 P.2d at 942, 945.  The trial court entered summary judgment in favor of the defendants, and Marshall appealed.

On appeal, the Intermediate Court of Appeals of Hawaii affirmed summary judgment as to the university, stating that Haw. Rev. Stat. § 386-5 barred his NIED claim against his employer. <u>Id.</u> at 35, 821 P.2d at 945-46.  Regarding Marshall's NIED claims against his co-employees, the court noted that Haw. Rev. Stat. § 386-8 "clearly allows an employee to sue a fellow employee for damages resulting from an injury caused by the fellow employee's willful and wanton misconduct."  Because Marshall's complaint alleged only that his co-employees <u>negligently</u> inflicted emotional distress on him, the court held, "Without more, the allegation fails to state a cause of action."  <u>Id.</u> at 34-36, 821 P.2d at 945-47.  However, because Marshall had submitted an affidavit to the trial court alleging that the "investigation was maliciously conjured up," and because his allegation of malice in the affidavit alleged wilful conduct, the court stated that "Marshall should be allowed to amend his pleading to allege a

34

proper cause of action for willful and wanton misconduct." Id. at 36, 821 P.2d at 946. In other words, contrary to Abbatiello's assertion, the court held that Marshall's negligence claim was barred, but stated that he could nevertheless raise claims based on wilful and wanton misconduct. Marshall, like Iddings, precludes negligence claims against co-employees under Haw. Rev. Stat. § 386-8.

In Count 5, Abbatiello alleges that Defendants "were negligent in their supervision and retention of Sergeant Kapua." FAC ¶ 121. Nowhere in Count 5 does Abbatiello allege that Defendants wilfully or wantonly (or intentionally or recklessly) supervised and retained Kapua, and Abbatiello admits in her opposition memorandum that Count 5 is a "negligence cause[] of action." Opp. at 30. Further, although Count 5 "realleges and incorporates" the preceding paragraphs in the FAC, which include an allegation that Defendants' retaliation was "willful, wanton, malicious, and in such callous and reckless disregard of civil obligations," Abbatiello fails to allege anywhere in the FAC that Defendants wilfully or wantonly supervised or retained Kapua. See FAC ¶ 102 (regarding Abbatiello's claim for retaliation in Count 1). Because Abbatiello's claim in Count 5 is based on negligent conduct and is therefore barred under Haw. Rev. Stat. § 386-6, the court grants summary judgment in favor of the individual Defendants on Count 5.

Regarding Count 7 for NIED, Abbatiello alleges in the FAC, "The actions of Defendants, as set forth above, were negligent, and foreseeably resulted in physical harm to [Abbatiello], and was a legal cause of injury to [her]." FAC ¶ 130. Although Abbatiello's NIED claim is clearly based on negligent conduct, she nevertheless argues that the following statement in Count 7 establishes that her NIED claim is actually based on wilful or wanton conduct: "The actions of Defendants were wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle [Abbatiello] to recover punitive damages." Opp. at 31. The court is not persuaded that Abbatiello's request for punitive damages somehow converts a claim expressly based on negligent conduct into one based on wilful or wanton (or intentional or reckless) conduct. See also Opp. at 30 ("Counts V and VII are 'negligence' causes of action"). Abbatiello's claim for NIED is "nothing more than a negligence claim" and is therefore barred by Haw. Rev. Stat. § 386-8. See Doe Parents No. 1 v. State Dept. of Educ., 100 Haw. 34, 69, 58 P.3d 545, 580 (Haw. 2002) ("an NIED claim is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed 'utilizing ordinary negligence principles'"). Accordingly, the court grants summary judgment in favor of the individual Defendants on Count 7.

At the hearing on the motion, Abbatiello asked that she be allowed to amend the FAC. Abbatiello provided no reason she

could not have sought leave to amend earlier.  With trial scheduled in just a few months, this court declines to allow a further amendment of the complaint in a case commenced in 2004.

IV.     <u>CONCLUSION.</u>

In light of the foregoing, the court grants summary judgment on Abbatiello's claims for negligent supervision and retention (Count 5) and NIED (Count 7), but denies summary judgment on all other claims.  This order leaves for further adjudication:  (1) Count 1 for violation of Abbatiello's rights to free speech, due process, and equal protection under the United States Constitution and 42 U.S.C. § 1983; (2) Count 3 for violation of the Hawaii Whistleblowers' Protection Act; (3) Count 4 for wrongful termination; (4) Count 6 for intentional infliction of emotional distress; and (5) Count 8 for violation of Abbatiello's rights to free speech, due process, and equal protection under the Hawaii constitution.[7]

In the event any party wishes to file a further dispositive motion, that party must move the trial judge to amend the scheduling order, as the deadline for filing dispositive motions has passed.  Additionally, as stated in the July 19, 2006, Order Regarding Trial Date, the parties are reminded that the trial date, currently May 8, 2007, may not be continued without the express consent of the trial judge.

---

[7] Abbatiello is urged to consider the issue of whether claims may be brought directly under the state constitution.  If the state constitutional claims remain in issue, this court may be compelled to certify that issue to the Hawaii Supreme Court.

37

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 7, 2007.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Abbatiello v. County of Kauai, et al., Civ. No. 04-00562 SOM/BMK; ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

38