# EXHIBIT "C"

# PART 2 OF 2

18

1           THE COURT: I already know Mr. Minkin does not have
2   that explanation that you've just given. This is totally
3   different. It's okay.
4           MR. MINKIN: Thank you.
5           THE COURT: Okay. Well, I would like to move to some
6   of the other issues because we had actually quite a few here.
7           The defendants are in the alternative asking for
8   summary judgment based on qualified immunity. But, as I
9   understand it, both expressly stated in the Second Amended
10  Complaint as well as clarified by plaintiff's counsel today,
11  except for Mr. Lum and Mr. Kapua everybody else is sued in
12  their official capacities. And, obviously, the county can only
13  be sued and the police department are only in their official
14  capacities; so it seems to me qualified immunity just doesn't
15  apply to official-capacity entities or people.
16          Now, they may well have other issues, and I was
17  conscious that those other issues weren't raised. But they're
18  not -- they're not immunity issues, but they're certainly
19  defenses that official-capacity defendants and municipalities
20  have under 1983. And those were not raised at all and maybe
21  they should have been, or maybe the facts don't support those
22  defenses. I don't, you know, you folks know more about what's
23  in the case or not, but those were not before me. But in terms
24  of qualified immunity I just can't see how it can apply.
25          MR. MINKIN: Well, part of my problem was that we

1  have -- as Miss Bronster indicated, we've been going back and
2  forth on a stipulation. And we -- back in January, I believe,
3  of '06 they were dismissed in their official capacity. A short
4  time -- all four. That's Lum, Ihu, Isoda, and Pigao. And
5  literally within a matter of months Lum was back in in his
6  individual capacity, notwithstanding his dismissal back in
7  January of '06.
8       The depositions of Ihu, Isoda, Pigao were taken back
9  in October of '06. We filed this because they have the option,
10 based on our discussions, to bring them back in their
11 individual capacity. If they don't have that information --
12 basically, we were trying to stop them from bringing them back
13 in in their individual capacity based upon the discovery thus
14 far. They haven't asked for supplemental depositions of these
15 folks. They took them on Kaua'i on a Friday and Saturday in
16 October. I believe that there is no individual liability at
17 least for my three clients, Ihu, Isoda, and Pigao, and we were
18 just attempting to get them to, basically, step up to the plate
19 and say they haven't seen anything to date, and, if they did,
20 they would then be subject to qualified immunity.
21       THE COURT: Okay. But since I can only deal with the
22 claims I have in front of me and I don't have individual
23 capacity claims, then I just don't think qualified immunity
24 applies. Now, as I say, quite apart from the things you're
25 talking to me about, municipalities certainly have defenses. I

1  don't know if the facts support the defense, but, you know,
2  they're kind of defenses that leap out, and they weren't even
3  mentioned here. But maybe the facts don't support them. I
4  don't know.
5       Now, I know that I have coming up on my calendar
6  motions by -- a motion by Lum joined in by Kapua, and that goes
7  to both the individual and official-capacity issues; so
8  qualified immunity, I'm sure, is going to be back on my plate
9  shortly. I had a couple of questions about that.
10      First of all, Kapua joined. And, you know, we have
11  different kinds of joinders that our local rules talk about.
12  If you do a joinder of simple agreement, which is what Kapua
13  did, then I suppose there might be some ambiguity. You're
14  either saying, as Kapua, "Okay. I agree with Lum that Lum
15  should get summary judgment." That's a joinder in Lum's
16  motion. It may be that Kapua meant to say, "I agree that Lum
17  should get summary judgment, and for the same reasons, which
18  also apply to me, I also should get summary judgment." If
19  that's what's meant, that should be clarified in the joinder.
20      It's beyond the time that Kapua can file a
21  substantive joinder, which would be an argument that "I, like
22  Lum, should get summary judgment, but I have reasons to get the
23  same result as Lum, and those reasons are unique to me, and
24  here I'm briefing them." It's too close to the hearing on
25  Lum's motion for Kapua to be doing that.

