LAW OFFICES OF CARY T. TANAKA

CARY T. TANAKA        4858-0
DIANE K. AGOR-OTAKE  7751-0
Suite 510 Fort Street Tower
745 Fort Street
Honolulu, Hawaii  96813
Telephone:  536-8885
Facsimile:  536-8845
carytanaka@aol.com
dka@hawaii.rr.com

Attorneys for Defendant
K.C. LUM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DARLA ABBATIELLO,<br><br>            Plaintiff,<br><br>    vs.<br><br>COUNTY OF KAUAI, KAUAI<br>POLICE DEPARTMENT, K.C. LUM,<br>WILFRED M. IHU, GORDON ISODA,<br>DEAN PIGAO, and IRVIL KAPUA,<br><br>            Defendants. | CIVIL NO. CV04 00562 KSC<br><br>DEFENDANT K.C. LUM'S<br>MEMORANDUM IN OPPOSITION TO<br>PLAINTIFF'S MOTION FOR SUMMARY<br>JUDGMENT ON COUNTS I-VIII OF<br>THE FIRST AMENDED COMPLAINT<br>AGAINST DEFENDANT K.C. LUM,<br>AND COUNTS I, II, IV, VI, VII,<br>AND VIII AGAINST DEFENDANT<br>IRVIL KAPUA, FILED ON JANUARY<br>8, 2007; CERTIFICATE OF<br>SERVICE<br><br><u>Hearing</u><br>Date: March 12, 2007<br>Time: 9:00 a.m.<br>Judge: The Honorable Kevin<br>            Chang<br><br>TRIAL DATE:  June 5, 2007 |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES......................................... iii

I.    BACKGROUND ............................................. 1

II.   STATEMENT OF FACTS.................................... 3

      A.    Plaintiff's Allegations .......................... 3

      B.    Defendant Lum's Assertion of His Fifth Amendment
            Privilege Against Self-Incrimination ............. 5

III.  APPLICABLE LEGAL STANDARD............................. 7

IV.   DISCUSSION ........................................... 8

      A.    Defendant Lum's Proper Assertion of His
            Constitutional Fifth Amendment Right Against
            Self-Incrimination Does Not Warrant the Granting
            of Plaintiff's Motion ........................... 8

      B.    Plaintiff Is Not Entitled to Summary Judgment
            On Counts I and II of Her First Amended
            Complaint ....................................... 9

            1.    First Amendment ........................... 13

            2.    Alleged Equal Protection and Due Process
                  Violations, and Adverse Employment Actions
                  Arising Under the United States and Hawaii
                  Constitutions ............................. 14

                  a.    Employment Demotion ................. 14

                  b.    Field Training Officer .............. 15

                  c.    Cellblock Duty ...................... 16

                  d.    Strip Search and Photographing ...... 17

                  e.    Alleged Death Threat ................ 18

                  f.    Theft of Firearm .................... 18

                  g.    Order to Avoid Defendant Kapua ...... 19

                  h.    Hostile Work Environment With

            Defendant Kapua ......................... 20

        i.   Conspiracy to Violate Civil Rights ...... 21

C.   Plaintiff Is Not Entitled to Summary Judgment
on Count III (Whistleblower's Protection Act
of Her First Amended Complaint .................... 21

D.   Plaintiff Is Not Entitled to Summary Judgment
On Count IV of the First Amended Complaint ....... 23

E.   Plaintiff Is Not Entitled to Summary Judgment
On Counts V and VII of the First Amended
Complaint ........................................ 23

F.   Plaintiff Is Not Entitled to Summary Judgment
on Count VI of the First Amended Complaint
As There Is No Evidence to Support Such Claim ..... 24

V.   CONCLUSION .......................................... 26

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                <u>Page(s)</u>

<u>Anderson v. Creighton</u>, 483 U.S. 635, 107 S.Ct. 3034,
    97 L.Ed.2d 523 (1987) ................................  10

<u>Billington v. Smith</u>, 292 F. 3d 1177(9th Cir. 2002)........  9-10

<u>Doe v. Glanzer</u>, 232 F.3d 1258 (9th Cir. 2000) .............  8

<u>Garcetti v. Ceballos</u>, 126 S.Ct. 1951 (2006) ...........  13-14

<u>Iddings v. Mee-Lee</u>, 82 Haw. 1 (Haw. 1996) ................  24

<u>Johnson v. H.S. Caudill</u>, 2007 WL 291396 (4th Cir. 2007) ....  10

<u>Nissan Fire & Marine Ins. Co. v. Fritz Cos</u>.,
    210 F.3d 1099 (9th Cir. 2002) ........................  7

<u>Parnar v. Americana Hotels, Inc</u>., 65 Haw. 370,
    652 P.2d 625 (Haw. 1982) ............................. 23

<u>Pickering v. Board of Education of Township High
    School District</u>, 391 U.S. 563 (1968) ................  13

<u>Saucier v. Katz</u>, 533 U.S. 194, 121 S. Ct. 2151,
    150 L.Ed.2d 272 (2001) ...........................  9, 10

