Law Offices of Cary T. Tanaka

CARY T. TANAKA        4858-0
DIANE K. AGOR-OTAKE   7751-0
Suite 510 Fort Street Tower
745 Fort Street
Honolulu, Hawaii  96813
Telephone: 536-8885
Facsimile: 536-8845
carytanaka@aol.com
dka@hawaii.rr.com

Attorneys for Defendant
K.C. LUM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DARLA ABBATIELLO, | ) | CIVIL NO. CV04 00562 KSC |
| | ) | |
| Plaintiff, | ) | DEFENDANT K.C. LUM'S RESPONSE |
| | ) | TO PLAINTIFF'S AMENDED |
| vs. | ) | SEPARATE AND CONCISE STATEMENT |
| | ) | OF FACTS THAT INCORPORATES BY |
| COUNTY OF KAUAI, KAUAI | ) | REFERENCE EXHIBITS "A" - "YY" |
| POLICE DEPARTMENT, K.C. LUM, | ) | ATTACHED TO THE STRICKEN |
| WILFRED M. IHU, GORDON ISODA, | ) | SEPARATE AND CONCISE STATEMENT |
| DEAN PIGAO, and IRVIL KAPUA, | ) | OF FACTS FILED ON JANUARY 8, |
| | ) | 2007 [DOCKET NUMBER 193], |
| Defendants. | ) | FILED ON JANUARY 12, 2007; |
| | ) | DECLARATION OF CARY T. TANAKA; |
| | ) | EXHIBITS "1"-"10"; CERTIFICATE |
| | ) | OF SERVICE |
| | ) | |
| | ) | Trial Date: June 6, 2007 |

DEFENDANT K.C. LUM'S RESPONSE TO PLAINTIFF'S AMENDED SEPARATE AND
   CONCISE STATEMENT OF FACTS THAT INCORPORATES BY REFERENCE
     EXHIBITS "A" - "YY" ATTACHED TO THE STRICKEN SEPARATE
    AND CONCISE STATEMENT OF FACTS FILED ON JANUARY 8, 2007
         [DOCKET NUMBER 193], FILED ON JANUARY 12, 2007

   Pursuant to Rule 56.1 of the Local Rules of Practice for the

United States District Court for the District of Hawaii,

Defendant K.C. Lum ("Defendant Lum") hereby submits his Response to Plaintiff's Amended Separate and Concise Statement of Facts that Incorporates by Reference Exhibits "A" - "YY" Attached to the Stricken Separate and Concise Statement of Facts Filed on January 8, 2007 [Docket Number 193], filed on January 12, 2007.

| PLAINTIFF'S FACTS | EVIDENCE |
|---|---|
| 1. Plaintiff is a police officer in the Kauai Police Department ("KPD") and was assigned to Vice division from October 2002 to April 2004. | Admit that Plaintiff was employed with KPD and left Vice in April, 2004. |
| 2. Defendant K.C. Lum ("Lum") was the Acting Chief of Police or Chief of Police of KPD at all relevant times for this action and was acting within the course and scope of his employment with the County of Kauai ("County"). | Deny that Defendant Lum was the Acting Chief of Police or Chief of Police of KPD at all relevant times. Admit that Defendant Lum was acting within the course and scope of him employment with County at all relevant times. |
| 3. On December 26, 2003, an arrestee made a statement to Plaintiff that Defendant Irvil Kapua ("Kapua") had been paid $6,000.00 to protect the arrestee and another suspected drug dealer. | Admit. |
| 4. Plaintiff reported the allegations of corruption because she felt it was a matter of public concern and importance. | Deny. |
| 5. Plaintiff reported these allegations to her superiors, both verbally and in writing, and to the FBI. | Deny. |

