IN THE UNITED STATES DISTRICT COURT

STATE OF HAWAII

| | |
|---|---|
| DARLA ABBATIELLO, | ) CIVIL NO. CV04 00562 SOM BMK |
| Plaintiff, | ) |
| vs. | ) |
| COUNTY OF KAUAI; KAUAI POLICE | ) |
| DEPARTMENT; K.C. LUM, | ) |
| WILFRED M. IDA; GORDON ISODA; | ) Trial Date: May 8, 2007 |
| DEAN PIGAO; IRVIL KAPUA, | ) Time : 9:00 a.m. |
| Defendants. | ) Trial Judge: Susan O. |
| ______________________________ | ) Mollway |

DEPOSITION OF WESLEY KAUI

Taken on behalf of PLAINTIFF DARLA ABBATIELLO, at the offices of Ralph Rosenberg Court Reporters, Inc., c/o Hale & Goldberg, Lihu`e Plantation Bldg., 2970 Kele Street, Suite 220, Lihu`e, Hawai`i 96766, commencing at 2:15 p.m., on Tuesday, November 7, 2006, pursuant to notice.

BEFORE: JOY C. TAHARA, RPR, CSR 408
Notary Public, State of Hawai`i

RECEIVED
NOV 20 2006
DAVID J. MINKIN

EXHIBIT 10

APPEARANCES

FOR PLAINTIFF DARLA ABBATIELLO:

DANIEL G. HEMPEY, ESQ.
Law Office of Daniel G. Hempey
3175 Elua Street
Lihu`e, Hawai`i 96766
Tel. (808) 823-0000
Fax. (808) 632-2332
hemplaw@hawaii.rr.com

JOHN HOSHIBATA, ESQ.
Bronster Crabtree & Hoshibata
2300 Pauahi Tower
1001 Bishop Street
Honolulu, Hawai`i 96813
Tel. (808) 524-5644
Fax. (808) 599-1881
jhoshibata@bchlaw.net

FOR DEFENDANTS COUNTY OF KAUAI; KAUAI POLICE DEPARTMENT:

CHRISTIANE L. NAKEA-TRESLER, ESQ.
Office of the County Attorney
4444 Rice Street
Suite 220
Lihu`e, Hawai`i 96766
cntresler@kauai.gov

FOR DEFENDANT AND THIRD-PARTY PLAINTIFF K.C. LUM:

CARY T. TANAKA, ESQ.
Law Offices of Cary Tanaka
Fort Street Tower, Suite 510
745 Fort Street
Honolulu, Hawai`i 96813
carytanaka@aol.com

FOR DEFENDANTS WILFRED M. IHU, GORDON ISODA, and DEAN PIGAO:

DAVID J. MINKIN, ESQ.
McCorriston Miller Mukai MacKinnon LLP
Five Waterfront Plaza, 4th Floor
500 Ala Moana Blvd.
Honolulu, Hawai`i 96813
minkin@m4law.com

A P P E A R A N C E S
(Continued)

FOR DEFENDANT IRVIL KAPUA:

MICHAEL J. McGUIGAN, ESQ.
Reinwald O'Connor & Playdon LLP
Pacific Guardian Tower, Makai Tower
733 Bishop Street, Suite 2400
Honolulu Hawai`i 96813
Mjm@roplaw.com

NOTE: All individuals present in Kaua`i EXCEPT for John Hoshibata and Michael McGuigan who attended via land line, conference call.

I N D E X

| EXAMINATION | PAGE |
|---|---|
| MR. HEMPEY | 5 |
| MR. MINKIN | 20 |
| MR. McGUIGAN | 20 |

E X H I B I T S

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| | (None) | |

14:22:00 Q. Were any other members of Kauai Police Department subjects or targets in that investigation, to your knowledge?

14:22:11 A. Yes, sir.

14:22:12 Q. Who?

14:22:13 A. Sgt. Wes Perreira, Sgt. Larry Stem, and --. Stem, Perreira, and --. Who's the third guy involved in that?

14:22:42 Q. You can't remember the other one right now?

14:22:44 A. No.

14:22:44 Q. Does the name Channing Tada ring a bell?

14:22:46 A. Oh, yeah, Channing. Sorry about that. There's so many guys in that Narcotics unit; I've got so many cases. But yeah, Channing was the third party.

14:22:56 Q. I'd like to turn your attention back about three years ago. Are you familiar with the name Heather Herron?

14:23:04 A. Heather Herron, yes, sir.

14:23:06 Q. How did you become familiar with Heather Herron?

14:23:09 A. Heather Herron was involved with Darla Abbatiello which led to her criminal investigation. She made allegations against a police officer.

4:23:27 Q. At some point, were you tasked with investigating the substance of Heather Herron's allegations, whether it be administrative or criminal?

4:23:38 A. Yes, sir.

4:23:39 Q. Who assigned you to do that?

3:41 A. I was assigned a criminal investigation by --. I was

14:23:54 assigned a criminal investigation -- I'm not sure. I'd like to say Chief George Freitas, but I'm not really sure. It could be Chief George Freitas or the interim Chief Willy Ihu.

Q. Do you know whether in or about late December 2003, Darla Abbatiello arrested Heather Herron? Does that sound familiar?

