LAW OFFICE OF DANIEL G. HEMPEY
DANIEL G. HEMPEY              7535
3175 Elua Street, Suite C
Lihue, Hawaii 96766
Telephone No. (808) 632-0000
Facsimile No. (808) 632-2332
hemplaw@hawaii.rr.com

BRONSTER CRABTREE & HOSHIBATA
MARGERY S. BRONSTER        4750
JOHN HOSHIBATA               3141
JEANNETTE HOLMES CASTAGNETTI  7211
2300 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone No. (808) 524-5644
Facsimile No. (808)599-1881
mbronster@bchlaw.net
jhoshibata@bchlaw.net
jcastagnetti@bchlaw.net

Attorneys for Plaintiff DARLA ABBATIELLO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DARLA ABBATIELLO, | ) CIVIL NO. CV04 00562 KSC |
| | ) |
|      Plaintiff, | ) SUPPLEMENTAL MEMORANDUM |
| | ) IN SUPPORT OF PLAINTIFF'S |
|   vs. | ) MOTION TO COMPEL |
| | ) PRODUCTION OF TRANSCRIPT |
| COUNTY OF KAUAI, KAUAI | ) OF ORAL DEPOSITION OF K. C. |
| POLICE DEPARTMENT, K.C. LUM, | ) LUM, FILED ON APRIL 30, 2007; |
| WILFRED M. IHU, GORDON | ) CERTIFICATE OF SERVICE |
| ISODA, DEAN PIGAO, IRVIL | ) |
| KAPUA, | ) Date:  May 10, 2007 |
| | ) Time:  1:30 p.m. |
|      Defendants. | ) Judge: Honorable Kevin S.C. Chang |
| | ) |

|                                    |                              |
|------------------------------------|------------------------------|
| _____ )   | ) Trial Date: September 5, 2007 |
|                                    | )                            |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF TRANSCRIPT OF ORAL DEPOSITION OF K.C. LUM, FILED ON APRIL 30, 2007**

I.   INTRODUCTION

This memorandum supplements Plaintiff's memorandum in support of her motion to compel the production of the transcripts of defendant K.C. Lum's deposition given in <u>Lum v. Kauai County Council</u>, CV 06-00068 SOM-BMK ("Lum case").  For the reasons set forth below, and pursuant to the recent Ninth Circuit opinion in <u>Kamakana v. City and County of Honolulu, et. al.</u>, 447 F.3d 1172 (9th Cir. 2006), Plaintiff's motion to compel should be granted, and Lum's deposition transcripts in the Lum case should be produced to Plaintiff immediately.

Plaintiff ("Officer Abbatiello") notes that the County of Kauai does not oppose her motion to compel the production of K.C. Lum's deposition transcripts, part of the record of <u>Lum v. Kauai County Council</u>.

Defendant K.C. Lum, through his counsel, Clayton Ikei, Esq., has submitted a memorandum in opposition to Officer Abbatiello's motion to compel.  No other parties have filed substantive positions in opposition to the motion to compel.

II.     LUM'S DEPOSITION TESTIMONY IS CLEARLY RELEVANT TO OFFICER ABBATIELLO'S CASE

Lum alleges that he has been injured and damaged by being subjected (via e-mail) to what he considers to be a racial slur.[1] He claims that when he voiced his opposition to the slur, he was subjected to retaliation and a hostile work environment by the County and its employees and agents. Officer Abbatiello believes that Lum testified, in his depositions, that the County and its employees and agents had a duty, supported by specific facts, to put a stop to the name-calling, had sufficient grounds to put a stop to acts of retaliation that he believed were caused by his complaints, and knew or should have known, under the circumstances, that they had a duty to fix, prevent and preclude a hostile work environment to which he was subjected as a result of his complaints. Officer Abbatiello believes that Lum gave sworn testimony about his belief and the reasons behind his belief, about why these actions (name calling, retaliatory acts and hostility in the workplace) were improper, intentional, illegal and in violation of various laws, ordinances, rules, regulations and/or standards of conduct. Officer Abbatiello further believes that Lum testified that immediate and specific actions should have been taken by the County and its employees address the issues surrounding the slur, to stop the name-calling and its aftermath, to put an end to

---

[1] The alleged slur was the term "Hop Sing".

retaliatory acts by the County and its employees and agents, and to make the workplace safe and free from hostility.

