CHRISTIANE L. NAKEA-TRESLER        4857-0
Office of the County Attorney
4444 Rice Street, Suite 220
Līhu`e, Hawai`i 96766
Telephone: (808) 241-6315
Facsimile:  (808) 241-6319
Email: cntresler@kauai.gov

Attorneys for Defendants COUNTY OF KAUA`I
and KAUA`I POLICE DEPARTMENT

McCORRISTON MILLER MUKAI MacKINNON LLP

DAVID J. MINKIN            3639-0
BECKY T. CHESTNUT          7756-0
KARA M.L. YOUNG            8411-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawai`i  96813
Telephone:  (808) 529-7300
Facsimile:  (808) 524-8293
Email:  minkin@m4law.com

Attorneys for Defendants COUNTY OF KAUA`I,
KAUA`I POLICE DEPARTMENT, WILFRED M. IHU,
GORDON ISODA and DEAN PIGAO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| DARLA ABBATIELLO,<br><br>                   Plaintiff,<br><br>    vs.<br><br>COUNTY OF KAUAI, KAUAI<br>POLICE DEPARTMENT,<br>K.C. LUM, WILFRED M. IHU, | CIVIL NO. CV04 00562 KSC<br><br>DEFENDANTS COUNTY OF KAUA`I,<br>KAUA`I POLICE DEPARTMENT,<br>WILFRED M. IHU, GORDON ISODA<br>AND DEAN PIGAO'S MOTION TO<br>AMEND AMENDED SCHEDULING<br>ORDER TO PERMIT FILING OF<br>DISPOSITIVE MOTIONS; |

156035.1

# EXHIBIT 14
# (PART 1 OF 3)

| GORDON ISODA, DEAN PIGAO, IRVIL KAPUA, | MEMORANDUM IN SUPPORT OF MOTION; DECLARATION OF DAVID J. MINKIN; EXHIBITS "A" - "D"; CERTIFICATE OF SERVICE |
|---|---|
| Defendants. | |
| | TRIAL: May 8, 2007 |

### DEFENDANTS COUNTY OF KAUA`I, KAUA`I POLICE DEPARTMENT, WILFRED M. IHU, GORDON ISODA AND DEAN PIGAO'S MOTION TO AMEND AMENDED SCHEDULING ORDER TO PERMIT FILING OF DISPOSITIVE MOTIONS

Come now Defendants County of Kaua`i, Kaua`i Police Department, Wilfred M. Ihu, Gordon Isoda and Dean Pigao ("Defendants"), by and through their attorneys, McCorriston Miller Mukai MacKinnon LLP, and hereby respectfully move this Court for an order amending the Amended Rule 16 Scheduling Order filed April 20, 2006, to extend the January 8, 2007 deadline for the parties to file dispositive motions. Specifically, Defendants request that the deadline for filing dispositive motions be extended to permit the filing of Defendant's Motion to Certify a Question to the Hawai`i Supreme Court or, in the Alternative, Entitling Defendants to Judgment on the Pleadings with Respect to Plaintiff's State Constitutional Claims, a copy of which is attached as Exhibit "A."

156035.1                                                   2

This Motion is brought pursuant to Rules 7 and 16 of the Federal Rules of Civil Procedure and is based upon the attached Memorandum in Support of Motion, declaration of counsel, exhibits, and the records and files herein.

DATED:  Honolulu, Hawai`i, February 20, 2007.


/s/ David J. Minkin
DAVID J. MINKIN
BECKY T. CHESTNUT
KARA M.L. YOUNG

Attorneys for Defendants
COUNTY OF KAUA`I, KAUA`I POLICE
DEPARTMENT, WILFRED M. IHU,
ISODA and DEAN PIGAO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| DARLA ABBATIELLO, | CIVIL NO. CV04 00562 KSC |
| Plaintiff, | MEMORANDUM IN SUPPORT OF MOTION |
| vs. | |
| COUNTY OF KAUAI, KAUAI POLICE DEPARTMENT, K.C. LUM, WILFRED M. IHU, GORDON ISODA, DEAN PIGAO, IRVIL KAPUA, | |
| Defendants. | |

MEMORANDUM IN SUPPORT OF MOTION

I.    INTRODUCTION

        Defendants County of Kaua`i, Kaua`i Police Department, Wilfred M.

Ihu, Gordon Isoda and Dean Pigao ("Defendants"), by and through their attorneys,

McCorriston Miller Mukai MacKinnon LLP, respectfully move this Court for an

order amending the Amended Rule 16 Scheduling Order, filed April 20, 2006, to

extend the January 8, 2007 deadline for the parties to file dispositive motions.

Specifically, Defendants request that the deadline for filing dispositive motions be

extended to permit the filing of Defendants' Motion to Certify a Question to the

156035.1

Hawai`i Supreme Court or, in the Alternative, Entitling Defendants to Judgment on

the Pleadings with Respect to Plaintiff's State Constitutional Claims, a copy of

which is attached as Exhibit "A."

II.    PROCEDURAL BACKGROUND

Plaintiff originally filed this action on September 14, 2004.  The

original Rule 16 scheduling order was filed on February 11, 2005.  An Amended

Scheduling Order was filed on September 28, 2005.  On March 3, 2006, Plaintiff

moved to file a First Amended Complaint.  This motion was granted and Plaintiff

filed her First Amended Complaint on April 21, 2006.  On April 7, 2006, Plaintiff

filed a motion for an order modifying the Court's Amended Rule 16 Scheduling

Order to extend all deadlines by three months.  The motion was granted and, on

April 20, 2006, the Court filed an Amended Rule 16 Scheduling Order.

III.    ARGUMENT

Defendants move for an order permitting modification of the

Amended Scheduling Order to permit Defendants to file their Motion to Certify a

Question to the Hawai`i Supreme Court or, in the Alternative, Entitling Defendants

to Judgment on the Pleadings with Respect to Plaintiff's State Constitutional

Claims.  See, Exhibit "A."

156035.1                                    2

Rule 16 of the Federal Rules of Civil Procedure ("FRCP") provides that, upon a showing of good cause, a district judge may modify the schedule. Fed. R. Civ. P. 16(b). This Court has held that the requisite good cause may be shown where a party raises an issue that is relevant to the Court's subject matter jurisdiction over the case. Tran v. Captain Glyn, Inc., 909 F. Supp. 727, 731 (D. Haw. 1995). Another factor for consideration in granting a motion to amend a scheduling order is any prejudice that may result. See id. In Tran v. Captain Glyn, Inc., 909 F. Supp. 727, 731 (D. Haw. 1995), the Court granted a motion to amend a scheduling order where the plaintiff had filed a motion for summary judgment after the deadline for dispositive motions. The Court observed that both Rule 16 (pretrial orders) and Rule 56 (summary judgment) share the purpose of narrowing issues for trial where appropriate, and stated that it, too, was guided by that purpose. Id. "While the court does not take lightly the strictures of scheduling orders, it also takes seriously its responsibility to apply pretrial requirements with 'intelligent flexibility, taking into full consideration the exigencies of each situation.'" Id. (citing Davis v. Duplantis, 448 F.2d 918, 921 (5th Cir. 1971)). Consequently, the Court found that good cause and the interests of justice warranted the consideration of the plaintiff's motion on the merits.

Here, as in <u>Tran</u>, Defendants seek relief to permit consideration of a motion that address the Court's jurisdiction to hear specific matters, and that potentially serve the purpose of narrowing issues for trial.

Moreover, this motion comes not on the eve of trial, but more than three months prior to the trial date, and only weeks after the existing dispositive motions cut-off.  In addition, two dispositive motions previously filed have to be reset for hearing prior to trial.  Plaintiff will suffer no prejudice by any brief delay in the filing of this motion, particularly as other scheduled dates, such as the discovery cutoff, have not yet passed and, in fact, have recently been reset from March 9, 2007 to April 30, 2007.

Good cause is also shown because the filing of this motion was prompted by the implicit invitation of the Court at the February 6, 2007 hearing on Defendants' Motion for Summary Judgment on, or in the Alternative Dismissal of, Counts I and II of the First Amended Complaint, and Dismissal of Counts V and VII of the First Amended Complaint (filed December 12, 2006) and in the order disposing of that motion (Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, filed February 7, 2007, "MSJ Order," attached hereto as Exhibit "B").  At the hearing, Judge Mollway advised that it appeared there was no clear Hawai`i law determining whether a claim for damages could be brought directly under the Constitution of the State of Hawai`i, and presented the

156035.1                                        4

question to the parties.  Transcript of Proceedings of February 6, 2007, attached

hereto as Exhibit "C", at 10-11.  Although Judge Mollway remarked that it was not

clearly before her at the hearing, she stated, "I throw that out for your consideration

because, if [Plaintiff] persist[s] in the state constitutional claim, it may well be that

I will be compelled to certify this question . . . ."  Id. at 11.  Judge Mollway added,

"So I throw that out for you to consider, but it's likely to have to be resolved at

some point before this case goes to trial."  Id.  In the MSJ Order, Judge Mollway

included a footnote on the question: "Abbatiello is urged to consider the issue of

whether claims may be brought directly under the state constitution.  If the state

constitutional claims remain at issue, this court may be compelled to certify that

issue to the Hawai`i Supreme Court."  MSJ Order at 37 n.7.

    Defendants consider these references to be an implicit invitation to

file the motion.

    It is also significant that Plaintiff has also requested, on April 7, 2006,

amendments to the Amended Scheduling Order.  Her motion to amend was filed

just three days prior to the deadline for disclosure of her experts and expert reports.

The Court granted the motion and continued all pretrial and trial dates.  See,

Amended Rule 16 Scheduling Order filed April 20, 2006.

    Finally, without disputing the merit of validity of Plaintiff's claim of

delay by defendants in producing discovery, the parties agreed to extend the

deadline imposed by the Amended Scheduling Order for Plaintiff's submission of her economist's expert report. See, Exhibit "D." For reasons of fairness, the Court should give the same consideration to Defendants' instant request.

IV.    CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant their motion and modify the Rule 16 Scheduling Order to permit the filing of Defendant's Motion to Certify a Question to the Hawai`i Supreme Court or, in the Alternative, Entitling Defendants to Judgment on the Pleadings with Respect to Plaintiff's State Constitutional Claims.

DATED:  Honolulu, Hawai`i, February 20, 2007.


/s/ David J. Minkin
DAVID J. MINKIN
BECKY T. CHESTNUT
KARA M.L. YOUNG

Attorneys for Defendants
COUNTY OF KAUA`I, KAUA`I POLICE
DEPARTMENT, WILFRED M. IHU,
ISODA and DEAN PIGAO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| DARLA ABBATIELLO, | ) | CIVIL NO. CV04-00562 KSC |
| | ) | |
| Plaintiff, | ) | DECLARATION OF DAVID J. |
| | ) | MINKIN; EXHIBITS "A" - "D" |
| vs. | ) | |
| | ) | |
| COUNTY OF KAUAI, KAUAI | ) | |
| POLICE DEPARTMENT, K.C. LUM, | ) | |
| WILFRED M. IHU, GORDON | ) | |
| ISODA, DEAN PIGAO, IRVIL | ) | |
| KAPUA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF DAVID J. MINKIN

1.      I am an attorney with the law firm of McCorriston Miller

Mukai MacKinnon LLP, attorneys for Defendants County of Kaua`i, Kaua`i Police

Department, Wilfred M. Ihu, Gordon Isoda, and Dean Pigao (collectively

"Defendants"). I make this declaration in support of Defendants' Motion to Amend

Amended Scheduling Order to Permit Filing of Dispositive Motions ("Motion")

filed herewith.

