# EXHIBIT "C"

# PART 1 OF 2

**EXHIBIT 14
(PART 2 OF 3)**

1

```
                    IN THE UNITED STATES DISTRICT COURT

                         FOR THE DISTRICT OF HAWAII

   DARLA ABBATIELLO,               )   CV 04-00562 SOM-BMK
                                   )
                 Plaintiff,        )   Honolulu, Hawaii
         vs.                       )   February 6, 2007
                                   )   9:00 A.M.
   COUNTY OF KAUAI, et al.,        )
                                   )   Defendant's Motion for
                 Defendants.       )   Summary Judgment or, in the
                                   )   Alternative, Dismissal;
                                   )   Joinders
   _____)


                         TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE SUSAN OKI MOLLWAY
                       UNITED STATES DISTRICT JUDGE

   APPEARANCES:

   For the Plaintiff:              MARGERY S. BRONSTER
                                   JOHN T. HOSHIBATA
                                   Bronster Crabtree & Hoshibata
                                   2300 Pauahi Twr.
                                   1001 Bishop St.
                                   Honolulu, HI 96813

   For the Defendants              DAVID J. MINKIN
   County of Kauai, Kauai          McCorriston Miller Mukai MacKinnon
   Police Department,              500 Ala Moana Blvd.
   Wilfred Ihu, Gordon Isoda,      Honolulu, HI 96813
   and Dean Pigao:

   For the Defendant               MICHAEL J. McGUIGAN
   Irvil Kapua:                    Reinwald O'Connor & Playdon LLP
                                   Pac. Guardian Ctr., Makai Twr.
                                   733 Bishop St., 24th Fl.
                                   Honolulu, HI 96813

   For the Defendant               CARY T. TANAKA
   K. C. Lum:                      Fort Street Twr.
                                   745 Fort St., Ste. 510
                                   Honolulu, HI 96813
```

EXHIBIT " C "

```
                                                                    2

 1   APPEARANCES (Continued):

 2   Official Court Reporter:   Debra Kekuna Chun, RPR, CRR
                                United States District Court
 3                              300 Ala Moana Blvd. Ste. C285
                                Honolulu, HI 96850
 4                              (808) 534-0667

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
         Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

3

```
 1   TUESDAY, FEBRUARY 6, 2007              9:06 O'CLOCK A.M.
 2           THE CLERK:  Civil 04-562 SOM-BMK, Darla Abbatiello
 3   versus County of Kaua'i, et al.  This case has been called for
 4   Defendant's Motion for Summary Judgment on or, in the
 5   Alternative, Dismissal of Counts 1 and 2 of the First Amended
 6   Complaint, and Dismissal of Counts 5 and 7 of the First Amended
 7   Complaint, and Joinders in that motion.
 8           Counsel, please make your appearances for the
 9   record.
10           MS. BRONSTER:  Good morning, Your Honor.  Margery
11   Bronster and John Hoshibata on behalf of Darla Abbatiello.
12           MR. MINKIN:  Good morning, Your Honor.  David Minkin
13   on behalf of the County of Kaua'i, the Kaua'i Police
14   Department, Wilfred Ihu, Gordon Isoda, and Dean Pigao.
15           MR. McGUIGAN:  Good morning, Your Honor.  Michael
16   McGuigan on behalf of defendant Kapua.
17           MR. TANAKA:  Good morning, Your Honor.  Cary Tanaka
18   on behalf of defendant K.C. Lum.
19           THE COURT:  Okay.  Thank you very much.
20           Did everybody get the inclination that we posted
21   yesterday?
22           MR. MINKIN:  Yes.
23           THE COURT:  Okay.  Now, as you can tell, this is kind
24   of a detailed inclination.  And I guess what I would like to do
25   is start with getting answers to the questions, and then we'll
```

4

1  talk about how the ruling should go.
2      So let me check first with plaintiff's counsel on the
3  questions I ask, the first one being whether each claim was
4  intended to be asserted against all the named defendants or
5  not. It's not entirely clear.
6      MS. BRONSTER: Your Honor, let me just say that we
7  had hoped to have had a stipulation that would have clarified
8  that. And, unfortunately, there were some delays, but let me
9  go through it for you in the interim.
10     The -- all of the claims, with the exception of claim
11 4, are made against all parties, and claim 4, which is the
12 wrongful termination, is not made against Kapua.
