# EXHIBIT "C"

# PART 2 OF 2

**EXHIBIT 14**
**(PART 3 OF 3)**

Case 1:04-cv-00562-KSC   Document 327-18   Filed 07/19/2007   Page 2 of 21
Case 1:04-cv-00562-KSC   Document 232-8   Filed 02/20/2007   Page 2 of 18

18

1          THE COURT:  I already know Mr. Minkin does not have

2     that explanation that you've just given.  This is totally

3     different.  It's okay.

4          MR. MINKIN:  Thank you.

5          THE COURT:  Okay.  Well, I would like to move to some

6     of the other issues because we had actually quite a few here.

7          The defendants are in the alternative asking for

8     summary judgment based on qualified immunity.  But, as I

9     understand it, both expressly stated in the Second Amended

10    Complaint as well as clarified by plaintiff's counsel today,

11    except for Mr. Lum and Mr. Kapua everybody else is sued in

12    their official capacities.  And, obviously, the county can only

13    be sued and the police department are only in their official

14    capacities; so it seems to me qualified immunity just doesn't

15    apply to official-capacity entities or people.

16          Now, they may well have other issues, and I was

17    conscious that those other issues weren't raised.  But they're

18    not -- they're not immunity issues, but they're certainly

19    defenses that official-capacity defendants and municipalities

20    have under 1983.  And those were not raised at all and maybe

21    they should have been, or maybe the facts don't support those

22    defenses.  I don't, you know, you folks know more about what's

23    in the case or not, but those were not before me.  But in terms

24    of qualified immunity I just can't see how it can apply.

25          MR. MINKIN:  Well, part of my problem was that we

19

1    have -- as Miss Bronster indicated, we've been going back and

2    forth on a stipulation. And we -- back in January, I believe,

3    of '06 they were dismissed in their official capacity. A short

4    time -- all four. That's Lum, Ihu, Isoda, and Pigao. And

5    literally within a matter of months Lum was back in in his

6    individual capacity, notwithstanding his dismissal back in

7    January of '06.

8         The depositions of Thu, Isoda, Pigao were taken back

9    in October of '06. We filed this because they have the option,

10   based on our discussions, to bring them back in their

11   individual capacity. If they don't have that information --

12   basically, we were trying to stop them from bringing them back

13   in in their individual capacity based upon the discovery thus

14   far. They haven't asked for supplemental depositions of these

15   folks. They took them on Kaua'i on a Friday and Saturday in

16   October. I believe that there is no individual liability at

17   least for my three clients, Ihu, Isoda, and Pigao, and we were

18   just attempting to get them to, basically, step up to the plate

19   and say they haven't seen anything to date, and, if they did,

20   they would then be subject to qualified immunity.

21        THE COURT: Okay. But since I can only deal with the

22   claims I have in front of me and I don't have individual

23   capacity claims, then I just don't think qualified immunity

24   applies. Now, as I say, quite apart from the things you're

25   talking to me about, municipalities certainly have defenses. I

20

1    don't know if the facts support the defense, but, you know,

2    they're kind of defenses that leap out, and they weren't even

3    mentioned here.  But maybe the facts don't support them.  I

4    don't know.

5         Now, I know that I have coming up on my calendar

6    motions by -- a motion by Lum joined in by Kapua, and that goes

7    to both the individual and official-capacity issues, so

8    qualified immunity, I'm sure, is going to be back on my plate

9    shortly.  I had a couple of questions about that.

10        First of all, Kapua joined.  And, you know, we have

11   different kinds of joinders that our local rules talk about.

12   If you do a joinder of simple agreement, which is what Kapua

13   did, then I suppose there might be some ambiguity.  You're

14   either saying, as Kapua, "Okay.  I agree with Lum that Lum

15   should get summary judgment."  That's a joinder in Lum's

16   motion.  It may be that Kapua meant to say, "I agree that Lum

17   should get summary judgment, and for the same reasons, which

18   also apply to me, I also should get summary judgment."  If

19   that's what's meant, that should be clarified in the joinder.