 1            But I need to get some clarification as to the nature
 2   of the joinder.  I only say that to --
 3        (Court and law clerk conferring.)
 4            THE COURT:  He hasn't joined.  Kapua hasn't even
 5   joined yet.  Okay.  If Kapua is going to join.  Thank you.
 6            We're anticipating a joinder because the rules do say
 7   that you can file a joinder of simple agreement at any time.
 8   And the reason it does that is the assumption that the person
 9   opposing the underlying motion is not put to any more work by
10   the filing of a simple joinder because it's based on the same
11   thing.  Okay.  But, if Kapua files a joinder, I need to
12   understand whether it's joining in Lum's request that Lum get
13   summary judgment or whether it's joining in Lum's request by
14   saying, "For everything that Lum is saying, for all those
15   reasons, they apply to me, too, and I also should get summary
16   judgment."  And you can do that, but you cannot add anything
17   new because the whole idea is you cannot force your opponent on
18   short notice to have to address brand new issues.
19            MS. BRONSTER:  And, Your Honor, I have a related
20   issue to that on the Lum motion, if I may raise it.
21            THE COURT:  Okay.
22            MS. BRONSTER:  We did take the deposition of Kapua
23   and Lum in October, and both of them pled the Fifth.  We've
24   been informed this morning that K.C. Lum has now been given the
25   go ahead to waive his Fifth Amendment privilege with regard to

1  most, if not all, questions which may be asked of him in this
2  case, which would dramatically change the landscape with
3  respect to both his motion and --
4          THE COURT: Okay. Well, it may be at the end of this
5  hearing that we have to talk about scheduling. It occurs to me
6  that to the extent -- and I don't know that this is a
7  legitimate argument, but to the extent that Lum might feel that
8  Lum might want to put in a supplemental brief to address the
9  additional statements that Miss Bronster identified as
10 supporting the First Amendment claim, you know, that they might
11 want to supplement their motion, too. I don't know. But it
12 may be that everything has to be moved off. I don't know that.
13          Now, we have lots of problems with the scheduling
14 here. This is a case pretty old; so I said you can't change
15 this trial date without coming directly to me.
16          Just to tell you folks, I do these orders all the
17 time when I think a case is getting old and I don't want it to
18 get too old. For one thing, every time a case is more than
19 three years old, you know, we have to put in a little report
20 explaining how come it's taking the judge so long. And Judge
21 Kurren makes fun of me and says, "Why do you care? Nothing's
22 going to happen to you. You just always want to get an A in
23 every class." He kind of teases me about it. But, you know,
24 we have these reports and the judge doesn't look bad if the
25 case is too old; so I do these orders when I see that a case is

23

1    kind of getting old.
2              And I think the attorneys will see that they can't
3    change the trial date without coming to me.  Well, in one of my
4    cases they changed the trial date anyway.  And then they did it
5    again, and then they did it again.  So the third time I issued
6    one of these orders saying, "You can't change the trial date
7    without the trial judge's permission."  I said, "And if you do
8    it a third or fourth time, you're going to be sanctioned,"
9    because they just ignore these orders.  So anyway don't change
10   the trial date without coming to me.  And I understand that
11   some of the things we're talking about today, you know, maybe
12   we have to talk about whether that should be or not, and we'll
13   figure that out as we go.
14             Okay.  But, anyway, if nobody has anything more to
15   say about qualified immunity, which it sounds like was kind of
16   a defensive posture, anticipating things that haven't occurred,
17   then let's look at the rest of this.  Okay.
18             Now, the 1985 claims are being withdrawn; so that
19   should make you folks happy.
20             The state law claims, I was asked to throw those out
21   on the expectation that I would throw out the federal claims.
22   So, if I don't throw out the federal claims, then that's not a
23   winning argument.  Okay?
24             So I want to then look, though, at some of the
25   negligence claims, and on this I'm inclined to go with the