<u>Tseu ex rel. Hobbs v. Jeyte</u>, 88 Haw. 85, 962 P.2d 344
    (Haw. 1998) .........................................  25

<u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>,
    809 F.2d 626 (9th Cir. 1987) .........................  7


<u>Statutes</u>

Haw. Rev. Stat. §378-61...................................  21

Haw. Rev. Stat. §378-62...................................  22

Haw. Rev. Stat. §386-5....................................  24


<u>Secondary Sources</u>

Restatement (Second) of Torts § 46 (1965)..............  24-25

DEFENDANT K.C. LUM'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ON COUNTS I-VIII OF THE
FIRST AMENDED COMPLAINT AGAINST DEFENDANT K.C. LUM,
AND COUNTS I, II, IV, VI, VII, AND VIII AGAINST
DEFENDANT IRVIL KAPUA, FILED ON JANUARY 8, 2007

Comes now Defendant K.C. LUM ("Defendant Lum"), by his
attorneys, and hereby submits his Memorandum in Opposition to
Plaintiff's Motion for Summary Judgment on Counts I-VIII of the
First Amended Complaint against Defendant K.C. Lum, and Counts I,
II, IV, VI, VII, and VIII Against Defendant Irvil Kapua, filed on
January 8, 2007 ("Plaintiff's Motion").  For the reasons set
forth below, Plaintiff's Motion should be denied.

I.    BACKGROUND

This case arises out of a claim for damages being asserted
by Plaintiff DARLA ABBATIELLO ("Plaintiff") in the above-
referenced case.  Plaintiff alleges that she is entitled to
recover damages as it relates to her employment with the Kauai
Police Department ("KPD") and her reports of alleged misconduct
on the part of other officers in the department.  In the First
Amended Complaint filed herein on April 21, 2006 ("FAC"),
Plaintiff sets forth the following causes of action:

(1)   Count I (Federal Civil Rights Violations) - Claims against
      all Defendants for violations of Plaintiff's federal civil
      rights under the First, and Fourteenth Amendments of the
      United States Constitution;

(2)   Count II (Conspiracy to Violate Civil Rights) - A claim
      against all Defendants for conspiracy to violate her civil
      rights;[1]

_____

[1]  At the hearing on DEFENDANTS COUNTY OF KAUAI, KAUAI
POLICE DEPARTMENT, WILFRED M. IHU, GORDON ISODA AND DEAN PIGAO'S

(3)  Count III (Whistleblower's Protection Act) - A claim against at least Defendant Lum, Defendant Wilfred M. Ihu, Defendant Dean Pigao, Defendant KPD, and Defendant County of Kauai ("Defendant County"), for violation of the State of Hawaii's Whistleblower's Protection Act;

(4)  Count IV (Wrongful termination in violation of public policy) - A claim against all Defendants for the tort of wrongful termination in violation of public policy;

(5)  Count V (Employer negligence in supervision/retention of employee) - A claim against at least Defendant Lum, Defendant Ihu, Defendant KPD and Defendant County for negligent supervision and retention of Defendant Irvil Kapua;

(6)  Count VI (Intentional infliction of emotional distress) - A claim against all Defendants for intentional infliction of emotional distress; and

(7)  Count VII (Negligent infliction of emotional distress) - A claim against all Defendants for negligent infliction of emotional distress; and

(8)  Count VIII (Violation of rights secured to Plaintiff pursuant to the Constitution of the State of Hawaii) - A claim against all Defendants for violation of her rights to freedom of speech, due process of law, equal protection of the law, and the enjoyment of her civil rights.

See FAC filed herein on April 21, 2006, ¶¶89-138.

---

MOTION FOR SUMMARY JUDGMENT ON, OR IN THE ALTERNATIVE DISMISSAL OF, COUNTS I AND II OF THE FIRST AMENDED COMPLAINT, AND DISMISSAL OF COUNTS V AND VII OF THE FIRST AMENDED COMPLAINT, FILED HEREIN ON DECEMBER 12, 2006, Plaintiff withdrew her claims against all Defendants brought under 42 U.S.C. section 1985 in Counts I and II.  See Order Granting In Part and Denying In Part Defendants' Motion for Summary Judgment, filed herein on February 7, 2007, p. 1, n.1.

II.  <u>STATEMENT OF FACTS</u>

 A. <u>Plaintiff's Allegations</u>

 Plaintiff's allegations arise out of the following alleged events:

 In late 2003, Plaintiff was a member of the KPD Narcotics Vice Division ("Vice").  As part of her duties, she was involved in the investigation of an individual, identified in the Complaint as "A.B.", for alleged dealing of crystal methamphetamine.[2]  <u>See</u> FAC at ¶16.  According to Plaintiff, A.B. informed her that drug dealer "C.D." had paid Defendant Irvil Kapua ("Defendant Kapua") $6,000.00 in exchange for protection from law enforcement.  <u>See</u> FAC at ¶24.