- 2 -

| PLAINTIFF'S FACTS | EVIDENCE |
|---|---|
| 6. In reaction to Plaintiff's report of alleged corruption, Kapua referred to Plaintiff as a "bitch" and a "cunt" in the workplace. | Deny. |
| 7. After Plaintiff reported the allegations, Kapua shouted "fuck" or "fuck you" to her while in a public restaurant. | Deny. |
| 8. In reaction to Plaintiff's report of the allegations of corruption, Kapua threatened Plaintiff while she was alone in a stairwell at the police station and screamed at her, calling her a "bitch" and/or a "cunt." | Deny. |
| 9. Plaintiff was intimidated and scared by Kapua's actions and afraid for her safety. | Deny. |
| 10. Plaintiff reported Kapua's retaliatory acts to her superiors and requested that he be ordered to stay away from her. | Deny. |
| 11. As a result of Kapua's actions and KPD's failure to address Plaintiff's complaints, Plaintiff suffered severe physical stress-related symptoms and was hospitalized. | Deny. |
| 12. Due to her fear for her safety and KPD's failure to address her complaints, Plaintiff requested a temporary transfer out of Vice division to a location away from Kapua. | Admit Plaintiff requested a transfer out of Vice. Deny all remaining allegations. |
| 13. As a result of the transfer, KPD reduced Plaintiff's pay without her prior knowledge or agreement. | Deny. |
| 14. On or about April 18, 2004, Plaintiff found a death threat in work dictionary that she reported to her supervisors and the FBI. | Deny. |
| 15. On April 29, 2004, KPD adopted General Order 2004-2 ("G.O. 2004-2") regarding workplace violence. | Admit. |

| PLAINTIFF'S FACTS | EVIDENCE |
|---|---|
| 16. Prior to G.O. 2004-2, KPD was governed by the County's policy on workplace violence which stated that harassment and intimidation in the workplace would not be condoned. | Admit that prior to G.O. 2004-2, KPD was governed by the County's policy on workplace violence. Deny all remaining allegations. |
| 17. KPD's policies prohibited Kapua's misconduct and required discipline. | Deny. |
| 18. Lum knew or should have known or had information available to him that Kapua had been investigated previously for violations of KPD policies and/or standards of conduct. | Deny. |
| 19. Ihu briefed Lum about the Kapua investigation prior to Lum becoming Acting Chief. | Admit. |
| 20. Kapua disrupted a meeting between Plaintiff and Lum or about June 23, 2004. During this meeting, Plaintiff reiterated her fear of retaliation by Kapua. | Deny. |
| 21. As a result of Plaintiff's report of alleged corruption, Plaintiff was instructed to avoid passing Kapua's office. Pigao instructed Plaintiff to avoid any contact, either personally or visually, with Kapua at KPD as a result of Kapua's complaints about Plaintiff walking by his office. | Deny. |
| 22. After Plaintiff's meeting with Lum, Kapua yelled because Plaintiff, along with several lieutenants, walked passed his office. | Deny. |
| 23. Plaintiff was upset by the policy requiring her to use the back door to avoid Kapua. | Deny. |

| PLAINTIFF'S FACTS | EVIDENCE |
|---|---|
| 24. Lum knew of the order for Plaintiff to avoid Kapua but took no corrective action. | Deny. Lum later directed that any such alleged orders be rescinded if they were issued before he became Chief. |
| 25. Chief Lum has taken no disciplinary action against Kapua. | Admit. |
| 26. On April 24, 2005, Plaintiff refused to participate in an illegal strip search and photographing of naked female arrestees and, in May 2005, she reported the improper activities to her superiors, the Kauai County Police Commission, and the FBI. | Deny. |
| 27. At all relevant times, there was no KPD General Order or policy governing strip searches and body cavity searches. | Admit. |
| 28. Lum attempted to utilize a strip search and photographing policy that was backdated to a date prior to the strip search incident involving Plaintiff. | Deny. |
| 29. In retaliation for her complaint of the illegal strip search, KPD wrongfully removed Plaintiff as a Field Training Officer ("FTO"), resulting in a loss of compensation to Plaintiff. | Deny. |
| 30. Plaintiff has been unable to work overtime in cellblock since she was ordered to stay away from Kapua, resulting in a loss of compensation to Plaintiff. | Deny. |
| 31. Lum invoked his Fifth Amendment privilege against self-incrimination during his deposition in this matter. | Admit. |
| 32. Kapua invoked his Fifth Amendment privilege against self-incrimination during his deposition in this matter. | Admit. |

| DEFENDANT LUM'S FACTS | EVIDENCE |
|---|---|
| 33. Defendant Lum waived his previously asserted Fifth Amendment privilege against self-incrimination.  Defendant Lum asserted his Fifth Amendment privilege at his oral deposition in this matter on October 12, 2006. | Declaration of Cary T. Tanaka at ¶¶2-6; Exhs. 1-3, Tanaka emails. |
| 34. Plaintiff requested that she be transferred out of Vice to Waimea Patrol Services Bureau. | First Amended Complaint, filed herein on April 21, 2006 ("FAC") at ¶¶39-43; Exh. 4 Ihu Depo., pp. 29, 36-38. |
| 35. Defendant Lum was not the Acting Chief of Police when Plaintiff transferred from Vice to Patrol.  Plaintiff discussed the subject transfer with Wilfred Ihu. | Exh. 5, County of Kauai 635; Exh. 4, Ihu Depo, pp. 37-38. |
| 36. Plaintiff's temporary removal from her position as a FTO was based on her lack of the required training, specifically she was not qualified to conduct the Standardized Field Sobriety Test ("SFST") or supervise the probationary Police Services Officer assigned to her while administering the SFST. | County of Kauai document 2819.[1] |