A. That sounds familiar, sir.

Q. Was Chief Ihu in at that time, December '03?

A. I mean, Chief Ihu was the deputy. I know he was either deputy or interim chief. I'm not really sure. I'd have to go back and --

Q. You can't remember --

A. -- make sure --

Q. -- who --

A. I cannot remember who was who. I don't know if somebody can tell me when Chief Ihu came aboard as an interim or when Freitas left, Chief Freitas, and I could tell you exactly. It's one of those two, though.

Q. We're just asking for your best recollection.

A. I cannot say for sure, sir.

Q. That's okay. Now, prior to your being tasked with the investigation of the allegations made by Heather Herron, what did you learn about the situation?

A. That improprieties were been done against one single police officer.

Q. Is it your understanding that Heather Herron had made allegations of these improprieties?

A. That's correct.

Q. Prior to your being tasked with this, was your investigation a criminal investigation or an internal investigation?

A. Criminal investigation.

Q. Prior to you commencing that, prior to you being tasked to commence that criminal investigation, did you become aware of any, either corroborating or the opposite of corroborating, did you find any evidence, were you aware of any evidence that either corroborated Heather Herron's allegations or made them seem less likely?

MR. MINKIN: Objection. Vague and ambiguous as to point in time. Also impacts on the law enforcement privilege as well as the investigatory privilege, given that there's ongoing case matters.

Q. And again, I'm asking about before you were tasked with the criminal investigation, if you became aware of any evidence that corroborated or that either corroborated and led you to believe that her allegations were more likely true, or whether you received any information that led you to believe that her allegations were less likely to be true.

A. You're talking in regards to the impropriety of the police officer that she's alleging? Is that what you're talking

about?

Q. Right, and let me get right to the point. Heather Herron basically made a report that Irvil Kapua was receiving money in exchange for some sort of help related to a Craig Iwase, right? Does that sound familiar?

A. That sounds very familiar. In regards to any questions in regards to the case, the case is an ongoing pending case that is being presently investigated by outside agencies. And I won't be able to answer any questions in regards to that, that investigation, or anything even prior that may have an influence on the outcome of the case in regards to the same officer.

Q. I understand. And I'm going to ask you a couple more questions, try going down this road, you know, and at some point we'll get things, we'll very clear where we're going.

So is it your testimony today, with respect to any allegations made alleging any kind of corruption or payment or receipt of money by Irvil Kapua, is it your testimony today that you will not be able to answer any questions related to that in any way because of the ongoing criminal investigations?

A. That's correct, sir.

Q. So if I were ask you questions about Roy Asher recommending that you subpoena Kapua's phone and bank records, would you be willing to answer those questions today?

A. I think it would still be in the scope of the

investigation and would rather not answer any questions at this time even in regards to subpoenas of any sort, because there will be consequences in regards to anything I may be saying regarding those kind of things.

Q. Is it your understanding that these investigations are ongoing, the investigation that you're talking about?

A. That's correct, sir.

Q. Is it still an open investigation on your desk?

A. It's not on my desk right now, sir. It's with an outside agency.

Q. Would you be willing to tell me whether you assigned Det. Perez to -- strike that. Are you aware of any report --. Are you aware of an incident involving Darla Abbatiello's gun?

A. Am I aware of the --?

Q. Are you aware of any situation involving a gun owned by and any unusual situation involving a gun owned by Darla Abbatiello?

A. I've heard about it, but never stuck my nose into those areas. I heard about a gun investigation in regards to Darla's weapon being missing.

Q. But you were not involved in any investigation --

A. I wasn't involved, and I never got involved.

Q. I'll ask you the same question with respect to have you heard anything involving some writing in a dictionary owned by Darla Abbatiello?

I, WESLEY KAUI, hereby certify that I have read the foregoing typewritten pages 1 through 24, inclusive, and corrections, if any, were noted by me, and the same is now a true and correct copy of my testimony.

Dated at, ___________, Kaua`i, Hawai`i, this _____ day of _______________, 2006.

_______________________________

WESLEY KAUI

Signed before me this _____ day of ______________________, 2006.

________________________________

Witness to Deponent's Signature

CIVIL NO. CV04 00562 SOM BMK, DARLA ABBATIELLO v. COUNTY OF KAUAI; KAUAI POLICE DEPARTMENT, taken on November 7, 2006, by Joy C. Tahara, RPR, CSR

NOV 2 0 2006

C E R T I F I C A T E

STATE OF HAWAI`I )
) ss.
CITY AND COUNTY OF HONOLULU )

I, JOY C. TAHARA, RPR, CSR 408, Notary Public, State of Hawai`i, hereby certify:

That on Tuesday, November 7, 2006, at 2:15 p.m., before me appeared WESLEY KAUI, the witness whose deposition is contained herein; and that prior to being examined was duly sworn;

That I am neither counsel for any of the parties herein nor interested in any way in the outcome of this action;

That the deposition herein was by me taken down in machine shorthand and thereafter reduced to print via computer-aided transcription; that the foregoing represents, to the best of my ability, a complete and accurate transcript of the testimony of said witness.

DATED: Honolulu, Hawai`i, November 14, 2006.

Joy C. Tahara
Notary Public, State of Hawai`i
My commission expires: 10/11/10