 Lum's testimony about his reactions to the racial slur, the facts and circumstances surrounding the slur, his belief that certain acts were done in retaliation for his whistleblowing and complaints, and his belief that he suffered from a hostile work environment caused by his whistleblowing and complaints are absolutely relevant to Officer Abbatiello's claims that Lum knew or should have known that Abbatiello was suffering mentally, emotionally and physically by being yelled at by Kapua in a demeaning and threatening manner, being called a "bitch" and a "c**t" by Kapua in front of others, being physically confronted by an enraged Kapua in a deserted stairwell, being ordered and/or forced to take various actions in order to avoid violent confrontations with Kapua, being forced to work in a hostile and violence-prone work environment in retaliation for her whistleblowing and complaints about Kapua, and about the failures and refusals of KPD, Lum and others in stopping these actions and in preventing further incidents from happening.  Lum, after all, is claiming similar injuries and damages in his case, as a direct result of very similar acts by the County and its employees and agents.

 Lum's testimony would shed light on key questions going towards the County's duties, breaches, failures and liability in his case and in Abbatiello's case:

4

- how Lum was affected and impacted as a result of being the subject of a racial slur,

- what the appropriate response by the County should have been to a complaint of being the subject of a racial slur,

- what the County should have done to the person who used the slur,

- what the County should have done in order to punish that person and to make sure that such an action would not be repeated,

- what the County should have done in follow-up to a valid whistleblower's complaint about wrongdoing within the County administration,

- what the County should have done to prevent and preclude retaliatory actions taken against Lum for his whistleblowing and complaints concerning this matter,

- what the County should have done to prevent and preclude conspiratorial actions against Lum, and

- what the County should have done to ensure a safe, non-hostile and non-violent workplace environment for him.

The relevance to this case is, of course, that Lum's testimony will demonstrate that he knew very well what should have been done - by Lum himself and/or by others in KPD and the County - in order to correct the wrongs and the harm that were being forced upon Officer Abbatiello, which were similar to the wrongs and harm he alleged had been forced upon himself.

5

III.  THE REASONS FOR THE STIPULATED PROTECTIVE ORDER ARE NOT APPLICABLE IN ABBATIELLO'S CASE

The Stipulated Protective Order in the Lum case was the result of a stipulation among counsel supposedly to protect documents and information contained within such documents that the parties deemed to be 'confidential'. [*See*, Lum memorandum in opposition at page 3]. In fact, the Stipulated Protective Order explicitly defined "confidential information" as information contained within documents and testimony related to such documents.[2] "Confidential Documents" are defined as "document[s] or material designated as such by the party which produced the document and which said party believes in good faith contains confidential, proprietary and/or sensitive information". [*See* page 2, paragraph 1 of the Stipulated Protective Order].

The wording of the Stipulated Protective Order makes it clear that the parties were focused on protecting documents containing confidential, proprietary and/or sensitive information. Oral testimony by Lum which does not focus on confidential documents are not covered by the Stipulated Protective Order.

---

[2] The definition of "confidential information" in the Stipulated Protective Order is "[e]ach and every Confidential Document produced by a party in these Civil Action *[sic]*, the information contained therein, any material prepared from or based upon such Confidential Document, and/or any testimony related thereto...". *See* page 3, paragraph 2, of the Stipulated Protective Order.

Therefore, even without benefit of the controlling relevancy arguments and the case law discussed below, the transcripts should be discoverable.

Furthermore, to the extent that the deposition testimony contains references to documents, the only documents (and related testimony) that might be involved would be those containing "confidential, proprietary and/or sensitive" information. Officer Abbatiello believes that few, if any, documents should be foreclosed from discovery under such ambiguous terms. If the deposition transcripts do contain documents and/or testimony which this Court believes to be "confidential, proprietary or sensitive" in the context of this case and which are not relevant to Officer Abbatiello's claims and the defendants' conduct, then an appropriate stipulation could be easily fashioned.

IV.  RULE 26 PERMITS DISCOVERY OF THE LUM TRANSCRIPTS

Rule 26(b)(1), *Fed.R.Civ.P.* states:

> **(b) Discovery Scope and Limits**. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
> **(1) In General**. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition , and location of any books, documents, or other tangiblethings and the identity and location of persons having knowledge of any discoverable matters.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party". *Id.* Simply because of the existence of a Stipulated Protective Order does not make the Lum transcripts "privileged" and, indeed, no party has claimed the existence or application of a recognized privilege.