2.      Attached hereto as Exhibit "A" is a true and correct copy of

Defendant's Motion to Certify a Question to the Hawai`i Supreme Court or, in the

Alternative, Entitling Defendants to Judgment on the Pleadings with Respect to

Plaintiff's State Constitutional Claims.

156035.1

3.    Attached hereto as Exhibit "B" is a true and correct copy of the Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, filed February 7, 2007.

4.    Attached hereto as Exhibit "C" is a true and correct copy of the Transcript of Proceedings before the Honorable Susan Oki Mollway, United States District Judge, of February 6, 2007 on Defendants' Motion for Summary Judgment or, in the Alternative, Dismissal; Joinders in this matter.

5.    Atached hereto as Exhibit "D" is a true and correct copy of a December 1, 2006, email transmission from John Hoshibata, Esq. to David J. Minkin, Esq. confirming extension of due date for Plaintiff's economist's report.

I declare under penalty of law that the foregoing is true and correct.

DATED:  Honolulu, Hawai`i, February 20, 2007.


/s/ David J. Minkin
DAVID J. MINKIN

CHRISTIANE L. NAKEA-TRESLER        4857-0
Office of the County Attorney
4444 Rice Street, Suite 220
Līhu`e, Hawai`i 96766
Telephone: (808) 241-6315
Facsimile: (808) 241-6319
Email: cntresler@kauai.gov

Attorneys for Defendants COUNTY OF KAUA`I
and KAUA`I POLICE DEPARTMENT

McCORRISTON MILLER MUKAI MacKINNON LLP

DAVID J. MINKIN                    3639-0
BECKY T. CHESTNUT                  7756-0
KARA M.L. YOUNG                    8411-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawai`i  96813
Telephone:  (808) 529-7300
Facsimile:  (808) 524-8293
Email:  minkin@m4law.com

Attorneys for Defendants COUNTY OF KAUA`I,
KAUA`I POLICE DEPARTMENT, WILFRED M. IHU,
GORDON ISODA and DEAN PIGAO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DARLA ABBATIELLO,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>COUNTY OF KAUAI, KAUAI<br>POLICE DEPARTMENT,<br>K.C. LUM, WILFRED M. IHU, | CIVIL NO. CV04 00562 KSC<br><br>DEFENDANTS COUNTY OF KAUA`I,<br>KAUA`I POLICE DEPARTMENT,<br>WILFRED M. IHU, GORDON ISODA<br>AND DEAN PIGAO'S MOTION TO<br>CERTIFY A QUESTION TO THE<br>HAWAI`I SUPREME COURT OR, IN<br>THE ALTERNATIVE, ENTITLING |

EXHIBIT " A "

| GORDON ISODA, DEAN PIGAO, IRVIL KAPUA, | DEFENDANTS TO JUDGMENT ON THE PLEADINGS WITH RESPECT TO PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS; MEMORANDUM IN SUPPORT OF MOTION; CERTIFICATE OF SERVICE |
|---|---|
| Defendants. | |
| | TRIAL: May 8, 2007 |

DEFENDANTS COUNTY OF KAUA`I, KAUA`I POLICE DEPARTMENT, WILFRED M. IHU, GORDON ISODA AND DEAN PIGAO'S MOTION TO CERTIFY A QUESTION TO THE HAWAI`I SUPREME COURT OR, IN THE ALTERNATIVE, ENTITLING DEFENDANTS TO JUDGMENT ON THE PLEADINGS WITH RESPECT TO PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS

Come now Defendants County of Kaua`i, Kaua`i Police Department, Wilfred M. Ihu, Gordon Isoda and Dean Pigao ("Defendants") and hereby request that the Court certify the following question to the Hawai`i Supreme Court:

Does the law of the State of Hawai`i permit direct claims for damages for alleged deprivations of rights secured under the Hawai`i Constitution, without statutes implementing such claims?

The question is critical to Plaintiff's claims herein; in Count VII of her First Amended Complaint, filed April 21, 2006, Plaintiff asserts direct claims for damages for alleged violations of rights under the Hawai`i Constitution. The question has no clear controlling precedent in the Hawai`i judicial decisions at present. Defendants therefore respectfully request that this Honorable Court certify the question of the existence of such claims to the Hawai`i Supreme Court

155696.1                                  2

or, in the alternative, that the Court grant judgment on the pleadings with respect to

this claim.  This motion is brought pursuant to Rules 7 and 12(c) of the Federal

Rules of Civil Procedure and Rule 13(a) of the Hawai`i Rules of Appellate

procedure, and is based upon the attached supporting memorandum and the records

and files herein.

DATED:  Honolulu, Hawai`i, February 20, 2007.


/s/ David J. Minkin
DAVID J. MINKIN
BECKY T. CHESTNUT
KARA M.L. YOUNG

Attorneys for Defendants
COUNTY OF KAUA`I, KAUA`I POLICE
DEPARTMENT, WILFRED M. IHU,
GORDON ISODA and DEAN PIGAO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DARLA ABBATIELLO,<br><br>                    Plaintiff,<br><br>vs.<br><br>COUNTY OF KAUAI, KAUAI<br>POLICE DEPARTMENT,<br>K.C. LUM, WILFRED M. IHU,<br>GORDON ISODA, DEAN PIGAO,<br>IRVIL KAPUA,<br><br>                Defendants. | CIVIL NO. CV04 00562 KSC<br><br>MEMORANDUM IN SUPPORT OF<br>MOTION |

MEMORANDUM IN SUPPORT OF MOTION

I.    INTRODUCTION

In Count IV of her First Amended Complaint, filed April 21, 2006 ("First Amended Complaint"), Plaintiff purports to assert claims directly under the Constitution of the State of Hawai`i.  Specifically, she alleges the actions of the Defendants "violated Plaintiff's rights secured to her by the Constitution of the state of Hawai`i, including, but not limited to, rights to freedom of speech, due process of law, equal protection of the law, and the enjoyment of her civil rights." First Amended Complaint ¶ 135.  Plaintiff seeks monetary damages for these alleged deprivations of Constitutional rights. Id. ¶ 136.  However, as demonstrated

below, there is no clear precedent for such claims under Hawai`i law. As the question is one of fundamental state law, the question of the existence of such claims is a question that may properly be placed for certification with the Supreme Court of the State of Hawai`i. Defendants County of Kaua`i, Kaua`i Police Department, Wilfred M. Ihu, Gordon Isoda and Dean Pigao ("Defendants") therefore respectfully ask the Court to certify the following question to the Supreme Court of the State of Hawai`i:

> Does the law of the State of Hawai`i permit direct claims for damages for alleged deprivations of rights secured under the Hawai`i Constitution, without statutes implementing such claims?

In the alternative, Defendants request that the Court grant judgment on the pleadings with respect to these claims, on grounds that the relevant provisions of the Hawai`i Constitution are not self-executing, meaning that if such claims are to be recognized, it is up to the State Legislature to enact implementing legislation, which it has not done. Moreover, even if the Constitutional provisions *were* self-executing, their status as such does not translate to an automatic entitlement to monetary damages for deprivations of any attendant rights. As the establishment of a Constitutional monetary damages claim is well within the purview of the Legislature, Defendants respectfully suggest that the Court should decline to create such a claim, particularly because Hawai`i courts have not done so.

155696.1

2

## II.   APPLICABLE STANDARDS

### A.   Certification to the Hawai`i Supreme Court

Rule 13(a) of the Hawai`i Rules of Appellate Procedure provides that a federal district court may certify a question to the Hawai`i Supreme Court when the question: (1) concerns Hawai`i law; (2) which is determinative of the cause; and (3) there is no clear controlling precedent in the Hawai`i judicial decisions. See also Richardson v. City & County of Honolulu, 802 F. Supp. 326, 345 (D. Haw. 1992); Pai 'Ohana v. United States, 875 F. Supp. 680, 700 (D. Haw. 1995) (citing Robinson v. Ariyoshi, 65 Haw. 641, 658 P.2d 287 (1982), *modified in part,* 66 Haw. 528, 726 P.2d 1133 (1983)).

### B.   Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides that after the pleadings are closed, but within such time as not to delay trial, any party may move for judgment on the pleadings.  A motion for judgment on the pleadings under Rule 12(c) is proper when, taking all material allegations in a complaint as true and construing them in a light most favorable to the nonmoving party, the moving party demonstrates that it is entitled to judgment as a matter of law.  Geraci v. Homestreet Bank, 347 F.3d 749, 751 (9th Cir. 2003) (citing Fajardo v. County of L.A., 179 F.3d 698, 699 (9th Cir. 1999) for the proposition that a motion for

judgment on the pleadings should be granted where it appears the moving party is entitled to judgment as a matter of law).

III.    ARGUMENT

A.    The Question at Issue is Appropriate for Certification to the Hawai`i Supreme Court

The essential question with regard to Count VII of Plaintiff's First Amended Complaint, filed April 21, 2006, is whether the law of the State of Hawai`i permits direct claims for damages for alleged deprivations of rights secured under the Hawai`i Constitution, in the absence of specific constitutional provisions or statutes implementing such claims. Because the question is one of fundamental state law; because the question is dispositive of these claims; and because there is no clear state law precedent on the issue, the question is appropriate for certification the Hawai`i Supreme Court.

As observed by this Court in Richardson v. City & County of Honolulu, 802 F. Supp. 326 (D. Haw. 1992), "[t]he United States Supreme Court has consistently approved of the use of certified questions to state supreme courts when a federal court case involves an important question of state law which is both unclear under state legal precedent and would be determinative in the instant case. 802 F. Supp. at 344 (cataloguing supporting cases). The Court added that the use of state certification procedures serves to "save time, energy, and resources and helps build a cooperative judicial federalism." Id. (quoting Lehman Bros. v. Schein, 416 U.S.

386, 391 (1974)).  The decision to certify a state law question to the state supreme

court rests in the sound discretion of the federal district court.  Id. at 345 (citing

Louie v. United States, 776 F.2d 819, 824 (9th Cir. 1985)).

For a federal court to certify a question to a state supreme court, the state

court must provide a specific procedure for receiving such questions.  Section 602-

5(2) of the Hawai`i Revised Statutes provides that the Hawai`i Supreme Court

shall have jurisdiction to answer any question or proposition of law certified to it

by a federal district court, if the rules of the state supreme court so provide.  The

Hawai`i Supreme Court has authorized certified questions pursuant to Rule 13 of

the Hawai`i Rules of Appellate Procedure ("HRAP").

HRAP Rule 13(a) provides that a federal district court may certify a question

to the Hawai`i Supreme Court when the question concerns Hawai`i law, is

determinative of the cause, and there is no clear controlling precedent in the

Hawai`i judicial decisions.  See also Richardson, 802 F. Supp. at 345; Pai 'Ohana,

875 F. Supp. at 700.

Here, there can be no question that the existence of damages claims alleged

to arise directly under the State Constitution is a question of Hawai`i law.  The

question is also fundamentally determinative of the claims in Count VII of

Plaintiff's First Amended Complaint; if the question is answered in the negative,

Plaintiff's claims in Count VII fall away.  With respect to the third question,

although several courts have touched upon the question, there is yet no clear

precedent, as repeatedly recognized by the courts.

Figueroa v. State, 61 Haw. 369, 604 P.2d 1198 (1980), appears to be the first

Hawai`i case touching upon the question presented.  There, the plaintiff, like

Plaintiff here, attempted to assert a private right of action in damages for violations

of various Constitutional rights directly under the State Constitution.  The Court

did not hold that a constitutional provision, even if self-executing, permitted—or

did not permit—a claim of monetary damages for alleged constitutional violations.