13     THE COURT: But it is against everybody else.
14     MS. BRONSTER: Correct. Now, with respect to all of
15 the counts, all of the counts are made against K.P.D. and the
16 county, and all of the counts, with the exception of the one I
17 just mentioned, are made against Kapua and Lum in both their
18 official and individual capacities.
19     THE COURT: Okay.
20     MS. BRONSTER: With respect to the rest of the named
21 individuals -- that is, Isoda, Ihu, and Pigao -- they are made
22 only in their official capacities.
23     THE COURT: Okay.
24     MS. BRONSTER: And with respect to those individuals
25 there had been an agreement, which we were working on getting

Case 1:04-cv-00562-KSC   Document 327-17   Filed 07/19/2007   Page 6 of 18
Case 1:04-cv-00562-KSC   Document 232-7   Filed 02/20/2007   Page 6 of 18

5

1  reduced to writing, which was that they -- because they're in
2  their official capacities only at this point that the claims
3  against them are subsumed in the claims against K.P.D. and the
4  county. We had reserved our right by agreement to bring them
5  back in individually if discovery showed that that was
6  appropriate, but for the meantime we have agreed that they are
7  only in their official capacity and really are only nominal
8  defendants at this point because they are -- all of the claims
9  against them are subsumed in the county claims.
10         THE COURT: Okay. And then her due process and equal
11 protection claims in counts 1 and 2, I'd like to talk about
12 those.
13         Now, in the defense motions they actually didn't talk
14 about due process and equal protection in terms of
15 constitutional claims. They only talked about First Amendment
16 claims. And I'm wondering whether the understanding of the
17 parties is that to the extent due process and equal protection
18 are mentioned, that those fall under the rubric of the First
19 Amendment claim and are part and parcel of that, and, if not,
20 how are they different?
21         MS. BRONSTER: Your Honor, I believe that throughout
22 the complaint, and as the discovery has shown, there are a
23 whole panoply of due process and equal protection claims, which
24 for whatever reasons the defendants have chosen to ignore. But
25 I believe that we have asserted and made clear throughout this

6

1   case that Darla Abbatiello's demotion, her removal from being a
2   field training officer, her being kept from working overtime at
3   the cellblock, the order to do illegal strip searches, the
4   having to endure the threats and intimidation, and forcing her
5   to avoid Kapua through a circuitous route around the office
6   were all deprivations -- deprivation claims under due process
7   and equal protection Fourteenth Amendment. And we believe that
8   those are freestanding whether or not the First Amendment
9   claims survive.
10          THE COURT: Okay. And then question 3 I asked for
11  clarification on claims brought under section 1985. So, first,
12  is count 1 under -- does count 1 include a section 1985 claim
13  or not?
14          MS. BRONSTER: Your Honor, we did articulate a 1985
15  claim in count 1, but we are not pursuing that at this time.
16          THE COURT: So for purposes of what we really have to
17  deal with, no.
18          MS. BRONSTER: Correct.
19          THE COURT: What about count 2? And, if so, what is
20  the subsection and clause?
21          MS. BRONSTER: The subsection and clause that we were
22  referring to when we originally drafted the complaint was
23  subsection (3), the initial clause. However, again we are not
24  pursuing that at this point.
25          THE COURT: Okay. So whatever may have been pled

Case 1:04-cv-00562-KSC    Document 327-17    Filed 07/19/2007    Page 8 of 18
Case 1:04-cv-00562-KSC    Document 232-7    Filed 02/20/2007    Page 8 of 18

7

```
 1   under 1985, in essence, you're withdrawing.
 2          MS. BRONSTER:  Yes, Your Honor.
 3          THE COURT:  Okay.  And then -- so my question 4,
 4   which went to 1985, is now mooted out.
 5          MS. BRONSTER:  Yes, Your Honor.
 6          THE COURT:  Okay.  Then, if we look at question 5, I
 7   asked for the bases of the First Amendment claims.  Maybe you
 8   can help me understand if it's more than the reports concerning
 9   Kapua's alleged involvement with bribery and the allegedly
10   improper order to photograph naked people who had been
11   arrested.
12          MS. BRONSTER:  Yes, Your Honor, it is more.  Once
13   again I think that the defendants have maybe by shorthand --
14   maybe that's how they're trying to deal with this, or maybe
15   they purposely are avoiding it.  But there are a number of
16   reports that Darla Abbatiello has made, including Kapua taking
17   bribes, including the death threat against her, including a
18   report of her gun having been stolen, and including the strip
19   search.