20        It's beyond the time that Kapua can file a

21   substantive joinder, which would be an argument that "I, like

22   Lum, should get summary judgment, but I have reasons to get the

23   same result as Lum, and those reasons are unique to me, and

24   here I'm briefing them."  It's too close to the hearing on

25   Lum's motion for Kapua to be doing that.

Case 1:04-cv-00562-KSC   Document 327-18   Filed 07/19/2007   Page 5 of 21
Case 1:04-cv-00562-KSC   Document 232-8   Filed 02/20/2007   Page 5 of 18

21

1        But I need to get some clarification as to the nature

2   of the joinder.  I only say that to --

3        (Court and law clerk conferring.)

4        THE COURT:  He hasn't joined.  Kapua hasn't even

5   joined yet.  Okay.  If Kapua is going to join.  Thank you.

6        We're anticipating a joinder because the rules do say

7   that you can file a joinder of simple agreement at any time.

8   And the reason it does that is the assumption that the person

9   opposing the underlying motion is not put to any more work by

10  the filing of a simple joinder because it's based on the same

11  thing.  Okay.  But, if Kapua files a joinder, I need to

12  understand whether it's joining in Lum's request that Lum get

13  summary judgment or whether it's joining in Lum's request by

14  saying, "For everything that Lum is saying, for all those

15  reasons, they apply to me, too, and I also should get summary

16  judgment."  And you can do that, but you cannot add anything

17  new because the whole idea is you cannot force your opponent on

18  short notice to have to address brand new issues.

19       MS. BRONSTER:  And, Your Honor, I have a related

20  issue to that on the Lum motion, if I may raise it.

21       THE COURT:  Okay.

22       MS. BRONSTER:  We did take the deposition of Kapua

23  and Lum in October, and both of them pled the Fifth.  We've

24  been informed this morning that K.C. Lum has now been given the

25  go ahead to waive his Fifth Amendment privilege with regard to

Case 1:04-cv-00562-KSC   Document 327-18   Filed 07/19/2007   Page 6 of 21
Case 1:04-cv-00562-KSC   Document 232-8   Filed 02/20/2007   Page 6 of 18

22

1   most, if not all, questions which may be asked of him in this

2   case, which would dramatically change the landscape with

3   respect to both his motion and --

4          THE COURT:  Okay.  Well, it may be at the end of this

5   hearing that we have to talk about scheduling.  It occurs to me

6   that to the extent -- and I don't know that this is a

7   legitimate argument, but to the extent that Lum might feel that

8   Lum might want to put in a supplemental brief to address the

9   additional statements that Miss Bronster identified as

10  supporting the First Amendment claim, you know, that they might

11  want to supplement their motion, too.  I don't know.  But it

12  may be that everything has to be moved off.  I don't know that.

13         Now, we have lots of problems with the scheduling

14  here.  This is a case pretty old; so I said you can't change

15  this trial date without coming directly to me.

16         Just to tell you folks, I do these orders all the

17  time when I think a case is getting old and I don't want it to

18  get too old.  For one thing, every time a case is more than

19  three years old, you know, we have to put in a little report

20  explaining how come it's taking the judge so long.  And Judge

21  Kurren makes fun of me and says, "Why do you care?  Nothing's

22  going to happen to you.  You just always want to get an A in

23  every class."  He kind of teases me about it.  But, you know,

24  we have these reports and the judge doesn't look bad if the

25  case is too old; so I do these orders when I see that a case is

Case 1:04-cv-00562-KSC    Document 232-8    Filed 02/20/2007    Page 7 of 18

23

1    kind of getting old.

2            And I think the attorneys will see that they can't

3    change the trial date without coming to me. Well, in one of my

4    cases they changed the trial date anyway. And then they did it

5    again, and then they did it again. So the third time I issued

6    one of these orders saying, "You can't change the trial date

7    without the trial judge's permission." I said, "And if you do

8    it a third or fourth time, you're going to be sanctioned,"

9    because they just ignore these orders. So anyway don't change

10   the trial date without coming to me. And I understand that

11   some of the things we're talking about today, you know, maybe

12   we have to talk about whether that should be or not, and we'll

13   figure that out as we go.

14           Okay. But, anyway, if nobody has anything more to

15   say about qualified immunity, which it sounds like was kind of

16   a defensive posture, anticipating things that haven't occurred,

17   then let's look at the rest of this. Okay.

18           Now, the 1985 claims are being withdrawn, so that

19   should make you folks happy.