1    defendants.  I'm inclined to rule that count 5, which sues for
2    negligent supervision and retention, and count 7, which sues
3    for negligent infliction of emotional distress, are barred.
4    Both being grounded in negligence they are subject to the
5    workers' comp exclusive remedy statute.
6         And let me invite Miss Bronster to address that, if
7    she would like to.
8         MS. BRONSTER:  Yes, Your Honor.  With respect to the
9    negligent infliction of emotional distress we believe that the
10   more appropriate claim is the intentional infliction --
11        THE COURT:  You have that.
12        MS. BRONSTER:  We have that, and that is separate.
13        With respect to the employer actions with respect to
14   the supervision and retention of employees we are concerned
15   that, if this is simply dismissed, I am concerned that the
16   willful and wanton actions of some of the defendants in this
17   might otherwise get lost in the mix, so to speak.  And, as we
18   have alleged in count 5, there were willful and wanton actions
19   that would give rise to a claim.  To the extent that they
20   are -- what you'd be doing is dismissing the negligent aspects
21   of count 5 we understand the decision, but to the extent that
22   there are willful and wanton actions that are alleged we would
23   request either that, to the extent they exist in count 5 or
24   otherwise, that they are not dismissed or that we have the
25   right to amend the pleadings, as the court indicated in the

25

1   Marshall versus University of Hawai'i case.
2           THE COURT:  Where is the allegation of willful or
3   wanton supervision or retention?  Show me where that is because
4   I didn't see that.
5           MS. BRONSTER:  And we -- we did not specifically set
6   it forth in count 5.
7           THE COURT:  I didn't see it, and so I don't think you
8   have a willful or wanton supervision or willful or wanton
9   retention of Mr. Kapua in there.
10          MS. BRONSTER:  And we would request the right to
11  amend to include that.
12          THE COURT:  Probably not going to let that happen.
13  This is pretty close to trial.  Trial is set for when?  May?
14          MS. BRONSTER:  May.
15          THE COURT:  May, yeah.  And this case was originally
16  filed in 2004; so I'm probably not likely to do that.  But --
17  okay.
18          MS. BRONSTER:  Your Honor, we believe that the
19  earlier allegations in the earlier paragraphs set forth
20  examples of actions particularly by K.P.D. and Lum where it
21  showed that his actions in not dealing with Kapua were willful
22  and wanton, and we believe that those are contained in the
23  prior paragraphs and incorporated by reference.
24          THE COURT:  Where is that on supervision or
25  retention?  Show me the specific paragraph that says that some

1   defendant was willful or wanton in supervising or retaining Mr.
2   Kapua. What I saw was that there was willful, wanton, or
3   malicious retaliation against Miss Abbatiello. I didn't find
4   any paragraph saying that there was willful or wanton
5   supervision.
6           MS. BRONSTER: Your Honor, I believe that, if you go
7   through the factual allegations, I think it would be not only
8   willful and wanton supervision of Kapua but also of other
9   officers and particularly with respect to the strip search. We
10  believe that, for example, in paragraphs --
11          THE COURT: Okay. Forget about the other officers
12  because, as I understand it, count 5 says that defendants were
13  negligent in their supervision and retention of Sergeant Kapua.
14  I mean, if you're going to add other officers in now, I mean I
15  think you're --
16          MS. BRONSTER: No, understood, Your Honor. I believe
17  that, if you look at paragraphs 86, the fact that Lum did
18  nothing with respect to the complaints regarding the female
19  arrestees; "87. Although Kapua admitted to calling plaintiff
20  names, defendants, including Lum, did not take any action with
21  respect to Kapua for his admitted sexually degrading comments."
22  We believe that those are factual allegations that more than
23  support a wanton and willful claim.
24          THE COURT: Okay. I don't think you're putting the
25  defendants on notice about anything other than negligence