 Plaintiff claims that she reported these allegations to her supervisor, Lieutenant E.F. on January 19, 2004.  <u>Id</u>. at ¶32.  At the same time she informed Lieutenant E.F. that she believed she was involved in a dangerous situation, and, given Defendant Kapua's reputation for violence, she feared for her safety.  <u>Id</u>. at ¶25.

 Plaintiff also alleges that, around that time, she began experiencing harassment from Defendant Kapua.  <u>Id</u>. at ¶36.  Plaintiff claims that she reported this harassment in mid-2004 to Lieutenant O.P. and was told that she was being ordered to stay

---

 [2]  The Complaint identifies certain individuals in "John Doe" fashion.  This memorandum will identify such individuals in the same manner as they are identified in the FAC.

away from Defendant Kapua, pursuant to an order issued by
Defendant Dean Pigao ("Defendant Pigao").  Id. at ¶49.  In
addition, Plaintiff was ordered to use the back door of the
police station whenever she needed to access the Vice Unit.  Id.
This was also ordered in an effort to have her avoid making
contact with Defendant Kapua.  Id. at ¶¶49-51.  Plaintiff alleges
that no investigation of Defendant Kapua ensued and that
Defendant Kapua was never disciplined for his alleged illegal
activities.  Id. at ¶54.

Plaintiff further alleges that she then requested a
temporary transfer out of the Vice Unit in an effort to place
distance between herself and Defendant Kapua.  Id. at ¶39-40.
She claims that the transfer became effective on or about April
2, 2004, however, she was never informed that her transfer would
result in a decrease in her salary, nor was she ever told the her
transfer would be permanent.  Id. at ¶¶40-42.[3]

About a year later, in April of 2005, Plaintiff was called
upon to assist with a strip search and photographing of two
female arrestees.  Id. at ¶58.  On May 9, 2005, Plaintiff

_____

[3]  A couple of months later, on or about May 1, 2004,
Defendant Lum was appointed as the Acting Chief of Police of the
Kauai Police Department.  See DEFENDANT K.C. LUM'S RESPONSE TO
PLAINTIFF'S AMENDED SEPARATE AND CONCISE STATEMENT OF FACTS THAT
INCORPORATES BY REFERENCE EXHIBITS "A" - "YY" ATTACHED TO THE
STRICKEN SEPARATE AND CONCISE STATEMENT OF FACTS FILED ON JANUARY
8, 2007 [DOCKET NUMBER 193], FILED ON JANUARY 12, 2007("RESPONSE
SCSF") No. 18.

submitted a formal objection to the strip search and
photographing to her superiors as well as the Kauai County Police
Commission. Id. at ¶¶60-63. Plaintiff claims that no action was
taken on her formal complaint. Id. at ¶¶62-64.

Finally, Plaintiff claims that, as retaliation for her
filing of the formal objection, on or about May 25, 2005, she was
removed from her position as a Field Training Officer ("FTO").
Id. at ¶65. She further alleges that she is unable to work in
the cellblock because of KPD personnel who are unfriendly towards
her who also work in the cellblock. Id. at ¶81.

B.    Defendant Lum's Assertion of His Fifth Amendment
      Privilege Against Self-Incrimination

Plaintiff's counsel originally noticed Defendant Lum's oral
deposition in March, 2006. Due to a number of scheduling
conflicts, the deposition was held on October 12, 2006. See
Defendant K.C. Lum's Response to Plaintiff's Amended Separate and
Concise Statement of Facts that Incorporates by Reference
Exhibits "A" - "YY" Attached to the Stricken Separate and Concise
of Facts Filed on January 8, 2007 [Docket Number 193], Filed on
January 12, 2007 ("Response SCSF") no. 33. Prior to the
deposition being conducted, Defendant Lum's counsel informed the
parties that Defendant Lum would be asserting his Fifth Amendment
privilege against self-incrimination because of a recent State
investigation involving his use of a government document. Id.
Defendant Lum was advised by his counsel in that matter to assert

his Fifth Amendment privilege at the deposition in this case.
Id.

Upon learning of Defendant Lum's decision, Defendant Lum's counsel in this case ("Lum's Counsel") immediately notified all parties that Defendant Lum would be asserting his Fifth Amendment privilege and that he would be made available at a later date if approved by other counsel who were representing Defendant Lum in other matters. Id. Lum's Counsel offered to make such representation in writing to Plaintiff's counsel in an effort to prevent the deposition from going forward as Defendant Lum would not be able to provide answers to most, if not all, of Plaintiff's inquiries. Id. However, Plaintiff's counsel requested that the deposition go forward, representing that he wanted to place Plaintiff's questions on the record. Id.

In January, 2007, Lum's Counsel learned from Defendant Lum's other counsel that Defendant Lum had since provided deposition testimony in another civil case and that he would in fact likely waive his previously asserted Fifth Amendment privilege in this case. Id. On January 9, 2007, Lum's Counsel conveyed this information to all counsel in this case. Id.