---

[1] County of Kauai document numbers 1109-1118, 1121, 2810, and 2819 were previously filed under seal pursuant to Order Granting Defendant K.C. Lum's Ex Parte Motion for an Order Allowing Exhibit "D" to Defendant K.C. Lum's Separate and Concise Statement of Facts in Support of Motion for Summary Judgment, Filed on January 4, 2007, to be Filed Under Seal, filed herein on January 9, 2007.  To review County of Kauai document numbers 1109-1118, 1121, 2810, and 2819, please see (Sealed) Exhibit "D" to Defendant K.C. Lum's Separate and Concise Statement of Facts in Support of Defendant K.C. Lum's Motion for Summary Judgment, filed on January 4, 2007, filed under seal herein on January 9, 2007.

| DEFENDANT LUM'S FACTS | EVIDENCE |
|---|---|
| 37. Further evidence that Plaintiff's temporary removal from FTO was not in retaliation was the fact that another officer, along with Plaintiff, was temporarily removed from the FTO position for lack of required training as well. | County of Kauai document 2819. (See footnote 1.) |
| 38. Plaintiff completed the training necessary for reinstatement as an FTO in May, 2006, was reinstated to the FTO position, and is slated to be one of the primary FTOs for the officers who graduated in June, 2006. | County of Kauai document 2810. (See footnote 1.) |
| 39. KPD Lieutenant Paul Kanoho testified that the draft strip search policy was given to him by Fred DeBusca, Commander of the Investigative Services Bureau, and that he circulated it to the bureau commanders and the deputy chief, and eventually it was circulated to Defendant Lum. | Exh. 6, Kanoho Depo., pp. 14-22. |
| 40. A meeting was held about the draft policy and Defendant Lum asked that it be sent to the County Attorney for review. The draft policy was in fact sent to the County Attorney for review. | Exh. 6, Kanoho Depo., pp. 46-47. |
| 41. As of November, 2006, the draft strip and body cavity search policy was not adopted as a general order. | Exh. 6, Kanoho Depo., pp. 37-39. |
| 42. Defendant Lum was not Acting Chief of Police in April, 2004, when Plaintiff allegedly received and reported a death threat made against her. | Exh. 5, County of Kauai 635 |
| 43. Plaintiff did not object when Defendant Pigao suggested an alternative route for her to access Vice. | Exh. 7, County of Kauai 631-632; Exh. 8, Pigao Depo, pp. 26-27. |
| 44. Defendant Lum did attempt to have any alleged order regarding Plaintiff's route to the Vice office rescinded. | Exh. 9, Lum 3-4. |

| DEFENDANT LUM'S FACTS | EVIDENCE |
|---|---|
| 45. Wilfred Ihu (then Acting Chief of Police) ordered both a criminal and administrative investigation be conducted as a result of Plaintiff's report concerning Defendant Kapua's possible illegal activity. | Exh. 4, Ihu Depo., pp. 11-16. |
| 46. The criminal investigation of Plaintiff's reported possible illegal conduct by Defendant Kapua is ongoing. | Exh. 10, Kaui Depo., pp. 10-14. |
| 47. The administrative investigation of Plaintiff's reported possible illegal conduct by Defendant Kapua was concluded in 2004, and the allegations against Defendant Kapua were unsubstantiated. | County of Kauai documents 1109-1118, 1121. (See footnote 1.) |
| 48. Plaintiff's employment with KPD was never terminated. | FAC at ¶¶1, 13. |
| 49. Plaintiff was told she could return to Vice, however she refused such position. | Exh. 9, Lum 2. |
| 50. Defendant Lum was appointed Acting Chief of Police of KPD on or about May 1, 2004. | Exh. 5, County of Kauai 635. |

DATED: Honolulu, Hawaii, February 22, 2007.

/s/ Cary T. Tanaka
CARY T. TANAKA
DIANE K. AGOR-OTAKE
Attorneys for Defendant
K.C. LUM