V.  THE *KAMAKANA* CASE DICTATES THAT THE TRANSCRIPTS SHOULD BE PRODUCED

The recent Ninth Circuit case of <u>Kamakana v. City and County of Honolulu, et. al.</u>, 447 F.3d 1172 (9th Cir. 2006) is controlling.  HPD Detective Kamakana brought a civil rights suit against the city, alleging retaliation for his whistleblower activities.  The *Honolulu Advertiser* moved to intervene and for an order to release documents which had been sealed under a protective order.  Magistrate Judge Leslie Kobayashi granted the *Advertiser's* motions, and the city appealed.  The Ninth Circuit, Judge McKeown, affirmed Judge Kobayashi's orders.

The Ninth Circuit explained the governing law with respect to the right of access to judicial records.  It is uniformly held that there is a "general right to inspect and copy public records and documents, including judicial records and documents". <u>Nixon v. Warner Commc'ns, Inc.</u>, 435 U.S. 589, 597 & n.7; 98 S.Ct. 1306; 55 L.Ed.2d 570 (1978).  Unless a particular court record is one "traditionally

kept secret"[3], a "strong presumption in favor of access" is the starting point for the access analysis.  A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard.  Foltz v. State Farm Mutual Auto. Insurance Co., 331 F.3d 1122, 1135 (9th Cir. 2003).  This means that the party must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure".  *Id.*

The Kamakana court stated that "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such "court files might have become a vehicle for improper purposes", such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets.  Nixon, 435 U.S. at 598; 98 S.Ct. 1306.   None of these factors are present here.

The United States was a non-party in the Kamakana case.  As section B.1. of the Kamakana opinion explains, the United States consented to provide depositions of federal witnesses and documents in reliance on the stipulated protective order.  In deciding that those depositions and documents should not be disseminated

---

[3] Ninth Circuit case law has identified two categories of documents that fall in this category: grand jury transcripts and warrant materials in the midst of a pre-indictment investigation.  Times Mirror Co. v. United States, 873 F.2d 1210, 1219 (9th Cir. 1989).  Neither category is involved in this case.

outside of that litigation, the United States took the position that its reliance on the protective order amounted to a "compelling reason" rebutting the presumption of disclosure. The Ninth Circuit stated:

> The position of the United States illustrates the <u>hazard of stipulated protective orders. These orders often contain provisions that purport to put the entire litigation under lock and key without regard to the actual requirements of Rule 26(c). Like many pretrial protective orders, the judge signed off on the order without the benefit of making an individualized determination as to specific documents... Although the magistrate judge "expressly approved and entered the protective order", the order contained no good cause findings as to specific documents that would justify reliance by the United States.</u> Thus, the claimed reliance on the order is not a "compelling reason" that rebuts the presumption of access".
> <u>Kamakana</u>, 447 F.3d at 1183 (Internal citations omitted.) (Emphasis added.)

## VI.  CONCLUSION

The deposition transcripts of K.C. Lum in his own case against the County of Kauai are clearly relevant to Officer Abbatiello's case against Lum. In his own case, Lum claims that he suffered injury and damages as a result of (1) being called a derogatory name, (2) being retaliated against in his place of employment by the County (and its employees and agents), (3) having his civil rights violated by the County, (4) having negative job actions taken against him by the County, (5) suffering in a hostile work environment which was caused by the County, (6) the County's failure to adhere to the federal and state constitution, federal and state

10

laws, and rules, regulations, and standards applicable to him as a County employee. Lum's testimony about how <u>he</u> was mistreated and how <u>he</u> was the subject of misconduct, retaliation and conspiracy is clearly relevant to how he acted with respect to Officer Abbatiello's similar (in some aspects, almost exact) complaints.

There is no compelling reason and, in fact, no good cause, for the transcripts to be withheld from Officer Abbatiello.

If the Court believes that certain safeguards should be implemented in order to prevent the transcripts from being used outside this litigation, Officer Abbatiello has no objection to executing a stipulation fairly limiting the use of the transcripts to this matter only.

DATED: Honolulu, Hawaii, May 9, 2007.

    /s/ John Hoshibata
DANIEL G. HEMPEY
MARGERY S. BRONSTER
JOHN T. HOSHIBATA
JEANNETTE HOLMES CASTAGNETTI
Attorneys for Plaintiff
DARLA ABBATIELLO