Figueroa, 61 Haw. at 382, 604 P.2d at 1206.  Instead, the Court's ultimate decision

in that case rested upon its refusal to interpret the constitutional provisions as a

waiver of the State's sovereign immunity.

Subsequently, in 1986, the question of whether Hawai`i recognizes direct

claims for damages for deprivation of rights under the State Constitution arose

again in Makanui v. Department of Education, 6 Haw. App. 397, 721 P.2d 165

(1986).  The Intermediate Court of Appeals in Makanui explicitly declined to

decide "whether Hawaii recognizes a cause of action for damages for deprivation

of rights under the state's constitution of laws," as the question was not decided in

Figueroa.  Makanui, 6 Haw. App. at 403 n.2, 721 P.2d at 170 n.2.

In 1988, the United States District Court for the District of Hawai`i faced the

question in Mow v. Cheeseborough, 696 F. Supp. 1360 (1988), and observed that

the "Hawaii state appellate courts have yet to enunciate whether the State

recognizes a cause of action for damages arising from a deprivation of rights under

the Hawaii Constitution as against individuals." 696 F. Supp. at 1365. Noting that

the plaintiffs had filed suit in state court, the federal court declined to decide the

question, finding instead that "the disposition of this significant issue more

appropriately rests within the province of the Hawaii judiciary." Id. (emphasis

added).

The question arose most recently in Maizner v. State of Hawai`i, 405

F.Supp. 2d 1225 (2005), in which the Court stated that it "need not and does not

here decide the substantive issue of whether Maizner's direct claim under the state

constitution is cognizable." 405 F.Supp. 2d at 1240.

In the short time since Maizner, there have been no cases from any court

resolving the question.  Consequently, the question is appropriate for certification

to the Hawai`i Supreme Court.

B.    In the Alternative, Defendants are Entitled to Judgment on the
Pleadings with Respect to Plaintiff's State Constitutional Claims

1.    The Constitutional Clauses are Not Self-Executing

Although Plaintiff brings claims directly under the Constitution of the State

of Hawai`i, she points to no statute or other constitutional provision implementing

these purported claims.  While the Constitution at Article XVI, Section 16,

provides all provisions are "self-executing to the fullest extent that their respective

natures permit," this section, without more, does not permit direct claims for monetary damages for violations.

In <u>State v. Rodriguez</u>, 63 Haw. 412, 629 P.2d 1111 (1981), the Hawai`i Supreme Court considered the defendant's argument that Article I, section 11 of the Hawai`i Constitution was self-executing and therefore required the immediate appointment of an independent counsel to grand juries. The Court stated that a constitutional provision is self executing if it "supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." <u>Rodriguez</u>, 63 Haw. at 414, 629 P.2d at 1113. The Court held that the constitutional provision's reference to compensation of the independent counsel "as provided by law" was a direction to the legislature to enact implementing legislation. <u>Id.</u> at 415, 629 P.2d at 1114. Consequently, the Court held that the language of Article I, section II, and the intent of the framers indicated that further implementing legislation was required to implement the amendment. <u>Id.</u> at 416, 629 P.2d at 1114.

Such is the case here. Plaintiff apparently relies upon Articles 4 and 5 of Section I, the Constitution's Bill of Rights. These sections, however, do not state any "rules by means of which those principles may be given the force of law," to

make them self-executing; they instead state only broad principles. Section 4

provides: "No law shall be enacted respecting an establishment of religion, or

prohibiting the free exercise thereof, or abridging the freedom of speech or of the

press or the right of the people peaceably to assemble and to petition the

government for a redress of grievances." Section 5 provides: "No person shall be

deprived of life, liberty or property without due process of law, nor be denied the

equal protection of the laws, nor be denied the enjoyment of the person's civil

rights or be discriminated against in the exercise thereof because of race, religion,

sex or ancestry." Without more, there is no indication that the framers intended to

create actions such as those Plaintiff seeks to assert here, and the Legislature has

not enacted legislation to set out rules for implementation. Consequently, as it is

not clear that the Constitution creates a right to bring a direct claim for damages for

constitutional violations, the Court should not recognize one.

> 2.   Even if the Constitutional Clauses are Self-Executing, Their
>       Status as Such Does Not Permit Money Damages

As discussed above, in Figueroa v. State, 61 Haw. 369, 604 P.2d 1198

(1980), the plaintiffs attempted to assert damages claims, directly under the State

Constitution, as Plaintiff seeks to do here. On appeal, the plaintiffs in Figueroa

argued that with respect to those claims (deprivations of due process and freedom

from cruel and unusual punishment) the self-executing clause makes available any

and all accepted forms of redress, including money damages. The Court was

155696.1                                9

unpersuaded, stating, "The self-executing clause only means that the rights therein established or recognized do not depend on further action in order to become operative." Id. (emphasis added). While the Court's ultimate decision in that case rested upon its refusal to interpret the constitutional provisions as a waiver of the State's sovereign immunity, the Court noted that "[n]o case has construed the term 'self-executing' as allowing money damages for constitutional violations." Id.

Also as discussed above, subsequent courts have considered but not decided the question, leading to the reasonable conclusion that the Hawai`i Legislature has seen fit not to create such a cause of action. Indeed, the Legislature has enacted the State Whistleblowers' Protection Act and scores of other statutes, too numerous to cite here, to protect the Constitutional rights of the people of Hawai`i, many of them after Figueroa. See, e.g., Haw. Rev. Stat. § 378-2 (prohibiting discrimination in employment based upon race sex, sexual orientation, age, religion, color, ancestry, disability, marital status, or arrest and court record); Haw. Rev. Stat. chapter 368 (establishing the Civil Rights Commission and providing for a broad range of remedies for violations); id. chapter 206 (providing for due process hearings for land use issues). Yet the Legislature has enacted no statute to provide, as a state equivalent to 42 U.S.C. § 1985, a direct cause of action for damages for violations of constitutional rights. To be sure, if the Legislature had understood the language of Articles 4 and 5 of Section I to be self-executing, there would have

been no need to draft or enact such legislation as the Hawai'i Whistleblower

Protection Act or the numerous other statutes that specifically serve to protect

constitutional rights.

Quite simply, the fact that the Legislature has enacted no sweeping

implementing legislation, in the twenty-seven years since Figueroa, to permit

direct claims for money damages for deprivations of constitutional rights, is strong

evidence of the Legislature's intent that there be no right to bring direct damages

claims. The absence of action by the Legislature should not be understood as an

invitation to any court to legislate from the bench by recognizing previously

unrecognized claims arising under the State Constitution.

In this regard, the analysis by the Michigan Supreme Court in Lewis v.

State, 629 N.W.2d 868, 872 (Mich. 2001), is particularly instructive. In that case

the court declined to create a claim for damages for violations of constitutional

rights. The court noted the significant distinction "between a judicial decree

*invalidating* unconstitutional governmental action and the adoption of judicially

created doctrines that effectively serve as de facto statutory enactments to

implement [the State Constitution]": "The former is classic judicial review

recognized as a core judicial function since, at least, the decision in Marbury v.

Madison, 1 Cranch (5 U.S.) 137 (1803). The latter is an improper usurpation of

legislative authority." Lewis, 629 N.W.2d at 872. The court observed that "[t]o

fail to heed this limitation on judicial power would be to fail 'to maintain the separation between the Judiciary and the other branches . . . by ensuring that judges do not encroach upon executive or legislative authority or undertake tasks that are more properly accomplished by those branches." Id. (quoting in part Morrison v. Olson, 487 U.S. 654, 680-81 (1988)). "Accordingly, when the political branches of state government affirmatively act by adopting legislation or otherwise, we may, in keeping with the traditional judicial role, review that action to determine if it is unconstitutional. Until that time, however, we cannot go further." Id.

Here, Defendants respectfully suggest that, in the event the Court is disinclined to certify the question to the Supreme Court, the Court should hold that a damages claim for alleged deprivations of constitutional rights has not been created by Hawai`i's Constitution or its Legislature, and grant judgment on the pleadings with respect to these claims. Based upon the reasoning above, the Court should not create a claim under the State Constitution where one does not exist under state law.

IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court certify the question presented to the Hawai`i Supreme Court. In the alternative, Defendants request that the Court grant judgment on the pleadings

with respect to Plaintiff's claims for damages for alleged violations of rights under

the Hawai`i Constitution, and dismiss these claims with prejudice.

DATED:  Honolulu, Hawai`i, February 20, 2007.


/s/ David J. Minkin
DAVID J. MINKIN
BECKY T. CHESTNUT
KARA M.L. YOUNG

Attorneys for Defendants
COUNTY OF KAUA`I, KAUA`I POLICE
DEPARTMENT, WILFRED M. IHU,
GORDON ISODA, and DEAN PIGAO

155696.1                              13

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| DARLA ABBATIELLO, | ) | CIVIL NO. CV04-00562 KSC |
| | ) | |
| Plaintiff, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| vs. | ) | |
| | ) | |
| COUNTY OF KAUAI, KAUAI | ) | |
| POLICE DEPARTMENT, K.C. LUM, | ) | |
| WILFRED M. IHU, GORDON | ) | |
| ISODA, DEAN PIGAO, IRVIL | ) | |
| KAPUA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the

foregoing document was duly served on the following on this date as indicated

below:

| | **Electronically Via CM/ECF** | **U.S. Mail** |
|---|---|---|
| DANIEL G. HEMPEY, ESQ.<br>Law Office of Daniel G. Hempey<br>3175 Elua Street<br>Lihue, Hawai`i 96766 | | X |

and

155525.1

|  | Electronically Via CM/ECF | U.S. Mail |
|---|---|---|
| MARGERY S. BRONSTER, ESQ.<br>JOHN HOSHIBATA, ESQ.<br>Bronster Crabtree & Hoshibata<br>Pauahi Tower<br>1001 Bishop Street, Suite 2300<br>Honolulu, Hawai`i 96813<br><br>Attorneys for Plaintiff<br>DARLA ABBATIELLO | X | |
| MICHAEL J. McGUIGAN, ESQ.<br>Pacific Guardian Center, Makai Tower<br>733 Bishop Street, 24th Floor<br>Honolulu, Hawai`i 96813<br><br>Attorney for Defendant<br>IRVIL KAPUA | X | |
| CARY T. TANAKA, ESQ.<br>Fort Street Tower<br>745 Fort Street, Suite 510<br>Honolulu, Hawai`i 96813<br><br>Attorney for Defendant K.C. LUM | X | |

DATED:  Honolulu, Hawai`i, February 20, 2007.

/s/ David J. Minkin
DAVID J. MINKIN
BECKY T. CHESTNUT
KARA M.L. YOUNG

Attorneys for Defendants
COUNTY OF KAUA`I, KAUA`I POLICE
DEPARTMENT, WILFRED M. IHU,
GORDON ISODA, and DEAN PIGAO

155525.1                                   2

# EHXIBIT "B"

# (PART 1 OF 2)

Case 1:04-cv-00562-KSC   Document 327-16   Filed 07/19/2007   Page 31 of 69
Case 1:04-cv-00562-KSC   Document 232-5   Filed 02/20/2007   Page 2 of 20

Case 1:04-cv-00562-SOM-BMK   Document 217   Filed 02/07/2007   Page 1 of 38

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DARLA ABBATIELLO, | ) | Civ. No. 04-00562 SOM/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANTS' |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| COUNTY OF KAUAI, KAUAI POLICE | ) | |
| DEPARTMENT, K.C. LUM, WILDRED | ) | |
| M. IHU, GORDON ISODA, DEAN | ) | |
| PIGAO, and IRVIL KAPUA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

On April 21, 2006, Plaintiff Darla Abbatiello

("Abbatiello") filed her First Amended Complaint ("FAC") against

Defendants County of Kauai ("the County"), Kauai Police

Department ("KPD"), K.C. Lum ("Lum"), Wildred M. Ihu ("Ihu"),

Gordon Isoda ("Isoda"), Dean Pigao ("Pigao"), and Irvil Kapua

("Kapua") (collectively, "Defendants").  In the FAC, Abbatiello

asserts the following claims:   (1) violation of her rights to

free speech, substantive and procedural due process, and equal

protection under the United States Constitution, in violation of

42 U.S.C. § 1983 (Count 1);[1] (2) violation of the Hawaii

Whistleblowers' Protection Act, Haw. Rev. Stat. § 378-61 et seq.