20          THE COURT:  Okay.  So adding the death threat
21   notation in her personnel file and a report of a stolen gun.
22          MS. BRONSTER:  Yes.  And I'm sorry.  The death threat
23   was in the dictionary.
24          THE COURT:  In the dictionary.  So those two are
25   added to the two that I've listed.
```

Case 1:04-cv-00562-KSC    Document 327-17    Filed 07/19/2007    Page 9 of 18
Case 1:04-cv-00562-KSC    Document 232-7    Filed 02/20/2007    Page 9 of 18

8

1      MS. BRONSTER: Yes, Your Honor.
2      THE COURT: And then, if you're claiming an adverse
3  employment action and basing your First Amendment deprivation
4  claim on the idea that an adverse employment action was taken
5  against Miss Abbatiello, what specific actions do you say were
6  adverse employment actions?
7      MS. BRONSTER: Your Honor, the adverse employment
8  actions include the fact that she was demoted. She was removed
9  from vice, which resulted in lower pay and a different work
10 environment. That her FTO status was withdrawn, also involving
11 a loss of pay. That she lost her ability to work in the
12 cellblock at overtime, also including a loss of pay. That her
13 other job -- adverse job actions, including the fact that,
14 although she was the one who obtained a TRO against Kapua, she
15 was, in fact, the one who was ordered to take the circuitous
16 route to avoid Kapua. The fact that she was forced to continue
17 to work in the environ of Kapua and that there was no action
18 taken with respect to Kapua. The order that she was to engage
19 in the illegal strip search.
20     And, unfortunately, Your Honor, we have recently
21 learned of ongoing retaliation against her and adverse
22 employment actions that I believe we just learned within the
23 last week and have not yet brought before the court. But just
24 to tell you what it is: She has also been prevented from being
25 an officer in charge, although, her rank would have allowed

9

1   her -- warranted it.
2           THE COURT: Okay.
3           MS. BRONSTER: So by listing this I am not intending
4   to exclude the ongoing actions of K.P.D. I didn't think that
5   we would be in a situation where we would constantly be finding
6   out new adverse actions, but, unfortunately, that's where we
7   are.
8           THE COURT: Okay. I had -- actually, I didn't list
9   these as questions, but I had a couple more.
10          Just to clarify on the 1985 issue, are you
11  withdrawing all of count 2, or are you saying in withdrawing
12  the 1985 allegations that something in count 2 still remains?
13          MS. BRONSTER: Your Honor --
14          THE COURT: It looks like to me like it's all on
15  1985.
16          MS. BRONSTER: Yes, Your Honor. To the extent that
17  there are allegations of willful, wanton, malicious misconduct
18  with respect to Darla, obviously by withdrawing count 2 we're
19  not intending to withdraw that to the extent that they're
20  included in other places.
21          THE COURT: Right. You have that in other counts.
22          MS. BRONSTER: That's right.
23          THE COURT: There's no substantive claim anymore.
24          MS. BRONSTER: That's correct.
25          THE COURT: Then I had another question, and this is

10

1  something that's come up in some other cases. Okay. Now,
2  there are some state constitutional claims also. And in other
3  cases I've raised this question. I don't think it was with any
4  of the attorneys here; although, maybe -- I don't think any of
5  you were involved because this has happened more than once.
6         It's to me a question that I don't have clear state
7  appellate law on, and the question is this: Can you bring a
8  state constitutional claim directly? In other words, you know,
9  Jane Smith sues under the state constitution for violation of
10 the First Amendment of the state constitution.
11        And I ask that question because, of course, on the
12 federal side we have a statutory vehicle, section 1983, through
13 which you can bring claims that are based on violations of
14 federal constitutional rights. We don't have an equivalent to
15 section 1983 that goes to bringing claims of state
16 constitutional violations. Can you or can you not bring a
17 claim directly under the state constitution?