20           The state law claims, I was asked to throw those out

21   on the expectation that I would throw out the federal claims.

22   So, if I don't throw out the federal claims, then that's not a

23   winning argument. Okay?

24           So I want to then look, though, at some of the

25   negligence claims, and on this I'm inclined to go with the

Case 1:04-cv-00562-KSC   Document 327-18   Filed 07/19/2007   Page 8 of 21
Case 1:04-cv-00562-KSC   Document 232-8   Filed 02/20/2007   Page 8 of 18

24

1   defendants.  I'm inclined to rule that count 5, which sues for

2   negligent supervision and retention, and count 7, which sues

3   for negligent infliction of emotional distress, are barred.

4   Both being grounded in negligence they are subject to the

5   workers' comp exclusive remedy statute.

6           And let me invite Miss Bronster to address that, if

7   she would like to.

8           MS. BRONSTER:  Yes, Your Honor.  With respect to the

9   negligent infliction of emotional distress we believe that the

10  more appropriate claim is the intentional infliction --

11          THE COURT:  You have that.

12          MS. BRONSTER:  We have that, and that is separate.

13          With respect to the employer actions with respect to

14  the supervision and retention of employees we are concerned

15  that, if this is simply dismissed, I am concerned that the

16  willful and wanton actions of some of the defendants in this

17  might otherwise get lost in the mix, so to speak.  And, as we

18  have alleged in count 5, there were willful and wanton actions

19  that would give rise to a claim.  To the extent that they

20  are -- what you'd be doing is dismissing the negligent aspects

21  of count 5 we understand the decision, but to the extent that

22  there are willful and wanton actions that are alleged we would

23  request either that, to the extent they exist in count 5 or

24  otherwise, that they are not dismissed or that we have the

25  right to amend the pleadings, as the court indicated in the

25

1    Marshall versus University of Hawai'i case.

2            THE COURT:  Where is the allegation of willful or

3    wanton supervision or retention?  Show me where that is because

4    I didn't see that.

5            MS. BRONSTER:  And we -- we did not specifically set

6    it forth in count 5.

7            THE COURT:  I didn't see it, and so I don't think you

8    have a willful or wanton supervision or willful or wanton

9    retention of Mr. Kapua in there.

10           MS. BRONSTER:  And we would request the right to

11   amend to include that.

12           THE COURT:  Probably not going to let that happen.

13   This is pretty close to trial.  Trial is set for when?  May?

14           MS. BRONSTER:  May.

15           THE COURT:  May, yeah.  And this case was originally

16   filed in 2004, so I'm probably not likely to do that.  But --

17   okay.

18           MS. BRONSTER:  Your Honor, we believe that the

19   earlier allegations in the earlier paragraphs set forth

20   examples of actions particularly by K.P.D. and Lum where it

21   showed that his actions in not dealing with Kapua were willful

22   and wanton, and we believe that those are contained in the

23   prior paragraphs and incorporated by reference.

24           THE COURT:  Where is that on supervision or

25   retention?  Show me the specific paragraph that says that some

1    defendant was willful or wanton in supervising or retaining Mr.

2    Kapua. What I saw was that there was willful, wanton, or

3    malicious retaliation against Miss Abbatiello. I didn't find

4    any paragraph saying that there was willful or wanton

5    supervision.

6              MS. BRONSTER: Your Honor, I believe that, if you go

7    through the factual allegations, I think it would be not only

8    willful and wanton supervision of Kapua but also of other

9    officers and particularly with respect to the strip search. We

10   believe that, for example, in paragraphs --

11             THE COURT: Okay. Forget about the other officers

12   because, as I understand it, count 5 says that defendants were

13   negligent in their supervision and retention of Sergeant Kapua.

14   I mean, if you're going to add other officers in now, I mean I

15   think you're --

16             MS. BRONSTER: No, understood, Your Honor. I believe

17   that, if you look at paragraphs 86, the fact that Lum did

18   nothing with respect to the complaints regarding the female

19   arrestees; "87. Although Kapua admitted to calling plaintiff

20   names, defendants, including Lum, did not take any action with

21   respect to Kapua for his admitted sexually degrading comments."

22   We believe that those are factual allegations that more than

23   support a wanton and willful claim.