27

1  there; so I'm actually not persuaded that there is anything
2  left in count 5 that I should keep. But I mean you have lots
3  of other counts where you're going to be arguing --
4           MS. BRONSTER: And, Your Honor, to the extent I think
5  that they are included in some of the other counts with respect
6  to count 1 and the --
7           THE COURT: I don't think willful and wanton
8  supervision or retention of Sergeant Kapua is included in any
9  other count. I don't want to be mistaken here. I think that
10 willful and wanton activities other than supervision or
11 retention of Sergeant Kapua --
12          MS. BRONSTER: And that's what I was trying to refer
13 to is the willful and wanton nature of the activities, not the
14 retention.
15          THE COURT: Okay. Anybody want to say anything more
16 on these motions?
17          MR. MINKIN: Nothing. Thank you.
18          THE COURT: Okay. Then I want to talk a little bit
19 about what's going to happen. I'm going to take these motions
20 under advisement and probably can issue a ruling within the
21 next 10 days or so. I'll do it as soon as I can. Might be
22 shorter than that because I know trial is coming up. But what
23 are we going to do from now?
24          Okay. Now, I would like for the parties to try to
25 get together and see if they are in agreement that I can keep

28

1  the upcoming motions in this case on the calendar as now
2  assigned, or if there is disagreement on that.  If there is
3  agreement that they can be kept, fine.  If there's agreement
4  that they should be moved, then they should -- you folks should
5  get together and talk to my courtroom manager to get another
6  date.  If there's disagreement, well, go to the magistrate
7  judge, whoever wants to do whatever, move whatever.  I'm hoping
8  that you folks can agree at least on the scheduling issue of
9  when those motions should go.
10         And, if they're going to be moved, then it seems to
11  me that the movants can supplement their papers, but they
12  should put in their -- if it's going to be moved, then put in
13  your supplementation more than 28 days before the new date, if
14  it's going to be moved.  If it's not going to be moved, you
15  probably don't have an agreement, and you can take everything
16  to the magistrate judge.
17         Okay.  Now, when I issue whatever order it is that
18  I'm going to issue, it may be that somebody thinks, "Oh, I
19  should have moved on something something else, and I have a
20  good motion for summary judgment and we shouldn't have to go to
21  trial."  Well, the deadline for filing dispositive motions has
22  passed; so, if anybody wants to do that, you have to file a
23  motion to amend the scheduling order, which set a now past
24  deadline for filing dispositive motions.  Normally, such a
25  motion would go to the magistrate judge, but give it to me

```
 1   because I'm in charge of the trial date here, too.  Okay?  And
 2   I won't be too thrilled with such a motion.  On the other hand,
 3   you know, you may have your reasons, and you can set those out
 4   in a motion.
 5            But, as much as possible, I would like to hold you
 6   folks to the trial date because this case is so old already.
 7   And, you know, I mean I know it's horrible to have a federal
 8   civil trial date because you folks know that you always get
 9   trumped by a criminal case, and I feel really bad about that.
10   I haven't been in this job so long that I've forgotten how hard
11   it is to be civil case counsel in federal court and never know
12   whether you need to have your witnesses here or not.  And I
13   tend to not let you go early if I think there's a chance you
14   might go.  I want to preserve that trial date.  But that will
15   mean that I'm going to hold you to that trial date coming up,
16   you know, right to the eve of that trial because the criminal
17   case might go away -- they often do -- and I want to preserve
18   that date.
19            Let me suggest that you folks might want to talk
20   about whether you want to all consent to trial by magistrate
21   judge.  I know you all know we have three fantastic magistrate
22   judges.  I personally think that they exist to make me look bad
23   because they're all so good.  But they can give you a firm
24   trial date because they don't have to try felony cases that
25   will trump you folks.  So to me, I mean, that's an advantage
```

30

1  for everybody: to have a firm trial date. And, you know, I
2  think you folks might well be served in this case by talking to
3  each other about that possibility. I don't know why one of you
4  would think it's an advantage to have an uncertain trial date
5  with however complicated this case is going to be. I mean
6  sometimes, you know, the defense thinks, "The plaintiff's not
7  going to be ready. Let's just make them get ready." But in
8  this case it's pretty complicated, and you folks are going to
9  have a lot of prep; so I would like to suggest that you
10 consider that.
11         I mean I know all of you and, you know, I know you're
12 all very good attorneys, and it would be my privilege to
13 preside over a case that all of you tried. But I don't know
14 that that's the best thing for you folks: to have an uncertain
15 trial date. So you should at least consider it. Okay.
16         So I guess that's where I'm going to leave it. As I
17 say, I'll be able to give you an order -- what is today? Today
18 is Tuesday. I might not be able to get it out this week. If I
19 can, I will, but, if not, you'll get it no later than sometime
20 next week.
21         Yeah.
22         MR. MINKIN: Miss Bronster indicated that she's
23 learned something within the last week or so about additional
24 retaliation, that sort of thing. The First Amended Complaint
25 came approximately 11 months after they learned the other