In February, 2007, Lum's Counsel received confirmation from Defendant Lum's other counsel that Defendant Lum would be allowed to also testify in this instant case. Id. On February 6, 2007, Lum's counsel emailed all counsel to inform them of Defendant

Lum's availability for deposition and that the parties could proceed with scheduling the deposition even though Lum's Counsel was awaiting written confirmation from Defendant Lum's other counsel. <u>Id</u>.

On February 7, 2007, Lum's Counsel emailed all counsel to confirm his receipt of written confirmation from Defendant Lum's other counsel approving Defendant Lum's waiver of his Fifth Amendment privilege in this case. <u>Id</u>. Defendant Lum's deposition was then noticed for February 15, 2007. <u>Id</u>.

III. APPLICABLE LEGAL STANDARD

The party moving for summary judgment has the initial burden of production and the ultimate burden of persuasion. <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos</u>., 210 F.3d 1099, 1102 (9th Cir. 2002). "[A]t summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

IV.  DISCUSSION

A.    Defendant Lum's Proper Assertion of His Constitutional
Fifth Amendment Right Against Self-Incrimination Does
<u>Not Warrant the Granting of Plaintiff's Motion</u>

As discussed above, Defendant Lum has waived his previously asserted Fifth Amendment privilege against self-incrimination and has agreed to provide deposition testimony with regard to facts relevant to this case.  Plaintiff's request for an adverse inference against Defendant Lum is therefore moot.

An adverse inference against Defendant Lum is not appropriate in this case as Plaintiff fails to provide <u>independent evidence</u> in support of her allegations of, *inter alia*, retaliation, wrongful termination and constitutional violations on the part of Defendant Lum.  See, <u>Doe v. Glanzer</u>, 232 F.3d 1258, 1264 (9th Cir. 2000).  Defendant Lum's prior assertion of his Fifth Amendment privilege does not "remove any dispute as to any material fact" as the record provides additional independent evidence which raises issues of fact with regard to Plaintiff's claims herein.

Moreover, from a practical standpoint, it would be inappropriate to allow Plaintiff to have a negative inference drawn against Defendant Lum as he has informed the parties that he has now been cleared to waive his previously asserted 5th Amendment privilege and is thus available to present testimony in the case at bar.

8

B.   Plaintiff Is Not Entitled to Summary Judgment On Counts
     I and II of Her First Amended Complaint

Plaintiff's claims arising out of alleged constitutional violations may be barred pursuant to the defense of qualified immunity.  Qualified immunity is a privilege enjoyed by government officials to protect them in the exercise of discretionary functions.  The United States Supreme Court in Saucier v. Katz, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) has stated that qualified immunity is an entitlement not to stand trial or face the other burdens of litigation.

In Saucier, the Court set forth a check list with regard to the availability of qualified immunity.  First, the court must consider whether the facts alleged demonstrate that the officer's conduct violated a constitutional right.  If so, then there must be a showing that said constitutional right was clearly established.  According to the Court, "[t]his inquiry..., must be undertaken in light of the specific context of the case, not as a broad general proposition." 533 U.S. at 201, 121 S. Ct. at 2156.

The Ninth Circuit Court of Appeals has gone on to state that:

> A constitutional right is clearly established
> when, "on a favorable view of the parties'
> submissions" "it would be clear to a
> reasonable officer that his conduct was
> unlawful in the situation he confronted."

<u>Billington v. Smith</u>, 292 F. 3d 1177, 1184(9th Cir. 2002) (quoting <u>Saucier</u>, 533 U.S. 194, 121 S. Ct. 2151).  In other words, with regard to Defendant Lum, the question of his entitlement to qualified immunity condenses to whether a reasonable officer in his position would have appreciated that his actions were somehow violating Plaintiff's freedom of speech, equal protection, and/or due process rights.  <u>See</u>, <u>Johnson v. H.S. Caudill</u>, 2007 WL 291396 (4th Cir. 2007); <u>see also</u>, <u>Anderson v. Creighton</u>, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Notwithstanding the declarations made by Plaintiff in her moving papers, the record clearly demonstrates that the claims which she asserts against Defendant Lum are, at best, vague. There are no specific facts which point directly to any action or inaction which gives rise to any type of constitutional violation on the part of Defendant Lum.

Moreover, the record is absolutely void of any indication that Defendant Lum knew or should have known, that his alleged actions or inactions, as Chief of Police, violated Plaintiff's freedom of speech, equal protection, and/or due process rights. The record also does not support a finding that Defendant Lum acted with deliberate indifference towards Plaintiff's constitutional rights.  Plaintiff's constitutional claims are therefore, at best, not subject to summary disposition.

During a recent hearing on Defendant County of Kauai, et al.'s Motion for Summary Judgment, Plaintiff's counsel provided information to the Court outlining the facts which gave rise to her allegations of constitutional violations.[4]

Plaintiff's counsel represented that, under their First Amendment analysis, Plaintiff's "protected speech" included the following: (1) Plaintiff's complaint concerning her participation in the alleged illegal search and photographing of nude female arrestees; (2) Plaintiff's report of misconduct and possible illegal activity on the part of Defendant Irvil Kapua ("Defendant Kapua"); (3) Plaintiff's report of an alleged death threat written in her dictionary; and (4) Plaintiff's report of her firearm being stolen.