---

[1] At the hearing on the present motion, Abbatiello
withdrew her claims under 42 U.S.C. § 1985 in Counts 1 and 2.
The court therefore disregards any argument in the present motion
concerning her § 1985 claims.

EXHIBIT " B "

Case 1:04-cv-00562-KSC   Document 327-16   Filed 07/19/2007   Page 32 of 69
Case 1:04-cv-00562-KSC   Document 232-5   Filed 02/20/2007   Page 3 of 20

Case 1:04-cv-00562-SOM-BMK   Document 217   Filed 02/07/2007   Page 2 of 38

(Count 3); (3) wrongful termination (Count 4); (4) negligent

supervision and retention of an employee (Count 5);

(5) intentional infliction of emotional distress (Count 6);

(6) negligent infliction of emotional distress ("NIED")

(Count 7); and (7) violation of her rights to free speech, due

process, and equal protection under the Hawaii constitution

(Count 8).[2]  Abbatiello prays for declaratory and injunctive

relief, general, special, and punitive damages, and attorneys'

fees and costs.

The County, KPD, Ihu, Isoda, and Pigao now move for

summary judgment.  In seeking summary judgment on Abbatiello's

claims that they violated her First Amendment rights, they argue

that Abbatiello did not engage in protected speech.  Relying on

Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), they argue that all

of her speech and reports were made pursuant to her official

duties and are therefore unprotected.  Defendants alternatively

contend that, if Abbatiello's speech was protected, they are

qualifiedly immune with respect to her First Amendment claims.

Expecting this court to grant summary judgment on all of

Abbatiello's federal claims, Defendants also ask this court to

decline jurisdiction over the remaining state claims.  Defendants

assert that Count 5, alleging negligent supervision and retention

---

[2] All of the individual Defendants are sued in their
official capacities, but only Lum and Kapua are also sued in
their individual capacities.  FAC ¶ 8-9.

2

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 33 of 69
Case 1:04-cv-00562-KSC    Document 232-5    Filed 02/20/2007    Page 4 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 3 of 38

of Kapua, and Count 7, alleging NIED, are barred by Hawaii's
workers' compensation law.

Because there is a genuine dispute of fact regarding
whether Abbatiello engaged in protected speech, the court denies
summary judgment on her First Amendment claims.  The court
therefore denies Defendants' request to decline jurisdiction over
the state claims.  The court also denies summary judgment on the
issue of qualified immunity, as municipalities and municipal
employees sued in their official capacities are not entitled to
the defense of qualified immunity.  Abbatiello's negligence
claims in Count 5 (negligent supervision and retention) and
Count 7 (NIED) are barred by Hawaii's workers' compensation law,
and the court grants summary judgment in Defendants' favor on
those claims.

On December 21, 2006, and January 3, 2007, Lum and
Kapua, respectively, filed joinders of simple agreement in the
present motion for summary judgment.  The rulings in this order
therefore apply to Abbatiello's claims against Lum and Kapua.

II.     LEGAL STANDARD.

        A.    Motion for Summary Judgment.

        Summary judgment shall be granted when

        the pleadings, depositions, answers to
        interrogatories, and admissions on file,
        together with the affidavits, if any, show
        that there is no genuine issue as to any
        material fact and that the moving party is
        entitled to a judgment as a matter of law.

3

Case 1:04-cv-00562-KSC   Document 327-16   Filed 07/19/2007   Page 34 of 69
Case 1:04-cv-00562-KSC   Document 232-5   Filed 02/20/2007   Page 5 of 20

Case 1:04-cv-00562-SOM-BMK   Document 217   Filed 02/07/2007   Page 4 of 38

Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr.,
383 F.3d 1018, 1024 (9th Cir. 2004); Addisu v. Fred Meyer, Inc.,
198 F.3d 1130, 1134 (9th Cir. 2000). One of the principal
purposes of summary judgment is to identify and dispose of
factually unsupported claims and defenses. Celotex Corp. v.
Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that
fails to demonstrate facts to establish what will be an essential
element at trial. See id. at 323. A moving party without the
ultimate burden of persuasion at trial—usually, but not always,
the defendant—has both the initial burden of production and the
ultimate burden of persuasion on a motion for summary judgment.
Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102
(9th Cir. 2000). The burden initially falls upon the moving
party to identify for the court "those portions of the materials
on file that it believes demonstrate the absence of any genuine
issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec.
Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing
Celotex Corp., 477 U.S. at 323).

"When the moving party has carried its burden under
Rule 56(c), its opponent must do more than simply show that there
is some metaphysical doubt as to the material facts." Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)
(footnote omitted). The nonmoving party may not rely on the mere
allegations in the pleadings and instead "must set forth specific

4

Case 1:04-cv-00562-KSC     Document 327-16     Filed 07/19/2007     Page 35 of 69
Case 1:04-cv-00562-KSC     Document 232-5     Filed 02/20/2007     Page 6 of 20

Case 1:04-cv-00562-SOM-BMK     Document 217     Filed 02/07/2007     Page 5 of 38

facts showing that there is a genuine issue for trial." Porter,
383 F.3d at 1024 (quoting Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 256 (1986)). "A genuine dispute arises if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party." California v. Campbell, 319 F.3d 1161,
1166 (9th Cir. 2003); accord Addisu, 198 F.3d at 1134 ("There
must be enough doubt for a 'reasonable trier of fact' to find for
plaintiffs in order to defeat the summary judgment motion."). "A
scintilla of evidence or evidence that is merely colorable or not
significantly probative does not present a genuine issue of
material fact." Addisu, 198 F.3d at 1134 (citation omitted).
"[I]f the factual context makes the non-moving party's claim
implausible, that party must come forward with more persuasive
evidence than would otherwise be necessary to show that there is
a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v.
Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987)
(citing Matsushita Elec. Indus. Co., 475 U.S. at 587).

When "direct evidence" produced by the moving party
conflicts with "direct evidence" produced by the party opposing
summary judgment, "the judge must assume the truth of the
evidence set forth by the nonmoving party with respect to that
fact." T.W. Elec. Serv., 809 F.2d at 631. In other words,
evidence and inferences must be construed in the light most
favorable to the nonmoving party. Porter, 338 F.3d at 1024. The
court does not make credibility determinations or weigh

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 36 of 69
Case 1:04-cv-00562-KSC    Document 232-5    Filed 02/20/2007    Page 7 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 6 of 38

conflicting evidence at the summary judgment stage.  Id.
However, inferences may be drawn from underlying facts not in
dispute, as well as from disputed facts that the judge is
required to resolve in favor of the nonmoving party.  T.W. Elec.
Serv., 809 F.2d at 631.

The summary judgment burdens are properly applied to a
motion asserting qualified immunity.  See Butler v. San Diego
Dist. Attorney's Office, 370 F.3d 956, 958 (9th Cir. 2004) ("When
a defendant makes a properly supported motion for summary
judgment based on official immunity, the plaintiff has an
obligation to produce evidence of his or her own.  In such a
case, the district court is not required (or even allowed) simply
to assume the truth of challenged factual allegations in the
complaint.  In other words, a motion for summary judgment based
on official immunity is governed by Federal Rule of Civil
Procedure 56, just like all motions for summary judgment in civil
suits in federal district court.").

B.    Motion for Dismissal.

Defendants also ask this court to dismiss claims
pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure.  Although the parties dispute whether this court
should analyze Defendants' request for dismissal under Rule
12(b)(6) or Rule 12(c), the standard for a motion under either
rule is essentially the same.  See Lake Tahoe Watercraft
Recreation Ass'n v. Tahoe Reg'l Planning Agency, 24 F. Supp. 2d

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 37 of 69
Case 1:04-cv-00562-KSC    Document 232-5    Filed 02/20/2007    Page 8 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 7 of 38

1062, 1066 (E.D. Cal. 1998). Because the motion was filed after
Defendants filed their Answers to the FAC, any motion to dismiss
would fall under Rule 12(c). See Elvig v. Calvin Presbyterian
Church, 375 F.3d 951, 954 (9th Cir. 2004) ("A Rule 12(b)(6)
motion must be made before the responsive pleading. Here,
Defendants filed their motion to dismiss after filing their
answer. Thus, the motion should have been treated as a motion
for judgment on the pleadings, pursuant to Rule 12(c) or
12(h)(2)." (internal citation omitted)); see also Aldabe v.
Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980) (noting that Rule
12(h)(2) of the Federal Rules of Civil Procedure specifically
allows a Rule 12(c) motion based on an alleged failure to state a
claim upon which relief can be granted); George C. Frey
Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554
F.2d 551, 553 n.2 (2d Cir. 1977) ("Pursuant to Rule 12(h)(2), a
Rule 12(c) motion may be used to raise the defense of failure to
state a claim upon which relief can be granted, a defense
ordinarily raised under Rule 12(b)(6) before the pleadings are
closed." (quotation marks omitted)).

        Motions for judgment on the pleadings under Rule 12(c)
are proper when, taking all material allegations in a complaint
as true and construing them in the light most favorable to the
nonmoving party, the moving party demonstrates that it is
entitled to judgment as a matter of law. Geraci v. Homestreet
Bank, 347 F.3d 749, 751 (9th Cir. 2003) ("A motion for judgment

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 38 of 69
Case 1:04-cv-00562-KSC    Document 232-5    Filed 02/20/2007    Page 9 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 8 of 38

on the pleadings should be granted where it appears the moving

party is entitled to judgment as a matter of law."). However,

under Rule 12(c), when matters outside the pleadings are

considered, the motions are treated as motions for summary

judgment. <u>Grimmett v. Brown</u>, 75 F.3d 506, 510 (9th Cir. 1996)

(converting a Rule 12(c) motion to a motion for summary judgment

under Rule 56 because matters outside the pleadings were

considered); Fed. R. Civ. P. 12(c) ("If, on a motion for judgment

on the pleadings, matters outside the pleadings are presented to

and not excluded by the court, the motion shall be treated as one

for summary judgment and disposed of as provided in Rule 56, and

all parties shall be given reasonable opportunity to present all

material made pertinent to such a motion by Rule 56.").

Defendants and Abbatiello submit evidence for the

court's consideration, and the court considers that evidence on

this motion.   The court therefore analyzes Defendants' entire

motion, including those portions seeking dismissal pursuant to

Rule 12(b)(6), under the standards applicable to motions for

summary judgment.