18        Now, as I say, I don't know that I can tell from
19 state appellate cases, and so in the past, when I've raised
20 this question, I have so concerned the parties about the
21 possibility that I might certify this question to the state
22 Supreme Court, which, of course, would put the federal case on
23 hold while we awaited a decision by the state Supreme Court,
24 that it forced plaintiff's counsel to consider whether they
25 thought there was really something to be gained by pursuing the

11

1  state constitutional claim. And, if not, if whatever they
2  might get under the state constitution as a remedy was totally
3  subsumed by remedies they would get if they prevailed on their
4  federal constitutional claims, they withdrew their state
5  constitutional claims. And in this regard, you know, they
6  didn't think that they would have an easier time, for example,
7  proving a state constitutional violation than a federal one; so
8  they didn't see an advantage.
9            So I throw that out. Although it may not be an issue
10 that I have to address on what's in front of me today to
11 decide, I throw that out for your consideration because, if you
12 persist in the state constitutional claim, it may well be that
13 I will be compelled to certify this question, which may not
14 coincide with your plans for the progress of this case.
15           So I throw that out to you to consider, but it's
16 likely to have to be resolved at some point before this case
17 goes to trial.
18           MS. BRONSTER: I understand, Your Honor. And having
19 grappled with this issue, not in the employment area but in
20 other areas in my not too distant past --
21           THE COURT: Yes. I can imagine that you might have
22 seen this area before.
23           MS. BRONSTER: -- I would just point out two things
24 and would request additional time and possibly the ability to
25 brief this issue.

12

```
 1            THE COURT:  Well, you can wait till they bring a
 2   motion or something.
 3            MS. BRONSTER:  I would point out, however, that we do
 4   have a whistleblower's action under state law, and, when you
 5   bring a whistleblower action, you are bringing a whistleblower
 6   action -- the statute is pretty clear that you have a right to
 7   object to and make claims for any violation of the rules or the
 8   law of the State of Hawai'i, and I believe that that would give
 9   you the hook even if there is -- whether or not there is a
10   direct cause of action for a state -- a violation of the state
11   constitution.  I think that the Whistleblower Act itself gives
12   you that, and I think that that --
13            THE COURT:  I don't know it's a hook, but it might
14   give you all the remedies that you could get otherwise claiming
15   the same factual issues.  So, if that's the case, then your
16   state -- direct state constitutional claims become superfluous,
17   and you might consider whether you just get rid of them.  But
18   it's not before me today, but I raise it because it's
19   definitely something that has to be resolved before we can all
20   go forward.
21            MS. BRONSTER:  And I do know that there's been a lot
22   of briefing and some state constitutional jurisprudence on the
23   area of whether or not both Hawaiian rights claims can be
24   brought directly and environmental claims, and we would need to
25   look at the employment and civil rights actions.
```

13

1      THE COURT: Okay. Then -- okay. Well, thank you.
2  I'm going to then turn to the substance of my
3  inclination since I am grateful to have answers to the
4  questions I asked.
5      Okay. So as you can tell from the pretty lengthy
6  inclination that I issued, I'm inclined to think that the First
7  Amendment claim still stands with questions of fact as to
8  whether or not Miss Abbatiello made the statements that she
9  claims are protected by the First Amendment in her capacity as
10 a county employee or in her capacity as a citizen. I'm not so
11 certain that the record I have now allows me to make the
12 conclusion that the defendants urge upon me, which is that she
13 was making statements as part of her job duties. I mean it may
14 be that they can prove that at trial, but I'm concerned that I
15 may not have a question-free basis at the moment to rule as a
16 matter of summary judgment on that. I would suggest that we
17 talk about that.
18     MR. MINKIN: Yes, Your Honor. What's curious is that
19 Miss Abbatiello in a very self-serving and conclusory
20 declaration -- affidavit completely ignores her standards of
21 conduct as a police officer. She wants you to believe in an
22 attempt to manufacture evidence that somehow she's doing this
23 as a citizen. And what's replete here is that she takes facts
24 and manages to mangle them up.
25     For example, they throw in the fact that acting

14

1   assistant chief Dean Pigao made a statement to her that you
2   don't have to report it. Well, that allegation is months after
3   it's reported and has no bearing whatsoever. She's already
4   reported it upper chain of command.
5           They also throw in the fact she filed a TRO. The TRO
6   was filed approximately nine and a half months after the
7   initial allegations against Kapua surfaced and only in
8   conjunction with the filing of the original complaint in
9   federal court. There was nothing done whatsoever to bring
10  these issues to public light until the filing of this complaint
11  against the department and the individual officers originally
12  in their individual capacity, all of them, and their official
13  capacity.