24             THE COURT: Okay. I don't think you're putting the

25   defendants on notice about anything other than negligence

27

1    there, so I'm actually not persuaded that there is anything

2    left in count 5 that I should keep.  But I mean you have lots

3    of other counts where you're going to be arguing --

4              MS. BRONSTER:  And, Your Honor, to the extent I think

5    that they are included in some of the other counts with respect

6    to count 1 and the --

7              THE COURT:  I don't think willful and wanton

8    supervision or retention of Sergeant Kapua is included in any

9    other count.  I don't want to be mistaken here.  I think that

10   willful and wanton activities other than supervision or

11   retention of Sergeant Kapua --

12             MS. BRONSTER:  And that's what I was trying to refer

13   to is the willful and wanton nature of the activities, not the

14   retention.

15             THE COURT:  Okay.  Anybody want to say anything more

16   on these motions?

17             MR. MINKIN:  Nothing.  Thank you.

18             THE COURT:  Okay.  Then I want to talk a little bit

19   about what's going to happen.  I'm going to take these motions

20   under advisement and probably can issue a ruling within the

21   next 10 days or so.  I'll do it as soon as I can.  Might be

22   shorter than that because I know trial is coming up.  But what

23   are we going to do from now?

24             Okay.  Now, I would like for the parties to try to

25   get together and see if they are in agreement that I can keep

28

1   the upcoming motions in this case on the calendar as now

2   assigned, or if there is disagreement on that.  If there is

3   agreement that they can be kept, fine.  If there's agreement

4   that they should be moved, then they should -- you folks should

5   get together and talk to my courtroom manager to get another

6   date.  If there's disagreement, well, go to the magistrate

7   judge, whoever wants to do whatever, move whatever.  I'm hoping

8   that you folks can agree at least on the scheduling issue of

9   when those motions should go.

10          And, if they're going to be moved, then it seems to

11   me that the movants can supplement their papers, but they

12   should put in their -- if it's going to be moved, then put in

13   your supplementation more than 28 days before the new date, if

14   it's going to be moved.  If it's not going to be moved, you

15   probably don't have an agreement, and you can take everything

16   to the magistrate judge.

17          Okay.  Now, when I issue whatever order it is that

18   I'm going to issue, it may be that somebody thinks, "Oh, I

19   should have moved on something something else, and I have a

20   good motion for summary judgment and we shouldn't have to go to

21   trial."  Well, the deadline for filing dispositive motions has

22   passed, so, if anybody wants to do that, you have to file a

23   motion to amend the scheduling order, which set a now past

24   deadline for filing dispositive motions.  Normally, such a

25   motion would go to the magistrate judge, but give it to me

Case 1:04-cv-00562-KSC   Document 327-18   Filed 07/19/2007   Page 13 of 21
Case 1:04-cv-00562-KSC   Document 232-8   Filed 02/20/2007   Page 13 of 18

29

1    because I'm in charge of the trial date here, too.  Okay?  And

2    I won't be too thrilled with such a motion.  On the other hand,

3    you know, you may have your reasons, and you can set those out

4    in a motion.

5              But, as much as possible, I would like to hold you

6    folks to the trial date because this case is so old already.

7    And, you know, I mean I know it's horrible to have a federal

8    civil trial date because you folks know that you always get

9    trumped by a criminal case, and I feel really bad about that.

10   I haven't been in this job so long that I've forgotten how hard

11   it is to be civil case counsel in federal court and never know

12   whether you need to have your witnesses here or not.  And I

13   tend to not let you go early if I think there's a chance you

14   might go.  I want to preserve that trial date.  But that will

15   mean that I'm going to hold you to that trial date coming up,

16   you know, right to the eve of that trial because the criminal

17   case might go away -- they often do -- and I want to preserve

18   that date.

19              Let me suggest that you folks might want to talk

20   about whether you want to all consent to trial by magistrate

21   judge.  I know you all know we have three fantastic magistrate

22   judges.  I personally think that they exist to make me look bad

23   because they're all so good.  But they can give you a firm

24   trial date because they don't have to try felony cases that

25   will trump you folks.  So to me, I mean, that's an advantage

30

1    for everybody: to have a firm trial date. And, you know, I

2    think you folks might well be served in this case by talking to

3    each other about that possibility. I don't know why one of you

4    would think it's an advantage to have an uncertain trial date

5    with however complicated this case is going to be. I mean

6    sometimes, you know, the defense thinks, "The plaintiff's not

7    going to be ready. Let's just make them get ready." But in

8    this case it's pretty complicated, and you folks are going to

9    have a lot of prep; so I would like to suggest that you

10   consider that.