1  issues regarding the strip search. Is there going to be -- is
2  there some deadline that we can force upon plaintiffs to put
3  that -- basically amend the complaint or by stipulation or do
4  something so that we're not precluded in the next month of
5  discovery to take depositions related to that?
6        THE COURT: Okay. Now, I'm not certain that her --
7  it sounds to me -- and I have to study this complaint more to
8  know this, but you folks should take a look at this. I don't
9  know that her complaint needs to be amended to subsume new
10 facts that she says support the existing claim, which is that
11 her client is being retaliated against for speaking out. I
12 think this is -- I think what she was alleging was additional
13 retaliatory acts. Not a new claim but new evidence supporting
14 an existing claim. If that is so, then I don't know she needs
15 to amend, but --
16        MR. MINKIN: The problem is we're now on our third
17 acting or interim chief of police from when these allegations
18 first arose, there's a completely new administration there in
19 the police department; so are they now asserting that the
20 current interim chief, who is her own client in another matter,
21 is the person retaliating or it's one of his subordinates? I'm
22 not sure, and therein lies my problem.
23        THE COURT: You think she might have a conflict.
24        MR. MINKIN: I think -- well, I don't know what the
25 allegations are. This is the first time I've heard of this.

1  So there are a number of issues that are out there.
2        THE COURT: Okay. I don't know I can solve that
3  today. I guess you're going to have to take some discovery to
4  figure out exactly what is going on. I mean it sounds like you
5  are going to take the plaintiff's deposition at some point.
6        MR. MINKIN: Correct.
7        THE COURT: So that's probably where you can flesh
8  out exactly what it is she's claiming. And then, you know, as
9  I say, I'm highly unlikely to say that there can be new claims
10 added, but I'm not certain that what she was saying amounts to
11 a new claim. It might be new evidence supporting the existing
12 claim. But, if indeed -- I mean I can see the problem that
13 would arise if, you know, she were alleging wrongdoing on
14 behalf of a client she represents in an unrelated matter, but I
15 don't know that to be the case. So it sounds to me like you
16 folks are going to have to figure out what is being alleged
17 through discovery, and then you may have to come back.
18       MR. MINKIN: Okay.
19       THE COURT: It's a horrifying thought to me that you
20 might all be back on discovery disputes, but I'm thinking it's
21 probably likely. Okay.
22       MS. BRONSTER: But I would imagine that a discovery
23 dispute would go to the magistrate.
24       THE COURT: Yes. Isn't that nice.
25       Okay. Is there anything else, then? Otherwise, I'm

33

1   going to take the motions under advisement.  And the sooner you
2   know whether you're keeping the dates that I now have reserved
3   in this case on remaining motions the better it is for me
4   because I can use that slot for something else; so I'd really
5   appreciate it if you folks would confer and figure out if you
6   have an agreement as soon as possible.
7           MS. BRONSTER:  Thank you.
8           THE COURT:  Thank you all very much.
9           MR. MINKIN:  Thank you.
10          MS. BRONSTER:  Thank you, Your Honor.
11      (Court recessed at 9:57 A.M.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

34

1             COURT REPORTER'S CERTIFICATE
2         I, Debra Kekuna Chun, Official Court Reporter, United
3    States District Court, District of Hawaii, do hereby certify
4    that the foregoing is a correct transcript from the record of
5    proceedings in the above-entitled matter.
6         DATED at Honolulu, Hawaii, February 9, 2007.
7
8                                       /s/ Debra Chun
9                                       DEBRA KEKUNA CHUN
10                                      RPR, CRR
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25