Plaintiff's counsel also represented that the facts giving rise to Plaintiff's claim of  "adverse employment actions" were: (1) Plaintiff's alleged demotion from the rank of Police Officer 9 to Police Officer 7; (2) Plaintiff's removal as a Field Training Officer ("FTO"); (3) Plaintiff's inability to work in cellblock; (4) an alleged order which directed Plaintiff to avoid making contact with Defendant Kapua while in the Lihue police

---

[4]  These representations were made by Margery Bronster, Esq., counsel for Plaintiff, on February 6, 2007 during her oral argument in opposition to Defendants County of Kauai, Kauai Police Department, Wilfred M. Ihu, Gordon Isoda and Dean Pigao's Motion for Summary Judgment on, or in the Alternative, Dismissal of Counts I and II of the First Amended Complaint.

station; (5) subjecting Plaintiff to working in the same location
as Defendant Kapua; (6) the lack of action taken against
Defendant Kapua; and (7) a newly identified allegation that
Plaintiff had recently been prevented from being an Officer In
Charge.[5]

Finally, Plaintiff's counsel represented that Plaintiff's
claims for alleged violations of her due process and equal
protection rights, as well as alleged violations of her
privileges and immunities were based on: (1) Plaintiff's alleged
demotion from a Police Officer 9 to a Police Officer 7; (2)
Plaintiff's removal as an FTO; (3) Plaintiff's inability to work
in the cellblock; (4) Plaintiff's participation in the alleged
illegal search and photographing of nude female arrestees; (5)

---

[5] Furthermore, any allegations which occurred prior or
subsequent to Defendant Lum's tenure as Acting Chief of Police or
Chief of Police of KPD should not be attributed to Defendant Lum.
See the Honorable Susan Oki Mollway's Order Striking Third-Party
Complaint, filed herein on July 31, 2006 ("Order Striking TPC")
where Judge Mollway stated (p. 6):

> At the hearing, Abbatiello stated that she is
> only alleging claims against Lum in Lum's
> individual capacity based on Lum's own
> personal actions.  Abbatiello stated that she
> is not seeking to hold Lum personally liable
> for any alleged long-standing practice or for
> anything that occurred before Lum became the
> Kauai Police Chief.  With respect to the
> specific issue of any liability relating to
> any longstanding practice, Abbatiello
> concedes that, at most, Lum is liable only
> for his own involvement in implementing such
> a practice.

the death threat Plaintiff allegedly received in her dictionary;
and (6) the alleged order directing Plaintiff to avoid making
contact with Defendant Kapua in the police station.

     1.  <u>First Amendment</u>

In her moving papers, Plaintiff relies on <u>Pickering v. Board
of Education of Township High School District</u>, 391 U.S. 563
(1968) and argues that Defendant Lum violated her freedom of
speech by retaliating against her because she reported corruption
in the workplace, particularly involving Defendant Kapua.
Plaintiff claims that she made her report as a <u>private and
concerned citizen</u>, and not because she was a police officer.

In <u>Garcetti v. Ceballos</u>, 126 S.Ct. 1951 (2006), the United
States Supreme Court stated:

> *Pickering* and the cases decided in its wake
> identify two inquiries to guide
> interpretation of the constitutional
> protections accorded to public employee
> speech.  The first requires determining
> whether the employee spoke as a citizen on a
> matter of public concern.
>       . . .
> If the answer is no, the employee has no
> First Amendment cause of action based on his
> or her employer's reaction to the speech.
>       . . .
> If the answer is yes, then the possibility of
> a First Amendment claim arises.  The question
> becomes whether the relevant government
> entity had an adequate justification for
> treating the employee differently from any
> other member of the general public.

<u>Id</u>., 126 S.Ct. at 1958 (internal and external citations omitted).
The Court went on to state:

13

> [W]hen public employees make statements
> pursuant to their official duties, the
> employees are not speaking as citizens for
> First Amendment purposes, and the
> Constitution does not insulate their
> communications from employer discipline.

<u>Id</u>., 126 S.Ct. at 1960.

In analyzing whether an employee is speaking as a citizen on a matter of public concern. This Honorable Court has already ruled that questions of fact exist as to whether Plaintiff was acting as a private citizen reporting issues of public concern or whether she was duty bound to report those matters as a police officer. <u>See</u> Order Granting In Part and Denying In Part Defendants' Motion for Summary Judgment, filed herein on February 7, 2007. As such, summary judgment with respect to this cause of action would thus be inappropriate.

> 2.    Alleged Equal Protection and Due Process
>       Violations, and Adverse Employment Actions Arising
>       <u>Under the United States and Hawaii Constitutions</u>

Plaintiff also alleges that Defendant Lum violated her equal protection and/or due process rights under both the United States and Hawaii Constitutions. In forwarding these claims, she points to a number of incidents which give rise to her allegation of misconduct on the part of Defendant Lum.