III.    BACKGROUND.

Abbatiello has been employed by KPD as a police officer

since 1989.   Affidavit of Darla J. Abbatiello (1/18/2007)

("Abbatiello Affidavit") ¶ 2; FAC ¶ 13.   In October 2002, after

receiving numerous awards and commendations by KPD, she was

assigned to the Investigative Services Bureau, Vice/Narcotics

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 39 of 69
Case 1:04-cv-00562-KSC    Document 232-5    Filed 02/20/2007    Page 10 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 9 of 38

Division ("the Vice Unit") of KPD.  Abbatiello Affidavit ¶ 2; FAC
¶¶ 13-14.  The Vice Unit is "primarily responsible for
investigating and solving drug trafficking on Kauai."  FAC ¶ 14.
As a Vice officer, Abbatiello's main duties were to investigate
drug complaints by gathering information and obtaining and
executing search warrants.  Id. ¶ 15.  She says she "worked
undercover, in plain clothes, [and] formed connections and
relationships with known and/or suspected drug users and dealers
in an attempt to investigate and build criminal cases against
drug users and dealers."  Abbatiello Affidavit ¶ 3.

        Abbatiello alleges that, in December 2003, she obtained
a warrant to search the residence of A.B.,[3] a suspected drug
dealer.  Id. ¶ 16.  Because Abbatiello believed that A.B.'s
boyfriend was C.D., a drug dealer who allegedly dealt in larger
quantities of drugs than A.B., Abbatiello says she "intended to
arrest A.B. and 'flip' her to arrest C.D."  Id. ¶ 17.  Abbatiello
alleges that, while she was attempting to execute the search
warrant on A.B., Sergeant Kapua, who was not a Vice officer, told
Abbatiello's commanding officer in the Vice Unit, Lieutenant
E.F., that "Vice should not work on either A.B. or C.D."  Id. ¶¶
18-19.

        Abbatiello says that, on December 15, 2003, she was
ordered to meet privately with Sergeant Kapua and A.B, at which

_____

        [3] In the FAC, Abbatiello refers to various individuals
"in 'John Doe' fashion."  In this order, the court refers to
those individuals by the names Abbatiello uses in the FAC.

9

Case 1:04-cv-00562-KSC   Document 327-16   Filed 07/19/2007   Page 40 of 69
Case 1:04-cv-00562-KSC   Document 232-5   Filed 02/20/2007   Page 11 of 20

Case 1:04-cv-00562-SOM-BMK   Document 217   Filed 02/07/2007   Page 10 of 38

time Kapua registered A.B. as a confidential informant.  Id.
¶¶ 19-20.  Abbatiello allegedly thought that Kapua's registration
of A.B. "violated KPD rules regarding recruitment of confidential
informants."  Id. ¶ 20.  Between December 16 and 25, Abbatiello
says A.B. "did not make any controlled buys from specific drug
dealers as A.B. agreed, nor did A.B. attempt to work 'bigger
targets.'"  Id. ¶ 21.  According to Abbatiello, Sergeant Kapua
was upset with her for asking A.B. to make a controlled buy from
C.D and discouraged her from pursuing C.D.'s arrest.  Id. ¶ 22.

     Abbatiello alleges that, on December 26, 2003, she
"returned to her original plan to serve the search warrant on
A.B. and then 'flip' her to obtain evidence against C.D."  Id.
¶ 23.  Abbatiello says that, after she executed the search
warrant and arrested A.B., A.B. "admitted that she sold crystal
methamphetamine with C.D., and that C.D. paid Sergeant Kapua six
thousand dollars ($6,000) through a third person to protect both
A.B and C.D."  Id. ¶¶ 23-24.  Abbatiello says that, after hearing
A.B.'s allegations about Kapua, "she feared for her safety"
because Kapua had "a reputation for having a violent temper and
background."  Id. ¶¶ 25-29.

     Abbatiello alleges that, on December 28, 2003, she was
admitted to the Kauai Veterans Memorial Hospital Emergency Unit
for "sleeplessness, diarrhea, dehydration, severe coughing,
stomach pains, and other physical stress-related symptoms,"

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 41 of 69
Case 1:04-cv-00562-KSC    Document 232-5    Filed 02/20/2007    Page 12 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 11 of 38

conditions she says were "due directly to the stress of the situation at work and fear of Sergeant Kapua." Id. ¶ 30.

Abbatiello says she returned to work on January 2, 2004, and "immediately reported to her supervisor, Lieutenant E.F., what A.B. had told her about Sergeant Kapua and the alleged corruption, and that [she] feared for her safety." Id. ¶ 31. She says she also informed the State of Hawaii Organization of Police Officers ("SHOPO") and the Federal Bureau of Investigations ("FBI") about A.B.'s allegations. Abbatiello Affidavit ¶ 8. At the hearing on the present motion, the County suggested that the County itself may have provided the information to the FBI even before Abbatiello did. Abbatiello alleges that, although Lieutenant E.F. informed Acting Chief Ihu and Assistant Chief Isoda of A.B.'s allegations and Abbatiello's request that Kapua be ordered to stay away from her, "no such orders were made and no corrective action was taken." FAC ¶ 31. Abbatiello says she provided a written report about A.B.'s allegations to Lieutenant E.F. on January 19, 2004. Id. ¶ 32. Although Chief Ihu ordered a criminal and administrative investigation, Abbatiello alleges that "no meaningful action has been taken in either the criminal or internal investigations." Id. ¶¶ 33, 35. Rather, Abbatiello alleges, Sergeant Kapua harassed her by calling her derogatory names at work and in public and by "tipping off" suspects before she executed search warrants on them. Id. ¶¶ 36, 38.

11

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 42 of 69
Case 1:04-cv-00562-KSC    Document 232-5    Filed 02/20/2007    Page 13 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 12 of 38

According to Abbatiello, she contacted SHOPO in March 2004 about "the possibility of temporarily transferring out of the Vice unit" so that "she could work a significant distance away from Sergeant Kapua." Id. ¶ 39. At the hearing on the present motion, the County stressed that Abbatiello had only been on temporary assignment to the Vice Unit from the start. Abbatiello says she also discussed temporarily transferring out of the Vice Unit with Chief Ihu and Lieutenant E.F. Id. ¶ 39. On March 31, 2004, she requested a temporary transfer in writing and was transferred on April 2, 2004. Id. ¶¶ 40-41. Abbatiello alleges that, after she was transferred, Chief Ihu informed her that her transfer was not temporary, but permanent. Id. ¶ 41. Abbatiello says she was also demoted "from Police Officer II at a salary range of PO-9 to a Police Officer I at a Range of PO-7." Id. ¶ 43.

Abbatiello further alleges that, on April 18, 2004, another officer told her to look in her personal dictionary at the Vice Unit office. Id. ¶ 44. She says that, in the dictionary, "three red arrows were handwritten and pointed to the word 'DEATH' . . . . Next to the definition of 'DEATH' was her name written in red ink with an arrow pointing to the definition." Id. ¶ 44. Abbatiello says she perceived this to be a death threat and reported it to her supervisors, but that "no internal investigation or meaningful criminal investigation has taken place." Id. ¶ 44.

12

Case 1:04-cv-00562-KSC   Document 327-16   Filed 07/19/2007   Page 43 of 69
Case 1:04-cv-00562-KSC   Document 232-5   Filed 02/20/2007   Page 14 of 20

Case 1:04-cv-00562-SOM-BMK   Document 217   Filed 02/07/2007   Page 13 of 38

According to Abbatiello, on June 23, 2004, she met with Chief Lum and another officer in Chief Lum's office. Id. ¶ 47. She says that, during the meeting, "Sergeant Kapua stood outside Chief Lum's door and 'stared [her] down'" and that Sergeant Kapua's behavior was "so disruptive to the meeting that Chief Lum closed his office door." Id. ¶ 47. After the meeting, Abbatiello allegedly heard Kapua "screaming and yelling" in his office and says he punched a hole in his office wall. Id. ¶ 48. Later that day, Abbatiello says she was ordered to "stay away from Sergeant Kapua and to use the back door when she had to go to the Vice Unit." Id. ¶ 49.

Abbatiello further alleges that, on April 24, 2005, while on duty, she was ordered "to assist in a search of two female arrestees and to photograph each of them in a naked condition." Id. ¶ 58. Abbatiello says she refused to take the photographs and reported the incident the next day, but that "no action was taken." Id. ¶¶ 62-64. She alleges that, after that incident occurred, Chief Lum drafted a new KPD policy, which provided that "KPD officers must photograph the search at every stage of the arrest process." Id. ¶ 70. Because Chief Lum allegedly backdated the effective date of the proposed policy to cover the April 24 strip search incident, Abbatiello believes Lum's new policy was an "attempt to cover up the fact that [she] made a proper complaint about the photographing of female arrestees." Id. ¶ 72.

Case 1:04-cv-00562-KSC   Document 327-16   Filed 07/19/2007   Page 44 of 69
Case 1:04-cv-00562-KSC   Document 232-5   Filed 02/20/2007   Page 15 of 20

Case 1:04-cv-00562-SOM-BMK   Document 217   Filed 02/07/2007   Page 14 of 38

Abbatiello says that, on May 25, 2005, she was removed from her position as a field training officer, which resulted in a "loss of compensation." Id. ¶¶ 65, 68. She also says she has been unable to work in the cellblock because Sergeant Kapua and other officers "who have threatened or intimidated [her]" were also assigned to cellblock duty. Id. ¶ 81. Abbatiello says she had "regularly earned extra compensation . . . for performing [cellblock] duty," and that she suffered a loss of compensation as a result of being unable to work in the cellblock. Id. ¶¶ 81-82.

IV.   ANALYSIS.

A.   First Amendment Claims.

Defendants argue that they are entitled to summary judgment on Abbatiello's First Amendment claims brought under 42 U.S.C. § 1983 because Abbatiello did not engage in protected speech. Motion at 7-20. They contend that, under Garcetti, 126 S. Ct. 1958, "a public employee must speak in her capacity as a citizen in order to receive First Amendment protection for her speech." Motion at 7. Asserting that Abbatiello's speech "was made in her capacity as a police officer employed by KPD, not as a citizen," Defendants argue that "there is no violation of [her] First Amendment rights." Motion at 11. In response, Abbatiello points to evidence showing that her reports were not made pursuant to her official duties as a Vice or patrol officer and contends that a genuine dispute of fact precludes summary

14

Case 1:04-cv-00562-KSC   Document 327-16   Filed 07/19/2007   Page 45 of 69
Case 1:04-cv-00562-KSC   Document 232-5   Filed 02/20/2007   Page 16 of 20

Case 1:04-cv-00562-SOM-BMK   Document 217   Filed 02/07/2007   Page 15 of 38

judgment.  Opp. at 14-19.  The court agrees with Abbatiello that
questions of fact remain to be tried.

         "In order to state a claim against a government
employer for violation of the First Amendment, an employee must
show (1) that he or she engaged in protected speech; (2) that the
employer took 'adverse employment action'; and (3) that his or
her speech was a 'substantial or motivating' factor for the
adverse employment action."  Coszalter v. City of Salem, 320 F.3d
968, 973 (9th Cir. 2003); see also Freitag v. Ayers, 468 F.3d
528, 543 (9th Cir. 2006).  The Supreme Court recently modified
prior First Amendment jurisprudence regarding the first
prong--i.e., whether an employee engaged in protected speech.
Freitag, 648 F.3d at 544 (noting that "the Supreme Court's recent
decision in [Garcetti, 126 S. Ct. 1951,] modified prior First
Amendment jurisprudence with respect to the first element-
-employee protected speech").