14          She has attempted to take and say that she's doing
15  this out of concern about public corruption. There is nothing
16  whatsoever in any of her complaints, written or oral, that
17  that's what she's doing. She's worried, quote, unquote, about
18  what's going to happen to her in the workplace, and now in an
19  attempt to avoid her oath as a police officer to enforce the
20  laws as dictated by the standards of conduct she's now doing
21  self-serving, conclusory statements in an attempt to
22  manufacture and generate for their purposes a genuine issue of
23  material fact. And this court should not countenance that type
24  of evidence.
25          THE COURT: What about the report she made to SHOPO

15

1   and to the F.B.I.?

2        MR. MINKIN: Well, that's really curious because we
3   were debating whether we could do something to defeat that.
4   And there were reports made to the F.B.I. My understanding is
5   that the department made the referral well before Miss
6   Abbatiello made the referral because they had issues of police
7   corruption. There are police reports that have not been
8   provided in discovery. I've been in contact with the F.B.I.
9   The matter is still under investigation. They have spoken to
10  numerous people. They will not tell us who first reported the
11  matter, but, based upon a chronology of dates, that accusation
12  or that supposition by the plaintiff, I believe, is entirely
13  wrong and self-serving. She doesn't show you how she reported
14  it. Where's the letter? Where's the phone call? When was
15  that done? It's a conclusory effort to make something out of
16  nothing.

17        The SHOPO allegation. The SHOPO -- she spoke to
18  SHOPO about the transfer from vice to parole in March of '04, I
19  believe it was. At that point in time she met with acting
20  chief Ihu and somebody from SHOPO. They told her, "Yes, you
21  can do this. You're not being demoted. It is a -- you're
22  going back to your prior position," because her position in
23  vice was a temporary reallocation upward. She wants to
24  characterize it as a demotion. It is not a demotion. She was
25  up in vice on a six-month temporary reallocation up that got

16

1    extended a couple of times.  And, when she went to them in
2    February and March -- not in December when the allegations
3    about Kapua first come forward, not in January when she reports
4    an upper chain of command -- only in February and March she
5    meets with SHOPO, and that's completely -- based upon the
6    collective bargaining agreement, that is something that is
7    employer-employee related.  If SHOPO felt that there was a
8    problem with that transfer or that -- going back to the patrol
9    slot, SHOPO under the collective bargaining agreement would
10   have been in there challenging it just like they did on the FTO
11   situation.
12              THE COURT:  Anybody else?
13              No?  Okay.  You want to be heard?
14              MS. BRONSTER:  Your Honor, I need to object to the
15   reference to the county first reporting it to the F.B.I.  First
16   of all, I think it's not relevant to this matter because, if
17   Darla was exercising her First Amendment rights and making the
18   complaint, it doesn't matter who else made it or when they made
19   it.  But this is the first time that I've even heard this, and
20   I believe that it's nowhere in anything in the record.
21              THE COURT:  Well, because he says he's not been able
22   really to get the information.
23              MR. MINKIN:  They deposed Detective Wes Kaui, a
24   30-year veteran, who indicated he was assigned to do the
25   criminal investigation.  He indicated that, when he did that,

Case 1:04-cv-00562-KSC   Document 232-7   Filed 02/20/2007   Page 18 of 18

17

1  he also contacted outside agencies, the F.B.I., and the state
2  Attorney General's Office. That information is there. The
3  specific dates, he didn't talk about that; that wasn't gone
4  into.
5       So we were confronted with manufacturing of evidence
6  that, I believe, is entirely conclusory and self-serving, and I
7  will go before -- I'll submit in camera the dates, and, if they
8  have documents, then I'll sit down. If they have no documents
9  that show that she went to the F.B.I. before the county, that
10 is completely specious, that argument.
11      THE COURT: Okay. Well, don't give me anything in
12 camera yet.
13      Okay. Go ahead.
14      MS. BRONSTER: And the other thing is that this whole
15 argument about this self-serving affidavit, well, if it wasn't
16 self-serving, obviously, as Judge King has often said, you
17 wouldn't be submitting it. I mean the fact is that she was
18 putting in an affidavit that set forth her claims in this case.
19 She did it, and I think the fact that it helps her case is what
20 you would expect.
21      To the extent that the county does not have any
22 evidence to refute her, the fact that they have not bothered to
23 take her deposition I think is an indication that they know
24 that what she will say will be consistent with the affidavit
25 that has been submitted.