11          I mean I know all of you and, you know, I know you're

12   all very good attorneys, and it would be my privilege to

13   preside over a case that all of you tried. But I don't know

14   that that's the best thing for you folks: to have an uncertain

15   trial date. So you should at least consider it. Okay.

16          So I guess that's where I'm going to leave it. As I

17   say, I'll be able to give you an order -- what is today? Today

18   is Tuesday. I might not be able to get it out this week. If I

19   can, I will, but, if not, you'll get it no later than sometime

20   next week.

21          Yeah.

22          MR. MINKIN: Miss Bronster indicated that she's

23   learned something within the last week or so about additional

24   retaliation, that sort of thing. The First Amended Complaint

25   came approximately 11 months after they learned the other

1    issues regarding the strip search.  Is there going to be -- is

2    there some deadline that we can force upon plaintiffs to put

3    that -- basically amend the complaint or by stipulation or do

4    something so that we're not precluded in the next month of

5    discovery to take depositions related to that?

6              THE COURT:  Okay.  Now, I'm not certain that her --

7    it sounds to me -- and I have to study this complaint more to

8    know this, but you folks should take a look at this.  I don't

9    know that her complaint needs to be amended to subsume new

10   facts that she says support the existing claim, which is that

11   her client is being retaliated against for speaking out.  I

12   think this is -- I think what she was alleging was additional

13   retaliatory acts.  Not a new claim but new evidence supporting

14   an existing claim.  If that is so, then I don't know she needs

15   to amend, but --

16             MR. MINKIN:  The problem is we're now on our third

17   acting or interim chief of police from when these allegations

18   first arose, there's a completely new administration there in

19   the police department, so are they now asserting that the

20   current interim chief, who is her own client in another matter,

21   is the person retaliating or it's one of his subordinates?  I'm

22   not sure, and therein lies my problem.

23             THE COURT:  You think she might have a conflict.

24             MR. MINKIN:  I think -- well, I don't know what the

25   allegations are.  This is the first time I've heard of this.

32

1   So there are a number of issues that are out there.

2       THE COURT:  Okay.  I don't know I can solve that

3   today.  I guess you're going to have to take some discovery to

4   figure out exactly what is going on.  I mean it sounds like you

5   are going to take the plaintiff's deposition at some point.

6       MR. MINKIN:  Correct.

7       THE COURT:  So that's probably where you can flesh

8   out exactly what it is she's claiming.  And then, you know, as

9   I say, I'm highly unlikely to say that there can be new claims

10   added, but I'm not certain that what she was saying amounts to

11   a new claim.  It might be new evidence supporting the existing

12   claim.  But, if indeed -- I mean I can see the problem that

13   would arise if, you know, she were alleging wrongdoing on

14   behalf of a client she represents in an unrelated matter, but I

15   don't know that to be the case.  So it sounds to me like you

16   folks are going to have to figure out what is being alleged

17   through discovery, and then you may have to come back.

18       MR. MINKIN:  Okay.

19       THE COURT:  It's a horrifying thought to me that you

20   might all be back on discovery disputes, but I'm thinking it's

21   probably likely.  Okay.

22       MS. BRONSTER:  But I would imagine that a discovery

23   dispute would go to the magistrate.

24       THE COURT:  Yes.  Isn't that nice.

25       Okay.  Is there anything else, then?  Otherwise, I'm

Case 1:04-cv-00562-KSC   Document 227-18   Filed 07/10/2007   Page 17 of 21

33

1    going to take the motions under advisement.  And the sooner you

2    know whether you're keeping the dates that I now have reserved

3    in this case on remaining motions the better it is for me

4    because I can use that slot for something else, so I'd really

5    appreciate it if you folks would confer and figure out if you

6    have an agreement as soon as possible.