> a.    <u>Employment Demotion</u>

As discussed above, Plaintiff asserts that her transfer from Vice to the Patrol division was an improper demotion. In her moving papers, she asserts that there is no evidence which

14

refutes the fact that she was demoted from a PO-9 to a PO-7 and
that she was never informed that her pay would be decreased with
the transfer.

Interestingly, Plaintiff's own prior statements refute this
assertion and evidences.  Plaintiff has admitted that her move
from Vice to the Patrol Division was effectuated at her request.
See Response SCSF no. 34.

Moreover, although Plaintiff somehow tries to tie Defendant
Lum into this transfer, the record is undisputed that Defendant
Lum was not even the Acting Chief of Police at the time of the
request and transfer.  See Response SCSF nos. 34-35.

Ironically, the record does reflect the fact that, when
Defendant Lum became Acting Chief of Police, Plaintiff was
actually invited to return to Vice by his administration.  This
request was rejected by Plaintiff.  See Response SCSF no. 49.

The record does not reflect any facts which support any kind
of finding that Defendant Lum had anything to do with Plaintiff's
transfer out of Vice, or that he knew or should have known that
the approval of Plaintiff's request would result in a violation
of her constitutional rights.  As such, Plaintiff's motion with
regard to this claim must fail as a matter of law.

b.   Field Training Officer

Plaintiff next argues that her removal as a Field Training
Officer ("FTO") was an act of retaliation by Defendant Lum in

15

violation of her constitutional rights.  Again, the record is
void of any evidence which demonstrates that Defendant Lum was
ever aware that the removal of Plaintiff's FTO status was in
violation of her constitutional rights.

The evidence reflects that the removal of Plaintiff's FTO
status was a decision made by the training division and was due
to fact that she did not have the required training for such a
position.  <u>See</u> Response SCSF nos. 36-38.  More importantly, the
record further demonstrates that, once Plaintiff did obtain the
proper training for the position, her FTO status was then
reinstated.  <u>See</u> Response SCSF nos. 36-38.

c.  <u>Cellblock Duty</u>

Plaintiff next claims that, due to the presence of Defendant
Kapua in the cellblock, she is no longer allowed to work that
duty.  Plaintiff claims that, since she was afraid of being near
Defendant Kapua, her supervisor ordered that as long as Defendant
Kapua was working in or around the cellblock, Plaintiff would not
be allowed to work there.  Plaintiff asserts that this directive
affected her ability to earn additional compensation.

Although Plaintiff makes these allegations, she presents
absolutely no evidence which demonstrates that Defendant Lum, as
Acting Chief of Police or Chief of Police, was ever made aware of
the directive at the cellblock, or that he had any involvement or
knowledge in preparing the work schedules for officers in the

16

cell block.  As there is absolutely no evidence which suggests
any knowledge on the part of Defendant Lum with regard to the
cellblock directive, this cause of action should also fail.

        d.   Strip Search and Photographing

     Plaintiff also claims that, while working in the cellblock,
she was directed to conduct a strip search and to photograph
female arrestees.  She states that she did not believe this to be
an appropriate directive and therefore reported this incident to
her command.  Again, Plaintiff states that she was retaliated
against due to her reporting of this incident.

     Plaintiff does not claim that Defendant Lum ordered the
strip searches be conducted, but instead attempts to hook
Defendant Lum by claiming that, as a result of the incident, he
drafted and backdated a department policy which would have
allowed for strip searching and photographing of the female
detainees.

     Once again, the record does not support Plaintiff's
allegations.  Plaintiff's claims are incorrect.  The record makes
clear the fact that, although a strip search policy was drafted
by the police department administration after the alleged
cellblock incident, the proposed policy was never drafted by
Defendant Lum and was never adopted as a policy.  See Response
SCSF nos. 39-41.  On the contrary, the record reflects that the
draft of the proposed policy change was put together by Fred

                              17

DeBusca, Commander of the Investigative Services Bureau,
circulated to the bureau commanders and the deputy chief, and
eventually circulated to Defendant Lum.  See Response SCSF no.
39.  The draft policy was then sent to the Kauai County
Attorney's office for review and approval.  See Response SCSF no.
40.  Said policy was never adopted as a general order and
therefore never instituted.  See Response SCSF no. 41.

     Once again, it appears that Plaintiff's allegations of
misconduct arise out of misinformation and assumptions on her
part.  As such, this claim should also fail as a matter of law.

                    e.    Alleged Death Threat

     Plaintiff states that in April of 2004, a death threat was
placed in her dictionary at the police station.  As with the
issue of her demotion, Defendant Lum was not the Acting Chief of
Police or Chief of Police of KPD at the time of this incident, or
when this incident was allegedly reported to KPD administrators.
See Response SCSF no. 42.