         The plaintiff in Garcetti, 126 S. Ct. at 1955, Richard
Ceballos ("Ceballos"), was a deputy district attorney whose job
responsibilities included supervising other prosecutors and
making recommendations regarding the prosecution of their cases.
At the request of a defense attorney, Ceballos reviewed an
affidavit that had been used to obtain a critical search warrant
in one of his office's cases.  Id.  After examining the affidavit
and speaking to the affiant, Ceballos determined that the
affidavit contained serious misrepresentations, informed his

15

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 46 of 69
Case 1:04-cv-00562-KSC    Document 232-5    Filed 02/20/2007    Page 17 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 16 of 38

supervisors of that determination, and drafted a disposition
memorandum recommending dismissal of the case. Id. at 1955-56.
Ceballos was thereafter subjected to a series of retaliatory
employment actions and filed a federal lawsuit against his
supervisors, claiming they had violated his First and Fourteenth
Amendment rights "by retaliating against him based on his memo."
Id. at 1956.

The supervisors moved for summary judgment, arguing
that "Ceballos' memo was not protected speech under the First
Amendment." Id. The district court granted the motion,
concluding that Ceballos "was not entitled to First Amendment
protection for the memo's contents" because he "wrote his memo
pursuant to his employment duties." Id. On appeal, the Ninth
Circuit reversed, holding that "Ceballos's allegations of
wrongdoing in the memorandum constitute protected speech under
the First Amendment." Id.

On certiorari, the Supreme Court was faced with
deciding "whether the First Amendment protects a government
employee from discipline based on speech made pursuant to the
employee's official duties." Id. at 1955. The Court reaffirmed
that "public employees do not surrender all their First Amendment
rights by reason of their employment," but that "the First
Amendment protects a public employee's right, in certain
circumstances to speak as a citizen addressing matters of public
concern." Id. at 1957; see also Freitag, 468 F.3d at 543 (noting

16

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 47 of 69
Case 1:04-cv-00562-KSC    Document 232-5    Filed 02/20/2007    Page 18 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 17 of 38

that, under <u>Garcetti</u>, "the issue is not only whether the speech in question addresses a matter of public concern, but also whether it is made <u>as a citizen</u>" (emphasis in original)). The Court ultimately held, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." <u>Garcetti</u>, 126 S. Ct. at 1960.

In reaching its decision, the Court made several observations applicable to this case. First, because it was undisputed that Ceballos "wrote his disposition memo pursuant to his employment duties," the Court observed that it did not have the "occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." <u>Id.</u> at 1961. It did reject, however, "the suggestion that employers can restrict employees' rights by creating excessively broad job descriptions." <u>Id.</u> On that point, the Court stated:

> The proper inquiry is a practical one.
> Formal job descriptions often bear little
> resemblance to the duties an employee
> actually is expected to perform, and the
> listing of a given task in an employee's
> written job description is neither necessary
> nor sufficient to demonstrate that conducting
> the task is within the scope of the
> employee's professional duties for First
> Amendment purposes.

<u>Id.</u> at 1961-62. The Court also noted that it was not dispositive that "Ceballos expressed his views inside his office, rather than

17

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 48 of 69
Case 1:04-cv-00562-KSC    Document 232-5    Filed 02/20/2007    Page 19 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 18 of 38

publicly" or that the memo "concerned the subject matter of [his]

employment," as employees "may receive First Amendment protection

for expressions made at work . . . or related to the speaker's

job." Id. at 1959.

        In Freitag, 468 F.3d at 532, 532-35, the Ninth Circuit

applied Garcetti's holding to a case in which the plaintiff was a

female correctional officer who had filed numerous complaints

with her supervisors about "the pervasive practice at Pelican Bay

of inmate exhibitionist masturbation." When her complaints went

ignored, she also sent letters to California State Senator

Richard Polanco ("Sentaor Polanco"), in which "she alleged that

she and other female correctional officers were regularly

subjected to sexually abusive behavior . . . and that supervisors

failed to respond adequately to her complaints." Id. at 535.

She also contacted the California Office of the Inspector General

("Inspector General") and wrote a letter to Cal Terhune

("Terhune"), the director of the California Department of

Corrections and Rehabilitation ("the CDCR"). Id. at 534-35.

After voicing her concerns, the plaintiff was allegedly subjected

to various retaliatory employment actions and was eventually

terminated from her job. Id. at 533-36.

        The plaintiff filed a lawsuit for retaliation under the

First Amendment against the CDCR and three administrators of

Pelican Bay State Prison. A jury found in her favor, id. at 532,

537, and the defendants appealed, arguing that substantial

18

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 49 of 69
Case 1:04-cv-00562-KSC    Document 232-5    Filed 02/20/2007    Page 20 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 19 of 38

evidence did not support the jury's finding of retaliation, id. at 537.

On appeal, the Ninth Circuit focused on whether the plaintiff's complaints constituted protected speech under the First Amendment: "The critical inquiry is . . . whether [the plaintiff] engaged in the relevant speech 'pursuant to her official duties.'" Id. at 545 (citing Garcetti, 126 S. Ct. at 1960). The court concluded that her "internal" complaints were not protected because she had "submitted those reports pursuant to her official duties as a correctional officer and thus not in her capacity as a citizen." Id. at 546. However, the court held that her communications with Senator Polanco and the Inspector General were protected, as "[i]t was certainly not part of [the plaintiff's] official tasks to complain to the Senator or the IG about the state's failure to perform its duties properly, and specifically its failure to take corrective action to eliminate sexual harassment in its workplace." Id. at 545. The court also noted that it was her "responsibility as a citizen to expose such official malfeasance to broader scrutiny." Id. (emphasis in original). Lastly, the Ninth Circuit concluded that determining whether the plaintiff's letter to Terhune, the director of the CDCR, was protected was "a closer question." Id. at 546. The court stated:

> We are unsure whether prison guards are
> expected to air complaints regarding the
> conditions in their prisons all the way up to
> the Director of the CDCR at the state capitol

19

# EHXIBIT "B"

# (PART 2 OF 2)

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 51 of 69
Case 1:04-cv-00562-KSC    Document 232-6    Filed 02/20/2007    Page 2 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 20 of 38

> in Sacramento. We are not aware, for
> example, what the union contract provides
> with respect to the persons to whom such
> grievances may or must be presented.

Id. The court therefore remanded to the district court the issue
of whether that letter was protected under the First Amendment.

In Korea v. City of Kokomo, Indiana, 458 F. Supp. 2d
857, 860, 867-69 (S.D. Ind. 2006), the district court for the
Southern District of Indiana was similarly faced with deciding
whether the plaintiff's complaints about "alleged abuse within
City government" were protected by the First Amendment. The
plaintiff had been hired as a recreational programmer for the
city's parks department, and his job responsibilities included
"supervising and coordinating recreational programs and
supervising the seasonal staff for concession stands." Id. at
862-63. After noticing that one of the seasonal employees "was
being paid for hours that he had not worked," he reported the
problem to his supervisor. Id. at 863. The plaintiff also
reported his observation that a refund check that should have
been sent to the state American Softball Association commissioner
was never sent. Id. The plaintiff claimed that his supervisor
retaliated against him after he made his reports. Id. at 864.

The plaintiff brought suit against various defendants,
including his supervisor, alleging that his First Amendment
rights had been violated. Id. at 865-66. The defendants moved
for summary judgment, arguing that the plaintiff's reports were
not protected under the First Amendment. The court turned to

Case 1:04-cv-00562-KSC   Document 327-16   Filed 07/19/2007   Page 52 of 69
Case 1:04-cv-00562-KSC   Document 232-6   Filed 02/20/2007   Page 3 of 20

Case 1:04-cv-00562-SOM-BMK   Document 217   Filed 02/07/2007   Page 21 of 38

Garcetti and noted, "Unlike the situation in Garcetti, . . .
there is a factual dispute in this case concerning whether [the
plaintiff's] complaints . . . were made pursuant to his ordinary
duties." Id. at 867. The court cited to evidence establishing
that "nothing in [the plaintiff's] job description required him
to monitor or report misconduct," that the plaintiff "was not
responsible for handling money," and that "there is no evidence
that [the plaintiff] had any oversight of the [missing] refunds."
Id. at 867-68. Rather, the evidence showed that the plaintiff's
"core function as a recreational program director" did not
include the activities about which he complained. Id. at 868.
The court was therefore "unable to conclude that [the
plaintiff's] complaints were made simply as an employee rather
than a concerned citizen" and denied summary judgment on his
retaliation claim. Id.

Courts have also addressed whether departmental rules
and regulations are dispositive of whether an employee speaks
pursuant to his or her official duties. For example, in Batt v.
City of Oakland, No. C 01-04975 MHP, 2006 WL 1980401, at *1 (N.D.
Cal. July 13, 2006), the plaintiff, a police officer with the
Oakland Police Department ("OPD"), "witnessed numerous illegal
and brutal acts on the part of his supervising officer and three
other OPD officers." After reporting his observations, the
plaintiff was allegedly retaliated against by his coworkers and
eventually resigned from the department. Id. at *1-2. The

21

Case 1:04-cv-00562-KSC   Document 327-16   Filed 07/19/2007   Page 53 of 69
Case 1:04-cv-00562-KSC   Document 232-6   Filed 02/20/2007   Page 4 of 20

Case 1:04-cv-00562-SOM-BMK   Document 217   Filed 02/07/2007   Page 22 of 38

plaintiff filed suit under the First Amendment, and the
defendants moved for summary judgment, arguing that the
plaintiff's reports were not protected because departmental rules
and regulations required him to report such misconduct.  Id. at
*4.  The court rejected that argument, stating that general rules
and regulations requiring an employee to report misconduct were
not dispositive under Garcetti.  Id.; see also Skrutski v. Marut,
No. 3:CV-03-2280, 2006 WL 2660691, at *9-10 (M.D. Pa. Sept. 15,
2006) (ruling that "State Police regulations" were "not
dispositive" as to whether the plaintiff's reports of his
co-employees' misconduct were protected under the First
Amendment); Barclay v. Michalsky, 451 F. Supp. 2d 386, 395 (D.
Conn. 2006) (rejecting the defendants' argument that "the
complaints plaintiff allegedly made to her supervisors regarding
employees sleeping on the job and the use of excessive restraints
were made pursuant to her official duties because behavior that
endangers the safety and welfare of persons is specifically
prohibited by Work Rule # 22 and employees have an affirmative
duty pursuant to Work Rule # 30 to report violations of existing
work rules, policies, procedures, or regulations").

     Defendants seek summary judgment on Abbatiello's First
Amendment claims, arguing that she spoke pursuant to her official
duties and not as a citizen when she reported:  (1) Kapua's

Case 1:04-cv-00562-KSC   Document 327-16   Filed 07/19/2007   Page 54 of 69
Case 1:04-cv-00562-KSC   Document 232-6   Filed 02/20/2007   Page 5 of 20

Case 1:04-cv-00562-SOM-BMK   Document 217   Filed 02/07/2007   Page 23 of 38

alleged involvement with bribery, and (2) the order to photograph

naked arrestees.[4]

       As the Freitag court made clear, the "critical inquiry"

for this court in determining whether Abbatiello spoke as a

citizen is "whether [she] engaged in the relevant speech

'pursuant to her official duties.'"   See Freitag, 468 F.3d at 545

(citing Garcetti, 126 S. Ct. at 1960).   Defendants point to the

KPD Standards of Conduct as evidence of Abbatiello's official job

duties.   The Standards of Conduct require officers to "[i]dentify

potentially serious law enforcement and government problems," to

"[e]nforce all federal, state and local laws and ordinances," and

to report "unlawful, unjust or improper orders."   Reply at 6;

Ex. B (attached to Reply CSF) at 5, 7.   These KPD regulations are

not dispositive, however, as they, like formal job descriptions,

may "bear little resemblance to the duties an employee actually

is expected to perform."   See Garcetti, 126 S. Ct. at 1962; see

also Batt, 2006 WL 1980401, at *1; Skrutski, 2006 WL 2660691, at

*9-10; Barclay, 451 F. Supp. 2d at 395.