7              MS. BRONSTER:  Thank you.

8              THE COURT:  Thank you all very much.

9              MR. MINKIN:  Thank you.

10             MS. BRONSTER:  Thank you, Your Honor.

11             (Court recessed at 9:57 A.M.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

34

1                COURT REPORTER'S CERTIFICATE

2           I, Debra Kekuna Chun, Official Court Reporter, United

3  States District Court, District of Hawaii, do hereby certify

4  that the foregoing is a correct transcript from the record of

5  proceedings in the above-entitled matter.

6           DATED at Honolulu, Hawaii, February 9, 2007.

7

8                        /s/ Debra Chun

9                        DEBRA KEKUNA CHUN

10                       RPR, CRR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## David J. Minkin

**From:**    John Hoshibata [jhoshibata@bchlaw.net]
**Sent:**    Friday, December 01, 2006 4:42 PM
**To:**    David J. Minkin
**Subject:** Abbatiello case: County's overtime records

David: This will serve to memorialize our agreement. You called me at about 4:17 pm this afternoon, Friday, to advise me that you had a 2-1/2 inch thick stack of overtime records (which were to have been produced at the 30-b-6 deposition) ready to be delivered to me. We had a discussion which led to an agreement that — because of the County's delay in getting these records together -- our economist's report would be due on Friday, December 8, rather than Wednesday, December 6. When I have time, later today or Monday, I will give you a letter, copied to all counsel, so that there is no confusion over this. John.

John Hoshibata
Bronster Crabtree & Hoshibata
1001 Bishop Street
2300 Pauahi Tower
Honolulu, Hawaii  96813
phone:  (808) 524-5644
fax:    (808) 599-1881
e-mail:  jhoshibata@bchlaw.net

CONFIDENTIAL COMMUNICATION:  This e-mail message and any attachments are intended for the use of a particular person or addressee, and may contain information that is privileged and confidential. If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited. If you receive this e-mail in error, please immediately notify the sender by replying to this e-mail message or by telephone, delete this e-mail from your computer, and destroy any printed copies. Thank you.

TAX ADVICE:  Under applicable Treasury Regulations, we are required to inform you that any advice contained in this e-mail or any attachment hereto is not intended or written to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue Code.

2/19/2007                          EXHIBIT " D "

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| DARLA ABBATIELLO, | ) | CIVIL NO. CV04-00562 KSC |
| | ) | |
| Plaintiff, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| vs. | ) | |
| | ) | |
| COUNTY OF KAUAI, KAUAI | ) | |
| POLICE DEPARTMENT, K.C. LUM, | ) | |
| WILFRED M. IHU, GORDON | ) | |
| ISODA, DEAN PIGAO, IRVIL | ) | |
| KAPUA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the

foregoing document was duly served on the following on this date as indicated

below:

|  | **Electronically Via CM/ECF** | **U.S. Mail** |
|---|---|---|
| DANIEL G. HEMPEY, ESQ.<br>Law Office of Daniel G. Hempey<br>3175 Elua Street<br>Lihue, Hawai`i 96766 | | X |

and

156035.1

|  | Electronically Via CM/ECF | U.S. Mail |
|---|---|---|
| MARGERY S. BRONSTER, ESQ. JOHN HOSHIBATA, ESQ. Bronster Crabtree & Hoshibata Pauahi Tower 1001 Bishop Street, Suite 2300 Honolulu, Hawai`i 96813 | X |  |

Attorneys for Plaintiff
DARLA ABBATIELLO

|  | | |
|---|---|---|
| MICHAEL J. McGUIGAN, ESQ. Pacific Guardian Center, Makai Tower 733 Bishop Street, 24th Floor Honolulu, Hawai`i 96813 | X |  |

Attorney for Defendant
IRVIL KAPUA

|  | | |
|---|---|---|
| CARY T. TANAKA, ESQ. Fort Street Tower 745 Fort Street, Suite 510 Honolulu, Hawai`i 96813 | X |  |

Attorney for Defendant K.C. LUM


DATED:  Honolulu, Hawai`i, February 20, 2007.


/s/ David J. Minkin
DAVID J. MINKIN
BECKY T. CHESTNUT
KARA M.L. YOUNG

Attorneys for Defendants
COUNTY OF KAUA`I, KAUA`I POLICE
DEPARTMENT, WILFRED M. IHU,
GORDON ISODA, and DEAN PIGAO