     Given the Court's Order Striking TPC, summary adjudication
in favor of Plaintiff with regard to this claim must also fail.

                    f.    Theft of Firearm

     Plaintiff next claims she suffered a constitutional injury
which resulted from Defendant Lum's failure to properly
investigate, or initiate an investigation regarding the theft of
her firearm.  There is absolutely no evidence which demonstrates

                                18

that Defendant Lum did not follow-up on Plaintiff's report.
Moreover, even assuming, *arguendo*, that no investigation was
conducted, it is difficult to understand how the failure to
investigate the theft or loss of a firearm could, in any way,
result in a clearly established constitutional right or any type
of retaliation herein.

g. <u>Order to Avoid Defendant Kapua</u>

Prior to Defendant Lum becoming Acting Chief of Police or
Chief of Police, Plaintiff and Defendant Kapua were both directed
to avoid making contact with each other while they were present
in the Lihue police station.  In an effort to avoid contact with
each other, Plaintiff was directed to utilize a back door to
enter and exit from the building and Defendant Kapua was directed
to utilize the front door.

Plaintiff now claims that, even though Defendant Lum did not
issue this directive, by not formally rescinding the directive,
he retaliated against her in violation of her equal protection
and due process rights.

First, the record is again void of any evidence that the
directive was ever issued in the form of a "formal order" which
was subject to a formal rescission.  Second, Plaintiff agreed
with the directive when it was first suggested to her.  <u>See</u>
Response SCSF no. 43.

19

Second, as evidenced by an email from Defendant Lum to Fred DeBusca, it is clear that Defendant Lum did attempt to have this alleged directive rescinded upon his taking over as Acting Chief of Police.  See Response SCSF no. 44.  Plaintiff has failed to clearly establish a constitutional right that was violated by Defendant Lum in this situation.

Moreover, even if there was a right violated, there is no evidence that there was ever any deliberate indifference on the part of Defendant Lum towards Plaintiff's rights.  This claim must also fail as a matter of law.

> h.  <u>Hostile Work Environment With Defendant Kapua</u>

It is unclear how Plaintiff connects the actions or inactions of Defendant Lum with her allegations of being forced to work in a hostile work environment with Defendant Kapua.

First, it is undisputed that Defendant Lum was not the Chief of Police or Acting Chief of Police when all of the alleged incidents involving Defendant Kapua and Plaintiff occurred.  <u>See</u> Response SCSF nos. 35, 42.

Second, the record makes clear the fact that, by the time Defendant Lum did become Acting Chief of Police, Plaintiff had already requested to be transferred out of Vice and that request had already been approved and effectuated by former Acting Chief Wilfred Ihu.  <u>See</u> Response SCSF no. 35.  The evidence thus makes clear the fact that any alleged exposure to a hostile work

environment had occurred and been addressed prior to Defendant Lum becoming Acting Chief of Police.

Moreover, although Plaintiff claims that Defendant Lum never took any disciplinary action against Defendant Kapua, the record makes clear the fact that no discipline could have been imposed as the criminal investigation regarding Defendant Kapua is ongoing and the administrative investigation was resolved as unsubstantiated.  See Response SCSF nos. 45-47.

Given these facts, Plaintiff's claims with regard to these causes of action must also fail as a matter of law.

i.    Conspiracy to Violate Civil Rights

As discussed in footnote 1 above, Plaintiff has represented to this Honorable Court that she is withdrawing her claim for damages arising out of any alleged conspiracy between the parties to violate her civil rights.  As such, summary judgment with regard to this cause of action should be denied herein.

C.    Plaintiff Is Not Entitled to Summary Judgment on Count III (Whistleblower's Protection Act) of Her First Amended Complaint

Section 378-61 of the Hawaii Revised Statutes, as amended, ("HRS") sets forth the following:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1) The employee, or a person acting on behalf of the employee, reports or is about

21

to report to the employer, or reports or is
about to report to a public body, verbally or
in writing, a violation or a suspected
violation of:

> (A) A law, rule, ordinance, or
> regulation, adopted pursuant to law
> of this State, a political
> subdivision of this State, or the
> United States; or
>
>                     . . .

Haw. Rev. Stat. § 378-62.

The record in this case demonstrates that Plaintiff was never discharged from her employment with KPD.  See Response SCSF no. 48.  The record also makes clear the fact that Plaintiff's transfer out of Vice was effectuated prior to Defendant Lum becoming Acting Chief of Police or Chief of Police.  On the contrary, as discussed above, the record reflects the fact that Plaintiff was offered an opportunity to return to Vice.  This offer was ultimately rejected by Plaintiff.  See Response SCSF no. 49.

The record in this case simply does not support any kind of a finding that Defendant Lum in any way ever discriminated against Plaintiff by tinkering with her compensation, terms of employment, conditions of employment, location of employment, or privileges of employment based on her complaints regarding Defendant Kapua.  Again, Plaintiff's transfer out of Vice occurred prior to Defendant Lum becoming Chief.  See SCSF No. 35.