       As evidence of her official job duties, Abbatiello

submits evidence showing that her main responsibility as a Vice

officer was "to investigate, in an undercover capacity, illegal

drug activities on the island of Kauai."   Abbatiello Affidavit

_____

       [4] Although Defendants focus on only these two reports,
Abbatiello clarified at the hearing on this motion that her First
Amendment claims are also based on her reports regarding the
alleged theft of her handgun and the alleged death threat in her
personal dictionary.

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 55 of 69
Case 1:04-cv-00562-KSC    Document 232-6    Filed 02/20/2007    Page 6 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 24 of 38

¶ 2.   Specifically, as a Vice officer, she "worked undercover, in plain clothes [and] formed connections and relationships with known and/or suspected drug users and dealers in an attempt to investigate and build criminal cases against drug users and dealers." Id. ¶ 3.  Additionally, Abbatiello says she was "not employed to investigate misconduct by other police officers," was "not informed that investigating or reporting misconduct by other KPD employees was one of [her] job duties," and was not "trained to do so." Id. ¶¶ 4-5.  She also says, "Neither [her] position as a police officer nor [her] oath as a police officer caused [her] to act any differently." Id. ¶ 8.  Evidence before the court also shows that Abbatiello was told by "Assistant Chief of Police Dean Pigao that [she] did not have to report the alleged corruption by Kapua."[5] Id. ¶ 9.  But see Ex. 2 (attached to Motion) at 19, 22.  This evidence supports Abbatiello's position that her reports of Kapua's alleged bribery and of the order to take photographs were not made pursuant to her official duties or responsibilities as a Vice and patrol officer at KPD.

        Defendants nevertheless argue that Abbatiello has not "made any effort to make public her concerns" and that her speech "owes its existence to her professional responsibilities." Motion at 15, 19.  But the Supreme Court made clear that public

_____

        [5] Abbatiello also points to additional evidence of her official duties and responsibilities, to which Defendants object. Because the court need not rely on that evidence in deciding the present motion, the court disregards that evidence for purposes of this order.

24

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 56 of 69
Case 1:04-cv-00562-KSC    Document 232-6    Filed 02/20/2007    Page 7 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 25 of 38

employees "may receive First Amendment protection for expressions made at work . . . or related to the speaker's job." Garcetti, 126 S. Ct. at 1959; see also Skrutski, 2006 WL 2660691, at *9-10; Barclay, 451 F. Supp. 2d at 395.  Additionally, evidence before the court shows that Abbatiello reported Kapua's alleged misconduct to SHOPO and the FBI.  Abbatiello Affidavit ¶ 8.

Defendants also contend that, because Abbatiello reported that she was concerned about her safety, the sole motivation of her reports "seems to be fear of her safety in the workplace."  Motion at 14.  Abbatiello responds that she reported Kapua's alleged misconduct "because corruption is a matter of public concern and because, as a citizen and resident of Kauai, [she is] concerned about the persistent allegations of corruption within KPD."  Abbatiello Affidavit ¶ 8.  Regarding her report of the order to photograph naked arrestees, Abbatiello says that "[she] reported the strip search incident because the violation of an individual's right to be free from unreasonable searches is a matter of public concern and, as a citizen and resident of Kauai, [she is] concerned about the persistent allegations of police misconduct and abuse of authority within KPD."  Id. ¶ 11. There is at least a genuine dispute as to whether Abbatiello's sole motivation in making her reports was fear for her own safety.

Defendants finally posit that Abbatiello must not have been speaking as a citizen because she "fail[ed] to mention [in

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 57 of 69
Case 1:04-cv-00562-KSC    Document 232-6    Filed 02/20/2007    Page 8 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 26 of 38

the FAC] that her reports were made in her capacity as a
citizen." Motion at 16. However, <u>Garcetti</u>, which clarified that
public employees must speak as citizens when engaging in
protected speech, was not decided until Abbatiello had already
filed the FAC. Moreover, Defendants do not cite to, and this
court has not found, any authority requiring a public employee to
allege in the complaint that he or she spoke "as a citizen" when
engaging in protected speech. Defendants are therefore
unpersuasive in arguing that they are entitled to summary
judgment simply because the FAC does not allege that Abbatiello
spoke "as a citizen."

Defendants have not met their burden of establishing
that there is no genuine dispute of fact as to whether
Abbatiello's reports were made pursuant to her official duties
and responsibilities as a Vice or police officer. The evidence
before the court, viewed in the light most favorable to
Abbatiello, raises a question of fact as to whether her official
duties included reporting Kapua's alleged misconduct or the order
to photograph naked arrestees. The court therefore denies
summary judgment on Abbatiello's First Amendment claims.

Anticipating that this court would grant summary
judgment in favor of Defendants on Abbatiello's federal claims,
Defendants ask the court to decline jurisdiction over the
remaining state law claims "in the event the federal claims are
dismissed." Motion at 27. Because the court denies summary

26

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 58 of 69
Case 1:04-cv-00562-KSC    Document 232-6    Filed 02/20/2007    Page 9 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 27 of 38

judgment on Abbatiello's First Amendment claims, the court also
denies Defendants' request with respect to the state claims.

    B.   Qualified Immunity.

    Defendants alternatively contend, "Even if
[Abbatiello's] speech were protected under the First Amendment,
Defendants are entitled to summary judgment on Counts I and II of
the First Amended Complaint because . . . they are qualifiedly
immune to [her] claims under 42 U.S.C. § 1983." The problem with
this argument is that qualified immunity does not apply to
movants sued in their official capacities.

    In Hallstrom v. City of Garden City, 991 F.2d 1473,
1487 (9th Cir. 1992), the Ninth Circuit stated in clear terms, "A
municipality (and its employees sued in their official
capacities) may not assert a qualified immunity defense to
liability under Section 1983." Id.; Kentucky v. Graham, 473 U.S.
159, 165-68 (1985) (noting that qualified immunity is not
available to an official sued in his or her official capacity);
Owen v. City of Independence, 445 U.S. 622, 638 (1980) ("We hold,
therefore, that the municipality may not assert the good faith of
its officers or agents as a defense to liability under § 1983.").
The County, KPD, and the individual Defendants sued in their
official capacities are not entitled to qualified immunity.[6]

_____

    [6] The County, KPD, and the official Defendants may have
available to them other defenses unique to municipalities. See,
e.g., Tongson v. County of Maui, Civ. No. 05-00683 SOM/LEK, Order
Granting in Part and Denying in Part Defendants' Motions for
Summary Judgment (D. Haw. Dec. 15, 2006) (addressing several
arguments made by the County of Maui and its employees sued in

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 59 of 69
Case 1:04-cv-00562-KSC    Document 232-6    Filed 02/20/2007    Page 10 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 28 of 38

Unlike the other individual Defendants, Lum and Kapua
are sued in both their official and individual capacities and
therefore may raise the defense of qualified immunity with
respect to the individual capacity claims. See, e.g., Kentucky,
473 U.S. at 166-67 (noting that qualified immunity is available
to officials sued in their personal capacity, but not to
officials sued in their official capacity); Owen, 445 U.S. at 638
n.18 (noting that, where "government officers had been sued in
their individual capacities, . . . [qualified] immunity served to
insulate them from personal liability for damages"); Hallstrom,
991 F.2d at 1482 (applying qualified immunity to officials sued
in their individual capacity, but stating that the district court
erred in applying qualified immunity to a municipality and its
employees sued in their official capacities).  However, the
present motion was not brought by either Lum and Kapua, and their
joinders in the motion do not ask this court to apply qualified
immunity to them in their individual capacities.

Under Local Rule 7.9, parties may file substantive
joinders or joinders of simple agreement.  Local Rule 7.9.  A
"substantive joinder" is "a joinder based on a memorandum
supplementing the motion . . . joined in" and "must be filed and
served within two business days of the filing of the motion . . .

_____

their official capacities that they are not liable for First
Amendment violations brought under 42 U.S.C. § 1983); cf.
Kentucky, 473 U.S. at 167 n.13 ("punitive damages are not
available under § 1983 from a municipality"); Gillette v.
Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1993) (discussing the
requirements for municipality liability under § 1983).

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 60 of 69
Case 1:04-cv-00562-KSC    Document 232-6    Filed 02/20/2007    Page 11 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 29 of 38

joined in." Id. A "joinder of simple agreement" is a joinder in
which no supplemental memorandum is provided and "may be filed at
any time." See id. Because Lum and Kapua did not provide
supplemental memoranda with their joinders and did not file their
joinders within two days of the present motion, the court
construes their joinders as joinders of simple agreement. Their
joinders therefore were either (1) statements by Lum and Kapua
that they agree that the moving Defendants are entitled to
summary judgment for the reasons stated in their motion, or
(2) requests by Lum and Kapua that the court apply any rulings on
the present motion to them, if applicable. The court does not,
however, interpret their joinders as asking this court to go
beyond the present motion and to apply qualified immunity to them
in their individual capacities. Therefore, with respect to Lum
and Kapua, the court concludes only that they are not entitled to
the defense of qualified immunity in their official capacities.

     Any argument by Lum or Kapua that they, in their
individual capacities, are entitled to qualified immunity may
nevertheless be brought in a separate motion. See id. (noting
that Local Rule 7.9 "does not preclude the filing of an
independent motion that does not seek to be included in a pre-
existing hearing schedule"). Lum did just this, as he filed his
own motion for summary judgment on January 4, 2007, arguing that
he is qualifiedly immune. Kapua did not file his own summary

Case 1:04-cv-00562-KSC   Document 327-16   Filed 07/19/2007   Page 61 of 69
Case 1:04-cv-00562-KSC   Document 232-6   Filed 02/20/2007   Page 12 of 20

Case 1:04-cv-00562-SOM-BMK   Document 217   Filed 02/07/2007   Page 30 of 38

judgment motion, but may file a joinder of simple agreement in Lum's motion at any time.   Local Rule 7.9.

    C.   <u>Negligence Claims.</u>

Defendants argue that Abbatiello's claims for negligent supervision and retention (Count 5) and NIED (Count 7) are barred by Hawaii's workers' compensation law.   Motion at 25-27. Defendants assert that Haw. Rev. Stat. § 386-5 precludes negligence claims against employers, while section 386-8 precludes negligence claims against co-employees.   Motion at 25-27.   Abbatiello does not dispute the applicability of section 386-5, but contends that, because section 386-8 allows for claims alleging "wilful and wanton misconduct," her negligence claims are not barred.   Opp. at 28-31.   The court agrees with Defendants that Counts 5 and 7 are barred by Hawaii's workers' compensation law.

"Generally, the workers' compensation scheme serves to bar a civil action for physical and emotional damages resulting from work-related injuries and accidents."   <u>Nelson v. Univ. of Haw.</u>, 97 Haw. 376, 393, 38 P.3d 95, 112 (Haw. 2001).   The exclusive remedy provision of Hawaii's workers' compensation law precludes certain claims against employers:

> The rights and remedies herein granted to an employee . . . on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee . . . to recover damages from the employer, at common law or otherwise, on account of injury, except for sexual harassment or sexual assault and infliction

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 62 of 69
Case 1:04-cv-00562-KSC    Document 232-6    Filed 02/20/2007    Page 13 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 31 of 38

                    of emotional distress or invasion of privacy
                    related thereto, in which case a civil action
                    may also be brought.

Haw. Rev. Stat. § 386-5; Luzon v. Atlas Ins. Agency, Inc., 284 F.