Given the above facts, Plaintiff's claims arising under HRS Section 378-61, must fail as a matter of law.

D.    Plaintiff Is Not Entitled to Summary Judgment On Count IV of the First Amended Complaint

Plaintiff has failed to provide facts which support any claim of wrongful termination against Defendant Lum.  Further, Plaintiff's wrongful termination claim has no basis as Plaintiff's employment with KPD was never terminated, and the very transfer of which she now complains of was approved and effectuated <u>at her request</u>.  <u>See</u> Response SCSF nos. 34-35, 48. These facts are undisputed.

Although Plaintiff attempts to rely on <u>Parnar v. Americana Hotels, Inc</u>., 65 Haw. 370, 652 P.2d 625 (Haw. 1982), to support her allegation of wrongful termination, the case is certainly distinguishable as the <u>Parnar</u> case involved a situation where an actual termination of an employee was effectuated.  Here, Plaintiff was never terminated from her employment with KPD and her transfer was effectuated at her request.  As there is no independent evidence linking Defendant Lum to any wrongful termination or transfer of Plaintiff, this claim should fail as a matter of law.

E.    Plaintiff Is Not Entitled to Summary Judgment On Counts V and VII of the First Amended Complaint

This Court has already ruled that any negligence claims asserted by Plaintiff would be subject to the exclusivity

provision found in Section 386-5 of the Hawaii Revised Statutes,
as amended.  <u>See</u> Order Granting In Part and Denying In Part
Defendants Motion for Summary Judgment, filed herein on February
7, 2007, by the Honorable Susan Oki Mollway ("Abbatiello's
negligence claims in Count 5 (negligent supervision and
retention) and Count 7 (NIED) are barred by Hawaii's workers'
compensation law, and the court grants summary judgment in
Defendants' favor on those claims.")

     At best, Plaintiff would have to rely on the mandates set
forth in <u>Iddings v. Mee-Lee</u>, 82 Haw. 1 (Haw. 1996), to show by
clear and convincing evidence, that Defendant Lum somehow acted
willfully and wantonly in bringing about Plaintiff's alleged
harm.

     As there is no evidence of any willful or wanton conduct on
the part of Defendant Lum, summary judgment as to all negligence-
type claims must be denied.

          F.   Plaintiff Is Not Entitled to Summary Judgment on Count
               VI of the First Amended Complaint As There Is No
               Evidence to Support Such Claim

     In order to recover for Intentional Infliction of Emotional
Distress ("IIED") the act complained of must be "outrageous," as
defined in the Restatement (Second) of Torts § 46 (1965) which
states "[l]iability has been found only where the conduct has
been so outrageous in character, and so extreme in degree, as to
go beyond all bounds of decency, and to be regarded as atrocious,

and utterly intolerable in a civilized community." <u>Tseu ex rel.</u>
<u>Hobbs v. Jeyte</u>, 88 Haw. 85, 962 P.2d 344, 352 (Haw. 1998)
(quoting Restatement (Second) of Torts § 46 comment d).

Plaintiff claims that Defendant Lum (1) "knowingly forced
Plaintiff to put up with threatening and violent behavior from
Sgt. Kapua", (2) allowed Plaintiff "to be ostracized and isolated
because fellow officers were intimated by Sgt. Kapua", and (3)
"allowed [Plaintiff] to be removed from her cellblock duty and
her FTO position and the compensation those provide".
Notwithstanding these allegations, Plaintiff does not provide any
competent evidence which links Defendant Lum to any of these
allegations.

Plaintiff's claim that Defendant Lum "knowingly allowed a
directive from [Defendant] Pigao requiring Plaintiff to avoid
Kapua's office by using the back entrance and alternative
hallways" is completely false as evidenced by Plaintiff's own
exhibit ("RR")in support of Plaintiff's Motion.  Moreover, there
is evidence which clearly reflects that, on January 9, 2005,
Defendant Lum wrote to Defendant Pigao directing him to rescind
any alleged orders that may have been issued prior to him
becoming Chief with regard to Plaintiff's use of alternative
entry and exit routes in the police station.  <u>See</u> Response SCSF,
no. 44.

Plaintiff's allegation that Defendant Lum ignored complaints about the strip search and then attempted to "cover up" the problem by backdating a draft strip search policy are also is also incorrect.  As discussed above, the strip search policy was never drafted or backdated by Defendant Lum.  Moreover, the subject draft was never adopted as a policy of KPD as it never got past the review process with the County Attorney's office.

Plaintiff's extensive discovery efforts have failed to produce any evidence of outrageous acts on the part of Defendant Lum. As such, this cause of action must also fail.

V.    CONCLUSION

For the above-enunciated reasons, as well as the record and file herein, Plaintiff's motion for summary judgment should be denied as a matter of law.

DATED: Honolulu, Hawaii, February 22, 2007.


                              /s/ Cary T. Tanaka
                              CARY T. TANAKA
                              DIANE K. AGOR-OTAKE
                              Attorneys for Defendant
                              K.C. LUM

26