Supp. 2d 1261, 1263 (D. Haw. 2003) ("Under Hawaii law, claims for

negligent infliction of emotional distress [against a plaintiff's

employer] are barred by Haw. Rev. Stat. § 386-5, unless the

claims relate to sexual harassment or assault."); Beaulieu v.

Northrop Grumman Corp., 161 F. Supp. 2d 1135, 1148 (D. Haw. 2000)

("Under Hawaii law, Worker's Compensation is the exclusive remedy

against an employer for employee injuries outside of those

related to sexual harassment or sexual assault . . . . The Court

finds that the claims of Negligent Supervision and Retention and

Negligent Infliction of Emotional Distress, are both 'work

injuries' arising from the conditions of Plaintiff's employment.

These claims, therefore are all barred by H.R.S. § 386-5.").

Because Abbatiello does not dispute that Haw. Rev. Stat. § 386-5

bars negligence claims against her employers--the County and

KPD--the court grants summary judgment in their favor on her

claims in Counts 5 and 7.

          Like the exclusivity provision in Haw. Rev. Stat.

§ 386-5, section 386-8 "extends immunity from suit to an injured

worker's co-employees." Iddings v. Mee-Lee, 82 Haw. 1, 6, 919

P.2d 263, 268 (Haw. 1996). Section 386-8 provides: "When a work

injury for which compensation is payable under this chapter has

been sustained under circumstances creating in some person other

                                      31

Case 1:04-cv-00562-KSC   Document 327-16   Filed 07/19/2007   Page 63 of 69
Case 1:04-cv-00562-KSC   Document 232-6   Filed 02/20/2007   Page 14 of 20

Case 1:04-cv-00562-SOM-BMK   Document 217   Filed 02/07/2007   Page 32 of 38

that the employer <u>or another employee of the employer acting in
the course of his or her employment a legal liability to pay
damages</u> on account thereof, the injured employee . . . may claim
compensation under this chapter and recover damages from such
third person." <u>Id.</u> (quoting Haw. Rev. Stat. § 386-8) (emphasis
in original).   Haw. Rev. Stat. § 386-8 also provides, however,
"Another employee of the same employer shall not be relieved of
his liability as a third party, if the personal injury is caused
by his wilful and wanton misconduct."

        In <u>Iddings</u>, 82 Haw. at 265, 919 P.2d at 263, the Hawaii
Supreme Court was asked to determine "the scope and requirements"
of Haw. Rev. Stat. § 386-8.   In that case, Barbara Iddings
("Iddings"), a nurse, filed a lawsuit against her co-employee,
Dennis Mee-Lee, M.D., ("Dr. Mee-Lee"), who was in charge of the
Human Services Unit ("the HSU") of Castle Medical Center, for
injuries she received at work while assisting in subduing a
violent patient in the HSU.   <u>Id.</u> at 4, 919 P.2d at 266.   Iddings
alleged that she "was thrown to the floor, became wedged between
pieces of furniture, and suffered injuries to her head, neck,
back, and knee."   <u>Id.</u>   In her complaint, Iddings claimed that,
although Dr. Mee-Lee had "been advised that excessive furniture
within [the HSU] posed a safety hazard, . . . [Dr. Mee-Lee] took
no steps to remove the furniture."   <u>Id.</u> at 4-5, 919 P.2d at
266-67.   Iddings therefore brought claims for "negligence and/or
willful and wanton misconduct on the part of [Dr. Mee-Lee]."   <u>Id.</u>

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 64 of 69
Case 1:04-cv-00562-KSC    Document 232-6    Filed 02/20/2007    Page 15 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 33 of 38

at 5, 919 P.2d at 267.    Iddings subsequently stipulated to
dismiss her negligence claims, and the trial court entered
summary judgment against Iddings on her claims for wilful and
wanton misconduct.    Id.    Iddings appealed.

On appeal, the Hawaii Supreme Court concluded that "the
plain meaning of the term 'wilful and wanton misconduct'
encompasses both <u>reckless conduct</u> that lacks a specific intent to
cause injury and <u>intentional conduct</u> motivated by a specific
intent to cause injury."    <u>Id.</u> at 7, 919 P.2d at 269 (emphases
added).    The court also held that allowing suits between co-
employees based on intentional or reckless conduct "does not
impair or contravene the workers' compensation scheme's
elimination of suits between co-employees based on employees'
<u>negligence</u> in the workplace."    <u>Id.</u> at 7-8, 919 P.2d at 269-70
(emphasis in original).

Although the <u>Iddings</u> court held in clear terms that
Haw. Rev. Stat. § 386-8 precludes negligence claims against
co-employees and allows only claims based on intentional or
reckless conduct, Abbatiello cites to <u>Marshall v. University of
Hawaii</u>, 9 Haw. App. 21, 821 P.2d 937 (Haw. Ct. App. 1991), as
authority for her position that negligence claims against co-
employees are not barred.    Motion at 28.    The court is not
persuaded.

In <u>Marshall</u>, 9 Haw. App. at 24, 821 P.2d at 941,
Michael D. Marshall ("Marshall"), a former assistant professor at

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 65 of 69
Case 1:04-cv-00562-KSC    Document 232-6    Filed 02/20/2007    Page 16 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 34 of 38

the University of Hawaii, filed a lawsuit against the university, the chancellor, the dean of student services, and the dean of the college of arts and sciences.  Marshall had applied for tenure and promotion, after which he was investigated for sexual harassment, causing his application process to be delayed.  Id. at 25, 34, 821 P.2d at 941, 945.  Marshall brought suit against the defendants for, among other things, NIED.  Id. at 28, 34, 821 P.2d at 942, 945.  The trial court entered summary judgment in favor of the defendants, and Marshall appealed.

On appeal, the Intermediate Court of Appeals of Hawaii affirmed summary judgment as to the university, stating that Haw. Rev. Stat. § 386-5 barred his NIED claim against his employer. Id. at 35, 821 P.2d at 945-46.  Regarding Marshall's NIED claims against his co-employees, the court noted that Haw. Rev. Stat. § 386-8 "clearly allows an employee to sue a fellow employee for damages resulting from an injury caused by the fellow employee's willful and wanton misconduct."  Because Marshall's complaint alleged only that his co-employees negligently inflicted emotional distress on him, the court held, "Without more, the allegation fails to state a cause of action."  Id. at 34-36, 821 P.2d at 945-47.  However, because Marshall had submitted an affidavit to the trial court alleging that the "investigation was maliciously conjured up," and because his allegation of malice in the affidavit alleged wilful conduct, the court stated that "Marshall should be allowed to amend his pleading to allege a

34

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 66 of 69
Case 1:04-cv-00562-KSC    Document 232-6    Filed 02/20/2007    Page 17 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 35 of 38

proper cause of action for willful and wanton misconduct." <u>Id.</u> at 36, 821 P.2d at 946.  In other words, contrary to Abbatiello's assertion, the court held that Marshall's negligence claim was barred, but stated that he could nevertheless raise claims based on wilful and wanton misconduct.  <u>Marshall</u>, like <u>Iddings</u>, precludes negligence claims against co-employees under Haw. Rev. Stat. § 386-8.

In Count 5, Abbatiello alleges that Defendants "were negligent in their supervision and retention of Sergeant Kapua." FAC ¶ 121.  Nowhere in Count 5 does Abbatiello allege that Defendants wilfully or wantonly (or intentionally or recklessly) supervised and retained Kapua, and Abbatiello admits in her opposition memorandum that Count 5 is a "negligence cause[] of action."  Opp. at 30.  Further, although Count 5 "realleges and incorporates" the preceding paragraphs in the FAC, which include an allegation that Defendants' <u>retaliation</u> was "willful, wanton, malicious, and in such callous and reckless disregard of civil obligations," Abbatiello fails to allege anywhere in the FAC that Defendants wilfully or wantonly supervised or retained Kapua. <u>See</u> FAC ¶ 102 (regarding Abbatiello's claim for retaliation in Count 1).  Because Abbatiello's claim in Count 5 is based on negligent conduct and is therefore barred under Haw. Rev. Stat. § 386-6, the court grants summary judgment in favor of the individual Defendants on Count 5.

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 67 of 69
Case 1:04-cv-00562-KSC    Document 232-6    Filed 02/20/2007    Page 18 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 36 of 38

Regarding Count 7 for NIED, Abbatiello alleges in the FAC, "The actions of Defendants, as set forth above, were negligent, and foreseeably resulted in physical harm to [Abbatiello], and was a legal cause of injury to [her]." FAC ¶ 130. Although Abbatiello's NIED claim is clearly based on negligent conduct, she nevertheless argues that the following statement in Count 7 establishes that her NIED claim is actually based on wilful or wanton conduct: "The actions of Defendants were wanton, malicious, and in such callous and reckless disregard of civil obligations, as to entitle [Abbatiello] to recover punitive damages." Opp. at 31. The court is not persuaded that Abbatiello's request for punitive damages somehow converts a claim expressly based on negligent conduct into one based on wilful or wanton (or intentional or reckless) conduct. See also Opp. at 30 ("Counts V and VII are 'negligence' causes of action"). Abbatiello's claim for NIED is "nothing more than a negligence claim" and is therefore barred by Haw. Rev. Stat. § 386-8. See Doe Parents No. 1 v. State Dept. of Educ., 100 Haw. 34, 69, 58 P.3d 545, 580 (Haw. 2002) ("an NIED claim is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed 'utilizing ordinary negligence principles'"). Accordingly, the court grants summary judgment in favor of the individual Defendants on Count 7.

At the hearing on the motion, Abbatiello asked that she be allowed to amend the FAC. Abbatiello provided no reason she

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 68 of 69
Case 1:04-cv-00562-KSC    Document 232-6    Filed 02/20/2007    Page 19 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 37 of 38

could not have sought leave to amend earlier.  With trial
scheduled in just a few months, this court declines to allow a
further amendment of the complaint in a case commenced in 2004.

IV.    CONCLUSION.

        In light of the foregoing, the court grants summary
judgment on Abbatiello's claims for negligent supervision and
retention (Count 5) and NIED (Count 7), but denies summary
judgment on all other claims.  This order leaves for further
adjudication:   (1) Count 1 for violation of Abbatiello's rights
to free speech, due process, and equal protection under the
United States Constitution and 42 U.S.C. § 1983; (2) Count 3 for
violation of the Hawaii Whistleblowers' Protection Act;
(3) Count 4 for wrongful termination; (4) Count 6 for intentional
infliction of emotional distress; and (5) Count 8 for violation
of Abbatiello's rights to free speech, due process, and equal
protection under the Hawaii constitution.[7]

        In the event any party wishes to file a further
dispositive motion, that party must move the trial judge to amend
the scheduling order, as the deadline for filing dispositive
motions has passed.  Additionally, as stated in the July 19,
2006, Order Regarding Trial Date, the parties are reminded that
the trial date, currently May 8, 2007, may not be continued
without the express consent of the trial judge.

---

        [7] Abbatiello is urged to consider the issue of whether
claims may be brought directly under the state constitution.  If
the state constitutional claims remain in issue, this court may
be compelled to certify that issue to the Hawaii Supreme Court.

Case 1:04-cv-00562-KSC    Document 327-16    Filed 07/19/2007    Page 69 of 69
Case 1:04-cv-00562-KSC    Document 232-6    Filed 02/20/2007    Page 20 of 20

Case 1:04-cv-00562-SOM-BMK    Document 217    Filed 02/07/2007    Page 38 of 38

IT IS SO ORDERED.

DATED:   Honolulu, Hawaii, February 7, 2007.



_Susan Oki Mollway_
Susan Oki Mollway
United States District Judge

__Abbatiello v. County of Kauai, et al.__, Civ. No. 04-00562 SOM/BMK; ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

38